Jack Silver, *pro hac vice*
Law Office of Jack Silver
California State Bar No. 60575
708 Gravenstein Hwy North, Suite 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
(707) 528-8175
(707) 829-0934 (fax)

*Attorneys for Plaintiffs*
*[Additional counsel listed on signature page]*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| THE CHURCH OF THE EAGLE AND THE CONDOR, an Arizona Religious Corporation, on its own behalf and on behalf of its members; JOSEPH TAFUR, M.D., Individually and as Spiritual Leader of The Church of the Eagle and the Condor; BELINDA ERIACHO, M.P.H., KEWAL WRIGHT, BENJAMAN SULLIVAN, and JOSEPH BELLUS, members of The Church of the Eagle and the Condor,<br><br>              Plaintiffs,<br>    vs.<br><br>MERRICK GARLAND, Attorney General of the United States; ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security; ANNE MILGRAM, Administrator, U.S. Drug Enforcement Administration; and CHRISTOPHER MAGNUS, Commissioner, U.S. Customs and Border Protection,<br>              Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>1. Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(c)<br>2. First Amendment Free Exercise of Religion<br>3. First Amendment Establishment of Religion<br>4. Fifth Amendment Procedural Due Process<br>5. Fifth Amendment Substantive Due Process<br>6. Fifth Amendment Equal Protection<br>7. Ninth Amendment Unenumerated Rights<br>8. Freedom of Information Act, 5 U.S.C § 552 (a)(4)(B)<br>9. Declaratory Relief, 28 U.S.C. §§ 2201-2202<br>10. Injunctive Relief, F.R.C.P. 65 |

COMPLAINT

1.     Plaintiffs, The Church of the Eagle and the Condor ("the Church"), Joseph Tafur, MD, individually and as Spiritual Leader of the Church of the Eagle and the Condor, Belinda Eriacho, M.P.H., Kewal Wright, Benjaman Sullivan and Joseph Bellus (hereinafter collectively, "Plaintiffs"), by and through counsel, hereby submit this Complaint and state as follows:

## INTRODUCTION

2.     The Church is a religion rooted in Indigenous spirituality whose essential sacrament is the use of *ayahuasca* tea, which is a mixture of sacred plants used for thousands of years by Indigenous people in South America in accordance with ancestral culture. The Church considers *ayahuasca* to be a sacred being, which is referred to as Grandmother *Ayahuasca*, a Divine Spirit of Nature.  The Church is based in Phoenix, Arizona. The Church is a religious community dedicated to the spiritual reunification of humanity in fulfillment of the Prophecy of the Eagle and the Condor.

3.     On information and belief, in the summer of 2020, the Church had its sacramental tea, *ayahuasca*, seized by agents of the U.S. Customs and Border Protection ("CBP").  Such confiscation was perpetrated without providing any due process to Plaintiffs before or after their holy tea was seized and destroyed. Concurrently, the CBP has engaged in a pattern and practice of seizing and destroying countless other shipments of sacramental *ayahuasca* that have come into the United States since 2020.  Following the seizure of sacramental *ayahuasca*, all Defendants named herein have collaborated with State law enforcement officials to prosecute numerous individuals in the United States, alleging that

any possession of *ayahuasca*, even for sincere religious purposes, violates the Controlled Substances Act ("CSA") and related State statutes. The Church has attempted to ascertain more specific information about the seizure and destruction at the border of the sacramental *ayahuasca* by filing Freedom of Information Act ("FOIA") submissions with Defendants. The DEA Defendants have persistently refused to provide responsive documents to these properly filed FOIA submissions, completely ignoring for nearly two years Defendants' legal obligations to respond to such submissions.  The increased seizures of *ayahuasca* in the United States, the prosecution of individuals devoted to the religious use of *ayahuasca*, and the specific seizure of the Church's sacrament have all resulted in a substantial burden on Plaintiffs' exercise of their religious beliefs.

4.     To redress this intolerable burden, Plaintiffs pray that this Court protect their sincere religious practices of worship and those of the other members of the Church, and protect and redress the deprivation of their statutory and Constitutional rights, privileges, and immunities as guaranteed by 42 U.S.C. § 2000bb-2000bb(4), the Religious Freedom Restoration Act of 1993 ("RFRA"), their rights to freedom of religion, to liberty, to property, and to equal protection of the laws as promised by the First and Fifth Amendments to the Constitution of the United States, and to redress Defendants' clear violations of the FOIA.

5.     Specifically, Plaintiffs seek a declaration that, because Defendants' actions and policies constitute an actionable threat to the Church, its Board of Directors, and its members, Plaintiffs have the right to import into the United States, possess, and imbibe *ayahuasca*, their sacramental tea, at their religious ceremonies, notwithstanding that it

contains trace amounts of psychoactive molecules.

6.     Plaintiffs further seek a declaration that Defendants' actions and policies are unconstitutional and unlawful in that they violate the RFRA because they constitute a substantial burden on an essential mode of worship that is part of Plaintiffs' religion, *i.e.*, imbibing the holy tea that is an essential component of the ritual of devotion for members of the Church.

7.     Plaintiffs initially seek a preliminary order, that will become permanent upon adducing the requisite predicate evidence, to enjoin Defendants from preventing the importation into the United States, and use of the sacramental tea in religious ceremonies, to enjoin Defendants from threatening to arrest or prosecute, and to enjoin Defendants from actually arresting and prosecuting, the Church members who partake in the sacramental tea.

8.     Plaintiffs seek redress of Defendant U.S. Drug Enforcement Administration's ("DEA") and CBP's flagrant violations of their obligations under FOIA in responding to Plaintiffs' open records requests.

9.     Finally, under all these claims, Plaintiffs are entitled to recover attorney's fees once their rights are vindicated.

## JURISDICTION AND VENUE

10.     Jurisdiction is conferred on this court by 28 U.S.C. § 1331 and § 1343 (3)-(4), because the case arises under the Constitution, laws and treaties of the United States and seeks to redress the deprivation of rights, privileges, and immunities secured to plaintiffs by the First and Fifth Amendments to the Constitution and federal statutes of the United States.

11.     This Court also has jurisdiction under 28 U.S.C. § 1346 (United States as a defendant), under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706, to grant declaratory relief and to issue preliminary and permanent injunctions, and under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701. As explained in more detail below, there is a present and actual controversy between the parties that is ripe for judicial review. The RFRA also provides jurisdiction by making it clear that a person or religious organization burdened by a violation of the RFRA may assert a claim or defense in a judicial proceeding and obtain appropriate relief against the government. 42 U.S.C. § 2000bb-1(c).  No exhaustion of administrative remedies is required in this case.

12.     A substantial part of the events or omissions giving rise to the claims in this case occurred in this district, and three of the four Plaintiffs, including the Church itself, reside in this judicial district.

13.     Regarding the FOIA claims, this Court has subject matter jurisdiction under 5 U.S.C. § 552(a) (4) (B), which allows an aggrieved party to seek relief when documents are unlawfully withheld, and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant.

14.     This Court has personal jurisdiction over Defendants and their officials because Defendants are officials of agencies of the federal government operating within the United States.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(e). In addition, the FOIA provides additional grounds for venue under 5 U.S.C. § 552(a) (4) (B) because

Plaintiffs' principal place of worship is in Arizona.

**PARTIES**

PLAINTIFFS

16.     Plaintiff **THE CHURCH OF THE EAGLE AND THE CONDOR** ("the Church") is a religion rooted in Indigenous spirituality whose essential sacrament is the holy tea, *ayahuasca*. The principal place of worship of the Church is in Phoenix, Arizona. The Church is a religious community dedicated to universal spirituality in fulfillment of the Prophecy of the Eagle and the Condor, which includes a belief in the spiritual unity of all people and the Creator, and a commitment to respect diversity of religious beliefs. The Church and its members are aware that their sacrament is proscribed by law, but they have partaken in their sacrament both before and after the United States made a credible threat of enforcement of the CSA against them. Plaintiffs are violating and intend to continue to violate applicable law, rather than compromise or terminate their sincerely held religious beliefs and practices, because such beliefs and practices are protected by statute and safeguarded by the Constitution.

17.     Plaintiff **JOSEPH TAFUR, M.D.,** is a Colombian-American family physician originally from Phoenix, Arizona. Dr. Tafur co-founded and co-managed the Indigenous practices-based spiritual retreat center Nihue Rao Centro Espiritual in Peru from 2010 to 2016. He is a Shipibo Wisdom Carrier and *ayahuasquero* (person who guides the sacred *ayahuasca* ceremony) for the Church. The Shipibo people are indigenous to the northwest region of the Amazon Rainforest in Peru. The Shipibo people have an ancient tradition of *ayahuasca* use. Dr. Tafur is also on the Board of Directors of the Church. Dr.

COMPLAINT

Tafur is aware that the sacrament that is integral to the ritual of the Church is proscribed by law, but he has partaken in the sacrament both before and after the United States made a credible threat of enforcement of the CSA against him. Dr. Tafur is violating, and intends to continue to violate applicable law, rather than compromise or terminate his sincerely held religious beliefs and practices, because such beliefs and practices are protected by statute and safeguarded by the Constitution.

18.     Plaintiff **BELINDA ERIACHO, M.P.H.** is of Diné (Navajo) and Ashiwi (Pueblo of Zuñi) descent.  Her maternal clan is One-Who-Walks-Around.  She was born in the Zuñi Pueblo.  She is a Diné Wisdom Carrier and healer focused on inner knowing and on cultural and traditional teaching and is an international speaker on topics impacting Native American communities in the United States. Ms. Eriacho holds a Bachelor's degree in Health Sciences, a Master's degree in Public Health, and a Master's degree in Technology. She is a member of the Management Board for the Navajo Tribal Utility Authority, and is on the Board of Directors and a participating member of the Church. Ms. Eriacho is aware that the sacrament, which is integral to the ritual of the Church, is proscribed by law, but she has partaken in the sacrament both before and after the United States made a credible threat of enforcement of the CSA against the Church and its Spiritual Leader. Ms. Eriacho is violating and intends to continue to violate applicable law, rather than compromise or terminate her sincerely held religious beliefs and practices, because such beliefs and practices are protected by statute and safeguarded by the Constitution.

19.     Plaintiffs **KEWAL WRIGHT**, **BENJAMAN SULLIVAN**, and **JOSEPH BELLUS** are members of the Church.  Ms. Wright, Mr. Sullivan, and Mr. Bellus are aware

that *ayahuasca* is proscribed by law, but they have partaken in their sacrament both before and after the United States made a credible threat of enforcement of the CSA against the Church and its Spiritual Leader. Ms. Wright, Mr. Sullivan, and Mr. Bellus are violating and intend to continue to violate applicable law, rather than compromise or terminate their sincerely held religious beliefs and practices, because such beliefs and practices are protected by statute and safeguarded by the Constitution.

DEFENDANTS

20.    Defendant **MERRICK GARLAND** is the Attorney General of the United States and the Chief Law Enforcement Officer of the United States.  The principal place of business of Attorney General is in Washington, D.C.

21.    Defendant **ALEJANDRO MAYORKAS** is the Secretary of the United States Department of Homeland Security and is responsible for U.S. Customs and Border Protection and Homeland Security Investigations. The principal place of business of Secretary Mayorkas is in Washington, D.C.

22.    Defendant **ANNE MILGRAM** is the Administrator of the U.S. Drug Enforcement Administration and is responsible for administering and enforcing the CSA. The principal place of business of Administrator Milgram is in Washington, D.C.

23.    Defendant **CHRISTOPHER MAGNUS** is the Commissioner of the U.S. Customs and Border Protection and is responsible for administering and enforcing the customs laws, the Controlled Substances Import and Export Act, and regulations promulgated thereunder. The principal place of business of Commissioner Magnus is in Washington, D.C.

COMPLAINT

24.     At all times relevant to this litigation, all Defendants acted in and are sued in their official capacities.

## FACTS

The Nature of *Ayahuasca*

25.     *Ayahuasca* is a plant sacrament or sacred medicine[1] used among approximately 130 Indigenous tribes of South America, each having developed a deep and profound knowledge of methods of working with this decoction.[2] Anthropological data suggest that *ayahuasca* may have been in use for several thousand years.[3] It is traditionally consumed in a ceremonial context, overseen by shamans or medicine carriers who have trained for many years to manage the experience of *ayahuasca* ceremony safely and to guide others through its effects. *Ayahuasca* is made from the woody material of the *ayahuasca* vine (*banisteriopsis caapi*) and the *chacruna* leaf (*psychotria viridis*). The *P. viridis* plant

---

[1]  The term "medicine" as it is used by Indigenous people is not used in the same manner as it is in western cultures. In this Complaint, "medicine" refers to anything that can be used for healing, including spiritual healing, and may refer to plants, songs, prayers, and personal experiences. In Indigenous worldviews and that of the Church's members and leaders, there is no meaningful distinction between medicine and sacrament, as plant medicines are sacred and address the interconnected realms of physical and spiritual health. The Church does not claim that the use of *ayahuasca*, even when called medicine, can cure or treat specific disorders or indications.

[2]  What Indigenous Groups Traditionally Use *Ayahuasca*, AYAHUASCA.COM, http://www.*ayahuasca*.com/psyche/shamanism/what-indigenous-groups-traditionally-use-*ayahuasca*/

[3]  Erin Blakemore, Ancient Hallucinogens Found in 1,000-Year-Old Pouch, NATIONALGEOGRAPHIC.COM, https://www.nationalgeographic.com/culture/article/ancient-hallucinogens-oldest-*ayahuasca*-found-shaman-pouch

COMPLAINT

that is used to make *ayahuasca* contains trace amounts of N,N-dimethyltryptamine (DMT), a chemical listed under the CSA and its regulations. 21 U.S.C. § 801 *et seq*.

26.     The CSA, however, does not list the *P. viridis* plant itself as a controlled substance. There is no scientific evidence establishing that the DMT contained within the sacramental tea is in a form with a "high potential for abuse." The *ayahuasca* tea utilized by the Church is a natural, organic, non-extracted, non-synthetic, orally-ingested sacrament.

27.     The making of the sacramental *ayahuasca* tea used by the Church is a highly ritualized sacred practice.  The preparation of *ayahuasca* requires the intensive labor of many people and is time-consuming. The vine and the leaves are boiled in water for many hours in a structured and prayerful manner. The Church only makes *ayahuasca* available for very limited and specific religious uses, as it considers the loss of any of the tea a sacrilege, and it takes great pains to protect it from diversion.

28.     *Ayahuasca* is not known to be used recreationally. The tea has an unpleasant taste and many people experience nausea and vomiting after consumption. For Plaintiffs, its effects are profound. The predominant effects include spiritual visions and a strong feeling often described as a connection with the Divine. In addition, difficult – but non-life-threatening – effects also sometimes occur after ingesting the tea, as noted previously. These include nausea, vomiting, and physical discomfort – all reasons why it is unlikely to be used recreationally.  Such effects are known by Plaintiffs as "*La Purga*" ("the purge"), which they experience as benefiting them by aiding in the ejection of spiritual material from the mind and body.  *Ayahuasca* is known to be physiologically safe.

29.     Plaintiffs assert, on information and belief, that over the last fifty years,

*ayahuasca*'s religious use has migrated from the Amazon Rainforest to the United States, where its consumption during religious exercise is legally, safely, and freely practiced by congregants of the *União do Vegetal* ("UDV") and *Santo Daime* churches. These two churches are syncretic religions that emerged from spiritual traditions of the Afro-Indigenous peoples of Brazil and combined with European Christian culture, eventually making their way to the United States. These two churches have been practicing legally and continuously in the United States for well over twenty years, and there have been no deaths or serious adverse health or safety events that have occurred as a result of their practices in the United States.

30.     This Complaint arises out of the Church's contemporary religious use of *ayahuasca* in the United States, originating from the traditional ceremonial use by the Indigenous Shipibo people of Peru. The practices of the Shipibo people in Peru are comparable to those of Indigenous people in Brazil, upon whose traditions the *Santo Daime* and UDV adopted their own spiritual practices. Similarly, Plaintiffs have adopted the Shipibo form of spiritual communion and healing and the Pachakuti Mesa traditional teachings, weaving these together with traditional ceremonial practices of Native North American peoples in what the Church members see as the fulfillment of the Prophecy of the Eagle and the Condor.

<u>International Legal Status of the Religious Use of *Ayahuasca*</u>

31.     The term "*ayahuasca*" is not mentioned in any international drug control treaty by name. The International Narcotics Control Board ("INCB"), the controlling agency enforcing the 1971 Convention on Psychotropic Substances, has stated

unequivocally that *ayahuasca* is not among the drugs covered by the Convention, declaring, "At present, no plants, including the ones containing psychoactive ingredients, are controlled under the 1971 Convention, although the active ingredients they contain are sometimes subject to international control. For example, cathine and DMT are psychotropic substances included in Schedule I of the 1971 Convention, while the plants and *plant-based preparations* that contain them, namely *khat* and *ayahuasca*, respectively, are not subject to any restrictions or control measures." Report of the International Narcotics Control Board, (2012) (emphasis added).

32.     In Brazil, *ayahuasca* has been fully legal since 1992. Other countries that have legalized *ayahuasca* use to some extent include Peru, Bolivia, Colombia, Costa Rica, Italy, Mexico, and Romania. *Ayahuasca* has been legalized for ceremonial use in Brazil, Peru, Colombia, and Ecuador, and it has been decriminalized in Portugal.[4]

History of Recognition of the Legal Use of *Ayahuasca*

33.     In 2006, the United States Supreme Court unanimously ruled that the religious organization, UDV, had the right to use *ayahuasca* as a religious sacrament in the United States and that such right is protected under the RFRA.[5]

---

[4] The International Center for Ethnobotanical Education, Research, and Service, Country-by-Country Legal Status Map, ICEERS.ORG, https://www.iceers.org/adf/country-by-country-legal-status-map/; Wikipedia, Legal Status of *Ayahuasca* by Country, WIKIPEDIA.COM, https://en.wikipedia.org/wiki/Legal_status_of_ayahuasca_by_country

[5] *O Centro Espírita Beneficente União Do Vegetal v. Ashcroft*, 282 F. Supp 2d 1236 (D. N.M., 2002), *aff'd, Gonzales v. O Centro Espírita Beneficente União Do Vegetal*, 546 U.S. 418 (2006) ("UDV"). *See also Church of the Holy Light of the Queen v. Mukasey*, 2008 U.S. Dist. LEXIS 102990 *; *Church of the Holy Light of the Queen v. Mukasey*, 615

---

34.     In that case, the UDV filed a declaratory and injunctive action, alleging, *inter alia*, that applying the CSA to its use of sacramental tea (called "*hoasca*" by the UDV) violated the RFRA. The U.S. Supreme Court affirmed the lower court's ruling that the Government failed to demonstrate a compelling interest to justify a complete ban on the importation and religious use of the *ayahuasca* tea used by the UDV. The Supreme Court held that the UDV had effectively demonstrated that its sincere exercise of religion was substantially burdened, and that the Government failed to demonstrate that the complete prohibition of *hoasca* was narrowly tailored to achieve the Government's compelling interests. The Court explained that Congress' placement of DMT under Schedule I simply did not relieve the Government of the obligation to shoulder its burden under the RFRA. As a result of the Court's ruling, the Government abandoned its attempt to prevent the importation, distribution, and ingestion of *ayahuasca* and entered into a settlement agreement with the UDV. The U.S. Supreme Court has thus resoundingly recognized that the sincere religious use of *ayahuasca* – such as the Plaintiffs' – is protected from the general applicability of the CSA and related laws interfering with the importation and use of *ayahuasca*.

35.     Shortly after the Supreme Court ruled in favor of the UDV, a congregation of the *Santo Daime* Church, the Church of the Holy Light of the Queen ("*Santo Daime*"), obtained similar recognition that their religious use of *ayahuasca* is a protected practice

---

F. Supp. 2d 1210; *Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302 *; 2011 U.S. App. LEXIS 14710 *.

under the RFRA.[6] The Government did not challenge the district court's conclusion that an outright prohibition on *Santo Daime*'s importation of *Daime* tea (their name for the sacramental tea) violated the RFRA. Instead, the Government only challenged the scope of the district court's injunction, which in part enjoined the Government from enforcing certain regulations and corresponding statutory provisions set forth in the CSA. The Ninth Circuit ruled: "Defendants [the government] are enjoined from prohibiting plaintiffs' [*Santo Daime*'s] importation, storage, distribution, and use of *Daime* [*ayahuasca*] tea for plaintiffs' religious ceremonies."[7] The Government did not appeal this order, again acknowledging there is no basis in law substantially to burden the sincere religious use of *ayahuasca*.

36.     In both the UDV and *Santo Daime* cases, the courts held that the federal defendants failed to establish that the government had a compelling interest to prevent the importation, distribution, and ingestion of *ayahuasca* as the sacrament used by the churches in religious ceremonies. In both cases, the government failed to establish that *ayahuasca* was dangerous to the health of the members or to the public, or that it was likely the tea would be diverted to illicit consumption.

History and Structure of the Church of the Eagle and the Condor

37.     The Church is a religion and a spiritual community dedicated to universal spirituality in fulfillment of the Prophecy of the Eagle and the Condor. The Church began

---

[6] *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).

[7] *See, Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302. *See also Church of the Holy Light of the Queen v. Holder*, Second Amended Judgment of Owen M. Panner, 1:08-cv-03095-PA (2012).

in 2017, and organized formally as a non-profit Public Benefit Corporation and as a church in Arizona on August 31, 2018, denominated as "The Eagle and Condor Native Americas Church, Inc." under the auspices of the Arizona Corporation Commission pursuant to the Articles of Incorporation for Non-Profits. The name was amended to the "Church of the Eagle and the Condor" in 2019. There are currently three Board Members: Dr. Joseph Tafur, Belinda Eriacho, M.P.H., and Dr. Rodney Garcia.

38.     The Church is a faith-merging belief system incorporating time-honored ways of life in the Americas, as ordained by the ancient and widespread prophecy known as the "Prophecy of the Eagle and the Condor." The Board members and general membership of the Church are comprised of people who live in the firm and unwavering conviction that their beliefs and practices are essential to their way of life, to the health of their spirits, and to the health of the world.

39.     The members of the Board and the other members of the Church live and act toward fulfillment of the Prophecy of the Eagle and the Condor. According to this Prophecy, in the contemporary timeframe the Condor people, generally meaning the Indigenous earth-based wisdom cultures, such as Native American cultures in both North and South America (but also at times including Wisdom Keepers from Africa and elsewhere), after having suffered through 500 years of conquest, genocide, and colonization, are opening their hearts to share their sacred medicines to address the current global environmental crisis. The Church members believe that, in fulfillment of the Prophecy, the Shipibo have begun to share their spiritual tradition of the *ayahuasca* ceremony. The Shipibo are regarded in Peru as one of the cultures with the most profound understanding of the *ayahuasca* sacrament.

COMPLAINT

The Church believes that the sacrament of *ayahuasca* has emerged from the Amazon Rainforest and converged with Native North American teachings and principles (like "The Corn Pollen Path/Beauty Way/Hózhó Nesli" of the Navajo/Diné people) in fulfillment of the Prophecy, to engender spiritual community across all races, ethnicities, and nationalities and to instruct its members in understanding and valuing Indigenous spiritual practices, "[e]mphasizing the importance of maintaining relationships by developing <u>pride</u> in one's body, mind, soul, spirit and honoring all life.[8]"

40.     Ceremonial use of *ayahuasca* has guided the organization's spiritual evolution and is central to the Church's religious expression through its role in building community, connecting members to Divine Guidance, and guiding leaders and members to Walk in Beauty (as is Diné tradition). Ceremonial use of *ayahuasca* helps bring the community to wholeness by facilitating spiritual healing and spiritual growth. The Church believes that *ayahuasca* is a profound and primary voice of Mother Nature and Divinity. Through the Church's spiritual practices with *ayahuasca*, members are initiated into the practices of receiving directly from spirit and discerning what is harmonious for humanity and for the earth. Members believe that in this time of global crisis, their direct and personal connection to nature and the Divine is of the greatest importance.

41.     The ceremonial use of *ayahuasca* helps the Church to work toward its goals,

---

[8]   Jackson S, James IK, Attakai M, Attakai MN, Begay EF. *Amá Sani dóó Achei Baahané/The office of Diné culture, language, and community services.* Cortez, Colorado: Southwest Printing Co, 2004.

which include the reunification of all humanity, to honor all ancestral spiritual traditions of the Americas, and to recognize that spiritual practice should return to its original function: to promote spiritual wholeness and nourish our well-being mentally, physically, emotionally, and spiritually. This healing of heart, mind, and body brings humanity back into the Right Relationship with ourselves, our intimate relationships/loved ones, our community, society, ecosystem, and the Universe.

42.     There is one *ayahuasquero* serving the Church, Dr. Joseph Tafur. As an *ayahuasquero*, Dr. Tafur is responsible for the acquisition, care, possession, distribution, and security of the ritual sacrament; he is the ceremonialist for the *ayahuasca* ceremony, and he is highly trained in the ritual use of *ayahuasca* through the tutelage of more than one master *ayahuasquero* of the Shipibo lineage.

43.     Dr. Tafur is a Colombian-American physician trained extensively in the sacramental use of sacred Amazonian plant medicines, centered on *ayahuasca*. He is the author of "The Fellowship of the River: A Medical Doctor's Exploration into Traditional Amazonian Plant Medicine." Dr. Tafur regularly lectures about *ayahuasca* and is regarded as one of the most experienced practitioners in the country. He trained to serve *ayahuasca* in the jungles of Peru for seven years, as co-owner of *Nihue Rao Centro Espiritual* in partnership with Maestro Ricardo Amaringo before returning to the United States in 2017. Soon thereafter, Dr. Tafur encountered both Dr. Garcia and Ms. Eriacho, and the three were inspired to share their spiritual pathways. Through prayer ceremonies and rituals, and guided by Spirit, the three began to collaborate and ultimately established the Church to support members seeking direct communion with the Divine with and through these

COMPLAINT

ancestral spiritual practices.

44.     There are currently approximately forty active members belonging to this multicultural congregation. The members have been meeting for more than four years for prayer, ceremonies, gatherings, and sweat lodges conducted by Ms. Eriacho, and Drs. Tafur and Garcia. The Church and its members continue, on a regular basis, to use *ayahuasca* in ceremonies held in Arizona under the supervision and care of Dr. Tafur. *Ayahuasca* is the Church's only sacrament and, despite the threat of civil and/or criminal sanctions, the Church and its members have chosen to follow the tenets of their religion rather than be coerced to act contrary to their religious beliefs. Despite the threats of fines, penalties, criminal prosecution, and forfeitures by the CBP (see paragraph 51 below) and the history of past prosecution or enforcement under federal law, the Church and its members continue to import, possess, and use their sacrament (*ayahuasca*) and have no plans to stop doing so despite Defendants' claim that the current conduct by the Church and its members violates the Controlled Substances Act.

45.     From 2018 to 2020, the Church adopted bylaws, a Code of Ethics, Ceremonial Guidelines, and other systems and procedures to provide structure for its governance and membership, as well as to provide ample care and safety around all of its practices, most specifically around the use of the sacrament of *ayahuasca*.

46.     As noted above, the Church's systems and procedures ensure that no diversion to non-religious uses will occur in the importation, possession, and distribution of the sacramental tea. Only Dr. Tafur and board members are permitted to handle and care for the sacrament. The Church maintains a log of amounts of the sacramental tea received,

COMPLAINT

amounts used in each ceremony, and the resulting remaining amount. The Church's *ayahuasca* is stored in a locked, refrigerated location unavailable to anyone other than its board members. Only Dr. Tafur is permitted to serve the tea to participants within the strict confines of the *ayahuasca* ceremony.

47.     The Church conducts scrupulous screening of Church members and participants before consumption in the *ayahuasca* ceremony to ensure the well-being and care of all. Screening includes inquiries into medical and psychological conditions that may be contraindicated for imbibing *ayahuasca* and for prescription medications with which there may be potential interactions. Informed consent is provided and participants are asked to read and understand the ceremony guidelines and to agree to adhere to important policies established for the health and safety of all ceremonial participants. The Church makes no claims of any kind about *ayahuasca* medically to treat specific mental or physical health indications.

The Church is Similarly Situated to the UDV and *Santo Daime*

48.     There is no appreciable difference between the Church in the instant case and the congregations of the UDV and *Santo Daime*. Plaintiffs herein are a church and spiritual community arising out of Indigenous beliefs, rituals, and pathways blending with other cultures to give rise to an emergent religion. Like the UDV and *Santo Daime*, the elders of the Church have received what they experience as divine guidance and direction with respect to the establishment of this church and its mission.  Like the UDV and *Santo Daime*, the tenets of the Church encompass spiritual matters as well as guidance on how to live a good life on earth. Like the UDV and *Santo Daime*, the Church regards *ayahuasca* as the

quintessential sacrament that helps to connect each of its members to the Divine and guide them toward a harmonious and spiritual relationship with all of Creation. Like the UDV and *Santo Daime*, the elders of the Church care for its sacrament with impeccability and respect. Like the UDV and *Santo Daime*, the Church protects its sacrament from sacrilege, from desecration, and from diversion.

49.     Differences in theology are a tenuous basis for selectivity in governmental accommodations. A selective accommodation that excludes the Church would effectively establish the UDV or *Santo Daime* in comparison to the Church in the religious "marketplace" of spiritual ideas. *Gonzales v. O Centro Espírita Beneficente União Do Vegetal*, 546 U.S. 418 (2006), Solicitor General's Merits Brief.  In sum, both as to the facts and the law, the Church is similarly situated to the UDV and *Santo Daime*.

 Seizure of the Church's Sacrament by Agents of U.S. Customs and Border Protection

50.     In September 2020, agents of Defendant CBP interdicted *ayahuasca* being sent to the Church from Shipibo elders at *Nihue Rao Centro Espiritual* in Peru through the Port of Los Angeles. Plaintiff Joseph Tafur, M.D. received a small, approximately 3" x 2.5" note displaying the U.S. Department of Homeland Security seal and the following text:

> **"Notice: Narcotics and/or other contraband prohibited from entry into the United States, have been seized and removed for appropriate action under 19CFR145.509. You will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near future."**

51.     The Notice clearly threatens additional fines and penalties, which, under the CSA, could include criminal prosecution. The members of the Church are aware of this communication and view it as a credible threat of enforcement by the government against

the Church for engaging in its religious practices.

52.     Plaintiff Joseph Tafur, M.D. received no further correspondence or formal notice of intent to seize, destroy, or retain the *ayahuasca* that rightfully belongs to the Church, nor was any opportunity to be heard by a neutral decision-maker provided. The CBP has confirmed that Plaintiffs' shipment of *ayahuasca*, their sacred tea, was summarily destroyed without any assessment of its legality under the RFRA or other laws.

53.     Plaintiffs contend that Defendants knew or should have known that *ayahuasca* had previously been given special consideration under United States law, that it is a protected substance under the RFRA, that it is not a substance of abuse, and that it is used exclusively for religious purposes. Moreover, Defendants failed to contact Plaintiffs' addressee before unlawfully seizing the property of the Church.

54.     Plaintiffs have suffered an injury in fact pursuant to the loss of their sacrament, both financially and spiritually, because of Defendants' actions. Plaintiffs believe the destruction of the tea to be a sacrilege to the spirit of *ayahuasca*, because of their belief that it is a conscious spiritual being. As a result, the members of the Church have not only been deprived of their sacrament due to Defendants' actions, but have also endured a spiritual suffering in knowing the spirit of *ayahuasca*, known as Grandmother *Ayahuasca*, has been destroyed in a sacrilegious manner.

55.     On March 16, 2021, counsel for the Church submitted FOIA Requests to both the CBP and the DEA regarding the seizure of *ayahuasca* and other related topics. The CBP responded and requested additional information to narrow the scope of the search and to request payment for labor associated with the search. On April 6, 2021, the CBP provided

COMPLAINT

an interim response indicating that Defendant CBP had seized hundreds of shipments of a substance which Plaintiffs, on information and belief, have reasonably concluded to be *ayahuasca*.

56.     The CBP provided Plaintiffs a highly-redacted copy of the "Seized Asset Management and Enforcement Procedure Handbook" ("SAMEPH"). Subsequent to Plaintiffs filing an administrative appeal on July 1, 2021 challenging the CBP's search results as well as the fee waiver denial, the CBP promised to release more of the SAMEPH document, acknowledging its redactions no longer complied with the law. This release was promised to Plaintiffs no later than October 1, 2021. However, no further correspondence regarding the SAMEPH has been received, nor has the CBP released the document with less redactions, as promised.

57.     To date, no additional records have been received from the CBP. The CBP issued a final disposition letter to Plaintiffs on December 16, 2021.

58.     Plaintiffs received one brief acknowledgment of receipt of their FOIA request from the DEA. The DEA has not provided even one document responsive to the FOIA request. Plaintiffs submitted a second request to the U.S. Department of Justice on June 1, 2021 seeking additional information on how the government handles *ayahuasca* seizures, but have received no reply whatsoever from the DEA. Plaintiffs have waited without any substantive response or document releases from DEA as of the date of this filing, a length of time far exceeding the required disclosure deadline under the FOIA.[9]

_____

[9] The FOIA also requires that an agency, upon any request for records, shall make

59.    Plaintiffs contend, on information and belief, that in addition to Defendants' seizure of Plaintiffs' and others' *ayahuasca* without due process of law and in disregard of Plaintiffs' religious freedom, Defendants have been collaborating with State law enforcement authorities to prosecute and persecute people using *ayahuasca* in a religious context.  Plaintiffs contend, on information and belief, that several such prosecutions have occurred, which began with seizures of *ayahuasca* by the CBP, which then led to the DEA collaborating with State law enforcement authorities. Further, on information and belief, that seizure of *ayahuasca* from those who possess it for religious purposes have led to prosecutions in Arizona, California, Michigan, and Colorado.

60.    Plaintiffs are aware of the history of past prosecution and enforcement and the seizure of the sacramental tea, *ayahuasca*, from the Church and others, and Defendants' collaboration with State and local law enforcement authorities, have had a chilling effect on Plaintiffs' exercise of their statutory and Constitutional rights to practice their religion without fear of raid, arrest, prosecution, seizure, and forfeiture of their property.

61.    As discussed herein, Plaintiffs' Complaint falls within the zone of interests protected by the RFRA and the Constitution.  Defendants' ongoing violations of the RFRA and Plaintiffs' constitutional rights have and will continue to cause irreparable harm to the Church and its members, for which they have no plain, speedy, or adequate remedy. The

---

the records available promptly. 5 U.S.C. § 552 (a) (3) (A). An agency shall make a determination whether to comply with a request within twenty (20) business days after the receipt of the request and shall immediately notify the party making the request of such determination, the reasons for the determination, and the party's right to appeal. 5 U.S.C. § 552 (a) (6) (A) (i). In unusual circumstances, the agency may extend the time for the determination, for no more than ten (10) days, by written notice to the party, specifying the reasons for the extension and the date on which the determination is expected to be sent. 5 U.S.C. § 552 (a) (6) (B) (i).

COMPLAINT

relief requested will redress the ongoing injury in fact to the Church and its members. Individual members of the Church have been injured by being deprived of their sacrament and by fear of arrest, and thus have standing to sue in their own right.  As discussed herein, the interests the Church seeks to protect are germane to the organization's purpose. Because of this, neither the claims asserted nor the relief requested requires the participation of the individual members of the Church in the lawsuit.

62.     Given that Plaintiffs' sacramental *ayahuasca* has been confiscated by Defendants, and given that Defendants have failed to give Plaintiffs any process for contesting such seizure, Plaintiffs fear that Defendants will intercept Plaintiffs' sacred tea in the future. Plaintiffs, therefore, have no adequate remedy at law other than to seek vindication of their rights in this litigation.

### FIRST CLAIM FOR RELIEF
### (RELIGIOUS FREEDOM RESTORATION ACT)

63.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 63 as though more fully set forth herein.

64.     The actions of Defendants in seizing Plaintiffs' sacramental tea and continuing to hold the threat of seizure and criminal prosecution over their heads constitute a substantial burden on Plaintiffs' religious practice and beliefs, thereby violating the free exercise of their religion under the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb – 2000bb (4).

### SECOND CLAIM FOR RELIEF
### (FIRST AMENDMENT FREE EXERCISE OF RELIGION)

65.     Plaintiffs repeat and reallege each and every allegation contained in

COMPLAINT

paragraphs 1 through 65, as more fully set forth herein.

66.     The actions of Defendants in confiscating Plaintiffs' sacramental tea and in threatening prosecution of Plaintiffs, who have worshipped and intend to continue to worship according to the central tenets of their religion by their religious use of the sacred *ayahuasca*, substantially burden Plaintiffs' right to the free exercise of their religion, their right to expressive conduct, and their right to association, all in violation of their rights under the Free Exercise Clause of the First Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF
### (FIRST AMENDMENT ESTABLISHMENT OF RELIGION)

67.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 67 as though more fully set forth herein.

68.     Plaintiffs are similarly situated to the UDV and *Santo Daime* religious sects in their sacramental use of *ayahuasca*, which Defendants consider to be a Schedule I controlled substance under the CSA.  Defendants have accommodated the UDV and no longer seek to ban the importation, distribution, and ingestion by its congregations, and Defendants are enjoined from prohibiting the *Santo Daime*'s importation, storage, distribution, and use of the *Daime* tea for that church's religious ceremonies. Defendants, however, continue to refuse to accommodate Plaintiffs' sincere, sacramental use of the same sacred tea.

69.     Defendants' decision to prefer the members of other religions in their use of *ayahuasca* for religious purposes, and Defendants' lack of interference with the religious use of the sacramental tea by other religious sects, while denying the same protection to

Plaintiffs, constitutes an Establishment of Religion in violation of Plaintiffs' First Amendment rights.

## FOURTH CLAIM FOR RELIEF
### (CBP VIOLATION OF FIFTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS)

70.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 70 as though more fully set forth herein.

71.     Defendant CBP's seizure of Plaintiffs' sacramental tea without any notice and without an opportunity to be heard deprived Plaintiffs of their ownership, possession, and use of their sacramental tea, *ayahuasca*, in violation of Plaintiffs' rights to procedural due process pursuant to the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

## FIFTH CLAIM FOR RELIEF
### (CBP VIOLATION OF FIFTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS)

72.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 as though more fully set forth herein.

73.     The actions of Defendant CBP in confiscating the Church's sacramental tea, in continuing to threaten prosecution of Plaintiffs, in continuing threats to confiscate the sacrament and to prosecute Plaintiffs and other members of the Church who in the future attempt to worship according to the central tenets of their religion, violate Plaintiffs' right to worship God according to the dictates of their own conscience and deprive them of their liberty in violation of the Due Process Clause of the Fifth Amendment.

COMPLAINT

**SIXTH CLAIM FOR RELIEF**
**(FIFTH AMENDMENT RIGHT TO EQUAL PROTECTION OF LAWS)**

74.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 74 as though more fully set forth herein.

75.     Plaintiffs are similarly situated as religious minorities to the UDV and *Santo Daime* religions in their sacramental use of *ayahuasca*, which Defendants consider to be a Schedule I controlled substance under the CSA.  Defendants have accommodated the UDV and no longer seek to ban its importation, distribution, and ingestion by its congregations, and are enjoined from prohibiting the importation, storage, distribution, and use of the *Daime* tea for the religious ceremonies of the *Santo Daime* Church, and must also accommodate Plaintiffs' sincere, sacramental use of the Church's sacred tea. Such denial of the use of *ayahuasca* as a sacrament in the rituals and ceremonies of Church and its members denies them equal protection of the laws in violation of the Due Process Clause of the Fifth Amendment because Plaintiffs are similarly situated to other churches that are not denied such rights.

**SEVENTH CLAIM FOR RELIEF**
**(NINTH AMENDMENT UNENUMERATED CONSTITUTIONAL RIGHTS**
**RETAINED BY THE PEOPLE)**

76.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 as though more fully set forth herein.

77.     The actions of Defendants in confiscating Plaintiffs' sacramental tea and in threatening prosecution of Plaintiffs, who have worshipped and intend to continue to worship according to the central tenets of their religion by ingesting their sacred *ayahuasca*, are

COMPLAINT

inconsistent with the religious traditions and practices passed down through generations of ancestors by the Elders of the Indigenous peoples who have enjoyed the blessings of natural liberty that they have retained and that are protected against infringement by the Ninth Amendment to the United States Constitution.

**EIGHTH CLAIM FOR RELIEF**
**(CBP VIOLATION OF FREEDOM OF INFORMATION ACT)**

78.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 78 as though more fully set forth herein.

79.    Defendant CBP has violated 5 U.S.C. § 552 (a) (8) (A) by failing to release lawfully requested documents under the FOIA and Defendant CBP has denied Plaintiffs' rights to such documents by invoking invalid and unjustified claims of exemption pursuant to subsections (b) (5) and (b) (6).

80.    Plaintiffs have incurred attorneys' fees in pursuing these public documents.

**NINTH CLAIM FOR RELIEF**
**(DEA VIOLATION OF FREEDOM OF INFORMATION ACT)**

81.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 81 as though more fully set forth herein.

82.    Defendant DEA has violated 5 U.S.C. § 552 (a) (8) (A) by failing to release lawfully requested documents under the FOIA, and Defendant DEA has denied Plaintiffs' rights to such documents by invoking invalid and unjustified claims of exemption under subsections (b) (5) and (b) (6).

83.    Plaintiffs have incurred attorneys' fees in pursuing these public documents.

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek declaratory and injunctive relief against Defendants as follows:

84.     A Declaratory Judgment that Defendants' actions described in this Complaint, including the interdiction and destruction of Plaintiffs' sacramental tea and the continuing threat of seizure, criminal prosecution, and forfeiture of property of all Board Members and the general membership of the Church who wish to partake of *ayahuasca*, their holy sacrament, violates 42 U.S.C. § 2000bb - 2000bb (4), the Religious Freedom Restoration Act of 1993.

85.     A Declaratory Judgment that the actions described in this Complaint violated Plaintiffs' rights to freedom of religion under the First Amendment of the Constitution of the United States.

86.     A Declaratory Judgment that Defendants' actions described in this Complaint, including the interdiction and destruction of Plaintiffs' sacramental tea and the continuing threat of seizure, criminal prosecution, and forfeiture of property of all Board Members and the general membership of the Church who wish to partake of *ayahuasca*, their holy sacrament, as an essential component of their religious beliefs and practices of worship, violates Plaintiffs' rights to substantive and procedural due process under the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

87.     A Declaratory Judgment that Defendants' actions in treating Plaintiffs herein differently than UDV and *Santo Daime* members violates the equal protection of the laws, as guaranteed by the Due Process Clause of the Fifth Amendment of the Constitution of the

United States.

88.     A Declaratory Judgment that Defendants' actions in chilling Plaintiffs' exercise of their traditions and practices violate Plaintiffs' retained rights as guaranteed by the Ninth Amendment of the Constitution of the United States.

89.     A permanent injunction requiring Defendants to permit Plaintiffs' importation, use, preparation of, and distribution to members of the Church of the sacramental *ayahuasca* tea consistent with the Church's doctrine and practices, and enjoining Defendants from arresting, prosecuting, or threatening Plaintiffs and members of the Church with arrest, prosecution, and/or imprisonment for importing, distributing, and ingesting the sacramental tea, *ayahuasca*, in the rituals and religious observance of the Church.

90.     A declaratory judgment pursuant to 5 U.S.C. § 552 that Defendants CBP and DEA violated the FOIA by failing to release documents that Plaintiffs lawfully requested, and that Defendants invoked invalid claims of exemptions under subsections (b) (5) and (b) (6).

91.     An order pursuant to 5 U.S.C. § 552 (a) (4) (B) requiring Defendants CBP and DEA to immediately produce all documents in their possession responsive to Plaintiffs' above-referenced FOIA requests.

92.     An Order awarding Plaintiffs' attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988, and under 5 U.S.C. § 552 (a) (4) (E) on Plaintiffs' FOIA claims.

93.     Such other and further relief as this Court may deem just and proper.

| | |
|---|---|
| 1 | DATED:  June 9, 2022 |

Respectfully submitted,

By:  *s/ Jack Silver*
Jack Silver, *pro hac vice*
Cal. Bar No. 160575
Law Office of Jack Silver
708 Gravenstein Hwy No. # 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
Tel: (707) 528-8175
Fax: (707) 829-0934

By:  *s/ Gilbert Paul Carrasco*
Gilbert Paul Carrasco, *pro hac vice*
Cal. Bar No. 90838
D.C. Bar No. 334722
Professor of Law
Willamette University College of Law
c/o 19431 Sunray Lane, Suite # 102
Huntington Beach, California 92648-6401
carrasco@willamette.edu
Tel: (714) 698-8142
Mobile: (503) 990-4879

By: *s/ Sean T. McAllister*
Sean T. McAllister, Esq., *pro hac vice*
Colo. Bar No. 31350
Cal. Bar No. 310962
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
sean@mcallisterlawoffice.com
Tel: 720-448-6235

By: *s/ Martha J. Hartney*
Martha J. Hartney, Esq., *pro hac vice*
Colo. Bar No. 42017
Hartney Law, LLC
4450 Arapahoe Avenue, Suite 100
Boulder, CO 80303
martha@hartneylaw.com
Tel: (303) 747-3909
Fax: (303) 835-7199

-31-

COMPLAINT

1

2                                  By: *s/ Ismail Lourido Ali*

Ismail Lourido Ali, Esq., *pro hac vice*

3                                  Cal. Bar No. 312660

1530 Campus Drive

4                                  Berkeley, CA 94708

5                                  lourido.ali@gmail.com

Tel: (559) 801-7317

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-32-

COMPLAINT