Jack Silver, Esq. *pro hac vice*
LAW OFFICE OF JACK SILVER
California SBN 160575
708 Gravenstein Hwy. No. # 407
Sebastopol, CA 95472
JsilverEnvironmental@gmail.com
Tel. (707) 528-8175
Fax. (707) 829-0934

Gilbert Paul Carrasco, *pro hac vice*
Cal. Bar No. 90838
D.C. Bar No. 334722
Professor of Law *Emeritus*
Willamette University College of Law c/o
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648
carrasco@willamette.edu
Tel: (714) 698-8142
Mobile: (503) 990-4879

Attorneys for Plaintiffs
*[Additional counsel listed on signature page]*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, et al, | Case No.: 22-CV-01004-PHX-SRB |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Merrick Garland, Attorney General of the United States, et al, | |
| Defendants. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 1

II.  FACTS OF THE CASE ........................................................ 1

III. ARGUMENT .................................................................... 2

   A.  Plaintiffs Have Stated a Claim under RFRA ............................... 2

     1. Plaintiffs Have Pled Injury-in-Fact Sufficient for Standing................... 2

     2. Plaintiffs Have Pled that Defendants Caused Plaintiffs' Injury ............... 3

     3. Plaintiffs Have Stated Facts that Would Entitle Them to Relief .............. 3

   B.  Plaintiffs Have Pled Substantial Burden .................................... 5

   C.  The CEC Has Standing on its Own as Well as Associational Standing .......... 6

   D.  The Constitutional Claims are Borne out by the Gravamina of the Complaint ...... 7

     1.  Plaintiffs Have Alleged Facts Entitling Them to Relief under the Free
        Exercise Clause ..................................................... 7

     2.  Plaintiffs Have Alleged Facts that Entitle Them to Relief under the
        Establishment Clause................................................. 8

     3.  Plaintiffs Have Alleged Facts that Entitle Them to Relief for Violation
        of Procedural Due Process under the Fifth Amendment ................... 10

     4.  Plaintiffs Have Alleged Facts that Entitle Them to Relief for Violations
        of Substantive Due Process under the Fifth Amendment................... 12

     5.  Plaintiffs Have Alleged Facts that Entitle Them to Relief for Violations
        of Equal Protection under the Fifth Amendment....................... 12

     6.  Plaintiffs Have Alleged Cognizable Claims Under the Ninth Amendment

   E.   There is no Legal Basis for a Stay...................................... 15

IV.  CONCLUSION ................................................................ 17

i

# TABLE OF AUTHORITIES

**Cases**

*Abington Sch. Dist. v. Schempp*
374 U.S. 203 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Adarand Constructors v. Peña*
515 U.S. 200 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*American Legion v. American Humanist Association*
139 S. Ct. 2067 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ankenbrandt v. Richards*
504 U.S. 689 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Arizona Yage Assembly v. Barr*
2020 U.S. Dist. LEXIS 172836, *24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Association of Am. Med. Colleges v. United States*
217 F.3d 770 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, fn3

*Association of Data Processing Service Organizations, Inc. v. Camp*
397 U.S. 150 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Barlow v. Collins*,
397 U.S. 159 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Board. of Regents of State Colleges v. Roth,*
408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Buckley v. Valeo*
424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Church of the Holy Light of the Queen ("CHLQ") v Holder*
443 F. Appx. 302 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Church of the Holy Light of the Queen v. Mukasey*
615 F. Supp. 1210 (D. Or. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Church of the Holy Light of the Queen v. Mukasey*
2008 U.S. Dist. LEXIS 102990 *8 (D. OR) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Richmond v. Croson*,
488 U.S. 469 (1989*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colorado River Water Conservation Dist. v. U.S.*
424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Consumer Federation of America v. FCC*
348 F.3d 1009 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*County of Allegheny v. ACLU*
492 U.S. 573 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Duke Power Company v. Carolina Study Group*
438 U.S. 59 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Employment Division v. Smith*
494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Espinoza v. Montana Dept. of Revenue*
140 S. Ct. 2246 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fowler v. Rhode Island*
345 U.S. 67 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fulton v. City of Philadelphia*
141 S. Ct. 1868 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Griswold v. Connecticut*
381 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Guam v. Guerrero*
290 F.3d 1210 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hobbie v. Unemployment Appeals Comm'n*
480 U.S. 136 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Holder v. Humanitarian Law Project*
562 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hunt v. Wash. State Apple Adver. Comm'n*
432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*International Union, United Automobile Workers v. Brock*
477 U.S. 274 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Robison*
415 U.S. 361 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kennedy v. Bremerton Sch. Dist.*
597 U.S. -- (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Larson v. Valente*
456 U.S. 228 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

*Lemon v. Kurtzman*
403 U.S. 602 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Marbury v. Madison*
5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchuk*
567 U.S. 209 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mathews v. Eldridge*
424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maya v. Centex Corp*
658 F.3d 1060 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McCreary County v. ACLU*
545 U.S. 844 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McCullough v. Maryland*,
17 U.S. (4 Wheat) 316 (1819). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Meyer v. Nebraska*
262 U.S. 390 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Moore v. City of East Cleveland*
431 U.S. 494 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*National Fed. of Indep. Bus. v. Department of Labor*
142 S. Ct. 661 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Navajo Nation v. U.S. Forest Serv.*
353 F.3d 1058 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New Orleans v. Dukes*
427 U.S. 297 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Obergefell v. Hodges*
576 U.S. 644 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O Centro Espirita Beneficente União Do Vegetal v. Ashcroft* ("*O Centro I*")
282 F. Supp. 2d 1236 (D.N.M. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,9

*O Centro Espirita Beneficente União Do Vegetal v. Ashcroft* ("*O Centro II*")
546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Oklevueha Native Am. Church of Haw., Inc. v. Holder* ("*Oklevueha I*")
676 F.3d 829 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,16

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch* ("*Oklevueha II*")
828 F.3d 1012 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,16

*Parks Sch. of Bus., Inc. v. Symington*
51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, fn7

*Parratt v. Taylor*,
451 U.S. 527 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pennell v. San Jose*
485 U.S. 1 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pharmaceutical Care Management v. Rowe*
429 F.3d 294 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

*Police Department of Chicago v. Mosley*
408 U.S. 92 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reno v. Flores*,
507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Richmond Newspapers, Inc. v. Virginia*
448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roberts v. United States Jaycees*
468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stanley v. Illinois*
405 U.S. 645 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United Food and Commercial Workers v. Brown Grp.*
517 U.S. 544 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. Antoine*
318 F.3d 919 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Ballard*
322 U.S. 78 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. v. Carolene Products Co.*
304 U.S. 144 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Culliton*
328 F.3d 1074 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Gen. Dynamics Corp.*
828 F.2d 1356 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. James Daniel Good Real Property*
510 U.S. 43 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. v. Windsor*,
570 U.S. 744  (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wallace v. Jaffree,*
472 U.S. 38 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Warth v. Seldin*
422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Washington v. Glucksberg*
521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Washington v. Harper*
494 U.S. 210 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*West Virginia v. EPA*,
597 U.S. --, 2022 WL 2347278 (2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wisconsin v. Yoder*
406 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statutes**

42 U.S.C. § 2000bb-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

42 U.S.C. § 2000bb-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## I.      INTRODUCTION

The Church of the Eagle and the Condor ("CEC") and its members (collectively, "Plaintiffs") brought this action to enjoin Defendants, who have no compelling justification, from substantially burdening the Plaintiffs' religious exercise. Defendants' actions are unlawful as applied to the Plaintiffs in that they violate the Religious Freedom Restoration Act ("RFRA") and the Constitution because they are a substantial burden on an essential mode of worship that is part of the Plaintiffs' religion.[1]

## II.     FACTS OF THE CASE

The CEC is a religion rooted in indigenous spirituality whose essential sacrament is ayahuasca. The CEC is a religious community dedicated to universal spirituality in fulfillment of the Prophecy of the Eagle and the Condor, which includes a belief in the spiritual unity of all people and the Creator, and respects diversity of religious beliefs. (Doc. 1 (Complaint), p. 2, ¶2).

In September 2020, the CEC had its sacramental tea, ayahuasca,[2] seized and destroyed by defendant CBP. The interdicted sacrament was sent to the CEC from Shipibo elders at *Nihue Rao Centro Espiritual* in Peru. Instead of the sacrament, Plaintiff Dr. Joseph Tafur received a note displaying the U.S. Dept. of Homeland Security seal and a threat of fines and penalties. (Doc. 1, p. 20, ¶50) (Tafur Decl. p. 10, ¶36; Exhibit 1).

There are currently approximately forty active members who belong to this multicultural congregation. Ayahuasca is the Plaintiffs' only sacrament and, despite the threat of civil and/or criminal sanctions, the Plaintiffs have chosen to follow the tenets of their religion rather than be coerced to act contrary to their religious beliefs. The Plaintiffs continue to import, possess, and use their sacrament and have no plans to stop doing so. (Doc. 1, p. 18, ¶44).

---

[1] The CEC has attempted to ascertain more specific information about the seizure and destruction of its sacrament by filing FOIA submissions with Defendants. DEA failed to respond to the FOIA request, and CBP failed to fully comply with the request. Defendants have not moved to dismiss Plaintiffs' FOIA claims.

[2] The CEC's sacrament ayahuasca is referred to in this Opposition to Defendants' Motion as "ayahuasca," "sacrament," or "tea."

III.    ARGUMENT

The only issues in this motion to dismiss are: 1) whether this court has jurisdiction over the subject matter;[3] and 2) whether Plaintiffs have pled a cause of action under RFRA and the First, Fifth and Ninth Amendments to the Constitution.

**A.  Plaintiffs Have Stated a Claim under RFRA**

To state a claim under RFRA, a plaintiff must show that its religious exercise has been substantially burdened, that the plaintiff has standing to assert a RFRA claim, and that the court can grant plaintiff relief. See RFRA, 42 U.S.C. § 2000bb–1.

**1. Plaintiffs Have Pled Injury-in-Fact Sufficient for Standing**

The CEC's and its members' essential religious practice has been substantially burdened by the government; as such, the rights the Plaintiffs assert are within the zone of interests to be protected by RFRA. (Doc. 1, p. 23, ¶61). See also *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchuk*, 567 U.S. 209, 224 (2012); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, (1970). Plaintiffs are aware of the history of past seizures of ayahuasca, prosecutions, and enforcement actions, as well as Defendants' collaboration with State and local law enforcement authorities. These actions have had a chilling effect on Plaintiffs' exercise of their statutory and Constitutional rights to practice their religion without fear of raid, arrest, prosecution, seizure, and forfeiture of their property. (Doc. 1, p. 23, ¶60) (Tafur Decl. p. 11, ¶38; Eriacho Decl. p. 7, ¶21; Wright Decl. p. 4, ¶9; Sullivan Decl. pp. 4-5, ¶11; Bellus Decl. p. 4, ¶11)

The interdiction, destruction and continued prohibition of CEC's sacrament (Doc. 1, p. 2, ¶3; p. 20, ¶¶50-51) and continued threat of interdiction and destruction are concrete, particularized, actual, not conjectural or hypothetical, injuries sufficient for standing under Article III. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  Plaintiffs have

---

[3] Under Rule 12(b)(1), Plaintiffs may submit evidence indicating that the court has subject matter jurisdiction. *Association of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

suffered injury-in-fact, both financially and spiritually, because of the loss of their sacrament and because of Defendants' continued denial of Plaintiffs' right to obtain, possess, and use it.

In addition to being deprived of their essential sacrament, Plaintiffs have suffered a concrete injury in fact by Defendants' admitted destruction of the tea, a conscious spiritual being in the belief of the Plaintiffs. Beyond the injury of physical destruction, Plaintiffs have also endured spiritual and emotional suffering, knowing that the spirit of ayahuasca, known as Grandmother Ayahuasca, has been destroyed in a sacrilegious manner. (Doc. 1, p. 21, ¶54). (Tafur Decl. p. 11, ¶39; Eriacho Decl. p. 6, ¶18; Wright Decl. p. 4, ¶9; Sullivan Decl. p. 5, ¶12; Bellus Decl. p. 4, ¶12)  Without their sacrament, Plaintiffs cannot practice their religion. (Tafur Decl. p. 11, ¶39; Eriacho Decl. p. 7, ¶21; Wright Decl. p. 3, ¶7; Sullivan Decl. p. 4-5, ¶11 Bellus Decl. p. 4, ¶10)  Under RFRA, the deprivation of Plaintiffs' sacrament is, *vel non*, sufficient to confer standing. *Warth v. Seldin*, 422 U.S. 490, 514 (1975).

### 2. Plaintiffs Have Pled That Defendants Caused Plaintiffs' Injury

The injury suffered by Plaintiffs is directly traceable to the Defendants' seizure, sacrilegious destruction, and continued prohibition of Plaintiffs' sacrament. (Doc. 1, p. 3, ¶3). See *Duke Power Company v. Carolina Study Group*, 438 U.S. 59 (1978).  The Damocles' sword of defendants' threat of fines and penalties and continued prohibition constitute the requisite causation of Plaintiffs' injury. (Doc. 23 (Defendants' Motion to Dismiss), p. 14, lns. 21-23);[4] see *Holder v. Humanitarian Law Project*, 562 U.S. 1, 15 (2010).

### 3. Plaintiffs Have Stated Facts That Would Entitle Them to Relief

Defendants' pre-enforcement arguments are irrelevant. (Doc. 23, p. 14, lns. 11-16). Plaintiffs have already faced an enforcement action, which resulted in the confiscation and the sacrilegious destruction of their sacrament. In its complaint, Plaintiffs have alleged CBP's clear threat of prosecution and warning that future shipments will be seized and destroyed. (Doc. 1;

---

[4] Defendants admit Plaintiffs' sacrament will continue to be seized and destroyed in violation of Plaintiffs' due process rights and in contravention of RFRA's statutory provision that a judicial proceeding is the appropriate venue to establish Plaintiffs' *prima facie* case. Defendants have not established any compelling interest to justify their actions.

p. 2, ¶3; p. 20, ¶51). The threat from CBP stated, "You will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near future." (Doc. 1, ¶50) (Tafur Decl., Exhibit 1)  There is no question that CBP's warning is an imminent threat of prosecution and that future shipments will be interdicted and destroyed. Defendants have admitted that there is a likelihood that Plaintiffs will again be wronged in a similar way. (Doc. 23, p. 17, lns. 19-20)[5].

As explained by the Ninth Circuit in *Oklevueha Native Am. Church of Haw., Inc. v. Holder* ("*Oklevueha I*"), 676 F.3d 829, 836 (9th Cir. 2012), Defendants' reference to *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000), is inapposite. (Doc. 23, p. 14, lns. 1-4; pp. 11-13 and 21-25). Unlike the injury suffered by Plaintiffs, the *Thomas* plaintiffs never received any warning nor suffered any injury. *Thomas* at 1140.

As to the first *Thomas* factor, Plaintiffs have articulated a "concrete plan" to violate the law in question. Plaintiffs are aware that their sacrament is proscribed by law, but they have partaken in their sacrament both before and after the government made a credible threat of enforcement against them. Plaintiffs are violating and intend to continue to violate applicable law, rather than compromise or terminate their sincerely held religious beliefs and practices. (Doc. 1, p. 6, ¶16). (Tafur Decl. p. 11, ¶37; Eriacho Decl. pp. 6-7, ¶19; Wright Decl. p. 4, ¶9; Sullivan Decl. pp. 4-5 ¶11 Bellus Decl. p. 4, ¶11). See *Oklevueha I* at 836.

The second *Thomas* factor, as to whether the government has communicated a specific warning or threat to initiate proceedings, is inapplicable. See *Oklevueha I* at 836-37 ("Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them…. In this case, that injury has already occurred, thereby eliminating any concerns that Plaintiffs' fear of enforcement is purely speculative").

The third *Thomas* factor, history of enforcement, is also inapplicable. See *Oklevueha I* at 837, ". . . we need not rely on enforcement of the statute against other groups in determining

---

[5] See also *Arizona Yage Assembly v. Garland,* Case 2:20-cv-02373-ROS Doc. 175, p. 10, lns. 22-24: "If CBP intercepts a non-permitted Schedule I controlled substance, CBP will seize the shipment, and it will be forfeited."

1  whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA has already

2  been enforced against Plaintiffs through the seizure of their marijuana."[6]

3  Finally, the relief sought by Plaintiffs will redress the injury. In the UDV case, the district

4  court entered a preliminary injunction prohibiting the government from enforcing the Controlled

5  Substances Act ("CSA") with respect to the UDV's importation and use of ayahuasca. *O Centro*

6  *Espirita Beneficiente União Do Vegetal v. Ashcroft* ("*O Centro I*"), 282 F. Supp. 2d 1236

7  (D.N.M. 2002). In the Santo Daime case, *Church of the Holy Light of the Queen* ("*CHLQ*") *v.*

8  *Mukasey*, 615 F. Supp. 1210 (D. Or. 2008), Judge Panner issued an order which stated:

9  "Defendants are enjoined from prohibiting plaintiffs' importation, storage, distribution and use

10  of Daime tea for plaintiffs' religious ceremonies." [Hartney Decl., Exhibit A, p. 1, Panner

11  Order]. That order was not appealed by the government. This Court can grant similar relief to

12  Plaintiffs without the need for Plaintiffs to endure DEA's significantly more restrictive

13  exemption process.

14  **B. Plaintiffs Have Pled Substantial Burden**

15  Contrary to DOJ's position, the issue is not whether petitioning the DEA for an exemption

16  from the CSA imposes a substantial burden but whether the confiscation, destruction and

17  prohibition of the Plaintiffs' sacrament and the continued threat of these are a substantial burden.

18  (Doc. 23, pg. 23, lns. 7-8). In the UDV case the Government conceded that applying the CSA

19  would substantially burden the sincere exercise of religion by the UDV. See *O Centro I* at 1252.

20  Similarly in the Santo Daime case, Judge Panner held: "It is obvious that prohibiting the use of

21  Daime tea would substantially burden the exercise of plaintiffs' religion." *CHLQ* at 1219.

22  As asserted in the Complaint and in the declarations attached to this Opposition to

23  Defendants' Motion, ayahuasca is an essential sacrament for the Plaintiffs without which they

24  cannot practice their religion. (Doc. 1, p. 4, ¶6; p. 6, ¶16; pp. 19-20, ¶48. (Tafur Decl. p. 9, ¶28,

25  p. 11 ¶39; Eriacho Decl. p. 6, ¶17, p. 7 ¶21; Wright Decl. p. 3, ¶7; Sullivan Decl. p. 4, ¶10;

26

27  _____

28  [6] Although not required, Plaintiffs submit a declaration identifying past ayahuasca prosecutions. (Hartney Decl.)

Bellus Decl. p. 4, ¶10) Without its sacrament, the CEC cannot perform essential services and the members are deprived of their religious freedom. (Tafur Decl. p. 11, ¶39).

To establish a *prima facie* claim under RFRA, a plaintiff must show that, "the activities the plaintiff claims are burdened by the government action must be an 'exercise of religion'" and "the government action must 'substantially burden' the plaintiff's exercise of religion." *Navajo Nation v. U.S. Forest Serv.,* 353 F.3d 1058, 1068 (9th Cir. 2008) (quoting 42 U.S.C. § 2000bb-1(a)). Where a plaintiff has established these elements, "the burden of persuasion shifts to the government to prove that the challenged government action is in furtherance of a 'compelling governmental interest' and is implemented by 'the least restrictive means.'" *Navajo Nation* at 1068 (quoting 42 U.S.C. § 2000bb-1(b)). See also *Oklevueha Native Am. Church of Haw., Inc. v. Lynch* ("*Oklevueha II*"), 828 F.3d 1012, 1015 (9th Cir. 2016), *cert. denied,* 2016 U.S. LEXIS 7200 (2016), quoting *Navajo Nation*, 535 F. 3d. at 1068.

On this motion to dismiss, the Court must view ayahuasca as central and indispensable to the Plaintiffs' religious practice.[7] By depriving Plaintiffs of their sacrament, the government is substantially burdening Plaintiffs. Compelling a party to forego a religious practice imposes a substantial burden on that party. See *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 140-41 (1987). If wine were added to Schedule I with no accommodation for religious use, and shipments interdicted, it would be absolutely clear that the free exercise of Catholicism and Judaism was being substantially burdened.

**C. The CEC Has Standing on its Own as Well as Associational Standing**

Due to the seizure and destruction of CEC's property, the CEC has sustained an economic loss.  Economic interests are property, and thus legally protected. *Barlow v. Collins*, 397 U.S. 159 (1970); see also *Maya v. Centex Corp.* 658 F. 3d 1060, 1069-1072 (9th Cir. 2011). Therefore, the CEC has standing on its own without the need for associational standing. See *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

---

[7] Under Rule 12(b)(6), the court must take the non-moving party's allegations as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although not required, the CEC also has associational standing. Plaintiff members have standing to sue on their own. (Tafur Decl.; Eriacho Decl.; Wright Decl.; Sullivan Decl.; Bellus Decl.). The CEC need not establish that a substantial number of its members have suffered injury. Injury to a single member will do. See *United Food and Commercial Workers v. Brown Grp.*, 517 U.S. 544, 555 (1996); *Consumer Federation of America v. FCC,* 348 F.3d 1009, 1011-12 (D.C. Cir. 2003). The interests the CEC seeks to protect are germane to the organization's purpose. (Tafur Decl. p. 11, ¶40) The third *Hunt* requirement is satisfied when the plaintiff association seeks injunctive or declaratory relief generally benefitting the association and its members. [Doc. 1, pp. 23-24, ¶61; pp. 29-30, ¶¶84-93]; *Pennell v. San Jose*, 485 U.S. 1, 7 (1988). This is true even when there is a need for some limited participation of association members in discovery or at trial. *Pharmaceutical Care Management v. Rowe,* 429 F.3d 294, 306 (1st Cir. 2005) ("[W]e noted that just because a claim may require proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit"). Entities have associational standing to seek injunctive relief designed to ensure that those of their members who are injured will benefit. *See, e.g., International Union, United Automobile Workers v. Brock*, 477 U.S. 274 (1986). As such, *Hunt* held that "individual participation" is not normally necessary when an association seeks prospective or injunctive relief for its members. See *Hunt*, at 343. Finally, religious associations have a special status under the First Amendment. *Larson v. Valente*, 456 U.S. 228 (1982) (churches are associations that have religious freedom, just as do individuals).

**D. The Constitutional Claims Are Borne out by the Gravamina of the Complaint**

Plaintiffs' claims that arise under the Constitution are free-standing, independent, and are not "all derivative" of claims under RFRA, as defendants maintain. (Doc. 23, p. 8, ln. 21; p. 18, ln. 10). The Constitutional claims *are* all derivative of the facts alleged in the Complaint. Statutes derive from the Constitution rather than the Constitution from statutes. *McCullough v. Maryland*, 17 U.S. (4 Wheat) 316, 421 (1819).

**1.** **Plaintiffs Have Alleged Facts Entitling Them to Relief under the Free Exercise Clause**

1    Plaintiffs' Complaint clearly alleges that the use of their sacrament, ayahuasca, is based

2    on the sincerely held religious beliefs of the members of the CEC. (Doc. 1 ¶¶ 16-9). The ban on

3    the religious use of ayahuasca is much more than an incidental burden on Plaintiffs' religious

4    practice. (Doc. 1, ¶2-¶6; ¶ 66).

5    Plaintiffs have alleged other fundamental rights that implicate the hybrid analysis

6    recognized in *Smith*, rendering inapplicable the criterion of "application of a neutral, generally

7    applicable law to religiously motivated action…. And it is easy to envision a case in which a

8    challenge on freedom of association grounds would likewise be reinforced by Free Exercise

9    Clause concerns." *Employment Division v. Smith*, 494 U.S. 872 at 882 (1990); (Doc. 1, ¶ 66)

10   Plaintiffs have alleged both infringement of the fundamental right of association, as well

11   as that of their fundamental right of expressive conduct. (Doc. 1, ¶ 66); see *Kennedy v.*

12   *Bremerton Sch. Dist.*, 597 U.S. -- (2022); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1915

13   (2021) (Alito, J., with Thomas & Gorsuch, concurring): "To members of the Native American

14   Church, the ingestion of peyote during a religious ceremony is a sacrament. When Smith and

15   Black participated in this sacrament, weren't they engaging in a form of expressive conduct?"

16   Because Defendants have prohibited Plaintiffs' free exercise of religion and other fundamental

17   rights, the hybrid exception in *Smith* and strict scrutiny apply, just as it did in *Wisconsin v. Yoder*,

18   406 U.S. 205 (1972). The fact that Plaintiffs continue to practice their faith does not obviate the

19   reality that Defendants have given Plaintiffs no assurance that they do not continue to be in legal

20   jeopardy.

21          **2.  Plaintiffs Have Alleged Facts that Entitle Them to Relief**

22                **under the Establishment Clause**

23   "The Establishment Clause is a co-guarantor, with the Free Exercise Clause, of religious

24   liberty." *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 256 (1963) (Brennan, J., concurring).

25   Defendants recognize that the Establishment Clause prohibits them from preferring one religion

26   over another. *McCreary County v. ACLU*, 545 U.S. 844, 875 (2005) ("[T]he principle of

27   neutrality has provided a good sense of direction: the government may not favor one religion

28   over another, or religion over irreligion, religious choice being the prerogative of individuals").

Violation of that principle is exactly what Defendants are doing. Defendants make the conclusory claim that the believers in *O Centro* and *CHLQ* "are differently situated," (Doc. 23, p. 19, ln. 18), but they fail to reconcile the relevant similarities that Plaintiffs allege. (Doc. 1, ¶¶ 34, 35, 36, 48, 49).

If Defendants permit those churches to use their sacrament but not Plaintiffs, it effectively establishes those religions as holding a preferred position over Plaintiffs'. This is even worse than the "status-based discrimination" between public and parochial schools that the Court found unconstitutional as violative of the Establishment Clause and subject to "the strictest scrutiny." *Espinoza v. Montana Dept. of Revenue*, 140 S. Ct. 2246, at 2257 (2020).

The fundamental criteria that apply to the Establishment Clause are no longer assumed to be those announced in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). "In many cases, [the Supreme] Court has either expressly declined to apply the test or simply ignored it." *American Legion v. American Humanist Association*, 139 S. Ct. 2067, 2080 (2019) (plurality op.). To the extent that *Lemon* is followed by lower courts, the prohibition of the use of their sacrament in their religious observances clearly has as "its principal or primary effect" "inhibit[ion]" of Plaintiffs' "religion." *Lemon*, 403 at 612.

The flip side of the coin of inhibition is that Defendants' policy "advances," *Lemon, ibid.*, those religions that it permits to use ayahuasca for their religious rituals, *ibid*. A construction of the *Lemon* test that has increasingly been used is the "endorsement" test: "[T]he prohibition against governmental endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is *favored* or *preferred*.'" *County of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989) (emphasis in original) (quoting *Wallace v. Jaffree*, 472 U.S. 38, 70 (1985)). "In short, when we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson v. Valente*, 456 U.S. 228, 246 (1982). (see also Doc. 1, ¶ 49).

The most overreaching argument that Defendants make is that "the Guidance process is an available means of seeking a religious exemption." (Doc. 23, p. 19, ln. 19). Defendants are

correct that "Plaintiffs ignore this Guidance, both factually and legally," and for good reason. See discussion, *infra*, of Opposition to Motion for Stay. There is no statutory basis for the proposition that the DEA has authority to assess religious uses of anything, much less "clear congressional authorization," *West Virginia v. EPA*, 597 U.S. --, 2022 WL 2347278 (2022), and it is untenable that this federal agency has the necessary expertise to pass on questions of religion. "This is no 'everyday exercise of federal power.'    It is instead a significant encroachment into the lives" of members of the CEC not plainly authorized by statute. *National Fed. of Indep. Bus. v. Department of Labor*, 142 S. Ct. 661, 665 (2022).

Moreover, the Defendants have repeatedly failed to show that they have compelling interests that would override Plaintiffs' fundamental rights. *O Centro Espirita Beneficiente União Do Vegetal v. Ashcroft ("O Centro II)* 546 U.S. 418, 428 (2006). See also *CHLQ v. Holder*, 443 F. Appx. 302 (9th Cir. 2011) ("the government failed to show that its interests justify prohibiting outright the Church's importation of Daime tea solely for use at Church ceremonies"). Plaintiffs have clearly stated claims under the First Amendment that, when proven, will entitle them to relief.

### 3.  Plaintiffs Have Alleged Facts That Entitle Them to Relief for
### Violations of Procedural Due Process under the Fifth Amendment

The Fifth Amendment provides, in relevant part, that "[n]o person shall be…deprived of life, liberty, or property without due process of law…."  Defendants fail to address the fact that Plaintiffs have alleged a deprivation of their fundamental *liberty* interests. (Doc. 1, ¶¶ 54, 66, 69, 73). When it comes to liberty interests, any source of law will suffice to trigger the procedural protection of the Due Process Clauses, including those that arise from the Constitution. *Washington v. Harper*, 494 U.S. 210 (1990). Plaintiffs were denied their fundamental liberty interest in receiving their sacrament and worshiping according to the tenets of their faith. (Doc. 1, ¶71). The Supreme Court has explicitly and repeatedly included within the rubric of liberty "the right of the individual…to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized…as essential to the orderly pursuit of happiness by free men." *Board. of Regents of State Colleges v. Roth,* 408 U.S. 564, 572 (1972).

Plaintiffs were also denied their constitutionally protected *property* interest in the tea itself, which was confiscated without notice or procedural protections of any kind. (Doc. 1, ¶¶ 52, 71). It has been sixteen years since ayahuasca has been legally arriving in the United States in the form of the sacramental tea. *O Centro II*, *supra*. Plaintiffs have alleged that, "Defendants knew or should have known that ayahuasca had previously been given special consideration under U.S. law, that it is a protected substance under the RFRA, that it is not a substance of abuse, and that it is used exclusively for religious purposes." (Doc. 1, ¶53). Such knowledge is confirmed by the missive received from Defendants, *id.* at ¶50, and Defendants' Motion admits as much. (Doc. 23, p. 20, ln. 24). Defendants' destruction of Plaintiffs' tea was sacrilegious. (Doc. 1, ¶ 54). By now, Defendants should know ayahuasca by its appearance and smell and, because of the rights that have been established in other cases, must know of its central importance to religion. (Hartney Decl.)

Property interests protected by the Due Process Clauses "are created and their dimensions are defined by existing rules or understandings…that secure benefits and that support claims of entitlement to those benefits," *Roth,* 408 U.S. at 577, and they include the right to receive mail and that which is shipped to persons within the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981) (receipt of mail packages, which included the property interest in a prisoner's hobby materials).

Such procedural requirements are governed by the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Applying this standard, the Defendants did not treat Plaintiffs fairly and with dignity, given the importance of the sacrament to them. The equivalent analogy is interdiction and destruction of the Holy Eucharist by those with knowledge that it is the sacrament of those of the Catholic faith.

Certainly, the Defendants could avoid this unsettling consequence simply by notifying the addressee of their intent. This would at least give Plaintiffs an opportunity to seek a temporary restraining order to obviate this sacrilegious action. Moreover, this would cost the Defendants little, either fiscally or administratively.  This "practice of *ex parte* seizure…creates an unacceptable risk of error." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993). At a minimum, Plaintiffs are entitled to notice and a meaningful opportunity to be heard (Doc. 1, ¶ 71) and, in any event, have clearly stated a claim of procedural due process under the Fifth Amendment.

### 4. Plaintiffs Have Alleged Facts that Entitle Them to Relief for Violations of Substantive Due Process under the Fifth Amendment

Justice Powell's plurality opinion in *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), reflects the approach to modern substantive due process analysis: this approach first determines whether the interest at stake ranks as "fundamental," and, secondly, applies heightened review ("strict scrutiny") to the interests that can be so identified. The Due Process Clause of the Fourteenth Amendment "forbids the government to infringe… 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (emphasis in original) (quoting *Reno v. Flores*, 507 U.S. 292 (1993)).

Defendants suggest (Doc. 23, p. 21, lns. 13-14) that "Plaintiffs' right to worship God according to the dictates of their own conscience," (Doc. 1, ¶ 73) does not exist as a right of substantive due process. The Supreme Court, however, has indicated repeatedly that substantive due process includes the rights Plaintiffs allege have been infringed. (Doc. 1, ¶¶ 30, 39, 40, 41, 73). "Without doubt, it denotes …the right of the individual… to acquire useful knowledge, …to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), cited with approval, *Obergefell v. Hodges*, 576 U.S. 644, 663, 665 (2015) ("In addition these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal

identity and beliefs"). Plaintiffs have clearly stated a substantive due process claim upon which relief should be granted under the Fifth, not the Fourteenth, Amendment, as Defendants assert (Doc. 23, p.21, ln. 15).

### 5. **Plaintiffs Have Alleged Facts that Entitle Them to Relief for Violations of Equal Protection under the Fifth Amendment**

Plaintiffs have invoked the equal protection guarantee of the Due Process Clause of the Fifth Amendment. Defendants fail to recognize that there are two dimensions to equal protection analysis -- interests and classifications. Both are sufficiently supported by Plaintiffs. (Doc. 1, ¶ 75). Plaintiffs have a fundamental interest in their "sincere, sacramental use of the Church's sacred tea" that is protected as a fundamental right under the Due Process Clause of the Fifth Amendment and of which the United States is depriving them. *Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953). "By doing so, it violates basic due process and equal protection principles applicable to the Federal Government." *United States v. Windsor*, 570 U.S. 744, 769 (2013). "Unquestionably, the free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974). As such, Defendants must demonstrate a compelling interest to justify its deprivation.

That the Defendants are depriving Plaintiffs of this fundamental right, but they are not denying other similarly situated believers that right also implicates classification analysis. *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4 (1938) (establishing the foundation for equal protection analysis, stating that "there may be a narrower scope for operation of the presumption of constitutionality" when the governmental action lies "within a specific prohibition of the Constitution, such as those of the first ten amendments," and recognizing "religious minorities" as "discrete and insular," thereby constituting "a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry)"; *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (recognizing "inherently suspect classifications such as race, religion, or alienage") cf. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 96-98 (1972).

Although the fundamental interest prong of equal protection analysis is sufficient to invoke strict scrutiny, the classification prong is properly invoked by Plaintiffs as well.  As in the affirmative action cases, the suspect classification itself obviates the requirement that intent to discriminate against the protected class be demonstrated. The white plaintiffs were not required to prove that they were discriminated against because they are white. Defendants fail to appreciate this distinction (Doc. 23, pp. 21-22, lns. 23-3). The important fact is that the Defendants have accorded rights to members of UDV and CHLQ based on religion, and they have relegated Plaintiffs to outsider status. The constitutional deficiency exists even if that change in policy was well-intentioned. *City of Richmond v. Croson*, 488 U.S. 469, 495 (1989) (plurality opinion); id. at 520 ("strict scrutiny must be applied to all governmental classification by race, whether or not its asserted purpose is 'remedial' or 'benign'"; *accord*, *Adarand Constructors v. Peña*, 515 U.S. 200 (1995) (Fifth Amendment equal protection).

Defendants are skating on even thinner ice in claiming that "the underlying right depends on the *individualized* assessment of the religious beliefs of members of a particular group." (Doc. 23, pp. 22, lns. 9-10) (emphasis in original). "They may not be put to the proof of their religious doctrines or beliefs." *United States v. Ballard*, 322 U.S. 78, 86-87 (1944).  Plaintiffs have alleged that they hold sincere religious beliefs. (Doc. 1, ¶¶ 16-19, 75). Their Fifth Amendment claims, whether analyzed under the interests prong or the classification prong of equal protection, are valid and merit the full and independent consideration of the court.

### 6.  Plaintiffs Have Alleged Cognizable Claims under the Ninth Amendment

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." In *Marbury v. Madison*, Chief Justice Marshall observed that "it cannot be presumed that any clause in the constitution is intended to be without effect." 5 U.S. 137, 174 (1803).

Consistent with the Ninth Amendment, Plaintiffs allege that they have rights that antecede the adoption of the Constitution, which they have never surrendered and retain to this day. Their religious traditions and practices have been passed down through generations of ancestors by the Elders of the Indigenous peoples, and they are now practiced by Plaintiffs. (Doc. 1, ¶ 77). The

Ninth Amendment is a recognition that the Constitution has not enumerated all the rights that it protects. It is a simple counterpoint to the legal maxim, *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another").

The fact is that many unenumerated rights have been upheld by the courts, *e.g.*, the right of association, *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) (an "individual's freedom…to worship…could not be vigorously protected from interference by the state unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." Some unenumerated rights have found support in the Ninth Amendment. *Buckley v. Valeo*, 424 U.S. 1, 59-60 n.67 (1976) (political freedom in the context of elections); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (rights of unmarried fathers, citing Justice Goldberg's concurring opinion, joined by Warren and Brennan, in *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-80 & n.15 (1980) (plurality op.); see also *id*. at 603 (right of the public to attend trials).

For purposes of this case, it is instructive to consider rights that were recognized prior to the adoption of the Constitution.[8] Suffice it to say, there are constitutional rights that are retained by the people but are not specified in the Bill of Rights. The ritual ceremonies that were central religious practices at the time of the Founding are retained by the people. Plaintiffs clearly state a claim under the Ninth Amendment, a provision that continues to be of great importance to their rights.

### E. There Is No Legal Basis for a Stay

Despite the fact that "federal courts have a 'virtually unflagging obligation . . .to exercise the jurisdiction given them,'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)), Defendants ask this Court to stay the proceedings while the Plaintiffs apply for an exemption from the CSA.

---

[8] For example, the Massachusetts Constitution of 1780 stated that "no subordination of any one sect or denomination to another shall ever be established by law." Pt. 1, art. III. In ratifying the U.S. Constitution, New York proposed that "no Religious Sect or Society ought to be favored or established by law in preference to others." Ratification of the Constitution by the State of New York (July 26, 1788).

1   Defendants thereby imply that DEA has primary jurisdiction to make religious determinations.

2   Defendants cite no authority for this.

3       In *U.S. v. Culliton*, the Ninth Circuit held: "Whether the doctrine of primary jurisdiction

4   applies in any particular situation depends on 'the extent to which Congress, in enacting a

5   regulatory scheme, intends an administrative body to have the first word on issues arising in

6   juridical proceedings.'" *Culliton* 328 F.3d 1074, 1082 (9th Cir. 2003) (quoting *U.S. v. Gen.*

7   *Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Defendants state that the Guidance

8   "process allows DEA to consider a petitioner's request based on their sincere religious belief .

9   . ." (Doc. 23, p. 10, lns. 1-2). There is *nothing* in the CSA authorizing DEA to regulate religion.[9]

10  RFRA makes it clear that it is the courts that make that decision. See 42 U.S.C. § 2000bb–1 (c).

11      Defendants' request for a stay clearly contradicts RFRA's delegation to the courts, not

12  to the DEA, the question of the assessment of religious exemptions from federal law. See also

13  42 U.S.C. § 2000bb-3.[10] As noted in Judge Orrick's decision in *Arizona Yage Assembly v. Barr*,

14  2020 U.S. Dist. LEXIS 172836, *24, "That decision [*Oklevueha I*] — which was handed down

15  after the 2009 Guidance was in effect — noted that the Supreme Court 'has reviewed a RFRA-

16  based challenge to the CSA without requiring that the plaintiffs first seek a religious use

17  exemption from the DEA.' *id.*"

18      Other courts have also held that there is no requirement that Plaintiffs apply for a religious

19  exemption from the CSA. See *CHLQ v. Mukasey*, 2008 U.S. Dist. LEXIS 102990 *8 (D. OR);

20  see also *United States v. Antoine*, 318 F.3d 919, 920 (9th Cir. 2003) (RFRA "suspends generally

21  applicable federal laws that 'substantially burden a person's exercise of religion' unless the laws

22  are 'the least restrictive means of furthering [a] compelling governmental interest.'" (alteration

23  in original) (quoting 42 USC 2000bb-(a)-(b) and *Guam v. Guerrero*, 290 F.3d 1210, 1220-21 (9th

24  Cir. 2002); Oklevueha *II* at 1015 (9th Cir. 2016) quoting *Antoine* 318 F.3d at 920. Nor is

25

_____

26      [9]If every governmental agency decided that it was empowered to regulate religion or any
     other fundamental right without statutory authorization, chaos would inevitably ensue.

27

28      [10] "This chapter applies to all Federal and State law, and the implementation of that law,
     whether statutory or otherwise, and whether adopted before or after November 16, 1993."

1    petitioning the DEA for an exemption to the CSA the least restrictive means,[11]which is an

2    attempt to bypass Plaintiffs' *prima facie* case and Defendants' obligation to establish a

3    compelling interest.

4    **IV.    CONCLUSION**

5        Plaintiffs, a religious organization and its members, have adequately pled that they have

6    standing under Article III of the Constitution. Plaintiffs have adequately pled that the

7    confiscation, sacrilegious destruction, and continued prohibition of its sacrament is a substantial

8    burden on their exercise of religion. Therefore, Plaintiffs have adequately stated a cause of action

9    under RFRA and under the Constitution. Plaintiffs respectfully pray that this Court deny

10   Defendants' Motion in its entirety.

11

12   Dated:   December 14, 2022              Respectfully submitted,

13

                                            By: *s/ Jack Silver*
14                                          Jack Silver, *pro hac vice*
                                            Cal. Bar No. 160575
15                                          Law Office of Jack Silver
                                            708 Gravenstein Hwy No. # 407
16                                          Sebastopol, CA 95472-2808
                                            JsilverEnvironmental@gmail.com
17                                          Tel: (707) 528-8175
                                            Fax: (707) 829-0934
18
                                            By: *s/ Gilbert Paul Carrasco*
19                                          Gilbert Paul Carrasco, *pro hac vice*
                                            Cal. Bar No. 90838
20                                          D.C. Bar No. 334722
                                            Professor of Law *Emeritus*
21                                          Willamette University College of Law c/o
                                            900 Pacific Coast Highway, Suite # 305
22                                          Huntington Beach, CA 92648
                                            carrasco@willamette.edu
23                                          Tel: (714) 698-8142
                                            Mobile: (503) 990-4879
24

25

26

27   [11] The Native American Church, the UDV, and the Santo Daime were not required to
     follow DOJ's exemption process.  Furthermore, forcing the CEC to apply for an exemption
     while two similarly situated churches were not so required violates the Plaintiffs' right to equal
28   protection, as discussed, *supra*.

By: *s/ Sean T. McAllister*
Sean T. McAllister, Esq., *pro hac vice*
Colo. Bar No. 31350
Cal. Bar No. 310962
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
sean@mcallisterlawoffice.com
Tel: 720-448-6235

By: *s/ Martha J .Hartney*
Martha J. Hartney, Esq., *pro hac vice*
Colo. Bar No. 42017
Hartney Law, LLC
4450 Arapahoe Avenue, Suite 100
Boulder, CO 80303
martha@hartneylaw.com
Tel: (303) 747-3909
Fax: (303) 835-7199

By: *s/ Ismail Lourido Ali*
Ismail Lourido Ali, Esq. *pro hac vice*
Cal. Bar No. 312660
1530 Campus Drive
Berkeley, CA 94708
lourido.ali@gmail.com
Tel: (559) 801-7317

18

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2022, I electronically submitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF Registrant:

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*s/ Jack Silver*
Jack Silver
LAW OFFICE OF JACK SILVER

19