BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor *et al.*, | Case No. 22-cv-01004-SRB |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [Doc. 23]** |
| vs. | |
| Merrick Garland *et al.*, | |
| Defendants. | |

1

## <u>TABLE OF CONTENTS</u>

2

I.   LEGAL ARGUMENT ............................................................................. 1

3

A.   Plaintiffs' Opposition Cannot Save the RFRA Claim (Count 1)...................... 1

4

1.   Plaintiffs' Have Not Met Their Burden To Show Standing................. 1

5

6

a.   Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution. ........................................................................... 2

7

b.   Plaintiffs Fail To Demonstrate Associational Standing. ............ 4

8

9

2.   Plaintiffs' Opposition Confirms They Failed To State a RFRA Claim. ................................................................................................ 6

10

11

B.   Plaintiffs' Opposition Confirms Their Constitutional Claims Lack Factual Specificity, Have No Basis in Law, and Should Be Dismissed............ 7

12

1.   First Amendment—Free Exercise (Count 2) ...................................... 7

13

2.   First Amendment—Establishment of Religion (Count 3)................... 8

14

3.   Fifth Amendment—Procedural Due Process (Count 4) ...................... 9

15

4.   Fifth Amendment—Substantive Due Process (Count 5) ................... 10

16

5.   Fifth Amendment—Equal Protection (Count 6)................................ 10

17

6.   Ninth Amendment—Unenumerated Rights (Count 7) ...................... 11

18

C.   Plaintiffs Should Seek an Exemption from DEA in the First Instance.......... 11

19

20

21

22

23

24

25

26

27

28

1
2

# **TABLE OF AUTHORITIES**

**Cases**

*Albright v. Oliver,*
    510 U.S. 266 (1994) ..................................................................................................... 10

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
    733 F.3d 939 (9th Cir. 2013) ......................................................................................... 5

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972) ....................................................................................................... 9

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
    561 U.S. 661 (2010) ....................................................................................................... 8

*Church of the Holy Light of the Queen v. Mukasey, (CHLQ)*
    615 F. Supp. 2d 1210 (D. Or. 2009) ............................................................................. 8

*City of L.A. v. Lyons,*
    461 U.S. 95 (1983) ......................................................................................................... 3

*Daniels v. Williams,*
    474 U.S. 327 (1986) ..................................................................................................... 10

*Dorfmont v. Brown,*
    913 F.2d 1399 (9th Cir. 1990) ....................................................................................... 9

*Emp. Div. v. Smith,*
    494 U.S. 872 (1990) ....................................................................................................... 8

*Fleming v. Charles Schwab Corp.,*
    878 F.3d 1146 (9th Cir. 2017) ....................................................................................... 2

*Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal (O Centro),*
    546 U.S. 418 (2006) ...............................................................................................*passim*

*Graven v. Arizona,*
    2020 WL 134861 (D. Ariz. Jan. 13, 2020) .................................................................. 2

*Gutierrez v. Mun. Court of the Se. Jud. Dist.,*
    838 F.2d 1031 (9th Cir. 1988) ..................................................................................... 10

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010) ......................................................................................................... 2

*Hunt v. Wash. State Apple Adver. Comm'n,*
     432 U.S. 333 (1977)..................................................................................... 5

*Kennedy v. Bremerton Sch. Dist.,*
     142 S. Ct. 2407 (2022) ............................................................................... 9

*Leite v. Crane,*
     749 F.3d 1117 (9th Cir. 2014) ................................................................... 2

*Lemon v. Kurtzman,*
     403 U.S. 602 (1971)..................................................................................... 9

*Lujan v. Defs. of Wildlife,*
     504 U.S. 555 (1992)..................................................................................... 2

*Navajo Nation v. U.S. Forest Serv.,*
     535 F.3d 1058 (9th Cir. 2008) ................................................................... 6

*NewGen, LLC v. Safe Cig, LLC,*
     840 F.3d 606 (9th Cir. 2016) ..................................................................... 2

*Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder,*
     719 F. Supp. 2d 1217 (D. Haw. 2010)..................................................... 3

*Oklevueha Native American Church of Hawaii, Inc. v. Holder,*
     676 F.3d 829 (9th Cir. 2012) ................................................................3, 4

*Parrat v. Taylor,*
     451 U.S. 527 (1981)................................................................................9, 10

*San Diego Cnty. Gun Rts. Comm. v. Reno,*
     98 F.3d 1121 (9th Cir. 1996) ................................................................... 11

*Short v. Berger,*
     2022 WL 1203876 (D. Ariz. Apr. 22, 2022) .......................................... 6

*Simon v. Henning,*
     2014 WL 12853094 (C.D. Cal. Jan. 7, 2014).......................................... 10

*Thomas v. Anchorage Equal Rts. Comm'n,*
     220 F.3d 1134 (9th Cir. 2000) ........................................................3, 4, 5, 7

*United States v. Christie,*
     825 F.3d 1048 (9th Cir. 2016) ................................................................... 6

iv

*United States v. Seljan,*
    547 F.3d 993 (9th Cir. 2008) .......................................................................... 3, 7

*Williams v. California,*
    764 F.3d 1002 (9th Cir. 2014) ............................................................................ 7

**Statutes**

19 U.S.C. § 1595a(c)(1)(B) ......................................................................................... 9

21 U.S.C. § 801 ............................................................................................................ 1

21 U.S.C. § 841 ............................................................................................................ 3

42 U.S.C. § 2000bb-1 ......................................................................................... 1, 5, 11

**Regulations**

19 C.F.R. § 145.59 ..................................................................................................... 7, 9

21 C.F.R. § 1312.11 ...................................................................................................... 9

21 C.F.R. § 1312.15 ...................................................................................................... 9

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 2

**Other Authorities**

U.S. Dep't of Justice, Guidance Regarding Petitions for Religious Exemption from the
    Controlled Substances Act Pursuant to the Religious Freedom Restoration Act,
    (Nov. 20, 2020), https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-
    007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 14, 2022)
    Guidance) ................................................................................................................ 1

Plaintiffs' opposition brief remarkably both illuminates and amplifies the Complaint's deficiencies. Plaintiffs do not seriously grapple with Defendants' arguments, nor do they attempt to distinguish the cases Defendants cite. Casting aside inconvenient points and legal authorities, Plaintiffs resort to restating the same conclusory assertions offered in the Complaint. And Plaintiffs' citations to well-known Supreme Court cases for general and ultimately inapposite points of law offer no help to this Court in understanding the legal issues in the case. Plaintiffs, in the end, have failed to state a claim under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1(b), or the Constitution.

At bottom, Plaintiffs' claims all derive from the unavoidable premise that their alleged religious practice involves a controlled substance under the Controlled Substances Act (CSA), 21 U.S.C. § 801: the hallucinogen dimethyltryptamine (DMT). Plaintiffs ask to be freed from the "Damocles' sword" of their admitted CSA violations, Pls' Mem. (Doc. 24) 3, but they have done nothing to avail themselves of means to alleviate that alleged burden—other than file a Complaint in federal court. They seek, for example, to import ayahuasca, which contains DMT, without risk of seizure but have never sought an import permit. Indeed, they have never sought any religious exemption through the Guidance process the Drug Enforcement Administration (DEA) established for exactly this purpose.[1] Plaintiffs' grievances could be addressed—or at least exhausted and then properly asserted in court—if they applied for an exemption. But Plaintiffs concede, and in fact flaunt: "Defendants are correct that 'Plaintiffs ignore this Guidance, both factually and legally.'" Pls.' Mem. 9-10. As a matter of common sense, it is difficult to understand how Defendants could be expected to accommodate a religious group or practice when that accommodation was never requested in the first place.

## I.   LEGAL ARGUMENT

### A.   Plaintiffs' Opposition Cannot Save the RFRA Claim (Count 1).

#### 1.   Plaintiffs' Have Not Met Their Burden To Show Standing.

---

[1] U.S. Dep't of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020)   https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited Nov. 15, 2022) (Guidance).

1

Defendants moved to dismiss Plaintiffs' RFRA claim under Rule 12(b)(1) because Plaintiffs have not properly pleaded facts to support subject-matter jurisdiction. Defs.' Mem. (Doc. 23) 5-6. Specifically, Defendants challenged Plaintiffs' standing without disputing the facts alleged in the Complaint. *Id.* at 6-9. "In resolving such a facial attack, the Court accepts the well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Graven v. Arizona*, 2020 WL 134861, at *1 (D. Ariz. Jan. 13, 2020).

But Plaintiffs have now inappropriately filed with their opposition six declarations, five of which are from individual Plaintiffs. Confronting a facial challenge to jurisdiction, a plaintiff cannot cure deficiencies in the complaint through evidence outside the pleadings such as affidavits.[2] In this case, if Plaintiffs wished to adduce additional allegations to support subject-matter jurisdiction, the proper course would have been to amend their Complaint. *See, e.g.*, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 615 (9th Cir. 2016) ("[A] facial attack in this posture merits only leave to amend the allegations, not wholesale revival of a defaulted defense and an obligation to supplement the record."). Indeed, in the parties' meet and confer regarding this motion, Defendants advised Plaintiffs of their challenge to the court's subject-matter jurisdiction. Nevertheless, Plaintiffs declined the opportunity to amend their Complaint. They should be denied the work-around they attempt to arrogate to themselves here, and the Court should not consider the affidavits filed with Plaintiffs' opposition.

            a.      *Plaintiffs Fail To Allege Any Genuine Threat of Imminent Prosecution.*

Plaintiffs have failed to sufficiently plead standing to support their RFRA claim. Plaintiffs must show a concrete and particularized "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And, where, as here, there is a claim for injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 n.1 (9th Cir. 2017). Instead, there must be a "sufficient likelihood that [the plaintiff] will

---

[2] Had Defendants asserted a factual attack, *i.e.* "contest[ed] the truth of the . . . factual allegations," by, for example "introducing evidence outside the pleadings," then Plaintiffs could have supported their "jurisdictional allegations with 'competent proof.'" *Leite v. Crane*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)).

again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). And if the alleged feared future harm is prosecution, there must be a "genuine threat of imminent prosecution"; "neither the mere existence of a proscriptive statute nor a generalized threat" is sufficient. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Citing *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 836 (9th Cir. 2012), Plaintiffs argue that "Defendants' reference to *Thomas* . . . is inapposite" because "[u]nlike the injury suffered by Plaintiffs, the *Thomas* plaintiffs never received any warning nor suffered any injury." Pls.' Mem. 4. Pointing to the alleged seizure and accompanying note from more than two years ago, they contend that Defendants have in fact taken recent enforcement action against them. However, this alleged seizure was carried out by U.S. Customs and Border Protection (CBP) exercising its broad authority (uncontested by Plaintiffs) to inspect all packages entering the United States without individualized suspicion, not DEA. *See United States v. Seljan*, 547 F.3d 993, 999 (9th Cir. 2008). And that alleged injury is the result of Plaintiffs' refusal to obtain registration and import permits, without which imported controlled substances are subject to seizure by CBP as a matter of course. That crucial fact distinguishes this case from the enforcement action in *Oklevueha*.

In *Oklevueha*, the Plaintiffs sued DEA following DEA's seizure of a parcel of cannabis cultivated and shipped domestically. *Oklevueha Native Am. Church of Hawai'i, Inc. v. Holder*, 719 F. Supp. 2d 1217, 1219 (D. Haw. 2010). This Circuit concluded that "Plaintiffs need not allege a threat of future prosecution because [21 U.S.C. § 841, the statute generally barring handling of controlled substances] has already been enforced against them" by DEA. *Oklevueha*, 676 F.3d at 836. More specifically, when DEA "seized Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence." *Id.* In other words, DEA had already undertaken an enforcement action against the *Oklevueha* plaintiff premised on that individual's attempt to possess a controlled substance. Thus, the court said that it "need not rely on enforcement of the statute against other groups in determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA

3

has already been enforced against Plaintiffs through the seizure of their marijuana." *Id.* at 837.

By contrast, the only provision that allegedly has been enforced against Plaintiffs is that they impermissibly imported a controlled substance into the United States. Plaintiffs' assertion, then, that *Oklevueha* somehow renders *Thomas* inapplicable is incorrect. Pls.' Mem. 3-5. CBP's alleged seizure cannot form the basis for a broad pre-enforcement injunction against DEA and the CSA *in toto* because DEA has not "enforced" against Plaintiffs any proscription on handling or use of a controlled substance. *Thomas*, 220 F.3d at 1141. Nor can Plaintiffs claim the alleged seizure demonstrates Defendants are investigating or targeting them; border seizures of controlled substances lacking the necessary import permit (which Plaintiffs have never sought to obtain) occur as a matter of course. As in (and under the guidance of) *Thomas*, "any threat of enforcement or prosecution . . . though theoretically possible—is not reasonable or imminent." *Id.*[3]

        b.    *Plaintiffs Fail To Demonstrate Associational Standing.*

Plaintiffs' opposition does not save the Church of the Eagle and the Condor's (CEC) attempt to assert associational standing to sue on its members' behalf. An association may sue on its members' behalf when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and

---

[3] The Hartney declaration seeks to identify prior ayahuasca prosecutions. Hartney Decl. ¶ 2. But of the nine matters mentioned, three are *state* prosecutions—not federal—and thus have no bearing on whether there is an imminent threat of prosecution by federal defendants. *Id.* ¶¶ 10, 12-13. Further, three of the other matters predated the Guidance, *id.* ¶¶ 5-7, the Government affirmatively dropped another, *id.* ¶ 8; Order, *United States v. Agreda-Chindoy*, 4:10-mj-01020, Dkt. 16 (S.D. Tex. 2010), and the third is the note Plaintiff Tafur alleges he received, *id.* ¶ 11. The only incident involving a federal DMT prosecution is *United States v. Vargas*, 8:18-cr-00296 (M.D. Fla. 2018), *id.* ¶ 9, in which a defendant pleaded guilty to one count of possession of DMT in violation of the CSA, resulting in twelve months of probation, *id.* Ex. A at 8. There is no suggestion that this case stemmed from any investigation related to DMT or religious use of ayahuasca. To the contrary, it stemmed from CBP's discovery of 4 liters of an unknown liquid in shampoo bottles in the defendant's luggage at the airport—defendant falsely stated it was hair tonic/shampoo, and the initial testing that led to arrest indicated the presence of other controlled substances, which were only later determined to be DMT. Plea Agreement, *Vargas*, Dkt. 17, at 10-11. In any event, this single example since issuance of the Guidance in 2009 cannot constitute a credible threat of imminent prosecution against the Plaintiffs. *See Thomas*, 220 F.3d at 1141; *see also Oklevueha*, 676 F.3d at 836-37 (where DEA had already undertaken an enforcement action against *the same Plaintiff*, the court "need not rely on enforcement of the statute against other groups").

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

As to the first factor, as explained above, the Complaint does not sufficiently allege that any member faces the requisite "genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139. Plaintiffs' opposition states in conclusory fashion that its "Plaintiff members have standing to sue on their own," citing the entirety of the five Plaintiff declarations without any discussion. Putting aside whether those declarations are properly considered in the case, those declarations nevertheless do not show that "at least one of [those] members has suffered sufficient injury to satisfy the case or controversy requirement of Article III." *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 949 (9th Cir. 2013).

As to the third factor, Plaintiffs misunderstand *Hunt*. Plaintiffs claim that "*Hunt* held that 'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members." Pls.' Mem. 7 (quoting *Hunt*, 432 U.S. at 343). But Plaintiffs' characterization is neither *Hunt*'s holding, nor its explanation of the third factor. *Hunt* simply noted that in all cases in which the Supreme Court had "expressly recognized standing in associations to represent their members, the relief sought ha[d] been of this kind [(prospective or injunctive relief)]." 432 U.S. at 343. That description does not render a complaint's request for injunctive relief automatic satisfaction of the third factor.

Rather, the third factor is that "neither *the claim asserted* nor *the relief requested* requires the participation of individual members in the lawsuit." *Id.* (emphases added). Plaintiffs ignore "the claim." Pls.' Mem. 7 (failing to discuss RFRA claim). A RFRA claim requires the court to identify the contours of "*a person's*" sincere religious belief to determine whether it is substantially burdened and, if so, to decide whether the "application of the burden *to the person*" is justified. 42 U.S.C. § 2000bb-1(a)-(b) (emphases added); *see also Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal* (*O Centro*), 546 U.S. 418, 430-31 (2006) (explaining that RFRA contemplates "an inquiry more focused than [a] categorical approach" because it requires "application of the challenged law 'to the person'—the particular claimant whose sincere

5

exercise of religion is being substantially burdened"); *Short v. Berger*, 2022 WL 1203876, at \*12 (D. Ariz. Apr. 22, 2022) (explaining that a RFRA "analysis requires the government to consider its actions as applied 'to the person' who is affected"). While the Complaint identifies church members—and leaving aside the propriety of the affidavits attached to Plaintiffs' opposition, *supra* p. 2—Plaintiffs offer only generalized allegations that CEC's members are all "substantial[ly] burden[ed]" by the CSA. *See, e.g.*, Compl. ¶ 64.

> **2.      Plaintiffs' Opposition Confirms They Failed To State a RFRA Claim.**

To state a claim under RFRA, Plaintiffs must make a threshold showing that "application of the [CSA] would (1) substantially burden (2) a sincere (3) religious exercise." *O Centro*, 546 U.S. at 428. Plaintiffs' opposition confirms that their allegations fall short.

Assuming CEC is a "religion" and "religious community" as alleged, Compl. ¶ 16, Plaintiffs' brief is silent on whether CEC's alleged members share the same religious beliefs about ayahuasca and whether all practitioners use ayahuasca with a religious mindset. *O Centro*, 546 U.S. at 428 (requiring "application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened"); *see United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016). Again, Plaintiffs cannot "point to other groups who have won accommodations. . . and say 'we'll have what they're having.'" *Id.* at 1061.

Plaintiffs argue in general terms that "[b]y depriving [them] of their sacrament, the government is substantially burdening [them]" and that "[c]ompelling a party to forego a religious practice imposes a substantial burden." Pls.' Mem. 6. But Plaintiffs' Complaint lacks allegations buttressing these generalized statements. Plaintiffs do not show how they have been or would be "coerced to act *contrary* to their religious beliefs." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc) (emphasis added).

*First*, as Defendants have noted, a general risk of seizure—or even an actual seizure—of a Schedule I controlled substance is not itself sufficient proof of a substantial burden where Plaintiffs continue their practice without seeking a DEA registration to abate the risk of seizure. *See* Defs.' Mem. 10. Moreover, Plaintiffs repeatedly admit they have continued and

plan to continue importing and using ayahuasca. *E.g.*, Pls.' Mem. 1, 8; Compl. ¶¶ 16-19, 44, 77. **Second**, Plaintiffs have not pleaded a genuine threat of actual prosecution. Plaintiffs' threadbare allegation stems from the "small . . . note" received after CBP seized the package under 19 C.F.R. § 145.59. Compl. ¶¶ 50-51. The note merely indicated that CBP's Office of Fines, Penalties, and Forfeiture, which handles CBP's administrative processing of seizures, would send "correspondence." *Id.* Neither the seizure nor the note establish any genuine threat of imminent prosecution. As stated above, CBP has broad authority to inspect all packages entering the country without individualized suspicion, *Seljan*, 547 F.3d at 999, and Plaintiffs do not claim this sole seizure, which occurred more than two years ago, Compl. ¶ 50, stemmed from any investigation aimed at them. The note contains a generalized reference to "the mere existence of a proscriptive statute." *Thomas*, 220 F.3d at 1139. And Plaintiffs admit they received no further communication. Compl. ¶ 52. Plaintiffs' attempt to cure those deficiencies with declarations should be disregarded—though the declarations' substance does not support a reasonable fear of prosecution in any event. *See supra* Section I.A.1.a. **Third,** while Plaintiffs' grievances stem from the fact that they lack a DEA registration, they tersely claim that this is not "the issue." Pls.' Mem. 5. But if Plaintiffs successfully obtained a registration through the RFRA exemption process, any alleged burden would disappear.

> **B.    Plaintiffs' Opposition Confirms Their Constitutional Claims Lack Factual Specificity, Have No Basis in Law, and Should Be Dismissed.**
>
> **1.    First Amendment—Free Exercise (Count 2)**

Plaintiffs' summary Free Exercise discussion is difficult to parse but clearly fails to address Defendants' arguments: whether Plaintiffs contest that the CSA is a neutral law of general applicability, and whether their religious practice has been sufficiently burdened.

As Defendants explained, Defs.' Mem. 11-12, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)," *Williams v. California*, 764 F.3d 1002, 1011-12 (9th Cir. 2014). To that end, that right "does not inhibit enforcement of otherwise valid regulations of general

7

application that incidentally burden religious conduct." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).

Plaintiffs do not appear to contest that the CSA is a neutral law of general applicability. Compl. ¶¶ 67-68; Pls.' Mem. 7-8. They claim their allegations have "render[ed] inapplicable the criterion of 'application of a neutral, generally applicable law to religiously motivated conduct,'" Pls.' Mem. 8 (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 882 (1990)), but offer no explanation or analysis. Similarly, Plaintiffs state in conclusory fashion that "[t]he ban on the religious use of ayahuasca is much more than an incidental burden" but offer no further explanation. Pls.' Mem. 8. As discussed, *see supra* Section I.A.2; Defs.' Mem. 9-11, Plaintiffs have not sufficiently alleged that a governmental action has substantially burdened their religious practice. As Plaintiffs admit, they continue to practice their religion and participate in ayahuasca ceremonies. Compl. ¶¶ 16-19, 77; Pls.' Mem. 1, 8. And while Plaintiffs note they continue to practice even though "Defendants have given Plaintiffs no assurance that they do not continue to be in legal jeopardy," Pls.' Mem. 8, Plaintiffs have never requested such assurance from Defendants, including by applying for an exemption under the Guidance.

### 2. First Amendment—Establishment of Religion (Count 3)

Plaintiffs' opposition doubles down on its flawed argument that the Government's accommodation (the result of litigation prior to issuance of DEA's Guidance) of two other religious groups violates the Establishment Clause. Pls.' Mem. 8-10; *see O Centro*, 546 U.S. at 418; *Church of the Holy Light of the Queen v. Mukasey* (*CHLQ*), 615 F. Supp. 2d 1210 (D. Or. 2009). But this is not sufficient to support an Establishment Clause claim.

Plaintiffs' claim is premised on Defendants' alleged "decision to prefer the members of other religions." Compl. ¶ 69. But no such decision or preference existed. The two groups, UDV and CHLQ are differently situated. Because each group's case was filed before the Guidance was an available means of seeking a religious exemption, those groups pursued and obtained the only available remedy at the time. Defs.' Mem. 12-13. Indeed, the Guidance process was created as a result of the *O Centro* decision, in which the Supreme Court held that

8

RFRA required "case-by-case consideration of religious exemptions." 546 U.S. at 430-36. It was designed to facilitate the very accommodations that the Court found lacking in *O Centro*. Yet Plaintiffs concede that they "ignore this Guidance, both factually and legally." Pls.' Mem. 9-10. CEC remains able to pursue an exemption, and DEA's granting an exemption to CEC or another entity would not provide the basis of an Establishment Clause claim.[4]

### 3.      Fifth Amendment—Procedural Due Process (Count 4)

Plaintiffs claim CBP violated their procedural due process rights when it seized their ayahuasca, but Defendants explained, Defs.' Mem. 13, due process requirements "do not apply unless [Plaintiffs] can first show that [they have] a cognizable liberty or property interest," *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). "Where there is no right, no process is due under the Constitution." *Id.* Plaintiffs have not shown a cognizable property interest here.

Because Plaintiffs imported a controlled substance without an import permit, they did not have "a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules . . . that stem from an independent source such as state law," which is to say, the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Here, Plaintiffs imported the package exactly contrary to the "existing rules," *i.e.*, that Schedule I controlled substances be imported with a proper permit. When CBP intercepts a non-permitted controlled substance, CBP will seize the shipment, and it will be forfeited. *See, e.g.*, 19 U.S.C. § 1595a(c)(1)(B); 19 C.F.R. § 145.59; 21 C.F.R. §§ 1312.11(a), 1312.15.

Plaintiffs cite two cases, *O Centro*, 546 U.S. 418 (2006), and *Parrat v. Taylor*, 451 U.S. 527 (1981), for the point that they had a property interest in the package—but neither case supports that position. ***First***, *O Centro* does not concern a procedural due process claim nor does it discuss any question of property interests. 546 U.S. at 430-36. ***Second***, contrary to

[4] Plaintiffs also seem to argue that the purported preferential treatment of the two groups would satisfy the endorsement test under *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Pls.' Mem. 9. But the Supreme Court has "abandoned *Lemon* and its endorsement test offshoot" and instructed: that the "Establishment Clause must be interpreted by reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427-28 (2022). Since Plaintiffs' claim rests on a flawed premise, though, the Court need not reach this analysis.

Plaintiffs' suggestion, in *Parratt* the question of property interests in mailings was not at issue. 451 U.S. at 529 n.1 (noting it was "not contended that under Nebraska law [that] respondent does not enjoy a property interest in the hobby materials [mailed] here in question"). And more relevant to this case, the question of property interest in contraband at the border, including controlled substances imported without a permit, was not covered by the case at all.[5]

### 4.    Fifth Amendment—Substantive Due Process (Count 5)

As to Substantive Due Process, Plaintiffs' opposition again entirely misses the point, misunderstanding Defendants' argument and citing irrelevant Supreme Court precedent. Where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Simon v. Henning*, 2014 WL 12853094, at *5 (C.D. Cal. Jan. 7, 2014) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Because Plaintiffs' claims are grounded in the First Amendment's right to free exercise, Plaintiffs cannot also pursue a generalized substantive due process claim under the Fourteenth Amendment. Defs.' Mem. 14 (citing cases). Plaintiffs do not distinguish this case from the overwhelming body of cases in which courts decline to entertain substantive due process claims that are grounded in separate, more specific constitutional protections.

### 5.    Fifth Amendment—Equal Protection (Count 6)

Plaintiffs' opposition, painted with broad strokes and confused legalese, fails to explain how the Complaint alleged the elements of an Equal Protection claim, Pls.' Mem. 13-14, including purposeful discrimination, which is an essential element, *Gutierrez v. Mun. Court of the Se. Jud. Dist.*, 838 F.2d 1031, 1047 (9th Cir. 1988). Assuming, without conceding, that Plaintiffs have made a sufficient showing that they are members of a protected class, Plaintiffs have plainly not alleged purposeful discrimination based on that status. Plaintiffs' sole argument is that the members of UDV and CHLQ received an accommodation that Plaintiffs currently lack. Pls.' Mem. 13-14. But that argument does not go to any purposeful discrimination, and,

---

[5] Regardless, the Court subsequently overruled *Parratt. Daniels v. Williams*, 474 U.S. 327 (1986).

in any event, those groups are differently situated from Plaintiffs. Defs.' Mem. 14-15.

Plaintiffs also misunderstand Defendants' alternate argument for dismissing the Equal Protection claim. Plaintiffs' claim is uniquely dependent on their flawed RFRA claim: it is based on a comparison to *UDV* and *CHLQ*, two pre-Guidance RFRA cases. Yet RFRA requires an individualized determination "to the person." 42 U.S.C. § 2000bb-1(a)-(b); *see O Centro*, 546 U.S. at 430-36 (requiring "case-by-case consideration of religious exemptions"); *see also* Guidance, *supra* note 1. An Equal Protection claim, which depends on differential treatment among the same members of a protected class, cannot logically survive where the underlying right depends on the *individualized* assessment of the religious beliefs of a particular group. For that separate reason, Plaintiffs' Equal Protection claim must be dismissed.

### 6.    Ninth Amendment—Unenumerated Rights (Count 7)

Plaintiffs cannot—and indeed do not—contend that the Ninth Amendment has been interpreted "as independently securing any constitutional rights for purposes of making constitutional violations." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996). It has not. Instead of grappling with any of the cases Defendants cited, *see* Defs.' Mem. 15-16, Plaintiffs simply cite obviously inapposite Supreme Court cases, *see* Pls.' Mem. 15. Because the Ninth Amendment is not a source of rights whereby Plaintiffs can claim a constitutional violation, the claim must be dismissed. *San Diego Cnty.*, 98 F.3d at 1125.

### C.    Plaintiffs Should Seek an Exemption from DEA in the First Instance.

Defendants suggest, in the alternative, that the Court may, in its discretion, stay the case while Plaintiffs pursue a religious exemption from DEA. Defs.' Mem. 16-18. While Plaintiffs mistakenly suggest that Defendants asked this Court to "*require*[] that Plaintiffs apply for a religious exemption from the CSA." Pls.' Mem 16 (emphasis added), Defendants were clear: "Courts have discretion to decline to exercise review on administrative exhaustion grounds even when the governing statutes and regulation do not make exhaustion mandatory." Defs.' Mem. 16. That remains true. An order deferring litigation until the administrative process, if pursued, has run its course would be proper and conserve judicial resources. *Id.*

11

Respectfully submitted this 5th day of January, 2023.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Giselle Barcia*
GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jack Silver
Law Office of Jack Silver
708 Gravenstein Hwy N, Ste. 407
Sebastopol, CA 95472-2808
Tel.: 707-528-8175
Fax: 707-829-0934
E-mail: lhm28843@sbcglobal.net
E-mail: jsilverenvironmental@gmail.com

Gilbert Paul Carrasco
Willamette University College of Law
19431 Sunray Lane, Ste. 102
Huntington Beach, CA 92648-6401
Tel.: 714-698-8142
E-mail: carrasco@willamette.edu

Ismail L Ali
1530 Campus Dr.
Berkeley, CA 94708
Tel.: 559-801-7317
E-mail: lourido.ali@gmail.com

Martha J Hartney
Hartney Law LLC
4450 Arapahoe Ave.
Boulder, CO 80303
Tel.: 303-747-3909
Fax: 303-835-7199
E-mail: martha@hartneylaw.com

Sean T McAllister
McAllister Law Office PC
4035 E 3rd Ave.
Denver, CO 80220
Tel.: 720-448-6235
E-mail: sean@mcallisterlawoffice.com

1

2      *s/ Giselle Barcia*
       GISELLE BARCIA
3      Trial Attorney
       Civil Division, Federal Programs Branch
4      U.S. Department of Justice

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14