**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Church of the Eagle and the Condor, et al., | No. CV-22-01004-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Merrick Garland, et al., | |
| Defendants. | |

The Court now considers Defendants' Motion to Dismiss ("Motion") Plaintiffs'[1] Complaint. (Doc. 23, ("Mot.").) The Court will grant the Motion in part and deny the Motion in part.

**I.  BACKGROUND**

This case arises out of Plaintiffs' importation and use of ayahuasca for religious purposes. (Doc. 1, Compl. ¶ 16.)

Ayahuasca is a sacramental tea brewed from the ayahuasca vine and the chacruna leaf, with spiritual significance for many indigenous tribes in South America. (*Id.* ¶ 25.) The chacruna leaf contains N,N-dimethyltryptamine ("DMT"), a Schedule I controlled substance under the Controlled Substances Act ("CSA"). (*Id.*); *see* 21 U.S.C. § 812(c)(6). Plaintiffs allege that ayahuasca produces "spiritual visions" and is not known to have wide recreational use. (*Id.* ¶ 28.) Since 2006, at least two religious organizations have received accommodations under the Religious Freedom Restoration Act ("RFRA") to use ayahuasca

---

[1] Referring collectively to the Church of the Eagle and the Condor ("Church"), Joseph Tafur, Belinda Eriacho, Kewal Wright, Benjamin Sullivan, and Joseph Bellus.

for religious purposes in the United States. (*Id.* ¶¶ 29, 33–36.)

### A. The Church's Beliefs and Ayahuasca Use

In 2017, Mr. Tafur, Ms. Eriacho, and Rodney Garcia formed the Church in Phoenix, Arizona. (*Id.* ¶¶ 37, 43.) The Church has approximately forty members and describes itself as a "faith-merging belief system" that has adopted practices from the indigenous Shipibo people of Peru and the "Native North American peoples." (*Id.* ¶¶ 30, 38, 44.) Like many indigenous tribes in South America, the Shipibo people consider ayahuasca to be a "sacred medicine" with spiritual and ceremonial significance. (*Id.* ¶¶ 25, 30, 39.) The Church conducts ayahuasca ceremonies to pursue "spiritual healing" and "wholeness," and the Church believes ayahuasca is a conscious spiritual being. (*Id.* ¶¶ 40–41, 54.) The Church and its members are "dedicated to universal spirituality in fulfillment of the Prophecy of the Eagle and the Condor" and believe ayahuasca is integral to this prophecy. (*Id.* ¶¶ 37, 39–41.) Specifically, the Church believes that the ceremonial use of ayahuasca is expanding beyond South America to merge with Native North American principles "in fulfillment of the Prophecy, to engender spiritual community across all races, ethnicities, and nationalities and to instruct its members in understanding and valuing indigenous spiritual practices, emphasizing the importance of maintaining relationships by developing pride in one's body, mind, soul, spirit and honoring all life." (*Id.* ¶ 39 (internal quotations omitted).)

Ayahuasca is the Church's only sacrament. (*Id.* ¶ 44.) The Church's ayahuasca supply is accessible only to Mr. Tafur, Ms. Eriacho, and Mr. Garcia and the Church maintains records of its ayahuasca importation and use. (*Id.* ¶ 46.) As the "ayahuasquero," Mr. Tafur oversees the Church's ayahuasca use and is the only person permitted to serve the tea during ayahuasca ceremonies. (*Id.* ¶¶ 42, 46.) The Church screens each prospective ayahuasca ceremony participant for any medical and psychological conditions that may interact with ayahuasca and provides participants with written ceremony guidelines. (*Id.* ¶ 47.) The loss of any ayahuasca is considered a sacrilege. (*Id.* ¶ 27.)

### B. CBP's Seizure of Plaintiffs' Ayahuasca

It is generally unlawful to import controlled substances into the United States. *See* 21 U.S.C. § 952. U.S. Customs and Border Protection ("CBP") is authorized to seize "[a]ll mail shipments containing articles the importation of which is prohibited, or articles imported into the United States in any manner contrary to law." 19 C.F.R. § 145.59(a); *see* 21 C.F.R. § 1312.15. However, the Attorney General may approve limited importation and transportation of Schedule I controlled substances. 21 U.S.C. §§ 954, 957, 958(a); *see* 21 C.F.R. §§ 1307.03, 1312.11(a).

In September 2020, CBP intercepted and seized a shipment of ayahuasca intended for delivery to the Church. (Compl. ¶ 50.) Plaintiffs do not allege that they ever sought approval to import the ayahuasca into the United States. (*See generally id.*) Mr. Tafur received a note bearing the Department of Homeland Security's ("DHS") seal that stated:
> Notice: Narcotics and/or other contraband prohibited from entry into the United States, have been seized and removed for appropriate action under 19CFR145.509 [sic]. You will be receiving correspondence from our Fines, Penalties and Forfeitures Branch in the near future.

(*Id.*) Plaintiffs received no further correspondence relating to CBP's seizure and Plaintiffs allege that CBP "summarily destroyed" the ayahuasca shipment. (*Id.* ¶ 52.) In March 2021, the Church submitted Freedom of Information Act ("FOIA") requests to CBP and the Drug Enforcement Administration ("DEA") inquiring about ayahuasca seizures. (*Id.* ¶ 55.) CBP allegedly indicated that it "had seized hundreds of shipments" of what Plaintiffs believe is ayahuasca. (*Id.*) CBP and the DEA have otherwise not responded to Plaintiffs' FOIA requests. (*Id.* ¶¶ 56–58.) Plaintiffs allege that the DEA has leveraged CBP's ayahuasca seizures to prosecute people using ayahuasca for religious purposes. (*Id.* ¶ 59.) Plaintiffs have continued to import and use ayahuasca after CBP's seizure despite Plaintiffs' fear that Defendants may enforce the CSA against them. (*See id.* ¶¶ 16–19, 44.)

### C. Procedural Background

Plaintiffs filed the Complaint on June 9, 2022 against the DEA, CBP, DHS, and Attorney General, seeking an accommodation for their religious use of ayahuasca under RFRA. (*Id.* ¶¶ 20–24, 63–64.) Plaintiffs also allege, *inter alia*, that Defendants have

violated Plaintiffs' First Amendment, due process, and equal protection rights. (*Id.* ¶¶ 65–77.) Defendants filed the Motion on November 15, 2022, arguing that Plaintiffs lack standing to bring their RFRA claim and that Plaintiffs otherwise fail to state a claim. (*See* Mot. at 6, 11.) Plaintiffs filed their Response on December 14, 2022, to which Defendants replied on January 5, 2023. (Doc. 24, Resp. in Opp'n ("Resp."); Doc. 25, Reply.)

## II.     LEGAL STANDARDS & ANALYSIS

### A.     Standing to Bring a RFRA Claim

In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court takes the allegations in the plaintiff's complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). It is the plaintiff's burden to show "that the facts alleged, if proved, would confer standing." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). Under Article III of the Constitution, a plaintiff does not have standing unless he can show (1) an "injury in fact" that is concrete and particularized and actual or imminent (not conjectural or hypothetical); (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In cases for prospective injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Rather, a plaintiff's "standing to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury." *Id.* at 105. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan*, 504 U.S. at 561.

Where plaintiffs raise a pre-enforcement claim to enjoin defendants from enforcing a law against them, the plaintiffs must "allege a 'genuine threat of imminent'" enforcement. *Oklevueha Native Am. Church of Haw., Inc. v. Holder* (*Oklevueha I*), 676 F.3d 829, 835 (9th Cir. 2012).[2] The court considers "(1) whether the plaintiffs have articulated a 'concrete

---

[2] In *Oklevueha I*, plaintiffs sought to enjoin the government from enforcing the CSA against plaintiffs for their allegedly religious use of marijuana after the DEA had seized a shipment of plaintiffs' marijuana more than two years prior. 676 F.3d at 835–36. The Ninth Circuit applied the pre-enforcement "genuine threat" analysis because plaintiffs asserted their

plan' to violate the law in question; (2) whether the government has communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute." *Id.* Plaintiffs have alleged sufficient facts to meet this standard.

A plaintiff may satisfy the "concrete plan" element where the plaintiff "actually did violate [the law at issue] on a number of occasions." *Oklevueha I* at 836 (quoting *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006)) (finding plaintiffs satisfied the concrete plan element where "[p]laintiffs are currently violating and plan to continue to violate the CSA by purchasing and consuming marijuana"); *see Ariz. Yage Assembly*, 595 F. Supp. 3d at 882–83 (plaintiffs failed to allege a concrete plan to violate the CSA where plaintiffs planned to use ayahuasca only if the court issued an injunction). Plaintiffs allege that they have continued to import, possess, and use ayahuasca following CBP's 2020 seizure and "are violating and intend to continue to violate" the CSA. (Compl. ¶¶ 16–19, 44.) Plaintiffs have alleged a "concrete plan" to violate the CSA. Further, because the CSA has already been enforced against Plaintiffs, they need not allege a threat of future prosecution or a history of past prosecution. *Oklevueha I*, 676 F.3d at 836–37 (*See* Mot. at 7–8; Resp. at 4–5.) "When the Government seized Plaintiffs' [ayahuasca] pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence."[3] *Id.* at 836.

Defendants also contend that RFRA requires that all forty individual Church

---

claims "for the first time in an action for prospective relief (and not in a criminal proceeding)," and indicated that the government's prior enforcement of the CSA against plaintiffs "mitigat[ed] the relevance of a hypothetical future-enforcement." *Id.* at 835; *see Arizona Yage Assembly v. Garland*, 595 F. Supp. 3d 869, 882 n.11 (D. Ariz. 2022) (analyzing plaintiff's standing to pursue a RFRA claim under *Oklevueha I* after the government had seized four shipments of plaintiffs' ayahuasca). Plaintiffs' circumstances are factually analogous, so the Court analyzes Plaintiffs' request for injunctive relief as a pre-enforcement claim. (*See* Compl. ¶¶ 4, 6–7, 63–64, 89.)

[3] Defendants contend that *Oklevueha I* is inapposite because the DEA did not "enforce" the CSA against Plaintiffs when the CBP seized Plaintiffs' ayahuasca. (Reply at 3–4.) Defendants also argue that Plaintiffs have not alleged that Defendants have investigated Plaintiffs since the 2020 seizure. (*Id.* at 4.) In finding that the plaintiffs' fear of enforcement was not speculative after FedEx turned the plaintiffs' package of marijuana over to the DEA, the *Oklevueha I* Court emphasized that the plaintiffs should not "be forced to accept the possibility of continued seizure[s]" simply because they could not show that the Government was investigating or targeting plaintiffs. 676 F.3d at 837 n.2.

members' participate in this suit because the Court must assess the CSA's burden on each member's religious beliefs. (Mot. at 8–9.) In permitting the plaintiffs' RFRA claim to proceed without requiring the individual members' participation, the *Oklevueha I* Court found that, "it can reasonably be supposed that the [the church's prospective relief], if granted, will inure to the benefit of those members of the association actually injured." 676 F.3d at 839 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). The same is true for the Church in this case. Plaintiffs have standing to bring their RFRA claim.[4]

**B.    12(b)(6)**

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

**1.    RFRA**

RFRA provides that the government "shall not substantially burden a person's

---

[4] The Court declines Defendants' request for the Court to dismiss or stay the case until Plaintiffs apply directly to the DEA for an exemption. (*See* Mot. at 16.) RFRA "plainly contemplates" that this Court may consider Plaintiffs' requested relief from the CSA. *Oklevueha I*, 676 F.3d at 838 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 434 (2006)).

exercise of religion" unless the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a)–(b). To state a RFRA claim, Plaintiffs must allege that the CSA substantially burdens a sincere exercise of religion. *O Centro*, 546 U.S. at 428.

Defendants first argue that Plaintiffs have failed to sufficiently allege that each Plaintiff "share[s] the same religious beliefs about ayahuasca." (Mot. at 9.) Plaintiffs allege that ayahuasca is their only sacrament and is indispensable to their religious expression. (Compl. ¶¶ 39–41, 44.) Plaintiffs believe that ayahuasca is a living spiritual being and consider any diversion of ayahuasca to be a sacrilege. (*Id.* ¶¶ 27, 40, 54.) Moreover, Plaintiffs continue to practice their ayahuasca ceremonies despite the possibility that Defendants may enforce the CSA against them. (*Id.* ¶¶ 16–19, 44); *c.f. Church of the Holy Light of the Queen v. Mukasey* ("*CHLQ*"), 615 F. Supp. 2d 1210, 1219 (D. Or. 2009) (plaintiffs' use of ayahuasca in secret demonstrated plaintiffs' commitment to their religion after the government threatened plaintiffs with prosecution), vacated on other grounds, *Church of Holy Light of Queen v. Holder*, 443 F. App'x 302 (9th Cir. 2011). Construed most favorably to Plaintiffs, the Complaint sufficiently alleges the sincerity of Plaintiffs' religious beliefs. *See Multi Denominational Ministry of Cannabis and Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1146 (N.D. Cal. 2007) ("[P]lainly it is inappropriate to question the sincerity of plaintiffs' religious beliefs in a Rule 12(b)(6) motion.").

Plaintiffs have also alleged that complying with the CSA would substantially burden Plaintiffs' exercise of religion. "A statute burdens the free exercise of religion if it puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, including when, if enforced, it results in the choice to the individual of either abandoning his religious principle or facing criminal prosecution." *Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002); *see Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (2008). Plaintiffs allege that the ayahuasca ceremony is integral to fulfilling the "Prophecy of the Eagle and the Condor" and to Plaintiffs' "direct and personal connection to nature

and the Divine." (Compl. ¶¶ 39–40.) Plaintiffs allege that they are forced to choose between abandoning their use of ayahuasca—the central tenet of their religion—or face the prospect of criminal prosecution under the CSA. (*Id.* ¶¶ 60–61.) This is sufficient to state a RFRA claim. *Compare CHLQ*, 615 F. Supp. 2d at 1219 (prohibiting plaintiffs from using ayahuasca would substantially burden their exercise of religion where the ceremonial use of ayahuasca was the "sole means by which plaintiffs are able to experience their religion") (citation omitted) (cleaned up), *with Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1015–16 (9th Cir. 2016) ("*Oklevueha II*") (prohibiting plaintiffs' cannabis use was not a substantial burden because plaintiffs' essential sacrament was peyote and cannabis served no unique religious function). The Court denies the Motion as to Plaintiffs' RFRA claim.

### 2. Free Exercise of Religion

Plaintiffs allege that Defendants have violated Plaintiffs' free exercise of religion by enforcing the CSA and seizing Plaintiffs' ayahuasca. (Compl. ¶ 66.) The Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability.'" *Williams v. California*, 764 F.3d 1002, 1011–12 (9th Cir. 2014) (quoting *Employment Div., Dep't of Human Res. Of Or. v. Smith*, 494 U.S. 872, 879 (1990)); (*see* Mot. at 11.) A law that is not neutral and generally applicable receives strict scrutiny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Tingley v. Ferguson*, 47 F.4th 1055, 1084 (9th Cir. 2022). But a neutral and generally applicable law "need not be justified by a compelling governmental interest" even if it creates a substantial burden on "a particular religious practice." *Church of the Lukumi*, 508 U.S. at 531; *see San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004).

Plaintiffs do not challenge that the CSA is a neutral, generally applicable law, nor that Defendants' regulation of controlled substances under the CSA is rationally related to a legitimate government purpose.[5] (Resp. at 8); *Ministry of Cannabis*, 474 F. Supp. 2d at

---

[5] The Supreme Court suggested in *Smith* that if a generally applicable law implicates other constitutional protections along with the free exercise of religion, it must withstand strict

- 8 -

1144 (citing *Smith* 494 U.S. at 884–85) (dismissing First Amendment claim because controlled substances are proscribed by the CSA); *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 2012 WL 6738532, at *9 (D. Haw. Dec. 31, 2012); *see Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 938 (9th Cir. 2000) (affirming district court's application of rational basis review on a 12(b)(6) motion to dismiss). The Court grants the Motion on Plaintiffs' Free Exercise Clause claim.

### 3. Establishment Clause

"Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause ensures an "individual's freedom to believe, to worship, and to express himself in accordance with the dictates of his own conscience." *Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1137 (9th Cir. 2018). Plaintiffs allege that Defendants' accommodation of other religions' ayahuasca use "constitutes an Establishment of Religion" because Defendants have not accommodated Plaintiffs' use. (Compl. ¶¶ 68–69.) In support of their claim, Plaintiffs point to religious sects that have received exemptions under RFRA: the Uniao de Vegetal ("UDV") and the Santo Daime Church ("Santo Daime"). (*Id.* ¶¶ 33–36, 68.)

Defendants argue that Plaintiffs "cannot simply point" to UDV's and Santo Daime's religious accommodations "and say 'we'll have what they're having'" when Plaintiffs have not alleged that they ever applied for an exemption from the CSA, let alone that the DEA denied them one. (Mot. at 9 (quoting *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016)); s*ee generally* Compl.) The Court agrees. Plaintiffs contend that the DEA may not "assess religious uses of anything" and that Defendants have "advance[d]" other religions by prohibiting Plaintiffs' use of ayahuasca. (Resp. at 10.) But Plaintiffs have not cited any authority suggesting that Defendants must assume that Plaintiffs are exempt from the CSA whenever another group seeks and receives approval to import and use ayahuasca

---

scrutiny. 494 U.S. at 881. Plaintiffs argue that their Complaint involves this so-called "hybrid rights" claim. (Resp. at 8; Compl. ¶ 66.) The Ninth Circuit has questioned whether such a claim exists and the Court declines to address this possibility. *Tingley*, 47 F.4th at 1089 n.5; *Parents for Privacy v. Barr*, 949 F.3d 1210, 1237 (9th Cir. 2020); *see Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) (discussing cases casting doubt on a "hybrid rights" analysis). Plaintiffs' hybrid rights claim is dismissed.

for religious purposes. (*See* Compl. ¶¶ 53, 55; Resp. at 9.)

Further, both UDV and Santo Daime received exemptions from the CSA pursuant to RFRA. (*See* Compl. ¶¶ 33–36.) RFRA expressly tasks the courts with determining whether to accommodate an alleged religious practice. 42 U.S.C. § 2000bb-1(c) (enabling a person "whose religious exercise has been burdened" to initiate judicial proceedings to obtain relief); *see O Centro*, 546 U.S. at 434. This requires courts to conduct fact-specific inquiries into the alleged religious exercise; "Congress has determined that courts should strike sensible balances, pursuant to [RFRA's] compelling interest test that requires the Government to address the *particular practice at issue*." *O Centro*, 546 U.S. at 439 (emphasis added); (Mot. at 12.) RFRA's individualized inquiry is an instance where the government must accommodate UDV and Santo Daime's ayahuasca use and "may do so without violating the Establishment Clause."[6] *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987). The Court grants the Motion on Plaintiffs' Establishment Clause claim.

### 4. Due Process Claims

#### a. Procedural Due Process

Plaintiffs allege that CBP violated Plaintiffs' rights to procedural due process because CBP "deprived Plaintiffs of their ownership, possession, and use" of ayahuasca without notice and an opportunity to be heard. (Compl. ¶ 71.) To state a procedural due process claim, a plaintiff must allege a deprivation of a protected property or liberty interest without adequate procedural protections. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–73 (1972). Defendants argue that Plaintiffs have failed to state a due process claim because Plaintiffs do not allege any cognizable property interest in the ayahuasca. (Mot. at 13.)

To allege a cognizable property interest, a plaintiff must "have a legitimate claim of

---

[6] Citing to *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005), which held that the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") is "compatible with the Establishment Clause" while enabling prisoners to seek religious accommodations, the *O Centro* Court emphasized RFRA's case-by-case analysis of religious practices. *O Centro*, 546 U.S. at 436. As with RLUIPA, courts may accommodate religious practices without running afoul of the Establishment Clause by applying RFRA's compelling interest test "in an appropriately balanced way." *See id.* (quoting *Cutter*, 544 U.S. at 720).

- 10 -

entitlement" to the property. *Roth*, 408 U.S. at 577. A person cannot have a legally protected property interest in "per se contraband," which may be "summarily forfeited without any due process protections." *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1210 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011). "An object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which the object could be put." *United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir. 2008); *c.f. Gonzales v. Raich*, 545 U.S. 1, 27 (2005) ("The CSA designates marijuana as contraband for *any* purpose" by listing it as a Schedule I substance). Because it is illegal for any civilian to possess DMT for any purpose under the CSA, Plaintiffs' ayahuasca was subject to summary forfeiture. 21 U.S.C. §§ 812(c)(6), 881. Though Plaintiffs contend that they had a property interest in the ayahuasca because it "is a protected substance" under RFRA, Plaintiffs point to no authority indicating that they had a legitimate property interest in the ayahuasca without first receiving an accommodation under RFRA or registering to import controlled substances.[7] (Resp. at 11); *See e.g.* 21 C.F.R. §§ 1301.11, 1312.11(a), 1312.15. The Court grants the Motion on Plaintiffs' procedural due process claim.

### b. Substantive Due Process

Plaintiffs also allege that CBP's seizure of ayahuasca and threat of prosecution "violate Plaintiffs' right to worship God according to the dictates of their own conscience and deprive them of their liberty in violation" of due process. (Compl. ¶ 73; Resp. at 12 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).) Defendants counter that Plaintiffs cannot raise a generalized substantive due process claim when Plaintiffs' claim is

---

[7] Plaintiffs argue they had a "right to receive mail." (Resp. at 11 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).) Unlike Plaintiffs' package, the prisoner's mail in *Parratt* did not contain contraband. 451 U.S. at 531. Attempting to circumvent ayahuasca's status as contraband, Plaintiffs also contend that CBP deprived Plaintiffs of their liberty interest in using ayahuasca for religious purposes. (Resp. at 10–11 (a person has a liberty interest in "worship[ping] God according to the dictates of his own conscience" (quoting *Roth*, 408 U.S. at 572)).) Plaintiffs cite no authority that would support Plaintiffs' due process claim when Plaintiffs have not followed the very procedures designed to prevent summary forfeiture of the ayahuasca. *See* 21 U.S.C. § 958(d) (procedural protections for an applicant seeking registration under the CSA); (*See* Compl. ¶ 25 (acknowledging that DMT is regulated by the CSA; Mot. at 13 (explaining that a permit is required to import any controlled substances).)

1  "grounded in the First Amendment's right to free exercise." (Mot. at 14.) The Court agrees
2  with Defendants.
3  "Substantive due process analysis must begin with a careful description of the
4  asserted right . . . ." *Reno v. Flores*, 507 U.S. 292, 302 (1993). "[W]here another provision
5  of the Constitution provides an explicit textual source of constitutional protection, a court
6  must assess a plaintiff's claims under that explicit provision and 'not the more generalized
7  notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quotations
8  and citation omitted) (holding that challenges to unreasonable government searches are
9  analyzed under the Fourth Amendment instead of the Fourteenth Amendment). Plaintiffs'
10 due process claim reiterates their free exercise claim—CBP allegedly interfered with
11 Plaintiffs' ayahuasca use, thereby violating a central tenet of Plaintiffs' religious beliefs
12 and practices. (*See* Compl. ¶¶ 66, 73.) Because the First Amendment provides Plaintiffs an
13 "explicit textual source of constitutional protection," the Court dismisses Plaintiffs'
14 substantive due process claim.[8]

### 5. Equal Protection

Plaintiffs allege that Defendants have denied Plaintiffs the equal protection of the laws by accommodating "similarly situated" religions' ayahuasca use. (Compl. ¶¶ 48, 75 (referencing UDV and Santo Daime).) Defendants respond that Plaintiffs have not stated an equal protection claim, as Plaintiffs have not plausibly alleged that Defendants discriminated against Plaintiffs because of Plaintiffs' religion. (Mot. at 14.) The Court agrees with Defendants.

The Equal Protection Clause demands that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985);

---

[8] The Court also dismisses Plaintiffs' Ninth Amendment claim. The Ninth Amendment does not "independently secur[e] any constitutional rights for purposes of making out a constitutional violation," but works "in tandem" with the Fifth Amendment to protect fundamental rights. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (holding that "the Ninth Amendment does not encompass an unenumerated, fundamental, individual right to bear firearms") (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)); *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1156 (N.D. Cal. 2011) (citing *Raich v. Gonzales*, 500 F.3d 850, 862 (9th Cir. 2007)).

*Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). To state an equal protection claim, a plaintiff may allege "that defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiffs do not claim that Defendants discriminated against Plaintiffs by seizing Plaintiffs' ayahuasca or denying Plaintiffs the right to use ayahuasca because of their religion.[9] (Mot. at 14–15; *see generally* Compl.) Rather, Plaintiffs allege only that CBP seized a package containing a Schedule I controlled substance that Plaintiffs attempted to illegally import into the United States. (Compl. ¶ 50.) The Court grants the Motion on Plaintiffs' Equal Protection Claim.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[9] Plaintiffs relatedly argue that Defendants must demonstrate a compelling interest to enforce the CSA and deprive Plaintiffs of their right to use ayahuasca. (Resp. at 13 (citing *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)).) Because the CSA does not violate the First Amendment, it need only survive rational basis review for Plaintiffs' equal protection claim. *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004); *Johnson*, 415 U.S. at 375 n.14. Plaintiffs do not allege any facts to support a plausible claim that Defendants lack a legitimate interest in enforcing the CSA except against persons who have complied with procedures such as RFRA.

### III. CONCLUSION

The Court grants Defendants' Motion to Dismiss Plaintiffs' constitutional claims for failure to state a claim. Because Plaintiffs have standing to bring a RFRA claim and have alleged that the CSA substantially burdens Plaintiffs' sincere religious practice, the Court denies Defendants' Motion as to Plaintiffs' RFRA claim.

**IT IS ORDERED** denying Defendants' Motion to Dismiss Count 1 of the Complaint (Doc. 23).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss Counts 2, 3, 4, 5, 6 and 7 of the Complaint (Doc. 23).

Dated this 20th day of March, 2023.

Susan R. Bolton
United States District Judge