Jack Silver, *pro hac vice*
Law Office of Jack Silver
California State Bar No. 60575
708 Gravenstein Hwy North, Suite 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
(707) 528-8175
(707) 829-0934 (fax)

Gilbert Paul Carrasco, *pro hac vice*
Cal. Bar No. 90838
D.C. Bar No. 334722
Professor of Law *Emeritus*
Willamette University College of Law
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
(503) 990-4879
carrasco@willamette.edu

*Attorneys for Plaintiffs*
*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> Merrick Garland, *et al.*, <br><br> Defendants. | Case No. **2:22-cv-01004-PHX-SRB** <br><br> **PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES** <br><br> **Oral Argument Requested** |

# 1.  TABLE OF CONTENTS

Memorandum Of Points And Authorities ..........................................................1

I.  Introduction.............................................................................................1

II. Argument .................................................................................................1

  A.  Eligibility...........................................................................................1

  B.  Entitlement to Fees under 42 U.S.C. § 1988 as a Prevailing Party ............................2

  C.  Entitlement to Fees and Costs under the Equal Access to Justice Act......................3

    1. The Government's Position Was Not Substantially Justified.............................4

    2.  No Special Circumstances Exist .......................................................6

  D.  Entitlement to Fees for the FOIA Claim Under 5 U.S.C. § 552(a)(4)(E) .................6

  E.  Reasonableness of Requested Award ...........................................................7

    1.  Time and Labor Required of Counsel...............................................7

    2.  Novelty and Difficulty of the Questions Presented ................................8

    3.  Skill Requisite to Perform the Legal Service Properly ......................9

    4.  Preclusion of Other Employment by Counsel Because of this Action ............10

    5.  Customary Fee Charged in Matters of the Type Involved................................10

    6.  Fee Contracted Between the Attorney and Client is Contingent .....................10

    7.  Time Limitations Imposed by the Client or the Circumstances .....................10

    8.  Value of the Rights Involved, and the Results Obtained .................................10

    9.  Experience, Reputation, and Ability of Counsel ...........................................11

    10. "Undesirability" of the Case .........................................................11

    11. Nature and Length of the Relationship Between Attorney and Client ............11

    12. Awards in Similar Actions................................................................11

  F.  Significant Time and Labor Were Required to Support Plaintiffs' Claim ................11

  G.  Lodestar Multiplier is Appropriate.............................................................13

  H.  Fees for Fee Motion and Preparation of Lodestar Documentation ...........................15

III.   CONCLUSION .......................................................................................16

STATEMENT OF CONSULTATION ..............................................................18

i

**TABLE OF AUTHORITIES**

**Cases**

*American Immigration Council v. DHS,*

   82 F. Supp. 3d 396 (D.D.C. 2015) ................................................................. 15

*Anthony v. Sullivan,*

   982 F.2d 586 (D.C. Cir. 1993) ....................................................................... 5

*Barjon v. Dalton,*

   132 F.3d 496 (9th Cir. 1997) ....................................................................... 10

*Barrios v. Cal. Interscholastic Fed'n,*

   277 F.3d 1128 (9th Cir. 2002) ....................................................................... 2

*Bauer v. Sampson,*

   261 F. 3d 775 (9th Cir. 2001) ....................................................................... 2

*Blum v. Stenson,*

   465 U.S. 886 (1984) ................................................................................... 13

*Carter v. Caleb Brett LLC,*

   757 F.3d 866 (9th Cir. 2014) ......................................................................... 7

*Cervantez v. Sullivan,*

   739 F. Supp. 517 (E.D. Cal. 1990) ............................................................... 4

*Chabner v United of Omaha Life Ins. Co.,*

   1999 U.S. Dist. Lexis 16552, *19 (N.D. Cal., Oct. 12, 1999) ..................... 15

*Church of the Holy Light of the Queen v. Holder,*

   584 Fed. Appx. 457(9th Cir. 2014) ............................................................... 2

*Church of the Holy Light of the Queen v. Mukasey,* (*Santo Daime case*)

   615 F. Supp. 2d 1210 (D. Or. 2009) ..........................................5,8,9,11,12,13

*City of Burlington v. Dague,*

   505 U.S. 557 (1992) ..................................................................................... 7

*Commissioner, INS v. Jean,*

   496 U.S. 154 (1990) ................................................................................4,5,6

*Davis v. City and County of San Francisco,*
    976 F.2d 1536 (9th Cir. 1992) ................................................................ 7

*Davis* v. *County of Los Angeles,*
    8 E.P.D. para. 9444 (C.D. Cal. 1974) ........................................................ 3

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ...................................................................... 2,17

*Fischer v. SJB P.D., Inc.,*
    214 F.3d 1115 (9th Cir. 2000) ............................................................. 2

*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1992) ............................................................ 10

*Gatimi v. Holder,*
    606 F.3d 344 (7th Cir. 2010) .............................................................. 6

*Glenn v. Comm'r of Soc. Sec.,*
    763 F.3d 494 (6th Cir. 2014) .............................................................. 6

*Golden Gate Audubon Soc. v. U.S. Army Corps of Engineers,*
    732 F. Supp. 1014 (N.D. Cal. 1989) .................................................... 7,13

*Gomez-Beleno v. Holder,*
    644 F.3d 139 (2nd Cir. 2011) .............................................................. 5

*Gonzalez v. City of Maywood,*
729 F. 3d 1196 (9th Cir. 2013) ............................................................ 16

*Gonzales v. O Centro Espirita Beneficente União Do Vegetal, (UDV case)*
    546 U.S. 418 (2006) ................................................................. 3,5,8,11

*Guam Soc'y of Obstetricians & Gynecologists v Ada,*
     100 F.3d 691 (9th Cir 1996) ............................................................. 15

*Hajro v. U.S. Citizenship and Immigration Services,*
    900 F. Supp. 2d 1034 (N.D. Cal. 2012) ................................................ 15

*Harris v. Marhoefer,*
    24 F. 3d 16 (9th Cir. 1994) ............................................................... 3

*Hensley v. Eckerhart,*

  461 U.S. 424 (1983) ....................................................................................... 3,7

*Herrington v. Cnty. of Sonoma,*

  883 F.2d 739 (9th Cir. 1989) ........................................................................ 2

*Ibrahim v. U.S. Dep't of Homeland Sec.,*

  912 F.3d 1147 (9th Cir. 2019) ..................................................................... 6

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.,*

  2017 U.S. Dist. LEXIS 201108, *21 ............................................................ 14

*International Woodworkers, Local 3-98 v. Donovan,*

  792 F.2d 762 (9th Cir. 1986) ....................................................................... 4

*Judicial Watch v. DOC,*

  470 F.3d 363 (D.C. Cir. 2006) ...................................................................... 16

*Kali v. Bowen,*

  854 F.2d. 329 (9th Cir. 1988) ...................................................................... 4

*Kerr v. Screen Extras Guild,*

  526 F.2d 67 (9th Cir. 1975) ........................................................................ 7

*Kim v. Allison,*

  8 F. 4th 1170 (9th Cir. 2021) ....................................................................... 13

*League of Women Voters v. FCC,*

  798 F.2d 1255 (9th Cir. 1986) .................................................................... 4

*Li v. Keisler,*

  505 F.3d 913 (9th Cir. 2007) ...................................................................... 6

*Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS,*

  559 F. Supp. 2d 1055 (C.D. Cal. 2008) ....................................................... 17

*Love v. Reilly,*

  924 F.2d 1492 (9th Cir. 1991) .................................................................... 3,4

*Mendez v. Cnty. of San Bernardino,*

  540 F.3d 1109 (9th Cir. 2008) .................................................................... 2

iv

*Navajo Nation v. Arizona Indep. Redistricting Comm'n,*

   286 F. Supp. 1087 (D. Ariz. 2003) ...................................................................2

*Oregon Nat. Desert Ass'n v. Locke,*

   572 F.3d 610 (9th Cir. 2009)............................................................................6

*Oregon Natural Resources Council v. Marsh,*

   52 F. 3d 1485 (9th Cir. 1995)...........................................................................4

*Perdue v Kenny A.,*

   559 U.S. 542 (2010) .......................................................................................13

*Pierce v. Underwood,*

   487 U.S. 552 (1988) .........................................................................................5

*P.N. v. Seattle School District No. 1,*

   458 F. 3d 983 (9th Cir. 2006)...........................................................................2

*Richard S. v. Dep't of Developmental Servs.,*

   317 F.3d 1080 (9th Cir. 2003)..........................................................................2

*Rodriguez v. County of Los Angeles,*

   No. 13-56292 (9th Cir. 2018)..........................................................................13

*Schwarz v. Sec'y of Health & Human Servs.,*

   73 F. 3d 895 (9th Cir. 1995).............................................................................2

*Sierra Club v. United States EPA,*

   75 F. Supp. 3d 1125 (N.D. Cal. 2014) ...........................................................16

*Soul Quest Church of Mother Earth, Inc. v. Attorney General of the United States,*

   No. 22-11072 (11th Cir. 2023).........................................................................12

*Spencer v. N.L.R.B.,*

   712 F.2d 539 (D.C. Cir. 1983) ..........................................................................4

*United States v. Marolf,*

   277 F.3d 1156 (9th Cir. 2002)...........................................................................4

*Vizcaino v Microsoft Corp.,*

    290 F.3d 1043  (9th Cir. 2002) ......................................................................14

*Watson v. County of Riverside*,

  300 F. 3d 1092 (9th Cir. 2002) ....................................................2

*Wing v. Asarco, Inc.*,

  114 F.3d 986 (9th Cir. 1997) ................................................... 13

**Constitution**

U.S. Const. Amend. 1................................................................ 10

**Statutes**

5 U.S.C. § 552(a)(4)(E) ........................................................ 1,6

28 U.S.C. § 2412 ....................................................................3

28 U.S.C. § 2412(d)(1)(A) ......................................................3

28 U.S.C. §§ 2412 (d)(2)(B)                                                 3

42 U.S.C. § 1988 ............................................................. 1,2,16

42 U.S.C. § 2000bb ................................................................1

**Other Authorities**

Roy L. Brooks, Gilbert Paul Carrasco, & Michael Selmi,  *The Law of Discrimination: Cases and Perspectives*, at 968-69 (Lexis/Nexis, 2011)............................... 17

Pursuant to Local Rule 54.2(b)(2), Plaintiffs, The Church of the Eagle and the Condor,  an Arizona Religious Corporation, on its own behalf and on behalf of its members, Joseph Tafur, M.D., Individually and as Spiritual Leader of The Church of the Eagle and the Condor, Belinda Eriacho, M.P.H., Kewal Wright, Benjaman Sullivan and Joseph Bellus, (Plaintiffs) hereby move for an award of attorneys' fees and related, non-taxable expenses against named Defendants in this action. This Motion is supported by the accompanying Memorandum of Points and Authorities.

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Now before this Court is Plaintiffs' Memorandum in Support of its Motion for an Award of Attorneys' Fees and Related Non-Taxable Expenses.

## II. ARGUMENT

### A. Eligibility

Plaintiffs are the prevailing party in this litigation. As such, under RFRA, 42 U.S.C. § 2000bb, they may seek attorneys' fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which specifically identifies RFRA as a source of eligibility. Plaintiffs are also entitled to costs, including expert fees, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §§ 2412 and 2412(d)(1)(A).

Plaintiffs are entitled to fees and costs for their successful Freedom of Information Act ("FOIA") claim pursuant to 5 U.S.C. § 552(a)(4)(E). As is explained herein, the FOIA requests and subsequent litigation were part of Plaintiffs' RFRA case and can also compensated under 42 U.S.C. § 1988 and the EAJA.

Plaintiffs have completely prevailed insofar as The Church of the Eagle and the Condor ("CEC" or "Church") may now continue to import, possess, and use ayahuasca for religious purposes. Plaintiffs obtained a settlement granting the CEC and its members all that they had requested. This truly is a description of the paradigmatic "prevailing party."

The Settlement Agreement not only "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the

1

plaintiff," but it also includes a "judicial *imprimatur*," *Watson v. County of Riverside*, 300 F. 3d 1092, 1096 (9ᵗʰ Cir. 2002), because the parties have agreed that this Court will retain jurisdiction to enforce the Settlement Agreement (see **Exhibit A, Settlement Agreement IX. ¶91.c.)** and determine fees and costs pursuant to the terms of the Settlement Agreement. **(Settlement Agreement VII. ¶88).** *See Richard S. v. Dep't of Developmental Servs*., 317 F.3d 1080, 1086-7 (9ᵗʰ Cir. 2003) (*quoting Fischer v. SJB P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir. 2000) (*quoting Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992))). *See also Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134-5, n. 5 (9ᵗʰ Cir. 2002) ("Moreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs") (quoted with approval in *P.N. v. Seattle School District No. 1,* 458 F. 3d 983, 991 n. 5 (9ᵗʰ Cir. 2006)).

Plaintiffs need not prevail on all claims for full compensation. As long as the claims upon which Plaintiff failed to prevail are related to the successful claims and Plaintiff obtained excellent results, full compensation is appropriate. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F. 3d 895, 901-02 (9ᵗʰ Cir. 1995). *See also Church of the Holy Light of the Queen v. Holder,* 584 Fed. Appx. 457, 459 (9ᵗʰ Cir. 2014); *Bauer v. Sampson*, 261 F. 3d 775, 786-87 (9ᵗʰ Cir. 2001) (a party's failure on some causes of action may still entitle the party to a full award of fees), *cited with approval*, *Navajo Nation v. Arizona Indep. Redistricting Comm'n*, 286 F. Supp. 1087, 1095 (D. Ariz. 2003). The "most critical factor" a court must assess in fashioning a fee award is the degree of success obtained. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

## B. Entitlement to Fees under 42 U.S.C. § 1988 as a Prevailing Party

Plaintiffs are a prevailing party under RFRA as the Settlement Agreement provided relief exclusive to Plaintiffs' RFRA claim.

"'[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'" *Mendez v. Cnty. of San Bernardino,* 540 F.3d 1109, 1126 (9ᵗʰ Cir. 2008) (quoting *Herrington v. Cnty. of Sonoma,* 883 F.2d 739, 743 (9ᵗʰ

Cir. 1989)). As the prevailing party and having succeeded on all of the issues for which they sought relief, Plaintiffs should be compensated for all of the work reasonably expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983). *See also Davis* v. *County of Los Angeles*, 8 E.P.D. para. 9444 (C.D. Cal. 1974), *citing Hensley,* ["Plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved."] Non-Taxable Expenses (costs) are also compensable under § 1988. *Harris v. Marhoefer*, 24 F. 3d 16, 19-20 (9th Cir. 1994).

### C. Entitlement to Fees and Costs under the Equal Access to Justice Act

As prevailing parties, plaintiffs are entitled to recover costs, and other expenses, including expert fees, under EAJA, 28 U.S.C. § 2412.

As such, an award of costs under EAJA is mandatory. Defendants' position was not substantially justified, and no special circumstances exist. *Gonzales v. O Centro Espirita Beneficente União Do Vegetal*, 546 U.S. 418 (2006) ("UDV" case). Provided a party is eligible, "an award of fees [and costs] under EAJA is mandatory unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

A party is eligible for expert witness fees, costs, and other expenses under EAJA if it (1) is a "prevailing party" that (2) incurred costs of litigation against the federal government, and (3) meets applicable size and net worth criteria, or is incorporated under section 501(c)(3) of the Internal Revenue Code. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B). Plaintiffs clearly satisfy all three criteria for eligibility. As discussed herein Plaintiffs are clearly a prevailing party. Plaintiffs incurred the costs of this litigation against the U.S. Departments of Justice ("DOJ"), Drug Enforcement Administration ("DEA") Homeland Security ("DHS"), components of the federal government. The third criterion is satisfied because all plaintiffs meet the applicable size and net worth criteria. (See, **Exhibit B, Declarations of CEC).**

Plaintiffs request that this Court award related non-taxable costs in the amount of $65,391.95. (Decl. M. Hartney, ¶66, Exh. C; Decl. J. Silver, ¶111, Exh. G).

1.  The Government's Position Was Not Substantially Justified

The agencies, defendants DOJ, DEA and DHS, bear the burden of proving that their position was substantially justified. *Oregon Natural Resources Council v. Marsh*, 52 F. 3d 1485, 1492 (9th Cir. 1995). The agencies also bear the burden of proving that any special circumstances make an award unjust. *Love*, 924 F.2d at 1495. Whether the position of the federal government was substantially justified is determined based on the record regarding the action of the federal government that is the basis of the civil action and the record of the litigation. 28 U.S.C. § 2412(d)(1)(B). Whether the Government action is substantially justified is essentially a test of reasonableness. *League of Women Voters v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986). In other words, to determine if an agency position was substantially justified, the court considers the reasonableness of the underlying government action and the position asserted by the agency in court defending its actions. *Kali v. Bowen*, 854 F.2d. 329, 332 (9th Cir. 1988); *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n.7 (1990) (noting that Congress intended to provide for fees when unjustifiable agency action forces litigation). A finding that "either the government's underlying conduct *or* its litigation position was not substantially justified is sufficient to support an award of EAJA fees." *Cervantez v. Sullivan*, 739 F. Supp. 517, 521 (E.D. Cal. 1990) (emphasis added). An award of fees and costs is still appropriate even where there is a finding that some aspects of the agency's position were substantially justified but the Court has determined the overall position was not. *United States v. Marolf*, 277 F.3d 1156, 1164 (9th Cir. 2002).

The DOJ should be held to a higher standard to show that its legal arguments were substantially justified. "[W]hen the government acts inconsistently, and subsequently loses a civil suit challenging its behavior, *it should be obliged* to make an especially strong showing that its legal arguments were substantially justified in order to avoid liability for fees under the EAJA." *International Woodworkers, Local 3-98 v. Donovan*, 792 F.2d 762, 765 (9th Cir. 1986) (emphasis in original) [citing *Spencer v. N.L.R.B.*, 712 F.2d 539, 561 (D.C. Cir. 1983)].

4

Once the petitioning party establishes prevailing party status, the government can avoid payment of cost under EAJA only if it can show that its pre-litigation conduct **and** litigation position were "substantially justified." To meet this burden of proof, the government must show that its position has a reasonable basis both in law and in fact. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (defining substantially justified as "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person"); *Jean*, 496 U.S. at 160 ("The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee [and cost] eligibility"); *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C. Cir. 1993) ("[O]nce a court determines that the government's position on the merits of the litigation is not substantially justified, it may not revisit that question as to any component of the dispute."). *See also Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2nd Cir. 2011).

In 2006, the Supreme Court found that it would be "surprising" to find the sacramental use of "hoasca" was not exempt from the Controlled Substances Act ("CSA") considering the exemption for the religious use of peyote, and that "the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance." *Gonzales v. O Centro Espirita Beneficente União Do Vegetal*, 546 U.S. 418, 436-37 (2006). In 2009, in *Church of the Holy Light of the Queen* ("CHLQ") *v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009) after a full trial on the merits, Judge Panner determined that CHLQ, a Santo Daime church, had the right to import, possess, and use ayahuasca for religious purposes. Both courts determined the Government could not meet its burden to show a compelling interest in preventing the use of ayahuasca for religious purposes. Given the unanimous decision of the Supreme Court in the *UDV* case, the decision on the merits in the CHLQ case and the allegations in Plaintiffs' complaint, it was unjustifiable for the government to file a motion to dismiss and continue to litigate CEC's RFRA claim after losing the motion.

The government's position must be substantially justified as a whole. Courts generally do not award a portion of fees or costs by issue. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167–72 (9th Cir. 2019) (en banc); *Gatimi v. Holder*, 606 F.3d 344, 349 (7th Cir. 2010). *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990); *see also Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 498-99 (6th Cir. 2014) (holding that substantial justification is not "a matter of comparing the number of successful claims to unsuccessful claims in a single appeal" but instead whether the government's position was reasonable as a whole).

### 2. No Special Circumstances Exist

The government has the burden of proving the existence of special circumstances that would make a fee award unjust. This provision of the EAJA is to be narrowly construed so as not to interfere with or defeat Congress' purpose in passing the EAJA.

Special circumstances include close or novel questions. Equitable considerations can mean that the prevailing party acted in bad faith or has "unclean hands." The Ninth Circuit has held that the "the government's request for a voluntary remand [to the BIA] is not a 'special circumstance' that would relieve the government from the applicants' statutory entitlement to EAJA fees." *Li v. Keisler*, 505 F.3d 913, 920 n.1 (9th Cir. 2007). Rather, the court collapsed its discussion of the special circumstances exception into its substantial justification analysis, holding that the court must examine "the likely reason behind the voluntary remand in question." *Id.* at 919.

**D. Entitlement to Fees for the FOIA Claim Under 5 U.S.C. § 552(a)(4)(E)**

Under FOIA, Plaintiffs are entitled to fees and litigation costs as the substantially prevailing party. See 5 U.S.C. § 552(a)(4)(E). Once a court determines a party is eligible for an award under FOIA, it exercises its "discretion to determine whether the plaintiff is entitled to fees." *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).

As the record shows in this case, Plaintiffs obtained relief through the change in position by both the CBP and DEA. Initially, the CBP asserted several exemptions to justify the redaction of the SAMHSA document. Following initiation of the litigation, the

CBP released to Plaintiffs a less redacted version of the SAMHSA document, thus acknowledging its prior redactions were not justified by law.

Prior to filing this action, the CBP made clear that its prior disclosure of the SAMHSA document was final, and no further redaction would be removed. There was a public benefit to the disclosure of the less redacted version because Plaintiffs worked with other organizations to publicize the new version so the public could understand the CBP's policy regarding the seizure of alleged sacramental substances at the border. The DEA disclosed no documents prior to Plaintiffs filing this lawsuit. Following the filing, the DEA, through the DOJ, released hundreds of documents responsive to Plaintiffs' FOIA request, including releasing for the first time ever an Ayahuasca Risk Assessment. This disclosure similarly would not have occurred but for the lawsuit. There was no reasonable basis to withhold these documents after the FOIA request.

### E. Reasonableness of Requested Award

A reasonable attorneys' fee is determined by calculating the "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This figure is called the lodestar and is presumed to represent an appropriate fee. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1541-42 (9th Cir. 1992).

1. Time and Labor Required of Counsel

To assist the Court in arriving at the "lodestar" figure, the Ninth Circuit has adopted a list of factors to be considered where relevant, the so called "*Kerr* factors." *Carter v. Caleb Brett LLC, 757 F.3d 866, 869 (9th Cir. 2014) (quoting Kerr v. Screen Extras Guild, 526 F. 2d 67, 70 (9th Cir. 1975, cert. denied*, 96 S. Ct. 1726 (1976)) (*abrogated on other grounds by City of Burlington v. Dague,* 505 U.S. 557 (1992)). The following four (4) *Kerr* factors relate to "the number of hours reasonably expended" portion of the lodestar equation: (1) time and labor required, (2) difficulty of the questions involved, (3) time limitations imposed by the circumstances, and (4) results obtained. *Golden Gate Audubon Soc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1017 (N.D. Cal. 1989). The *Kerr*

factors are also relevant to the level of staffing needed successfully to prosecute this case. Plaintiffs submit that a review of the time and labor expended by their attorneys in the context of these factors establishes that the time claimed was appropriately expended and, indeed, essential to the successful resolution of this case

2. <u>Novelty and Difficulty of the Questions Presented</u>

This was both a novel and complex case. There has not been a successful case of this nature since the *Santo Daime* case in 2009, which was only the second such case (preceded by the *UDV* case filed in 2000).

Unlike the *UDV* and *Santo Daime* faiths, the CEC is not a Christian religion and does not have the same history of using ayahuasca as a sacrament as the other churches. The plaintiffs in both of those cases were established Christian syncretic religions. The CEC is an emerging religious group, so Plaintiffs retained the expertise of a theologian to document their religious *bona fides* by interviewing members of the Church and attending a ceremony to observe the religious rituals first-hand.

Since the *UDV* and *Santo Daime* cases, the DEA promulgated a Guidance Document encouraging religious organizations to file petitions for religious exemption from the CSA pursuant to the RFRA. Although numerous churches have applied for this exemption using the DEA's Guidance Document process, none has received an exemption. https://www.gao.gov/products/gao-24-106630   Instead, they have been relegated to an administrative entanglement that affords them little due process and less protection than provided under RFRA.

In 2020 the DEA's Drug and Chemical Evaluation Section, Diversion Control Division, released a document entitled *Ayahuasca: Risks to Public Health and Safety*. This DEA document raised several technical and medical issues that Plaintiffs had to address, necessitating the hiring of experts in medicine, psychiatry, toxicology, and epidemiology. Given the rarity of this field of study, it was time-consuming both to find and to vet experts, for which Plaintiffs' counsel Mr. Ali and Ms. Hartney were instrumental.

Very few RFRA cases involving the use of a Schedule I substance have been

litigated. Only two prior cases involving the use of ayahuasca as a sacrament have been litigated successfully and, of those cases, only one was decided on the merits - *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009). There are very few attorneys who have experience litigating these Schedule I RFRA cases. Plaintiffs' attorneys Jack Silver and Gilbert Paul Carrasco were also counsel in the *Santo Daime* case and are two of only four attorneys in the entire nation who have litigated such a case on its merits. Plaintiffs' attorneys Sean T. McAllister, Martha J. Hartney, and Ismail L. Ali are nationally recognized psychedelic law experts with longstanding relationships to the CEC.

More than fifteen years have passed since the successful *Santo Daime* case was filed, and the number of scientific papers exploring the safety and efficacy of ayahuasca has grown substantially. Through discovery, Defendants submitted more than 120 scientific papers on the use of ayahuasca and DMT, every one of which had to be reviewed in detail by an attorney. Plaintiffs identified more than 240 studies. The DEA's treatise, *Ayahuasca: Risks to Public Health and Safety*, necessitated the consultation of experts in psychiatry, toxicology, and epidemiology.

Defendants' Motion to Dismiss raised several issues not litigated in the previous ayahuasca church cases. Once this Court denied Defendants' Motion to Dismiss as to standing (associational and individual), as to failure to state a claim, and declined Defendants' request for a stay, Plaintiffs moved forward with discovery and pre-trial preparation. The case was made more challenging due to obstructionist opposition by Defendants' counsel in the form of her persistent failure to respond to emails, failure to comply with discovery requests, failure to provide dates for depositions, thus necessitating the issuance and service of deposition subpoenas, and persistent objections to every request made by Plaintiffs. In short, defense counsel significantly and, in many cases, unnecessarily, complicated and protracted Plaintiffs' work.

### 3. Skill Requisite to Perform the Legal Service Properly

The skills of each attorney requisite to perform the legal service properly are identified in each attorney's declaration filed in support of this motion.

9

4. <u>Preclusion of Other Employment by Counsel Because of this Action</u>

The preclusion of other employment by counsel because of the acceptance of the action is presented in each attorney's declaration filed in support of this motion.

5. <u>Customary Fee Charged in Matters of the Type Involved</u>

There are no RFRA cases that can be used to determine the appropriate fee. Due to the fact that Plaintiffs could not find an attorney in the State of Arizona whom they felt was sufficiently qualified to handle their RFRA case and take it on a contingency, they sought attorneys from out-of-state. Each attorney has provided the prevailing market rates in his or her forum district.

Plaintiffs contacted the ten largest civil rights firms in Arizona to determine if any had experience in a similar case and whether they would take Plaintiffs' case on contingency, without success. (See Silver Decl., Exhibit B, Decl. Osuna). "[R]ates outside the forum may be used 'if local counsel was unavailable, either because they were unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (*quoting Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

6. <u>Fee Contracted Between the Attorney and the Client is Contingent</u>

The fee contracted between the attorney and the client is contingent. **(Exhibit C, CEC/Attorney Retainer Agreements).**

7. <u>Time Limitations Imposed by the Client or the Circumstances</u>

The CEC's members cannot practice their religion without their sacrament, and the CEC cannot provide essential services for their members without the CEC's sacrament; thus, time in this case was of the essence. Two interdictions of Plaintiffs' sacrament augmented this urgency.

8. <u>Value of the Rights Involved, and the Results Obtained</u>

The right to practice one's religion without governmental interference is one of the most important rights in the Constitution and appears at the beginning of the Bill of Rights. U.S. Const. Amend. 1. The result of allowing the CEC to import, possess, and use its

sacrament during religious ceremonies is exactly the relief that this lawsuit was intended

### 9. Experience, Reputation, and Ability of Counsel

The experience, reputation, and ability of each of Plaintiffs' attorneys is identified in each attorney's declaration filed in support of this motion.

### 10. "Undesirability" of the Case

Very few attorneys are qualified to take on a RFRA case of this type. The CEC made a survey of the ten largest civil rights firms in Arizona and could not find any qualified attorneys practicing in Arizona because of the difficulty of a Schedule I RFRA case and the undesirability of taking that case on a contingency basis; therefore, Plaintiffs had to identify and retain qualified out-of-state attorneys. (See Silver Decl., Exhibit A, Decl. Osuna).

### 11. Nature and Length of the Relationship Between Attorney and Client

The nature and length of the professional relationship between Plaintiffs' and their attorneys are identified in each attorney's declaration filed in support of this motion.

### 12. Awards in Similar Actions

There have been only two other ayahuasca church cases: *Gonzales v. O Centro Beneficente União do Vegetal*, in which the government paid the UDV $3,150,000.00 in fees and costs as part of its 2010 settlement, and *Church of the Holy Light of the Queen v. Mukasey* (the *Santo Daime* case) in 2009, in which the court awarded $1,538,480.00 in fees and costs. In today's dollars, those amounts would be $4,872,667 and $2,235,085, respectively. In their declarations, each attorney has included related non-RFRA fee awards from their respective States.

### F. Significant Time and Labor Were Required to Support Plaintiffs' Claim

The attorneys for Plaintiffs have submitted a detailed account of hours expended on this case, beginning in October, 2020 through the present, compiled from the contemporaneous daily time logs kept by each attorney as a matter of course. The history of this litigation, which began in 2020, is detailed in the declarations of each attorney filed in support of this motion.

11

1       After the *UDV* and *Santo Daime* defeats, the DEA promulgated its *Drug*
2   *Enforcement Administration Diversion Control Division Guidance Document* ("Guidance
3   Document"), which the DEA claimed was a "process in which [churches] may petition for
4   an exemption from the Controlled Substances Act." [Guidance Document Summary pg.
5   1]. Notwithstanding numerous applications, however, the DEA has yet to approve an
6   exemption. https://www.gao.gov/products/gao-24-106630 In the *Soul Quest of Mother*
7   *Earth* case, the DEA did not respond to Soul Quest's petition for several years, and only
8   did so when sued by Soul Quest. Eventually the DEA denied Soul Quest's petition under
9   the Guidance. *Soul Quest Church of Mother Earth, Inc. v. Attorney General*, No. 22-11072
10  (11th Cir. 2023). Additionally, the DEA promulgated a non-peer reviewed "study" entitled
11  *Ayahuasca: Risks to Public Health and Safety* ("DEA Risk Assessment"), *supra*. This
12  study makes several false claims and misrepresents the research of numerous peer-
13  reviewed studies, claiming these studies found that participants experienced comas,
14  seizures and cardiotoxicity, when in fact none of the peer reviewed studies used these
15  medical terms even once, nor could such adverse reactions be derived from the description
16  of the participants who supposedly consumed ayahuasca.

17      Since the time of the *UDV* and *Santo Daime* cases there have been at least 240 peer-
18  reviewed articles on the effects of ayahuasca, as well as epidemiological studies. The 120
19  peer-reviewed articles were provided by Defendants in a purported attempt to establish a
20  compelling interest as to harm. Each and every article needed to be read and vetted by
21  Plaintiffs' counsel, in some cases necessitated talking directly with the researchers.

22      Defendants could only restrict Plaintiffs' importation, possession, and use of
23  ayahuasca for religious purposes if Defendants could establish a compelling interest,
24  something they failed to do in both the *UDV* and *Santo Daime* cases. As in those cases, an
25  essential part of Plaintiffs' case rested upon expert testimony. Plaintiffs' attorneys spent
26  significant time and effort in locating experts with experience with Schedule I substances
27  used in a religious context in the areas of theology, toxicology, psychiatry (medical and
28  psychological), and epidemiology as well as determining if other experts, such as an

anthropologist and epistemologist, as were used in the *Santo Daime* case, were desirable.

The contentious nature of this litigation, reflected in Defendants' vigorous opposition to Plaintiffs at every turn, has led Plaintiffs to spend extensive time on this case, as well as on this in-depth motion to explicate why their attorneys' hours are reasonable. One court observed, "Defendants are certainly entitled to litigate...with vigor, but they cannot be heard to complain if that vigorous advocacy requires plaintiffs to expend substantial amounts of time in response." *Golden Gate Audubon Society v. United State Army Corps of Engineers,* 732 F. Supp. 1014, 1022 (N.D. Cal 1989).

### G. Lodestar Multiplier Is Appropriate

A lodestar multiplier is necessary here to provide an adequate incentive to attract skilled and experienced counsel to undertake long, protracted, and expensive RFRA cases involving a Schedule I substance, such as this one, which primarily seeks injunctive relief, rather than damages, from which a fully compensatory fee can be recovered. Because this case was taken by counsel on a contingency basis, the "percentage of recovery method" is unavailable. *Kim v. Allison*, 8 F. 4th 1170, 1180 (9th Cir. 2021).

Under federal law, a lodestar multiplier may be applied in the "'rare' and 'exceptional'" case in which superior results are achieved because of the "superior" quality of the attorney's performance. *Perdue v Kenny A.,* 559 U.S. 542, 554 (2010). Courts have determined that such enhancements are appropriate where they are necessary to provide "fair and reasonable compensation" and where "the lodestar fee would not have been 'adequate to attract competent counsel,'" *Perdue,* 559 U.S at 554 (quoting *Blum v. Stenson,* 465 U.S. 886, at 897, 901 (1984)). *See also Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) (upholding 2.0 multiplier); *Rodriguez v. County of Los Angeles* No. 13-56292 (9th Cir. 2018) (awarding $ 5 million in attorneys' fees, inclusive of a 2.0 multiplier).

An application of a 1.5 multiplier here is necessary and appropriate to conform Plaintiffs' fee award to the fees found reasonable in the local legal marketplace based primarily upon on three grounds:

First, a comparison to the multipliers applied in other cases in the community fully

supports the 1.5 (or 50%) enhancement requested here. *See, e.g.*, *Vizcaino v Microsoft Corp.* 290 F.3d 1043, 1050 (9th Cir. 2002) (looking to multipliers awarded in comparable cases as evidence of reasonableness); *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.,* 2017 U.S. Dist. LEXIS 201108, *21 (N.D. Cal., Dec. 17, 2017, No. 4:14-md-2541-CW, 4:14-cv-02758-CW) (3.66 multiplier found reasonable as lodestar cross-check for common fund fee), *aff'd* 768 Fed. Appx. 651, 2019 U.S. App. LEXIS 11474 (9th Cir. 2019). These comparable awards support Plaintiffs' contention that the 1.5 lodestar multiplier requested here is well within, and indeed substantially lower than, the multipliers applied in comparable complex cases.

Secondly, the results obtained by litigating this case through to a settlement are truly exceptional. As explained herein, this settlement will have profound impacts on all religious organizations seeking an exemption under the CSA, not just for the members of the CEC, but for all religious organizations similarly situated throughout the nation. More specifically, this settlement constitutes an exceptional result by any measure. First and foremost, it afforded Plaintiffs essentially all the relief they sought and could achieve, including all the relief they could have secured had this case gone to trial. There has not been a successful RFRA case of this kind  in over fifteen years.

Aside from the exceptional results achieved, as discussed herein, Plaintiffs' counsel had to overcome numerous obstacles to obtain such widespread systemic relief. Every conceivable defense appears to have been raised by Defendants, many of which would have derailed, or greatly diminished, Plaintiffs' victory had their counsel not been so skillful in responding to them. Each issue and sub-issue had to be thoroughly analyzed and addressed, which counsel did with almost uniform success. That level of success, achieved against Defendants with the vast resources of the federal government and highly capable representation from main Justice, is undeniably exceptional. Substantively, the settlement reached between the parties is among the first to set forth guidelines for allowing similarly situated religious organizations to obtain an accommodation from the CSA. The previous absence of a blueprint to accomplish that result makes it even more exceptional. This case

will have a major impact on the legal landscape.

Thirdly, a multiplier is appropriate and reasonable in light of the need to attract competent counsel willing and able to take on massive challenges to religious organizations that are being prevented from using a sacrament that contains trace elements of a Schedule I substance. *See, e.g., Guam Soc'y of Obstetricians & Gynecologists v Ada,* 100 F.3d 691, 697 (9th Cir 1996) (2.0 multiplier appropriate when "necessary" to attract competent counsel); *Chabner v United of Omaha Life Ins. Co.* 1999 U.S. Dist. Lexis 16552, *19 (N.D. Cal., Oct. 12, 1999, No. C–95–0447 MHP), *aff'd* (9th Cir. 2000) 225 F.3d 1042.

A multiplier is particularly appropriate in cases like this seeking injunctive relief that are taken on a contingency with no monetary damages from which to receive a fully compensatory fee. Contingency RFRA cases, such as this one, seeking only injunctive relief, provide significantly less incentive for highly skilled attorneys to take them than damages cases. The latter, unlike the former, provide a large pool from which to recover a fee that reflects the full panoply of relevant factors, including contingent risk, preclusion of other employment, and the like. As a result, the financial incentives to take injunctive relief actions like this one are significantly diminished, to the detriment of the public interest and the policies underlying the RFRA and other similar civil rights statutes.

The modest multiplier sought here would serve to restore some of that incentive. The expense and risk of RFRA litigation of this kind has not diminished over the years; to the contrary, the pursuit of these cases is in many ways more difficult than ever. As a result, very few lawyers are willing to take on such litigation, and the few who are willing to do so can only continue in their efforts if their fee awards reflect full market value, and where appropriate multipliers are awarded in the exceptional cases in which they are justified.

**H. Fees for Fee Motion and Preparation of Lodestar Documentation**

Plaintiffs' attorneys are entitled to fees for their work seeking to recover fees and costs ("fees on fees"). *American Immigration Council v. DHS*, 82 F. Supp. 3d 396, 413-14 (D.D.C. 2015); *Hajro v. U.S. Citizenship and Immigration Services*, 900 F. Supp. 2d 1034, 1050 (N.D. Cal. 2012). It is "well-established that time spent in preparing fee applications

under 42 U.S.C. § 1988 is compensable." *Gonzalez v. City of Maywood*, 729 F. 3d 1196, 1210 (9th Cir. 2013). In this Motion, Plaintiffs have spent the reasonable hours necessary to meet their burden of "documenting the appropriate hours expended" in the litigation and to explain to the Court the tasks necessary for Plaintiffs to prevail. *See Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1148 (N.D. Cal. 2014). Plaintiffs have also spent the reasonable hours necessary to meet their further burden "to produce satisfactory evidence 'that the requested rates are in line with those prevailing in the community.'" *Id*. at 1152.

The following Table summarizes the rates sought for the attorneys who performed work on behalf of Plaintiffs, along with the hours worked on this litigation for which Plaintiffs' seek attorneys' fees. (Decl. Jack Silver, ¶112; Exhibit H; Decl. of Sean M. McAllister, ¶4; Exhibit A; Decl. Gilbert Paul Carrasco, ¶3; Exhibits A and B; Decl. Martha J. Hartney, ¶¶95,96; Exhibit A; Decl. Ismail L. Ali, ¶4; Exhibit A)

| Attorney | Hours | Lodestar | Fees | Fees +1.5 Multiplier |
|---|---|---|---|---|
| Jack Silver | 438.1 | $875.00 | $383,337.50 | $575,006.25 |
| Sean M. McAllister | 322.5 | $650.00 | $209,625.00 | $314,437.50 |
| Gilbert Paul Carrasco | 500 | $895.00 | $447,500.00 | $671,250.00 |
| Martha J. Hartney | 564.15 | $550.00 | $310,282.50 | $465,423.75 |
| Ismail L. Al | 150 | $550.00 | $82,253.00 | $123,378.80 |
| **Total** | --- | ---- | **$1,432,998.00** | **$2,149,496.30** |

Paralegal fees are also requested on behalf of Attorneys Silver and Carrasco in the sum of $23,225.00 and $1,100.00, respectively. **(**see Decl. Silver, ¶114, Exhibit I; Decl. Carrasco, ¶3, Exhibit C.

## III. CONCLUSION

Plaintiffs' attorneys have appropriately explained the significance of their accomplishments, a relevant factor for this Court's award. See *Judicial Watch v. DOC*, 470 F.3d 363, 369 (D.C. Cir. 2006). The contentious nature of this litigation described herein

required Plaintiffs' counsel to spend extensive time on this case, as well as on this in-depth motion to justify their attorneys' hours as reasonable. See *Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008) (having necessitated extensive litigation, the government cannot complain about the extent of fees generated in countering government opposition). "The 'most critical factor' a court must assess in fashioning a fee award is the degree of success obtained." Roy L. Brooks, Gilbert Paul Carrasco, & Michael Selmi, *The Law of Discrimination: Cases and Perspectives*, at 968-69 (Lexis/Nexis, 2011), *citing Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

In view of the foregoing, Plaintiffs' respectfully request an award of their reasonable attorneys' fees and costs incurred in this action in the amount of $2,149,496.30  attorneys' fees, $65,391.95 costs, and $24,375.00 paralegal fees.

DATED: June 17, 2024                    Respectfully submitted,

*s/ Jack Silver*
Jack Silver, *pro hac vice*
Cal. Bar No. 160575
Law Office of Jack Silver
708 Gravenstein Hwy No. # 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
Tel: (707) 528-8175
Fax: (707) 829-0934

*s/ Gilbert Paul Carrasco with permission*
Gilbert Paul Carrasco, *pro hac vice*
Cal. Bar No. 90838
D.C. Bar No. 334722
Professor of Law *Emeritus*
Willamette University College of Law
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
(503) 990-4879
carrasco@willamette.edu

_s/ Sean T. McAllister with permission_
Sean T. McAllister, Esq., *pro hac vice*
Colo. Bar No. 31350
Cal. Bar No. 310962
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
sean@mcallisterlawoffice.com
Tel: 720-448-6235

_s/ Martha J. Hartney with permission_
Martha J. Hartney, Esq., *pro hac vice*
Colo. Bar No. 42017
Hartney Law, LLC
4450 Arapahoe Avenue, Suite 100
Boulder, CO 80303
martha@hartneylaw.com
Tel: (303) 747-3909
Fax: (303) 835-7199

_s/ Ismail Lourido Ali with permission_
Ismail Lourido Ali, Esq., *pro hac vice*
Cal. Bar No. 312660
2134 10th Avenue, A
Oakland, CA 94606
Tel. (559) 801-7317
Lourido.ali@gmail.com

*Attorneys for Plaintiffs*

## STATEMENT OF CONSULTATION

I hereby certify that the parties have conferred regarding the instant motion for attorneys' fees. As discussed in this Statement, after several exchanges of offers and following personal consultation and good faith efforts to do so, the parties have been unable satisfactorily to resolve all disputed issues relating to attorneys' fees and costs.

On April 17, 2024, Plaintiffs provided Defendants' counsel, Giselle Barcia, with Plaintiffs' Request for Attorneys' Fees and Costs, which included a lengthy brief,

1  declarations for all five attorneys, summaries of fees and costs, and copies of all invoices
2  and receipts.

3       Late on Friday May 24, 2024, before the three-day Memorial Holiday weekend,
4  Ms. Barcia provided Plaintiffs with Defendants' counter offer.

5       On May 31, 2024, in the morning, after consultation with Plaintiffs, I sent Ms.
6  Barcia Plaintiffs' response to her counter offer and requested she advise me as to her
7  availability the following week to personally discuss settlement and make a good faith
8  effort to resolve all disputed issues relating to attorneys' fees and costs.

9       On June 5, 2024, the parties conducted a personal consultation and made good faith
10  efforts satisfactorily to resolve all disputed issues relating to attorneys' fees and costs.
11  Representing all counsel, attending the conference for Plaintiffs were Jack Silver, Sean
12  McAllister, Gilbert Carrasco and Martha Hartney. Attending the conference for Defendants
13  was Ms. Barcia. Prior to this meeting the parties had exchanged settlement offers. At the
14  meeting Plaintiffs' counsel agreed to provide Defendants with a further counter offer of
15  settlement.

16       On June 7, 2024, Plaintiffs provided Defendants' counsel with a further counter
17  offer and included additional information regarding Plaintiffs' entitlement to attorneys'
18  fees and costs.

19       On June 10, 2024, Ms. Barcia responded to Plaintiffs' second counter offer but
20  would not provide a counter offer.

21       On June 11, 2024, I responded to Ms. Barcia, advising her that absent a counteroffer
22  from Defendants, the parties' negotiations have come to an end.

23       On June 14, 2024, Ms. Barcia responded to my email of June 11, 2024, and provided
24  a counteroffer similar to her previous offer.

25       On June 14, 2024, Plaintiffs, having already substantially reduced their initial
26  proposal for attorneys' fees, informed Ms. Barcia that the parties were just too far apart
27  and Plaintiffs would be filing their fees motion on June 17, 2024.

28

1

2

_s/ Jack Silver_
Jack Silver, *pro hac vice*
Law Office of Jack Silver

3

4

5

6

## CERTIFICATE OF SERVICE

7

        I hereby certify that on June 17, 2024, I electronically transmitted the attached

8

document to the Clerk's Office using the CM/ECF System for filing a copy to the following

9

CM/ECF registrant:

10

11

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

12

13

BRIGHAM J. BOWEN
Assistant Branch Director

14

15

GISELLE BARCIA
Trial Attorney

16

Civil Division, Federal Programs Branch
U.S. Department of Justice

17

1100 L Street NW

18

Washington, D.C. 20005
Telephone: (202) 305-1865

19

Fax: (202) 514-8640

20

E-mail: giselle.barcia@usdoj.gov

21

_s/ Jack Silver_
Jack Silver, *pro hac vice*

22

Law Office of Jack Silver

23

24

25

26

27

28