Sean T. McAllister, Esq. - *pro hac vice*
McAllister Law Office PC
4035 E 3rd Ave.
Denver, CO 80220
Tel.: 720-448-6235
E-mail: sean@mcallisterlawoffice.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, *et al,*<br>Plaintiffs,<br><br>v.<br><br>Merrick Garland, *et al.*,<br><br>Defendants. | Case No. 2:22-cv-01004-PHX-SRB<br><br>**DECLARATION OF SEAN T. MCALLISTER IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS FEES AND COSTS** |

I, Sean McAllister, declare as follows:

I have personal knowledge of the facts stated in this Declaration, and if called to testify, I can competently testify to the truth of these facts.

### Introduction

1.      I am co-counsel for Plaintiffs in the above referenced matter. I am seeking attorneys fees in this matter as set out below. As discussed in the corresponding Fee Motion, Plaintiffs have achieved exactly what they set out to do - that is to receive an exemption from the CSA allowing them to import, possess and use ayahuasca in their ceremonies. As such Plaintiffs, are the prevailing party in this litigation. Under the RFRA, 42 U.S.C. § 2000bb, I am entitled to attorneys' fees, costs, and other expenses pursuant to 42 U.S.C. 1988 and also pursuant to the

1

Freedom of Information Act. *See* 5 U.S.C. § 552(a)(4)(E).

2.     The entitlement to fees and costs is covered in Plaintiffs' Fee Motion. Plaintiffs have

prevailed on all claims relevant to the relief requested. In awarding attorney's fees, the district

court will consider "the significance of the overall relief obtained by the plaintiff," and "[w]here

a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."

*Hensley v. Eckerhart*, 461 U.S. 424, 435, (1983). Here, Plaintiffs "succeeded on the most

significant issue of litigation . . ." see *Rivera v. City of Riverside*, 763 F.2d 1580, 1582 (9th Cir.

1985).

3.     Plaintiffs substantially prevailed on all issues for which they sought relief, and I should

be compensated for all of the work reasonably expended in the litigation. *Hensley v. Eckerhart*,

461 U.S. 424, 430 (1983)**.** See also *Davis* v. *County of Los Angeles*, 566 F.2d at 1341, 1344 (9th

Cir. 1977) citing *Hensley,* ["Plaintiffs' counsel are entitled to an award of fees for all time

reasonably expended in pursuit of the ultimate result achieved."].

4.     I have attached a task-based itemized statement that reflects the date on which the service

was performed, the time devoted to each unrelated individual task, and a description of the

service provided. *See* McAllister Law Office Billing, attached as Exhibit A. For my work on

behalf of Plaintiffs, I seek a total of $314,437.50 (which includes an enhancement or multiplier

of 0.5) for 322.5 hours reasonably expended working on the merits of this case (with over 223

hours of time written off and not included in this total). These calculations are based on the

specific attorney time records in Exhibit A. Of this total time spent on the case, only

approximately 25 hours were reasonably expended working on this fee petition (fees on fees). *Id.*

It is "well established that time spent preparing fee applications under 42 U.S.C. § 1988 is

compensable." *Gonzales v. City of Maywood*, 729 F. 3d 1196, 1210 (9th Cir. 2013).

2

## Education and Background Professional Experience

5.    I received my B.S. in Political Science, with a minor in Spanish, with honors from the University of Georgia at Athens in 1995, and my J.D. from the University of Colorado School of Law in 1999, where I graduated in the top 15% of my law school class.

6.    I am currently a member of the State Bar of Colorado and the State Bar of California. I am admitted to practice in numerous United States District Courts, including the District of Colorado, the Eastern District of Wisconsin, and the Central District of California, as well as the Ninth and Tenth Circuit Courts of Appeals. My appearance in this case was pro hac vice.

7.    I was admitted to the Colorado Bar in 1999 and was admitted to the California bar in 2016. Following my admission to the Bar, I worked for 3+ years as a Colorado Assistant Attorney General, focused on detailed regulatory compliance legal work in the environmental field, specifically CERCLA/Superfund cleanup work. In this capacity, I obtained valuable experience in administrative law and Administrative Procedures Act litigation representing the Colorado Department of Public Health and Environment.

8.    After leaving the Colorado Attorney General's Office, I started my own law practice in 2004. In my twenty years in private practitioner, I was lead counsel in several lawsuits on behalf of public interest organizations against government agencies in the environmental field, including cases involving Freedom of Information Act claims and Clean Air Act claims. I worked for multiple years with attorney Bob Yunke, an expert in the NEPA, the Clean Air Act and Administrative Procedures Act. This work included representing the Plaintiffs in *Environmental Defense, et al v. Norton, Dept. of Interior*, challenging oil and gas development in the public interest in Montana Federal District Court case CV-04-64-Blgs-RWA, where the Plaintiffs were the prevailing party. I worked on numerous federal litigation cases involving

3

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

FOIA, NEPA, and FOIA claims for a variety of public interest non profit organizations from 2004-2006, including Western Resource Advocates, the Western Mining Action Project, attorney Robert Ukeiley and others in a support role. In 2004, I was lead counsel in a FOIA case in the Colorado Federal District Court, *Fightthefence.org v. US Department of Commerce*, case number 04-CV-01907-RPM.

9.      In addition, I have litigated numerous cases in Colorado and California alleging violations of the Administrative Procedures Act against state governments or state actors. I was lead counsel in approximately four lawsuits against the state of Colorado focused on their implementation of the new cannabis regulatory laws following adult use legalization in 2012. This includes my work as lead counsel on *La Goy et al v. State of Colorado et al*, Denver District Court case number 2007CV6089, where my client was the prevailing party in an APA claim against the state and I was paid attorneys fees. With Colorado's preeminent civil rights litigator David Lane, I litigated a civil rights claims under 42 USC § 1983 in Colorado federal district court against state actors. *See Mazin v. True et al*, 1:14-cv-00654-REB-CBS.

10.      In addition to litigation against government agencies, I have extensive criminal and civil litigation experience for private actors. I have tried approximately 45 cases to verdict in front of judges, juries, or arbiters. Approximately half of these litigation cases were in the criminal defense context, where I specialized in drug crimes for a decade of my career. Some of these drug cases involved the assertion of religious defenses to the use, manufacturing, and distribution of Schedule I drugs. The other half of cases were commercial litigation dispute cases. I have been successful and prevailed in most of my civil litigation cases and have recovered millions of dollars in damages for my clients over the years. I have also been awarded legal fees in commercial litigation cases several times. In 2009, I was awarded the Gideon Award by the

4

Colorado Criminal Defense Bar for my pro bono criminal defense work defending protesters at the 2008 Democratic National Convention in Denver, Colorado.

11.     From approximately 2010 through 2022, I worked extensively in the Colorado state legal cannabis industry. During this time, I was the founding partner of McAllister Garfield, PC, a law firm that grew to nearly 20 employees with me in charge. My work during this time included criminal defense cases under federal law against cannabis operators, responding to IRS audits of cannabis operators, and general counsel business advice to hundreds of businesses. As part of this work, I applied for Schedule I manufacturing licenses from DEA for a cannabis cultivation company. I also dealt with the extensive regulatory and business inconsistencies between state and federal law in terms of cannabis on issues including tax law, trademark law, and jurisdiction of federal courts to resolve cannabis disputes. I received many awards and recognition for my leadership in the cannabis industry, including: (a) 2020 Cannabis Business Awards Cannabis Executive of the Year; (b) 2017-2019, National Cannabis Industry Association, Board of Directors; (c) 2018 MG Magazine, 30 Powerful Litigators You Should Know In Cannabis; (d) 2016-2020 5280 Magazine, Recognized as a Top Marijuana Lawyer in Colorado; (e) 2004-2012 Chairman of Board of Directors, Sensible Colorado, (f) 2019, 2015, and 2013 Cannabis MVP in Colorado, Cannabis Business Awards; and (g) 2012-2014 Spokesperson for Colorado NORML.

12.     In terms of psychedelic substances in general, and ayahuasca in particular, approximately 6 years ago I became the General Counsel of the Chacruna Institute for Psychedelic Plant Medicines ("Chacruna"). Chacruna was founded by a Brazilian anthropologist who studied ayahuasca for over 20 years and published approximately 20 books on the subject. While giving hundreds of hours of *pro bono* work to Chacruna, I became an expert on the legal aspects of the religious use of ayahuasca. I published a book chapter in a recent book, entitled "Ayahuasca

5

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

Vision 2021: Legal Status of Ayahuasca in the United States," in a book called "Religious Freedom and the Global Regulation of Ayahuasca," edited by Beatriz Labate and Clancy Cavnar, Routledge Press, 2023. I also edited and gave input on the Chacruna publication "Guide to RFRA and Best Practices for the Psychedelic Plant Medicine Churches," 2021. I was a legal advisor to the Sacred Plant Alliance during its creation under the umbrella of Chacruna, which is a non profit organization comprised of approximately 25 ayahuasca and other plant medicine religious organization. The purpose of the Sacred Plant Alliance is to develop best practices and self-governing standards for religious organizations using plant medicines such as ayahuasca. I am a member of Chacruna's "Council for the Protection of Sacred Plants," a volunteer group of legal experts that consults with plant medicine churches and others with legal concerns about this topic. I have published at least six articles on the Chacruna website regarding issues around psychedelic law and policy reform. As part of my work with Chacruna, I have given speeches at national conferences regarding religious freedom and psychedelics, including several Chacruna conferences and a four hour workshop on religious freedom and the use of psychedelics at Psychedelic Sciences in 2023, the largest ever gathering of professionals focused on psychedelic law reform.

13.    Beyond Chacruna, I have been a leader in the field of psychedelic policy and law reform. In 2019, Denver, Colorado became the first city in the nation to decriminalize psychedelic psilocybin mushrooms by citizen initiative. I was a *pro bono* legal advisor to the campaign. Following the success of the campaign, the Mayor of Denver appointed me to the Denver Psilocybin Policy Review Panel ("Panel"), where I served *pro bono* as the advisory board's Secretary. The Panel published a detailed report to the city council of Denver confirming the decriminalization of psilocybin mushrooms in Denver had no noticeable adverse effects to public

6

health and safety.

14.     Next, I was a co-author of and on the campaign Steering Committee of the Natural Medicine Health Act of 2022 ("NMHA") in Colorado. The voters of Colorado approved NMHA in November 2022. NMHA decriminalizes four psychedelic medicines, including ayahuasca's active ingredient DMT, and created a regulated pathway for psychedelic healing in Colorado. I was appointed to one of the rulemaking workgroups focused on the religious use of psychedelics. I have been actively involved in the rulemaking for the new state regulated psychedelic healing program that will launch in Colorado in 2025.

15.     In 2022, I represented a member of a psilocybin church criminally charged in the city of Denver with felony distribution of psychedelics who asserted a religious freedom defense under state law. *See People v. Wayne Karim*, 2022CR175 (Denver County, Colorado). The charge carried a mandatory 8 year prison sentence. After explaining the religious freedom defenses to local prosecutors, the case was dismissed with no plea deal – a complete victory.

16.     Beyond Colorado, I participated in the coalition supporting California Senate Bill 58, passed by the California legislature in 2023 that would have decriminalized four psychedelics, but was ultimately vetoed by Governor Newsome. I remain involved on a pro bono basis in the legislative efforts in California to pass this law again with a more narrow focus on only regulated access to psychedelic healing.

17.     In my private practice, I have consulted with dozens of psychedelic churches, primarily ayahuasca churches. My work for these organizations includes advising them on the case law and standards around RFRA, advising on formation, doctrine creation, health screening, safety protocol, and other related issues. As part of this work, I have advised or consulted with approximately 12 individuals who had ayahuasca seized at the border by Customs Border

7

Protection and who were dealing with state level criminal investigations or charges. In addition to this current case, I am co-counsel in the pending federal district court case involving an ayahuasca church seeking a court order under RFRA to protect its religious practices under similar circumstances as this present case. *See Church of the Celestial Heart et al v. Garland et al*, Eastern District of California case number 23-CV-545-ADA-SAB. To my knowledge, I am one of only a handful of lawyers in the country who has litigated issues around religious freedom in both state and federal court.

18.    In my current practice, I also regularly represent doctors, therapists, and retreat organizations engaged in psychedelic therapy or healing work. As part of this work, I do licensure defense for licensed professionals accused of misconduct around psychedelic therapy work. Moreover, I have represented several private companies who have applied for Schedule I licenses from DEA to engage in research and manufacturing of psychedelics. Finally, I also advise licensed professionals on the law around ketamine, a federally legal psychedelic medicine currently being used to address mental health issues.

19.    I represent several leading psychedelic organizations in the United States. I am a member of the Board of Directors of the Board of Psychedelic Medicine and Therapies, the nation's first credentialing non-profit developing standards for psychedelic facilitation. I have been a legal advisor to the Multi-Disciplinary Association of Psychedelic Studies (MAPS) on various topics and this organization is on the verge of FDA approval for a psychedelic medicine. I am a former legal advisor to Naropa University and its psychedelic assisted therapy certificate program training practitioners in this field. I am the General Counsel for the Zendo Project Inc., a harm reduction organization focused on helping people suffering challenging experiences with psychedelics at events such as Burning Man and other festivals. I remain on the Board of

8

Directors of Chacruna and provide *pro bono* service to that organization.

20.    Given my background and reputation in the field, I have been asked to speak at dozens of conferences and events on the law around psychedelic sacraments and medicines, including Psychedelic Sciences 2023, Psycon, the American Society of Ketamine Practitioners, and many others.

## Litigation Stages and Tasks Performed in this Case

21.    The projects performed and time required to perform each project, in this successful section of the litigation, is set forth in Exhibit A to this Declaration. In this narrative, I have omitted that which is sufficiently explained by Exhibit A to this declaration.

22.    I did not bill for any hours I spent in performing tasks generally performed by a paralegal or investigator at traditional law firms.

23.    In preparing the daily abstract of work, I exercised billing judgment and omitted categories of time which were devoted to activities to which, while either necessary to the conduct of this case and/or clearly advancing the interests of my client, an argument could be made that the hours were not directly part of the litigation process. In my exercise of billing judgment, I estimate I excluded approximately 223 hours which included time expended discussing this case with other groups, observing Church activities, administrative time, conferring with other attorneys with similar lawsuits suits, re-reading documents and cases, organizing files, making notes and the like. See Exhibit A.

24.    It is my practice to maintain contemporaneous records of time spent on legal matters and to update those records from time to time. I use a time keeping system, called TimeSolv, and I enter my time every day following the completion of each task. It is also my practice to omit recording hours which I feel are insufficiently productive or are duplicative. As part of preparing this fee

9

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

application, I made a thorough review of my relevant time records and prepared an abstract of the work performed, eliminating hours relating to excluded projects. I kept track of expenses and verified that those claimed were for costs incurred in this case.

25.     As my tasks were rather unique, it can be seen from each project and task there was no meaningful duplication of tasks and certainly no overstaffing. Just as the government engaged at least three lawyers to staff this case, Plaintiffs needed the input and perspective of every lawyer on the team.

**a. Pre-litigation FOIA Work**

26.     Preparing the case for litigation involved critical work under FOIA. Plaintiffs had already had their sacrament ayahuasca seized by the time the legal team began considering litigation in this matter.

27.     Given my prior federal court FOIA litigation experience, I led the work on the FOIA claims with Martha Hartney's critical support. This work included (a) working with the client to determine what information needed to be sought (including evidence around the actual seizure of the Plaintiffs' ayahuasca) and government procedures and frequency of ayahuasca seizures; (b) reviewing the current regulations on FOIA requests to CBP and DEA; (c) preparing the initial FOIA requests; (d) interacting with CBP and DEA to get responses from the agencies; (e) drafting the administrative appeal to CBP and a fee waiver request after their initial partial denial of the request; (f) drafting correspondence to DEA when they completely failed to respond to the FOIA request; and (g) other reasonable and necessary work outlined on the FOIA topic in my time record.

28.     The FOIA work and disclosures were critical foundational work for the lawsuit to determine what occurred with the seizure of the Plaintiffs' ayahuasca, the frequency of seizures

10

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

of ayahuasca by CBP, and the DEA risk assessment document released as part of the FOIA case. Plaintiffs used the FOIA disclosure from CBP to craft the complaint and a strategy for prosecuting the litigation. In addition, the FOIA disclosures were used to educate the public on the frequency and quantity of the seizure of ayahuasca in collaboration with the non-profit organization, the Chacruna Institute for Psychedelic Plant Medicine. *See* https://chacruna.net/ayahusca_religious_freedom_information_act_church_of_the_eagle_and_co ndor/ Similarly, DEA's sole release of information under FOIA was a risk assessment of ayahuasca (a document never before released to the public and only released after Plaintiffs initiated their lawsuit). DEA's release of this document as part of the FOIA claims was critical to prosecuting the case since it showed the detailed view of the government on the harms and risks of ayahuasca, a central question in evaluating the compelling interest test under RFRA. Plaintiffs again worked with the Chacruna Institute to educate the public on this important DEA risk assessment disclose that resulted from Plaintiffs' FOIA work. *See* https://chacruna.net/foia- brings-to-light-deas-problematic-report-ayahuasca-risks-to-public-health-and-safety/ As set out in the full Fee Motion, Plaintiffs were the prevailing parties in their FOIA claims, and under 42 U.S.C. § 1988, and meet all factors justifying a recover of attorneys fees for this work.

**b.  Preparation and Drafting Complaint**

29.     Following the FOIA work, I was involved in preparing for and drafting the complaint in this case. My work included providing substantive input on the complaint and reviewing the government's answer. As explained below, because I was tasked to be lead trial counsel, co-lead on discovery matters, lead on the FOIA issues, and co-lead on settlement matters, I needed to be intimately involved in the preparation and drafting of the complaint.

30.     My time records show the following important and reasonable tasks at this stage of

litigation: (a) reviewing other ongoing litigation related to RFRA and the religious use of ayahuasca; (b) leading the work on preparing the FOIA claims in the case; (c) attempting to find large firms or Native American rights organizations to join the legal team; (d) considering experts that might be needed for the case and reviewing studies relevant to the harm and diversion issues that would be central in this case: (e) assisting in drafting, revising, and finalizing the complaint; (f) review of Plaintiffs' church forms and procedures; (g) meeting with the client to finalize the complaint; and (h) reviewing the government's answer.

**c.   Responding to Defendants' Motion to Dismiss**

31.     Following the filing of Plaintiffs' complaint, Defendants filed a motion to dismiss. As explained below, because I was tasked to be lead trial counsel, co-lead on discovery matters, lead on the FOIA issues, and co-lead on settlement matters, I needed to be intimately involved in the response to the motion to dismiss. My work in responding to the motion to dismiss included: (a) reviewing the government motion to dismiss; (b) helping to review and prepare Plaintiffs' declarations to rebut the motion to dismiss; (c) assisting in drafting the response to the motion to dismiss; (d) reviewing similar cases related to motions to dismiss, including Soul Quest's 11th Circuit case; and (e) reviewing the court's order on the motion to dismiss.

**d.   Discovery Phase**

32.     I also was tasked with co-leading matters related to discovery, including the potential deposition of Defendant CBP, preparing discovery requests to the government, and responding to discovery requests. The amount of time I spent on discovery issues was exceptionally reasonable given that the Defendants disclosed hundreds of scientific studies and there was considerable conflict between the parties on the scope of possible depositions in the case. I helped prepare Plaintiffs' initial disclosures and reviewed the government's initial disclosures. I assisted in

12

preparing multiple rounds of discovery requests sent to Defendants. Defendants did not respond to numerous specific discovery requests and Plaintiffs were forced to do extra work to attempt to compel Defendants to respond to our requests. I worked extensively with co-counsel Jack Silver to prepare deposition notices, including a detailed 30(b)(6) notice of government witnesses. Defendants' counsel strenuously resisted Plaintiffs attempts to depose DEA and CBP and aggressively objected to our deposition topics. I was the lead attorney for Plaintiffs in responding to the government's objections to our deposition topics. I believe our push to have the government disclose documents and to take depositions was an essential element of pressure that convinced the government it would rather settle the case. During this time, the parties also developed a protective order and remote deposition protocol and I contributed to the drafting and finalization of those documents. I had multiple conferrals with government counsel about the disclosure and scope of metadata to be released by each side.

33.     During the discovery phase, I also did work with the Plaintiffs' experts on the case. This work was minimal and only involved less than 10 hours of time. However, because settlement remained uncertain until early 2024, Plaintiffs needed to have experts working on expert reports to meet the discovery deadlines in the case. As explained below, because I was tasked to be lead trial counsel, co-lead on discovery matters, co-lead on the FOIA issues, and co-lead on settlement matters, I needed to be involved in reviewing what the experts were doing.

**e.  Settlement Phase**

34.     I played a key role in negotiating the settlement with the government and acted as co-lead negotiator throughout the settlement process. Initially co-counsel Silver co-led negotiations with me and later co-counsel Carrasco co-led negotiations with me. I was involved in the settlement negotiations directly throughout the process. My long history of resolving civil litigation disputes

13

amicably with opposing counsel was a key negotiation skill that avoided unnecessary litigation in this matter. Government counsel Barcia specifically noted that it was my approach to considering common ground that led her to believe a settlement might be possible in the case. My work during this phase included traveling to and from Arizona to participate in the DEA site inspection of the Church's headquarters. I was the only attorney on the team with any experience working with DEA to obtain Schedule I licenses and my presence at this site visit was essential. Beyond the site visit, there was significant back and forth over the wording of the settlement. The settlement agreement is an unprecedented result and has never occurred in the past that the government has voluntarily recognized the use of ayahuasca by a religious organization. Therefore, my involvement in the settlement discussions was a critical part of the Plaintiffs' success.

### f.  Preparing for Trial Phase

35.    Finally, if this case had gone to trial, I would have been lead trial counsel given my extensive trial experience. This responsibility required me to be intimately involved in all aspects of the case to ensure I would be ready to try the case if needed.

### g.  Write Offs

36.    I wrote off nearly half of my time spent on preparing for and carrying out this case. Admittedly, a significant percentage of the written off time involved observing the Plaintiffs spiritual work. However, I believe this time was an essential element of coming to know the sincere nature of Plaintiffs religious practice. Remarkably, this is the first case where I have ever prayed over court pleadings, and this was done at the urging of the Plaintiffs during a ceremony that I observed. Having the attorneys spiritually engaged in the work was important to the Plaintiffs in this case and I was honored to witness these sacred ceremonies. Again, all of this

14

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

time was written off and shows the I am not unreasonable seeking compensation for non-legal work.

### Hourly Rate

37. With regard to legal work for which I have been compensated in the past year, my current hourly rate is $500.00 for garden variety commercial litigation where payment is made in advance on retainer. For matters such as this case involving RFRA, my current hourly rate is $650 per hour, which is based on the complexity of the work and given the contingency nature of the recovery, and community rates which in part are determined by the market as well as the so called *Kerr* factors: (a) the time and labor required, (b) the novelty and difficulty of the questions involved, (c) the skill requisite to perform the legal service properly, (d) the preclusion of other employment to acceptance of the case, (e) the customary fee, (f) whether the fee is fixed or contingent, (g) time limitations imposed by the client or the circumstances, (h) the amount involved and the results obtained, (i) experience, reputation, and ability, (j) the "undesirability" of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases. *Kerr v. Screen Extras Guild*, 526 F. 2d 67, 70 (9th Cir. 1975). The application of the *Kerr* factors is set out above, but clearly I was an integral part of accomplishing an exceptional result.

### a. Results Obtained

38. Plaintiffs are only the third ayahuasca religious practice recognized in the United States; the first non-Christian based organization; and the first organization based solely on indigenous spiritual beliefs and practices. There have been very few RFRA cases litigated involving a Schedule I substance and even fewer involving ayahuasca. Only two prior cases involving the use of ayahuasca as a sacrament have been litigated successfully and the last one was 15 years ago. Since that time, multiple plaintiffs have failed to even make it past the motion to dismiss

15

stage of litigation. This is the first time the government has ever voluntarily recognized a

spiritual practice involving ayahuasca without being ordered to do so by a court. This is the first

case where a non-Christian based religious practice has received the right to use ayahuasca. This

is the first hybridized religious practice founded by Americans that is based purely on indigenous

spiritual beliefs (the Shipibo people of the Amazon). While the case started with the government

seizing my client's sacrament and moving to dismiss the case, it ended with Plaintiffs obtaining a

Schedule I license to import, possess, manufacture, and share ayahuasca. Clearly, the results

obtained are unprecedented, extraordinary, and superior.

**b. Novelty of the Case**

39.     This case presented more novelty and difficulty than the two UDV and Santo ayahuasca

cases. Both of the plaintiffs in those cases were established religions. The CEC is an emergent

religion requiring the expertise of a theologian expert. Since the successful Santo Daime case in

2009, the number of scientific papers on the use of ayahuasca are now substantial. In discovery,

Defendants submitted more than 120 scientific papers on the use of ayahuasca and DMT.

Plaintiffs have collected more than 240 such papers. Additionally, the DEA prepared its own

non-peer reviewed treatise on the risks of ayahuasca necessitating Plaintiffs to consult experts in

medicine, psychiatry, toxicology and epidemiology. Plaintiffs themselves included diverse

backgrounds, including Navajo participants and spirituality. As noted above, clearly this case

was exceptionally novel.

**c. Preclusion of Other Work**

40.     As a result of accepting the work on this case, I was precluded from taking other cases.

Given my background in cannabis law, I was forced to decline numerous opportunities for work

in that field due to my time commitments in this case. I declined transaction and regulatory work

16

in the cannabis industry to focus on this case. Similarly, I declined other litigation work given the limitations on my time due to this case. Moreover, I declined numerous matters in the psychedelic field due to my commitments on this case. I estimate that I declined work that would have resulted in hundreds of thousands of dollars of revenue to my firm, easily more than $350,000.

### d. Length and Nature of the Relationship to the Plaintiffs

41.     In this case, I had a professional and personal relationship with CEC's Tafur prior to the seizure of CEC's sacrament. I have known Joe Tafur, the chief ayahuasquero, for approximately 5 years. Before working on his case, I knew him in the context of his affiliation with Chacruna and his advocacy for respect for the spiritual traditions of ayahuasca. I have personally accompanied Mr. Tafur to Peru twice to visit and experience the healing tradition of Shipibo indigenous people in the Amazon. I have also attended and observed CEC ceremonies to witness the healing work up close in Arizona. I was the second lawyer added to the litigation team after general counsel Martha Hartney.

42.     I was asked to be part of this case given my relationship with Tafur, my understanding of his practice, my extensive background in litigation, psychedelic law and policy, drug policy reform generally, Schedule I license application work, and my knowledge of the law of religious freedom with respect to ayahuasca.

### e. The Value of the Rights Involved

43.     The right to practice one's religion without governmental interference is one of the most important rights in the Constitution and under federal law. The result of allowing the CEC to import, possess and use its sacrament during religious ceremonies is exactly the request for relief that this lawsuit was intended to achieve.

17

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

### f. The "Undesirability" of the Case

44.     Other than the eventual lawyers who worked on this case, there were no other lawyers or law firms with sufficient experience to handle this case. On behalf of the Plaintiffs, I looked for local counsel in Arizona, but no firms had the experience needed to handle this matter. I talked to large, national law firms, including Perkins Coie (talking with attorney Andrew Kline), Vicente (talking to attorney Shane Pennington) and Yetterman Coleman (talking with attorney Matt Zorn), and none of them were willing to handle the matter on a pro bono basis. I reached out to the Native American Rights Fund (talking to attorney Steve Moore) and the Arizona Indian Law Clinic to ask if they wanted to give pro bono help on the case and they declined. I led the efforts to recruit Jack Silver to join the team, as Mr. Silver had successfully litigated one of the other two RFRA cases where an ayahuasca church had obtained formal recognition from the Courts. I have not talked to any lawyers that would have been willing to take this case on contingency given the unprecedented nature of the relief sought.

### g. Awards in Similar Cases

45.     Because no local counsel in Arizona were willing to take this case on contingency and there are no attorneys to my knowledge in Arizona with the requisite experience and expertise to handle this case, I believe that it is appropriate for the Court to use the hourly rates in my home jurisdiction: Denver, Colorado. I am not aware of any RFRA fee recovery awards in either Colorado, nor Arizona federal district court. There are only a few recent civil rights cases in my local area of Denver in which attorneys' fees were awarded under §1988(b), however, the following may provide guidance:

- In *Duran v. Koehler*, 2014 U.S. Dist. LEXIS 117851, (D. Colo. 2014), a §1983 civil rights case involving the illegal beating of an arrestee, the Court awarded fees ranging from $450

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

to $500 per hour for the lead attorneys,

- In *Valdez v. Motkya*, 15-cv-0109-WJM-STV, 22 WL 1092182 (D. Colo. 2022), Colorado Judge Martinez determined that fees ranging from $575 to $595 for a law firm shareholder is reasonable. Affirmed in Valdez v. City of Denver, 66 F.4th 796 (10th Cir. 2023).

- In *Lopez-Valenzuela v. Maricopa County*, this Court awarded ACLU and MALDEF attorneys' fees ranging from $450 to $515. For the attorneys with comparable length of service, this Court awarded fees on the order of $450. In today's dollars, that amount would be $595.30. 2015 U.S. Dist. LEXIS 183177 (D. Ariz. 2015).

46.     In similar cases in the 9th Circuit, attorneys with similar or less experience have recovered at or above the rates I'm requesting. For example, in *Wit, et al., v. United Behavioral Health*, 578 F. Supp. 3d 1060, (ND Cal. 2022), the court awarded the $1,040 per hour for a lawyer with over 20 years experience. In addition to these rates the court approved a 1.5 multiplier. In *Cole v. County of Santa Clara*, No. 16-CV-06594-LHK (N.D. 2019), the court approved $775 as a reasonable hourly rate for a lawyer with over 20 years experience. In *May v. San Mateo County*, N.D. Cal. No. 3:16-cv-00252-LB, Stipulation and Order re Settlement filed Nov. 10, 2017, the court awarded $775 per hour to a lawyer with 22 years experience. In *Armstrong v. Brown*, N.D. Cal. No. 4:94-cv-02307-CW, Stipulated Order Confirming Undisputed Attorneys' Fees and Costs, the Court awarded attorneys fees of $780 per hour for a lawyer with over 20 years experience.

47.     I believe these comparable cases support my request for $650 per hour as reasonable.

**h.  Lodestar Multiplier Is Appropriate**

48.     As discussed in the Fee Motion, a lodestar multiplier of 1.5 is appropriate. This was a rare and exceptional case in which superior results were achieved because of the quality of the attorneys' performance. There has not been a successful RFRA case dealing with a Schedule I substance since the Santo Daime case in 2009. Other litigants have often failed to make it past

15

the motion to dismiss stage. I am one of a very rare number of attorneys who have experience with psychedelic churches and have actually defended these organizations against criminal prosecution. This added complexity required someone with experience in not only RFRA and religious burdens imposed by the government but emergent religions, criminal law, the CSA, pharmacology, psychiatry, toxicology, epidemiology and anthropology. As such, a multiplier of 1.5 is supported by the facts of this case and the case law itself.

### Summation of Fees and Costs

49.     I have a fee agreement with the clients in this matter clearly stating that the matter is a contingency matter. *See* my Fee Agreement attached to the Fee Motion.

50.     For this case, my hourly rate is $650.00 per hour. In addition to the factors laid out above, the rate was derived using a combination of my actual rates, a Colorado Bar Survey on typical billable rates based on years of experience, and based on comparable rates for civil rights litigators taking into account the complexity and contingency nature of the case. *See* the attached Declarations of attorneys David Lane and Chris Baumgartner supporting the reasonableness of my billable rates. Based upon these factors and given my years of practice, experience and special expertise, the hourly rate of $650.00 is reasonable.

51.     I drafted this Declaration describing my work on this case, including a detailed listing of hours, and helped draft Plaintiffs' Fee Motion discussing both the factual as well as legal basis for Plaintiffs' claim for fees and costs. In this case, I seek a total of $314,437.50 (which includes an enhancement or multiplier of 0.5) for 223.4 hours reasonably expended working on the merits of this case (with over 223 hours of time written off) at a rate of $650 per hour. Enhancements are permitted in complex cases such as this one, where there is an exceptional result, as outlined by *Perdue v. Kenny A.*, 559 U.S. 542 (2010).

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)

52.     I reserve the right to supplement this fee request declaration for any hours occurred after the date of this request for fees attributable to the case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 14th day of June, 2024 in Denver, Colorado.

_____
SEAN T. MCALLISTER

21

DECLARATION OF SEAN MCALLISTER (22CV1004-PHX-SRB)