L

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>Merrick Garland *et al.*,<br><br>Defendants. | Case No. 22-cv-01004-SRB<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE EXPENSES [Doc. 51]** |

# **TABLE OF CONTENTS**

I.  LEGAL ARGUMENT.................................................................................................. 2

A.  Plaintiffs Are Not Entitled to Fees and Costs Stemming from the RFRA
    Claim Under Either Section 1988 or EAJA. .............................................. 2

B.  Plaintiffs Should Not Receive an Award Stemming from the FOIA Claims. .............. 16

C.  A Lodestar Multiplier Is Inappropriate and Should Not Be Applied.......................... 19

II.  CONCLUSION...................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alegria v. District of Columbia*, 391 F.3d 262 (D.C. Cir. 2004) ......................................... 4

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ................................ 2

*Aronov v. Napolitano*, 562 F.3d 84 (1st Cir. 2009) (en banc) ............................................ 9

*Atkins v. Apfel*, 154 F.3d 986 (9th Cir. 1998) .............................................................. 3, 13

*Audra Grabda v. IMS Acquisition LLC*, 2020 WL 6680378 (D. Ariz. Nov. 12, 2020) ............. 15

*Baldwin v. D'Andrea*, 2014 WL 11820245 (D. Ariz. July 24, 2014) ..................................... 15

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ............................................................. 14

*Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128 (9th Cir. 2002) .................................. 6

*Bennett v. Yoshina*, 259 F.3d 1097 (9th Cir. 2001) ........................................................ 7

*Bloomgarden v. Dep't of Justice*, 253 F. Supp. 3d 166 (D.D.C. 2017) .................................. 13

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................................... 22

*Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ................................ 16

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ......... 3, 7

*Carbonell v. I.N.S.*, 429 F.3d 894 (9th Cir. 2005) ...................................................... 3, 6, 7

*Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003) ........................ 4

*Citizens For Better Forestry v. U.S. Dep't of Agr.*, 567 F.3d 1128 (9th Cir. 2009) ................. 7

*Coe v. Hirsch*, 2022 WL 508841, (D. Ariz. Jan. 21, 2022) ............................................... 15

*Conservation Force v. Jewell*, 160 F. Supp. 3d 194 (D.D.C. 2016) (Jackson, J.) ............... 16, 17

*Corbin v. Apfel*, 149 F.3d 1051 (9th Cir. 1998) .............................................................. 8

*Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008). ............................................................ 18

*De Allende v. Baker*, 891 F.2d 7 (1st Cir. 1989) ............................................................. 8

iii

*Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004) ........................................ 12

*Doe v. Bos. Pub. Sch.*, 358 F.3d 20 (1st Cir. 2004) ............................................................................ 6

*Edmo v. Corizon, Inc.*, 97 F.4th 1165 (9th Cir. 2024). ...................................................................... 20

*Env't Integrity Project v. Env't Prot. Agency*, 316 F. Supp. 3d 320 (D.D.C. 2018). ....................... 16

*Facciola v. Greenberg Traurig LLP*, 2012 WL 4711894 (D. Ariz. Oct. 3, 2012) ............................. 22

*G&G Closed Cir. Events LLC v. Carbajal*, 2020 WL 6699485 (D. Ariz. Nov. 13, 2020) ................. 15

*Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020) ......................................................... 16

*Hart v. HHS*, 676 F. Supp. 2d 846 (D. Ariz. Dec. 18, 2009) ............................................................ 19

*Harvey v. Lynch*, 178 F. Supp. 3d 5 (D.D.C. 2016), *aff'd* 2017 WL 4220323 (D.C. Cir. 2017)
     (per curiam) ............................................................................................................................... 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................... *passim*

*INS v. Jean*, 496 U.S. 154, 161 (1990) ............................................................................................. 11

*Innovative Sports Mgmt. Inc. v. Singh*, 2020 WL 3574582 (D. Ariz. July 1, 2020). ........................ 14

*John T. v. Del. County Intermediate Unit*, 318 F.3d 545 (3rd Cir. 2003) ............................................ 6

*Judicial Watch, Inc., v. Dep't of Comm.*, 470 F.3d 363 (D.C. Cir. 2006) .......................................... 16

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .................................................. 19, 21

*KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593 (1997) ................................................................ 9

*Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375 (1994) ...................................................... 7

*La Loma Grande LLC v. United States*, 2017 WL 6061610, at *3 (D. Ariz. Mar. 7, 2017), *aff'd*, 742 F.
     App'x 288 (9th Cir. 2018) ........................................................................................................... 10

*Lewis v. Barnhart*, 281 F.3d 1081 (9th Cir. 2002) .............................................................................. 8

*Lundin v. Mecham*, 980 F.2d 1450 (D.C. Cir. 1992) .......................................................................... 12

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ................................................................................... 17

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ......................................................... 12

*Morley v. Cent. Intel. Agency*, 894 F.3d 389 (D.C. Cir. 2018) (per curiam) .................................... 18

*N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi & Limousine Comm'n*, 272 F.3d 154 (2d

iv

Cir. 2001) ............................................................................................................ 6

*Neal & Co. v. United States*, 121 F.3d 683, 687 (Fed. Cir. 1997) ................................ 10

*New Jersey v. EPA*, 703 F.3d 110, 114-15 (D.C. Cir. 2012) ........................................ 12

*Okla. Aerotronics v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) ................ 12

*Olympic Marine Servs., Inc. v. United States*, 792 F. Supp. 461 (E.D. Va. 1992) ........ 10

*P.N. v. Seattle Sch. Dist. No. 1*, 458 F.3d 983 (9th Cir. 2006); .................................... 4

*Perdue v Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). ............................................... 22

*Perez v. Seafood Peddler of San Rafael, Inc.*, 2015 WL 10939192 (N.D. Cal. Jan. 16, 2015) ...................... 10

*Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) ............................................ 3, 4

*Pierce v. Underwood*, 487 U.S. 552 (1988) ............................................................... 8, 9

*Prison Legal News v. Ryan*, 2024 WL 1195548 (D. Ariz. Mar. 20, 2024) .................... 13

*RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348 (5th Cir. 2007) ...................... 4

*Rice Servs. Ltd. v. United States*, 405 F.3d 1017 (Fed. Cir. 2005) ............................. 7

*Role Models Am., Inc., v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) .......................... 13

*Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080 (9th Cir. 2003) .............. 6

*Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) ............ 14

*Smith v. Fitchburg Pub. Schs.*, 401 F.3d 16 (1st Cir. 2005) ....................................... 7

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) ..................................................... 12

*Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023), *cert. granted sub nom. Lackey v. Stinnie*, 2024 WL 1706013 (U.S. Apr. 22, 2024) ........................................ 6

*T.D. v. La Grange Sch. Dist. No. 102*, 349 F.3d 469 (7th Cir. 2003) ......................... 6

*Thomas v. Gomez*, 45 F.3d 1365 (9th Cir. 1995) ...................................................... 13

*Thompson v. Ariz. Movers & Storage Inc.*, 2018 WL 2416187 (D. Ariz. May 29, 2018) ......... 15

*Trotter v. Ctr. for Medicare & Medicaid Servs.*, 2022 WL 951377 (D.D.C. Mar. 30, 2022) ........ 18

*Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12 (D.C. Cir. 2010) ............................. 3

v

*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.,* 471 U.S. 234 (1985) ....................................................... 12

*Whitaker v. SMB Grp.,* 2023 WL 5842311 (9th Cir. Sept. 11, 2023) ........................................................ 11

*Xalamihua v. GGC Legacy Janitorial Servs.,* 2024 WL 942101 (D. Ariz. Mar. 5, 2024) ............................. 15


**Statutes**

42 U.S.C. § 1988 ........................................................................................................................... *passim*

Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.* ......................................................... *passim*

Equal Access to Justice Act (EAJA), 28 U.S.C. §§ 2412(b), 2412(d)(1)(A), 2412(d)(3) ................ *passim*

Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E)(i) ................................................... *passim*

Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(b) .......................................... *passim*


**Other Authorities**

Fed. R. Civ. P. 54(d)(1), ................................................................................................................. 10

Carol Rose, Ariz. Lawyers Rep. on Economics of Practice, Ariz. Att'y, Dec. 2022, at 14 .................... 15

Statutory Maximum Rates Under the Equal Access to Justice Act, United States Courts for the
    Ninth Circuit, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates. ................... 15

U.S. Customs & Border Protection, Documents Library, 2011 Seized Asset Management and
    Enforcement Procedures Handbook (SAMEPH) https://www.cbp.gov/document/guidance/
    2011-seized-asset-management-and-enforcement-procedures-handbook ............................ 16, 17, 18

U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled
    Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020)
    https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2)
    RFRA_Guidance_(Final)_11-20-2020.pdf (last visited June 24, 2024) .............................................. 2

Plaintiffs make an extraordinary request of this Court: to order the Government to pay a staggering $2.1 million of taxpayer dollars for purported work on a case that barely commenced written discovery and came to a mutually agreeable resolution—all before either party took a single deposition. Plaintiffs are not "prevailing parties" entitled to a fee award for work in this case. Plaintiffs are therefore not entitled to *any* fees.

But even if this Court were to find that Plaintiffs satisfied the prevailing party standard, Plaintiffs' demand is wholly unreasonable, should be adjusted, and ultimately substantially reduced. To start, Plaintiffs cite no comparable case where a court awarded such a sum. In fact, the cases they cite exemplify why their demand is unreasonable. Moreover, both "lodestar" components—hours and rates—are improperly inflated. Tellingly, Plaintiffs have not done the necessary and ordinary work of combing through legal bills to determine which billing entries should be properly included or excluded in a demand. Instead, Plaintiffs lob the entirety of their billing history at the Court, multiply it by 1.5 for "exceptional lawyering," and hope for the best. This is improper, not only as a demand on the Court, but in its inclusion of billing entries that clearly should be excluded from any reasonable fee award. To cite just one example, the bills ask the Government to pay for several multi-lawyer meetings and e-mail exchanges contemplating why, after filing the complaint, the case remained stagnant month after month—not realizing, until a court order was docketed, that Plaintiffs' counsel never properly served the complaint. The bills are also replete with unnecessary, premature, or duplicative work among a bloated team, and at times even including non-litigation or unrelated tasks such as public relations efforts. In addition, Plaintiffs' counsel demand their work be compensated at exorbitant rates that are out of step with the local market. And last, Plaintiffs actually request a 1.5 lodestar multiplier to further enhance the sum.

But here an award of any kind—much less one of the size Plaintiffs request—would be unjust and inconsistent with the reality of how this case proceeded. The Government reached a settlement not because of Plaintiffs' counsels' efforts in litigating the case, but in spite of them. Here, the Government actually *agrees* that Plaintiffs are eligible for an exemption from the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, but, because Plaintiffs never

sought an exemption directly from DEA through the Guidance[1] or otherwise, the Government was not able to make that determination until Plaintiffs made information about their practices available to DEA in civil discovery.  As soon as Plaintiffs did so in response to Defendants' interrogatories and requests for production of documents, the Government shifted the case into a cooperative settlement posture.  But in Plaintiffs' view, the Government should also *pay* for Plaintiffs' decision to litigate in the first place and for its cooperation along the way.  To award any fees to Plaintiffs' counsel, much less an amount close to the staggering sum requested, would provide skewed incentives to litigants with barely colorable claims under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(b).  This Court should reject this distorted interpretation and transparent money-grab.

## I.     LEGAL ARGUMENT

### A.     Plaintiffs Are Not Entitled to Fees and Costs Stemming from the RFRA Claim Under Either Section 1988 or EAJA.

As a general matter, each party to civil litigation bears its own legal fees.  *See, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  In this case, Plaintiffs seek an award for attorneys' fees based on 42 U.S.C. § 1988 (Section 1988) and an award for costs as covered by the Equal Access to Justice Act (EAJA), 28 U.S.C. §§ 2412(b), 2412(d)(1)(A), 2412(d)(3).  Pursuant to Section 1988, "[i]n any action or proceeding to enforce . . . [RFRA] . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Meanwhile, EAJA Section 2412(d) applies to suits against the United States, where no other statute would provide for fees and costs against the government.

The standards overlap.  Under Section 1988, "[a] plaintiff must be a 'prevailing party' to recover an attorney's fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  An award should be "reasonable" and there should not be "circumstances [that] would render such an award

---

[1] U.S. Dep't. of Justice, Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act, (Nov. 20, 2020)    https://www.deadiversion.usdoj.gov/GDP/(DEA-DC-5)(EO-DEA-007)(Version2) RFRA_Guidance_(Final)_11-20-2020.pdf (last visited June 24, 2024).

unjust." *Id.* at 429. Likewise, an award under EAJA (here, for costs) is appropriate when (1) the claimant is a "prevailing party"; (2) the government has not met its burden of showing that its position was "substantially justified" or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002). If the first two factors are satisfied, but the requested amount is not reasonable, then the court may reduce the amount. *See Atkins v. Apfel*, 154 F.3d 986, 988 (9th Cir. 1998) (applying *Hensley* to EAJA). The first two factors are not present here, and Plaintiffs' requested amount is unreasonable in any event.

### 1.    Plaintiffs Are Not "Prevailing Parties" Entitled to Fees.

As an initial matter, Plaintiffs are not entitled to any attorneys' fees for their RFRA and constitutional claims because they are not a "prevailing party." Unquestionably, Plaintiffs did not prevail as to the constitutional claims because the district court rejected those at the motion-to-dismiss stage. Order 8-13, Dkt. 26 (Mar. 20, 2023). The district court allowed the RFRA claim to proceed to discovery. Upon reviewing Plaintiffs' initial written discovery responses, the Government concluded that Plaintiffs were potential candidates to receive a CSA exemption, and the parties shifted the case into a collaborative settlement posture. With written discovery paused, DEA conducted a pre-registration inspection and negotiated precise terms for DEA to monitor Plaintiffs and minimize diversion and safety risks. Plaintiffs agreed they would dismiss the case. They are not prevailing parties in those circumstances.

To demonstrate prevailing-party status, a Plaintiff must show a material alteration in the relationship between the parties that is stamped with some "judicial imprimatur." *Carbonell v. I.N.S.*, 429 F.3d 894, 900-01 (9th Cir. 2005); *see also Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) (identifying the factors as "a court-ordered change in the legal relationship of the parties," "a judgment . . . in favor of the party seeking the fees," and a "judicial pronouncement . . . accompanied by judicial relief"). As a general matter, a private settlement does not alone render a party "prevailing," regardless of what relief was obtained through the settlement itself. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 n.7 (2001) (explaining that "[p]rivate settlements do not entail

3

the judicial approval and oversight" required to authorize a fee award). Likewise, a court order stating that the case was dismissed because of a settlement or even *pursuant* to the parties' settlement agreement is not enough to alter the analysis. *See, e.g.*, *Perez-Arellano*, 279 F.3d at 795 (rejecting "prevailing party" status when Plaintiffs' "change of status was the result of the [government's] voluntary decision and was not compelled by the district court" because there was no enforceable judgment); *see also Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992-94 (8th Cir. 2003) (holding that a settlement is not enough to make plaintiffs "prevailing parties," even though the district court was required to ratify the agreement); *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (5th Cir. 2007) (similar).

Here, several features of the settlement agreement show there was no prevailing party in this case. To start, the parties agreed as much:

> The Parties agree it is in their mutual interest to enter into this Settlement Agreement . . . . By entering into this Agreement, the parties do not intend to compromise their positions on the disputed issues or to make any concessions with respect to any of the disputed issues. *Nothing in this Agreement shall be construed as an admission or concession as to any of the disputed issues in this action.*

Agr. 1 (emphasis added). The parties agreed that neither side was admitting or conceding they prevailed when they settled the case. They voluntarily resolved the case "in their mutual interest." *Id.* "Nothing in this Agreement" should be used against either party as to "any of the disputed issues." *Id.* That should preclude Plaintiffs' weaponizing the Agreement's provisions for the disputed issues of fees.

Moreover, the settlement agreement itself bears no "judicial imprimatur" that bears on the claims at issue. The order that would dismiss the case does not require any of the terms of the agreement to be incorporated. To the contrary, the settlement agreement simply requires "*Plaintiffs* to file a Stipulation of Dismissal with Prejudice." *Id.* ¶ 94 (emphasis added). To that end, there is no court action that would transform the out-of-court agreement into an enforceable decree akin to judgment. *See P.N. v. Seattle Sch. Dist. No. 1*, 458 F.3d 983, 991 (9th Cir. 2006); *see also Alegria v. District of Columbia*, 391 F.3d 262, 263 (D.C. Cir. 2004).

Plaintiffs point to two dispute-resolution provisions in the agreement to cast themselves as the prevailing party. First, Plaintiffs claim "the parties have agreed that this Court will retain jurisdiction to enforce the Settlement Agreement." Pls.' Mem. 2 (citing Agr. ¶ 91.c). That is a clear mischaracterization of a run-of-the-mill dispute-resolution provision, under which the parties agreed to the jurisdiction of this district court (as opposed to, say, a different future location where CEC might expand, or even the Court of Federal Claims, which as a default, can hear certain breach-of-contract claims against the Government). Agreeing to a forum for purposes of setting up a dispute-resolution process does not mean the court has somehow given judicial imprimatur to the parties' out-of-court settlement of the underlying claims. After all, any future dispute "regarding any alleged *breach* of this Agreement," *id.* ¶ 91 (emphasis added), would constitute a new potential breach-of-contract action.

Second, Plaintiffs claim that the Court's retained jurisdiction "to determine fees and costs pursuant to the terms of the Settlement Agreement," *id.* (citing Agr. ¶ 88), somehow changes the posture. It does not. The question of prevailing party status is an antecedent question to eligibility for fees; the fact that the Court must now resolve the latter question does not mean the Court has given judicial imprimatur to the resolution of the case on *the merits*. Were Plaintiffs correct, then any plaintiff could simply manufacture prevailing party status by refusing to settle fees and thereafter submitting a petition for fees to the Court, so long as the Government acknowledged that the agreement does not resolve the fee issue and/or acquiesced to some ministerial agreement on timing. *See id.* ("After filing the Notice of Settlement, the parties have 60 days to negotiate attorneys' fees and costs. If, after 60 days, the Parties have not come to an agreement on attorneys' fees and cots, that issue will be submitted to the Court on a motion by Plaintiffs."). It is telling here that Plaintiffs withheld their demand for fees, despite Defendants' repeated requests over several months. Indeed, Plaintiffs ultimately refused to transmit it at all until after the parties had signed an agreement on the merits—perhaps out of a concern that their unreasonable demand for attorneys' fees could jeopardize the substantive resolution on the merits for their client.

5

Plaintiffs cite two cases, both involving petitions for emergency relief under the American with Disabilities Act, and neither of which helps them.  *See* Pls.' Mem. 2.  In *Richard S. v. Department of Developmental Services*, 317 F.3d 1080, 1086-87 (9th Cir. 2003), the Ninth Circuit distinguished the sort of settlement at issue here:  there, it was not a case where the plaintiffs (as here) agreed to dismiss the case, but one where the settlement agreement had been previously filed with the court, and "the terms of the agreement are incorporated into the order of dismissal," and thus given a judicial imprimatur.  Moreover, in *Richard S.* (and unlike here), the plaintiff obtained a preliminary injunction, which bore on the analysis.  *Id.*[2]  Second, Plaintiffs cite a footnote in *Barrios v. California Interscholastic Federation* for the mistaken proposition that because the parties did not include fees in the settlement and they could file a petition for fees, that fact alone somehow renders them prevailing parties over the entire litigation.  Pls.' Mem. 2 (citing 277 F.3d 1128, 1134-5 n.5 (9th Cir. 2002)).  Plaintiffs are mistaken.  *Barrios* began with a request for emergency relief, and with the court itself, at a chambers hearing, helping the parties reach a resolution.  *Id.* at 1132.  After several false starts, the parties did reach a settlement, and the district court "entered a judgment and order according to the terms of the settlement agreement," the precise form of which was then subject to further litigation and was at issue on appeal.  *Id.* at 1133.

Notably absent from Plaintiffs' reliance on *Barrios* is any recognition that the Ninth Circuit subsequently clarified the *Barrios* case in *Carbonell v. I.N.S.*, 429 F.3d at 901, to reconcile *Barrios* with the law in other circuits.[3]  In *Carbonell*, the Ninth Circuit clarified that finding a

---

[2] Notably, the question whether a party who obtained a preliminary injunction is a prevailing party—a result Plaintiffs came nowhere close to achieving here—is now pending for resolution before the Supreme Court next term.  *Stinnie v. Holcomb*, 77 F.4th 200, 205 (4th Cir. 2023), *cert. granted sub nom. Lackey v. Stinnie*, 2024 WL 1706013 (U.S. Apr. 22, 2024).

[3] *See Doe v. Bos. Pub. Sch.*, 358 F.3d 20, 25 (1st Cir. 2004) ("The *Barrios* court's reading of *Buckhannon* seems to contravene the Supreme Court's unambiguous rejection of private settlement as sufficient grounds for 'prevailing party' status."); *accord T.D. v. La Grange Sch. Dist. No. 102*, 349 F.3d 469, 476 (7th Cir. 2003); *John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 560-61 (3rd Cir. 2003); *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158-59 (2d Cir. 2001).

prevailing party involves a two-part inquiry: (1) that there has been a material alteration in the relationship between the parties, (2) that is stamped with some "judicial imprimatur." *Id.* 900-01.  To satisfy the judicial imprimatur requirement, "a party must have *a judgment or something similar formally delivered* in its favor to be considered 'prevailing.'"  *Citizens For Better Forestry v. U.S. Dep't of Agr.*, 567 F.3d 1128, 1131 (9th Cir. 2009) (emphasis added).  Indeed *Carbonell* acknowledges the distinction between an instrument, enforceable as a matter of *contract law* and one enforceable as a matter of *judicial oversight.*  429 F.3d at 901; *see also Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 381 (1994) (distinguishing between settlements followed by dismissal and settlements which have terms incorporated into court orders). As such, the *Carbonell* court held that when "a court incorporates the terms of a voluntary agreement into an order, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party"—because only then would a court have power to enforce the terms of the settlement directly, as opposed to via a separate breach-of-contract claim.  429 F.3d at 901. Here, when the settlement was signed, its terms were never incorporated into a court order that could be judicially enforced.  Instead, the parties agreed that *Plaintiffs* would simply file a stipulation of dismissal with prejudice.  Agr. ¶ 94.  The agreement does not create a consent decree or an otherwise enforceable court order.  Rather, it is a contract between two parties— and the agreement provides the precise terms of how the parties are to manage any disputes "regarding any alleged *breach* of this Agreement." *Id.* ¶ 91 (emphasis added).  The agreement does not have the requisite "judicial imprimatur" to render Plaintiffs prevailing parties.

In sum, where the defendant voluntarily provides the relief requested (as the Government has done here), a court should not automatically bestow prevailing party status on a plaintiff. "Holding otherwise would expose a backdoor through which [parties] could circumvent [the prevailing party rule] by obtaining attorney's fees for what are, in essence, 'catalyst theory' cases." *Rice Servs. Ltd. v. United States*, 405 F.3d 1017, 1028 (Fed. Cir. 2005); *see Smith v. Fitchburg Pub. Schs.*, 401 F.3d 16, 27 (1st Cir. 2005).  After all, the Supreme Court eliminated the catalyst theory as the basis for fee awards. *Buckhannon*, 532 U.S. at 605; *Bennett v. Yoshina*, 259 F.3d 1097, 1099 (9th Cir. 2001).  Indeed, Plaintiffs' argument amounts to an

impermissible catalyst approach—"but for" filing a complaint, the result here would not have been obtained.  But, even so, that suggestion still fails: the counterfactual may well have ended with the same result.  Plaintiffs never reached out to DEA, communicated with DEA, or applied through the Guidance process designed to address the exact factual scenario facing them.  Had they taken that path, the parties could have reached the same outcome without litigation.  This Court should reject an invitation to transform a complaint into paycheck.

## 2. The Government's Positions Were Substantially Justified, an Award Would Be Unjust, and Costs Should Not Be Awarded.

Plaintiffs' make a demand for costs under EAJA.  Pls.' Mem. 3.  Costs should only be awarded, even if Plaintiffs were prevailing parties, if the Government's positions—broadly, defending DEA and CBP's roles in enforcement of the CSA—were not "substantially justified" and if there are no "special circumstances [that] make an award unjust." 28 U.S.C. 2412(d)(1)(A). "Substantial justification" means that "the government's position must have a reasonable basis in law and fact." *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998).  It does not mean "'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  Furthermore, "a position can be justified even though it is not correct" as long as "a reasonable person could think it correct." *Pierce*, 487 U.S. at 566 n.2.

### a. The Government's Positions Were Substantially Justified.

Defendants took reasonable positions throughout this case.  *See De Allende v. Baker*, 891 F.2d 7, 12 (1st Cir. 1989) ("While the burden of proof is upon the government to demonstrate that its position was substantially justified, it need only do so by a preponderance of the evidence.").  Plaintiffs claim that "it was unjustifiable for the government to file a motion to dismiss and to continue to litigate CEC's RFRA claim after losing the motion." Pls.' Mem. 5.  But the Government prevailed on numerous issues raised in its motion to dismiss, and, as to the RFRA claim, the Government certainly did not argue that "the sacramental use of [ayahuasca] was not exempt from the [CSA]" entirely as Plaintiffs' suggest. *Id.*  Rather, the

Government argued that Plaintiffs had not established standing and had not exhausted their administrative remedies before filing. *See* Dkt. 23; *see, e.g.*, *Aronov v. Napolitano*, 562 F.3d 84, 94 (1st Cir. 2009) (en banc) ("[T]he position of a government agency can be substantially justified even if a court ultimately determines the agency's reading of the law was not correct.").  And following motion practice, after only the first round of written discovery when DEA received the information it would have needed to make a determination on an exemption as to these Plaintiffs, the Government shifted to a cooperative posture and worked to seek a mutual resolution (and thereby save judicial and party resources), rather than continuing to litigate. The Government's "willingness to settle the[] [RFRA] issue[] serves as an example of the proper use of the fruits of discovery." *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 599 (1997); *cf. Pierce*, 487 U.S. at 568 (explaining that the Government's willingness to settle or concede issues does not establish that its litigation position lacked substantial justification). The Government's positions were eminently reasonable throughout.

> b.    *Special Circumstances Would Make an Award Unjust.*

In addition, an award in this case would be unjust. 28 U.S.C. § 2412(d)(1)(A).  The outcome here came to fruition not because of Plaintiffs' work in the litigation, but rather through a sensible process of engagement between DEA and Plaintiffs that approximated the available administrative process that Plaintiffs eschewed by litigating.  In fact, if Plaintiffs had followed the administrative process and submitted a petition for a religious exemption under the Guidance—or perhaps even if Plaintiffs had sent an ordinary demand letter explaining the facts underlying their claim as is the norm in civil litigation—the same result very likely could have been obtained, without Plaintiffs expending substantial judicial and Government resources in the process.  This Court found at the motion to dismiss stage that there was no administrative exhaustion *requirement* for Plaintiffs to seek relief through the Guidance process—but to now *award* Plaintiffs fees for circumventing it and reaching the same outcome would be manifestly unjust.  Not only that, but it would encourage an onslaught of RFRA cases in the hopes that even a settlement in Plaintiffs' favor would result in a payday.

> c.    *Many of the Requested Costs Are Not Recoverable.*

9

Pursuant to Fed. R. Civ. P. 54(d)(1), "costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law." Here, Plaintiffs seek costs under EAJA. 28 U.S.C. § 2412. They are only entitled to costs under EAJA if the Court finds that they are prevailing parties and that the Government's position was not substantially justified. Contrary to Plaintiffs' bold assertion (without citation) that an award of costs is "mandatory," Pls.' Mem. 3, an award of costs against the United States is not automatic even then: "[f]ar from a presumption in favor of costs, [28 U.S.C. § 2421(a)] grants a trial court full discretion to award or refrain from awarding costs to a prevailing party." *Neal & Co. v. United States*, 121 F.3d 683, 687 (Fed. Cir. 1997); *see, e.g., Perez v. Seafood Peddler of San Rafael, Inc.*, 2015 WL 10939192, at *6 (N.D. Cal. Jan. 16, 2015) (exercising discretion to decline to award costs against the Government under EAJA); *La Loma Grande LLC v. United States,* 2017 WL 6061610, at *3 (D. Ariz. Mar. 7, 2017), *aff'd*, 742 F. App'x 288 (9th Cir. 2018). ("The party seeking costs bears the burden of establishing that individual itemized costs are properly taxable," and the court may "reduce costs due to inadequate documentation, and it has discretion to award partial costs or to deny costs altogether").

Much of Plaintiffs' requested costs—including, and particularly, those incurred by expert witnesses—are not reasonable nor recoverable under EAJA. The definition of "fees and other expenses" in EAJA "includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). However, the statute caps the amount that may be recovered for expert witnesses: "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States." *Id.* § 2412(d)(A)(i). Federal courts typically construe this cap on fees for expert witnesses literally. In the event that the Government paid no experts, then the court may award "no expert fees" to plaintiffs altogether. *Olympic Marine Servs., Inc. v. United States*, 792 F. Supp. 461, 471 n.19 (E.D. Va. 1992).

Such is the case here: the Government never reached the point of compensating experts in this matter. Barcia Decl. § III. Although the Government was in the process of

researching and retaining experts at the time when the parties agreed to pause discovery, no expert ultimately worked on this case or was compensated. *Id.* That is not surprising, as the parties had not conducted any depositions, and the beginning of expert discovery was still many months away. By contrast, Plaintiffs' expert work—which appeared to commence as early as September 2021, *i.e.*, well before disclosure of expert witnesses in May 2024, and well before even the Complaint was filed in June 2022—was unreasonable, excessive, and disproportionate to the needs of the case. Plaintiffs' expert costs are not compensable, particularly when the Government expended none; that asymmetry is contrary to EAJA. If the Court were to award costs at all, then Plaintiffs' should recover only a limited amount as itemized herein. Barcia Decl. § III; Ex C.

### 3.    Plaintiffs' Requested Lodestar Is Unreasonable.

Regardless of the Court's determination of the previous factors, Plaintiffs' demand for fees and costs is patently unreasonable and should be dramatically reduced. In determining what constitutes a reasonable attorneys' fee, a court's first step is to calculate a "lodestar," *i.e.*, multiplying the number of hours it finds the prevailing party expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *INS v. Jean*, 496 U.S. 154, 161 (1990). "[I]t is well established a court has discretion to adjust the lodestar upward or downward." *Whitaker v. SMB Grp.*, 2023 WL 5842311, at *1 (9th Cir. Sept. 11, 2023). Here, Plaintiffs' exorbitant lodestar is unreasonable primarily because (1) the hours expended and now demanded are not remotely proportionate or reasonable to the needs of the case, or not compensable at all; and (2) the requested billing rates are not reasonable.

#### a.    *The Number of Hours Expended Were Not Reasonable or Compensable.*

The number of hours expended here are objectively unreasonable, and often not compensable, and Plaintiffs have made no effort to cull through their bills and identify what billing entries are appropriate to include in a fee demand. *See Hensley*, 461 U.S. at 424 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."). But here Plaintiffs take the entirety of their billing records (revealing vast inefficiencies, excesses, duplicative work, and poor

litigation judgment) and unfairly seek to pass that expenditure onto the Governments.

As to the records themselves, Courts routinely exclude from fee calculations "hours that were not reasonably expended." *Hensley*, 461 U.S. at 434.  The law demands that the party seeking fees must also exercise at least some billing judgment, and, for example, "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*; *see, e.g.*, *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (denying compensation for duplicative billing); *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (remanding for more detailed findings regarding hours "reasonably expended").  Here, Plaintiffs' counsel have taken a universal approach and have seemingly passed along their entire billing records.  As such, the records are replete with billing for many sorts of tasks that should not be sought in a fee demand.

Defendants done the work Plaintiffs refused: a line-by-line accounting of the bills, distilling the entries into the ones for which it would be reasonable to seek compensation. This accounting is provided as Exhibit B, attached to the Barcia Declaration submitted herewith.  As set forth therein, Defendants exclude the following categories of work:

- Extensive pre-litigation work—activities beyond researching theory of the case and developing the complaint.  *See, e.g.*, *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985) (distinguishing between non-compensable pre-litigation work and "the drafting of the initial pleadings and the work associated with the development of the theory of the case")
- Multiple attorneys billing at high rates—at times duplicatively—for basic tasks.  *See, e.g.*, *New Jersey v. EPA*, 703 F.3d 110, 114-15 (D.C. Cir. 2012) (finding fee request "patently excessive" where partners' rates were used for tasks typically performed by associates).
- Cross-litigation coordination in other ayahuasca cases.  *See, e.g.*, *Lundin v. Mecham*, 980 F.2d 1450, 1461 (D.C. Cir. 1992) (explaining that a party may not obtain fees for work in other litigation even if the cases are related).
- Meetings with potential experts more than a year before expert discovery commenced, and even before the complaint was filed.  *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113-14 (9th Cir. 2008) (explaining that interviews and investigations performed but ultimately used may be reduced when time spent in such activities is unreasonable); *Okla. Aerotronics v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (disallowing claims for "excessive, redundant, or otherwise *unnecessary charges*" (emphasis added)).
- Non-litigation tasks including attending psychedelic substance conferences

and coordinating public relations strategy. *Prison Legal News v. Ryan*, 2024 WL 1195548, at *7 (D. Ariz. Mar. 20, 2024) (rejecting fees for press activities as not "directly and intimately related to the successful representation").

- Block-billed entries where multiple tasks are included in a single entry, "which can mak[e] it impossible to evaluate their reasonableness," and, as a result of which, "courts often reduce fee awards." *Bloomgarden v. Dep't of Justice*, 253 F. Supp. 3d 166, 179 (D.D.C. 2017).

- Vague entries or entries for unrelated matters, where the specific task or connection to the case is not immediately discernable. *See Role Models Am., Inc., v. Brownlee*, 353 F.3d 962, 973-74 (D.C. Cir. 2004) ("A fixed reduction is appropriate given the large number of entries that suffer from one or more of the deficiencies . . . .").

Barcia Decl. Section I.B; Ex. B. More broadly, it is not reasonable to seek fees for the hours worked during a period of agreed-upon pause of discovery activities. That hold period began when the Court entered the relevant Order on October 17, 2023, Dkt. 41-42, and ran until February 19, 2024, Dkt. 46 ("February 19, 2024, the end of the parties' agreed-upon pause of discovery activities."). It appears that Plaintiffs engaged in discovery activities of their own accord during that time to gain a litigation advantage. But given the agreed-upon hold on discovery, the Government is not responsible for the fees and expenses incurred during that time period. To that end, all hours expended on discovery activities during the discovery hold period should be excluded from any fee award. Barcia Decl. Barcia Decl., Ex. B.

Last, it is not reasonable to seek fees for time expended on the fee petition. The question whether fees should be awarded runs together with the merits. *Atkins*, 154 F.3d at 988-89; *see Thomas v. Gomez*, 45 F.3d 1365, 1367-68 (9th Cir. 1995) (finding that *Hensley* "applies to requests for fees-on-fees" and affirming "decision not to award fees-on-fees for time spent pursuing unsuccessful merits fees demands"). The time Plaintiffs expended on fee litigation—particularly given its unreasonableness—is not compensable. Barcia Decl., Ex. B.

For these reasons, then, the number of hours used to calculate the lodestar should be reduced. *See* Barcia Decl. § I.B.; *id.* Ex. B.

> b.      *The Requested Rates Are Not Appropriate or Reasonable.*

Plaintiffs' requested billing rates are unreasonably exorbitant, and this Court should reduce them. *See* Carrasco Decl. ¶ 34 ($895); Silver Decl. ¶ 57 ($875); McAllister Decl. ¶ 32

($750); Hartney Decl. ¶ 38 ($675); Ali Decl. ¶ 42 ($550).  The reasonableness of those rates depends on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  "The relevant community for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds." *Innovative Sports Mgmt. Inc. v. Singh*, 2020 WL 3574582, at *2 (D. Ariz. July 1, 2020).  Plaintiffs bear the burden to show that "the requested hourly rates are reasonable as applied to the Phoenix legal market." *Id.*

But Plaintiffs skip over Phoenix altogether and argue that using their higher out-of-forum rates should apply.  According to Plaintiffs' own cited case, "rates outside the forum may be used if local counsel was unavailable, either because they were unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" Pls.' Mem. 10 (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  And here Plaintiffs claim they could not identify a single "attorney in the State of Arizona whom they felt was sufficiently qualified to handle their RFRA case and take it on contingency" after contacting. ten civil rights' firms in Arizona.  Pls.' Mem. 10. That representation is supported by one source, the declaration of Ms. Ellen Osuna.  Silver Decl., Ex. A.  The reliance is perplexing as Ms. Osuna is a legal assistant for Mr. Silver, and the basis for the declaration is that she "was asked by Mr. Silver to contact the ten (10) largest civil rights firms in the State of Arizona." *Id.* ¶¶ 1, 3.  She does not provide the date Mr. Silver made that request, but clearly it was *after* he came on board.  *Id.*  But that sort of after-the-fact survey is irrelevant[4]:  Plaintiffs must have actually sought the counsel in-state counsel *before* retaining out-of-state counsel like Mr. Silver.  Instead the more relevant facts appear in the bills for Mr. McAllister, who with Ms. Hartney, appear to be the earliest counsel involved in this litigation.  Before the current litigation team of five came to be in September 20201, Mr. McAllister searched for co-counsel and logged conversations about potential co-representation with only three others, two of which are out-of-state:  Andrew Kline at Perkins

_____

[4] Regardless, Ms. Osuna's post-hoc survey is inconclusive: she did "not receive[] a return call" from 9 out of 10 firms after leaving messages (often with receptionists). Osuna Decl. ¶ 1, 3.

Coie (Colorado); Shane Pennington Porter Wright Morris & Arthur LLP (Washington, D.C.), and "AZ law clinic." *Id.*   Plaintiffs' assertion that there was no available counsel in Arizona, then, strains credulity and lacks support—and Arizona rates should apply.

The Arizona Bar reports that the average hourly rate for a lawyer in the state is $350—and even lawyers with more than 30 years' experience on average do not bill more than $395.[5] Accordingly, this Court has routinely found hourly rates below $395 reasonable.[6]  *See, e.g.*, *Thompson v. Ariz. Movers & Storage Inc.*, 2018 WL 2416187, at *2 (D. Ariz. May 29, 2018) (finding $325 and $300 rates reasonable); *Coe v. Hirsch*, 2022 WL 508841, at *1 (D. Ariz. Jan. 21, 2022) (finding a $378.75 rate reasonable "[g]iven the complexity" of the issues); *G&G Closed Cir. Events LLC v. Carbajal*, 2020 WL 6699485, at *2 (D. Ariz. Nov. 13, 2020) (finding $110 rate for "research attorney" reasonable).  Where requested rates do not reflect that market rate, this Court routinely reduces them.  *See, e.g.*, *Audra Grabda v. IMS Acquisition LLC*, 2020 WL 6680378 at *1 (D. Ariz. Nov. 12, 2020) (reducing rate from $395 to $325); *Xalamihua v. GGC Legacy Janitorial Servs.*, 2024 WL 942101, at *2 (D. Ariz. Mar. 5, 2024) (reducing rate from $445 to $395 to bring "in line with the prevailing market rate in this community"); *Baldwin v. D'Andrea*, 2014 WL 11820245, at *3 (D. Ariz. July 24, 2014) (reducing rate of top civil rights litigator (95th percentile) from $525 to $350).  To that end, Defendants' request that the Court apply the average rates in Arizona according to each attorneys' years' of experience—$395 for Jack Silver and Gil Carrasco, $389 for Sean McAllister, $340 for Martha Hartney, and $327 for Ismail Ali—to calculate the lodestar.  *See* Rose, *supra* note 5, at 15; *see also* Barcia Decl. § I.C.

*       *       *

For the reasons stated, Plaintiffs are not entitled to *any* fees or costs for the RFRA claim.  If the Court were to decide that an award for fees and costs is appropriate, then the Court should calculate the lodestar for the RFRA claim using: (1) reduced hours and (2) adjusted rates.  Barcia Decl., Ex. A.  Therefore, the adjusted RFRA fee amount should

---

[5] Carol Rose, Ariz. Lawyers Rep. on Economics of Practice, Ariz. Att'y, Dec. 2022, at 14, 15.

[6] For comparison, the Ninth Circuit uses $244.62 (2023) and $234.95 (2022) as adjusted hourly rates for EAJA cases. *See* https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates.

constitute no more than $399,443.10.  *See* Barcia Decl. § I.A; Ex. A.  In addition, any potential awarded costs or other expenses should not exceed $6,168.27, *See* Barcia Decl. § III; Ex. A

**B.      Plaintiffs Should Not Receive an Award Stemming from the FOIA Claims.**

The Freedom of Information Act (FOIA) provides for "reasonable attorney fees and other litigation costs reasonably incurred" where a Plaintiff "has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  Whether such an award "is proper depends on a two-step inquiry of (1) eligibility and (2) entitlement." *Env't Integrity Project v. Env't Prot. Agency*, 316 F. Supp. 3d 320, 325 (D.D.C. 2018).  To satisfy the eligibility prong, a plaintiff must have "substantially prevailed" and thus 'may' receive fees." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011).  "If so," a court then "proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.*  And after considering eligibility and entitlement, district courts may still in their discretion "modify a fee award based on the reasonableness of the request and the particular facts of the case." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016) (Jackson, J.).

**1.      Plaintiffs Are Ineligible and Not Entitled as to CBP FOIA Claim.**

*a. Eligibility*.  A FOIA plaintiff is eligible for fees only if "it has substantially prevailed on the merits of its claim." *Judicial Watch, Inc., v. Dep't of Comm.*, 470 F.3d 363, 368 (D.C. Cir. 2006); *see* 5 U.S.C. § 552(a)(4)(E)(i).  A plaintiff "has substantially prevailed" within the meaning of FOIA if it "obtained relief through either" (1) "a judicial order, or an enforceable written agreement or consent decree" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  "[A] plaintiff can prove fee eligibility" under the catalyst theory "by showing that its lawsuit substantially caused the government to release the requested documents before final judgment." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020).  However, "the mere filing of the complaint and the subsequent release of the documents is insufficient," to establish causation. *Id.* at 97.  In sum, "a FOIA plaintiff must show that its lawsuit caused a change in the agency's position regarding the production of requested documents." *Id.* at 98.

Plaintiffs cannot make such a showing here. The instant dispute is, instead, over an

16

item *not* included in Plaintiffs' initial FOIA request: the Seized Asset Management and Enforcement Procedures Handbook (SAMEPH),[7] which is a lengthy partially redacted public documents that Defendants referenced in their FOIA response to Plaintiffs. *See* Barcia Decl. § II.; Ex. D, at 7.  But Plaintiffs' brief claims:

> Initially, the CBP asserted several exemptions to justify the redaction of the SAMHSA document.  Following initiation of the litigation, the CBP released to Plaintiffs a less redacted version of the SAMHSA document, thus acknowledging its prior redactions were not justified by law.  Prior to filing this action, the CBP made clear that its prior disclosure of the SAMHSA document was final, and no further redaction would be removed.

Pls.' Mem. 6-9.  But that misrepresents the actual sequence of events: CBP made clear to Plaintiffs that the redacted SAMEPH was already publicly available, and there was an inter-agency process already underway to lift redactions.  Barcia Decl. § II.; Ex. D.  As CBP first communicated to Plaintiffs, the re-redaction of the SAMEPH was occurring separate and apart from Plaintiffs' FOIA request, and certainly separate and apart from the subsequent lawsuit—indeed, the SAMEPH re-redaction responded to a different and earlier case.  *Id.* (explaining to Plaintiffs that multiple agencies had been re-redacting the document in response to *Milner v. Dep't of Navy*, 562 U.S. 562 (2011)).  That inter-agency process had been long underway, and had required significant time and resources due to the length and sensitivity of the document, and the number of stakeholders across different components of the Government.  Thus CBP had long planned to release the re-redacted record once it had cleared the inter-agency process, certainly "even without the [instant] lawsuit" brought by Plaintiffs. *Harvey v. Lynch*, 178 F. Supp. 3d 5, 7 (D.D.C. 2016), *aff'd* 2017 WL 4220323 (D.C. Cir. 2017) (per curiam); *see Conservation Force*, 160 F. Supp. 3d at 205 ("[N]o attorneys' fee award is due if, as it turns out, recourse to the judicial system was unnecessary.").  And indeed, when the re-redaction process was complete, CBP did not "release[] *to Plaintiffs* a less redacted version." Pls.' Mem. 6-7 (emphasis added).  Rather, CBP posted the re-redacted version to the digital

---

[7] https://www.cbp.gov/document/guidance/2011-seized-asset-management-and-enforcement-procedures-handbook (last visited May 14, 2024).  Plaintiffs identify the document as the "SAMHSA," *see* Pls.' Mem. 6-7, but refer to it as SAMEPH in the Complaint, Compl. ¶ 56.

public documents library – *i.e.*, CBP released the re-redacted version to all and sundry, not just Plaintiffs. *See supra* note 7; Barcia Decl. § II.; Ex. E. Thus, there is no "evidence—beyond temporal proximity—support[ing] the inference that [this] lawsuit caused the document release." *Conservation Force*, 160 F. Supp. 3d at 206. The mere fact that CBP released certain information it had redacted as part of its ongoing efforts in connection with another matter is not substantive relief giving rise to a "substantially prevail[ing]" party status.

  *b. Entitlement.* Plaintiffs have also not shown entitlement. "[A]t least four criteria" go to entitlement: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). No single factor is dispositive. *Id.* And "when the four factors point in different directions, the district court has very broad discretion [in deciding] how to balance the factors and whether to award or deny fees." *Morley v. Cent. Intel. Agency*, 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam). Here, much of the information in the document was already publicly accessible and therefore of minimal public value. *See Trotter v. Ctr. for Medicare & Medicaid Servs.*, 2022 WL 951377, at *4 (D.D.C. Mar. 30, 2022) ("[T]here is no public interest in releasing documents already provided to the public."). And as to the redactions ultimately lifted through a separate, inter-agency process, Plaintiffs were not involved in any negotiations, litigation, or otherwise relating to said process. Indeed, correspondence with CBP shows that when CBP offered to provide parts of the SAMPEH that had already been re-redacted but had not yet been publicly released, Plaintiffs failed to respond with any reasonable suggestions. Barcia Decl., Ex. D, at 9. Plaintiffs, then, are themselves wholly unconnected to any public benefit in the lifted redactions, and thus unlikely to carry their burden as to entitlement as well.

  **2. Plaintiffs Are Ineligible and Not Entitled as to DEA FOIA Claim.**

  Plaintiffs are not eligible or entitled to fees as to the FOIA claim against DEA either. In 2020 and 2021, DEA experienced significant agency-wide delays in the processing of FOIA requests due to logistical and administrative issues the pandemic caused. In an e-mail sent in response to Plaintiffs' status update request, DEA notified Plaintiffs of these significant

processing delays.  Barcia Decl. § II; Ex. F.  Plaintiffs filed the case the next year, and when it moved into discovery, the parties folded the FOIA request into discovery, as the FOIA and discovery requests were largely duplicative.  Here, Plaintiffs should not be awarded FOIA fees because DEA's delayed response to Plaintiffs' requests was caused by administrative burdens and unavoidable outside factors caused by COVID.  *See, e.g.*, *Hart v. HHS*, 676 F. Supp. 2d 846, 857 (D. Ariz. Dec. 18, 2009) (finding untimely response was due to administrative delay).

To the extent this Court is inclined, however, to award fees as to the DEA FOIA claim, Plaintiffs have provided no sum because no counsel, apart from Ms. Hartney, made any attempt to disaggregate work on the FOIA claim.  Hartrney Decl., Ex. A.  In any event, the Government made its best effort to identify billing entries that pertain to the DEA FOIA claim alone, despite potential for overlap, and any fee award should accordingly be limited to $16,370.75. Barcia Decl. § II; Ex. A, at 2.

## C.   A Lodestar Multiplier Is Inappropriate and Should Not Be Applied.

Plaintiffs request a 1.5 lodestar multiplier in this case, which this Court should squarely reject.  In the Ninth Circuit, courts use "the two-step 'lodestar method'" to determine an attorneys' fee award.  *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024).  "After calculating the lodestar figure," which is considered "presumptively reasonable," the court goes onto "the second step: considering whether to enhance the award based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)."  *Id.* Here, Plaintiffs address the *Kerr* factors at some length, Pls.' Mem. 7-11, shoehorning in additional arguments via declaration.  But those factors do not weigh in favor of multiplying the lodestar, as explained below:

(1)   *The time and labor required.  See supra* Section I.A.1.

(2)   *The novelty and difficulty of the questions involved.*  Plaintiffs' description of the questions at issue are neither fully accurate nor relevant to the analysis.  This is a case that included (1) briefing on a motion to dismiss, and (2) partial written fact discovery, lasting approximately between April and September 2023, when the parties entered into a settlement posture.  Plaintiffs cite the scientific studies produced in discovery as part of the difficulty of the case.  But the vast majority of Plaintiffs' expert work was conducted unreasonably far in advance, resulting

19

in unnecessary expenditures. *See* Barcia Decl., Ex. B. (The referenced "DEA[] treatise" is 33 pages long, 24 without references.) Moreover, Plaintiffs' statements on the motion to dismiss, claiming that the issues were novel, Pls.' Mem. 9, directly contradict their argument on substantial justification, claiming that the issues are so well-established and obvious that the Government was not justified in moving to dismiss the RFRA claim, *id.* at 5. Last, Plaintiffs' accusations that defense counsel's "obstructionist opposition . . . . unnecessarily, complicated and protracted Plaintiffs' work" is wholly misplaced and reveals just how out of step Plaintiffs' counsel have been, given that opposing counsel opened, structured, and shepherded the entire settlement process. Pls.' Mem. 9. *But see id.* 14 (describing "highly capable representation from main Justice").

(3)   *The skill requisite to perform the legal service properly. Infra* Factors 9-10.

(4)   *The preclusion of other employment by the attorney due to acceptance of the case.* Each lawyer makes a blanket statement, lacking proof, that this litigation precluded them from taking on "other employment." It is notable that Mr. Carrasco is currently *emeritus* at Willamette Law, having stepped down from his professorship in 2022. Dkt. 55-4 (Carrasco Decl., Ex. D at 1).

(5)   *The customary rate. Supra* Section I.A.1.b (providing customary rates for lawyers in this district including civil rights lawyers); *infra* Factor 10.

(6)   *Whether the fee is fixed or contingent.* The parties' representation agreement speaks for itself. Dkt. 51, Ex. C.

(7)   *Time limitations imposed by the client or the circumstances.* While Plaintiffs claim that "time in this case was of the essence," Plaintiffs never moved for a preliminary injunction or the like during the pendency of this case and continued importing and distributing ayahuasca to their members.

(8)   *The amount involved and the results obtained.* As detailed above, Plaintiffs' decision to seek relief through litigation was an unnecessary expenditure of time and resources—the same results could have been obtained, without litigation, had Plaintiffs applied for an exemption to the CSA with DEA.

(9)   *The experience, reputation, and ability of the attorneys.* Plaintiffs' counsel's declarations lay out their various credentials. But Plaintiffs have not demonstrated that these credentials justify billing substantially above the local rates in Arizona, particularly where two counsel do not appear to regularly practice as litigators. Carrasco Decl. (emeritus Willamette professor); Ali Decl. (working in policy for a pro-psychedelics non-profit). And while Mr. Silver is a practicing litigator, he often did not seem to be aware of many litigation norms. As discussed above,

*supra* p.1, he stalled the case for several months due to botched service. Another memorable source of protracted negotiation and consternation was Mr. Silver's repeated inability to understand the industry standard of producing documents in TIFF format (or seemingly to understand what a TIFF is). He was also frequently rude and openly defiant of opposing counsel. Indeed, billing records reveal that at least one Plaintiffs' counsel meeting specifically "address[ed] [the] poor tone with DOJ lawyer." McAllister Decl., Ex. A at 7.

(10) *The undesirability of the case.* The desirability of this case has not been tested or disproven, contrary to Plaintiffs' representation. *See supra* Section I.A.1.b. In addition, Defendants note that Plaintiffs sought potential representation by a single law clinic—but there are in fact many law clinics that provide high-quality representation at no cost *specifically* for religious liberty cases.[8]

(11) *The nature and length of the professional relationship with the client.* Defendants do not dispute Plaintiffs' counsel statements about their client relationships.

(12) *Awards in similar cases.* The UDV and CHLQ fee awards illustrate why Plaintiffs' demand is egregiously improper. Pls.' Mem. 11. UDV was appealed to the Tenth Circuit and the Supreme Court; it was a first-of-its-kind settlement, involved a merits decision against the Government, and involved vacating an active injunction against the United States. In CHLQ, the district court crafted an injunction after a full trial, which the Government appealed and narrowed through eventual vacatur by the Ninth Circuit and subsequent negotiation. And subsequent litigation regarding fees went through the district court and back to the Ninth Circuit. This case, which did not even complete written discovery, let alone full fact or expert discovery, is not remotely similarly situated.

Thus, while a couple factors may modestly favor plaintiffs (Factors 6 and 11), the rest run against them. To that end, no multiplier is warranted in this case, which was resolved soon after discovery began.

That Plaintiffs are not justified to an enhancement under the *Kerr* factors is consistent with prevailing federal law, as lodestar multipliers are rarely applied, and only appropriate in the "'rare' and 'exceptional'" case in which superior results are achieved because of the

---

[8] *See, e.g.,* Yale Law School's Free Exercise Clinic, https://law.yale.edu/studying-law-yale/clinical-and-experiential-learning/our-clinics/free-exercise-clinic; Harvard Law School's Religious Freedom Clinic, https://hls.harvard.edu/clinics/in-house-clinics/religious-freedom-clinic/; Stanford Law School's Religious Liberty Clinic, https://law.stanford.edu/religious-liberty-clinic/; The University of Texas School of Law's Law and Religious Clinic, https://law.utexas.edu/clinics/law-and-religion/.

"superior" quality of the attorney's performance. *Perdue v Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  Courts have determined that such enhancements are appropriate where they are "necessary to provide fair and reasonable compensation" and where "the lodestar fee would not have been 'adequate to attract competent counsel.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 901 (1984)).  This is not the case here.

To begin, no enhancement is warranted here because groups seeking religious exemptions relating to ayahuasca, like Plaintiffs, appear to have little difficulty retaining counsel, based on the numerous lawsuits filed concerning this subject.  Nor would an enhancement be required to provide "fair and reasonable compensation" to counsel when this straightforward settlement was obtained not because of exceptional advocacy, but predominantly because of the Government's *response* to the basic information provided by Plaintiffs in response to Defendants' first set of interrogatories.  Here, Plaintiffs' counsel— after having many of their claims dismissed by the Court—continued to litigate this case instead of working with Defendants to obtain a CSA exemption.  Defendants, in turn, treated Plaintiffs' verified interrogatory responses as a substitute for the information that would have been provided to DEA had Plaintiffs sought an exemption through the administrative process.  In other words, the settlement was obtained because DEA assessed and confirmed Plaintiffs' eligibility for registration through informal questioning and an inspection—in substantially the same manner had it would have for any other candidate who applied for a religious exemption pursuant to DEA Guidance.  Indeed, had DEA determined that Plaintiffs were ineligible for an exemption, the case would have been carried through discovery and into trial.

Plaintiffs' contentions in support of their proposed lodestar multiplier lack any basis in law or fact.  As an initial matter, Plaintiffs cite no such exceptional case in which courts in this district have applied such a multiplier; and they certainly cite no RFRA case.  Pls.' Mem. 13-14.  To the contrary, this Court has declined to apply a multiplier precisely when, as here, there is no way "to determine to what extent . . . counsels' efforts actually contributed to the" ultimate outcome, even when issues were "novel and complex" and when counsel "assum[ed] the representation on a contingency basis."  *Facciola v. Greenberg Traurig LLP*, 2012 WL

4711894, at *3 (D. Ariz. Oct. 3, 2012) ("[W]e do not believe that these factors alone warrant an enhancement of fees over those actually incurred.").

Plaintiffs claim that the results they achieved are "truly exceptional." But as explained above, a grant of registration—the outcome obtained here—could have been achieved through DEA's administrative process. Nor can Plaintiffs claim that this "exceptional" result will "have profound impacts on all religious organizations seeking an exemption under the CSA." Pls.' Mem. 14. Not only does RFRA require an individualized analysis that cannot be easily imputed onto another religious adherent, but the negotiated settlement is detailed, restrictive, and specific to Plaintiffs here.

Plaintiffs' claims of "numerous obstacles" fare no better. They point to only one specific example—analyzing and addressing "every issue and sub-issue" relating to every "conceivable defense" Defendants pleaded in their answer. Pls.' Mem. 14. But as with any lawsuit, counsel are expected to "analyze" the relevant issues in a case, including any potential defenses raised by the other side. That is not exceptional lawyering; that is competent lawyering. And again, it is difficult to understand what "obstacles" Plaintiffs faced, when the parties had not advanced beyond the preliminary rounds of written fact discovery. Plaintiffs also claim to be outmatched given the "vast resources of the federal government and highlight capable representation from main Justice," yet Plaintiffs had five lawyers enter an appearance in this matter billing hundreds of hours—while only one trial attorney from DOJ entered an appearance in this matter.

Thus, this Court should reject Plaintiffs' unjustified request for a lodestar multiplier.

## II.   CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion. To the extent this Court decides Plaintiffs are entitled to a reasonable award as to the RFRA claim, it should constitute no more than $399,443.10 in fees. If this Court finds that Plaintiffs are entitled to a limited award arising from work litigating Plaintiffs' FOIA claim against DEA, then it should award no more than $16,370.75. If this Court finds that Plaintiffs are entitled to an award of costs or limited expenses, then it award no more than $6,168.27.

Respectfully submitted this 1ˢᵗ day of July, 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Giselle Barcia*
GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jack Silver
Law Office of Jack Silver
708 Gravenstein Hwy N, Ste. 407
Sebastopol, CA 95472-2808
Tel.: 707-528-8175
Fax: 707-829-0934
E-mail: lhm28843@sbcglobal.net
E-mail: jsilverenvironmental@gmail.com

Gilbert Paul Carrasco
Willamette University College of Law
19431 Sunray Lane, Ste. 102
Huntington Beach, CA 92648-6401
Tel.: 714-698-8142
E-mail: carrasco@willamette.edu

Ismail L Ali
1530 Campus Dr.
Berkeley, CA 94708
Tel.: 559-801-7317
E-mail: lourido.ali@gmail.com

Martha J Hartney
Hartney Law LLC
4450 Arapahoe Ave.
Boulder, CO 80303
Tel.: 303-747-3909
Fax: 303-835-7199
E-mail: martha@hartneylaw.com

Sean T McAllister
McAllister Law Office PC
4035 E 3rd Ave.
Denver, CO 80220
Tel.: 720-448-6235
E-mail: sean@mcallisterlawoffice.com

25

1

_s/ Giselle Barcia_
     GISELLE BARCIA
2    Trial Attorney
     Civil Division, Federal Programs Branch
3    U.S. Department of Justice

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28