1
2
3
4
5
6

Jack Silver, *pro hac vice*
Law Office of Jack Silver
California State Bar No. 60575
708 Gravenstein Hwy North, Suite 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
(707) 528-8175
(707) 829-0934 (fax)

7
8

*Attorneys for Plaintiffs*
*[Additional counsel listed on signature page]*

9
10
11

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

12
13
14
15
16
17

The Church of the Eagle and the Condor, *et al.,*

                Plaintiffs,

     v.

Merrick Garland, *et al.,*

                Defendants.

Case No. 2:22-cv-01004-PHX-SRB

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES [Doc 51]**

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Pursuant to Ninth Circuit Law, Plaintiffs are a Prevailing Party ........................................ 1

Fees Pursuant to 42 U.S.C. § 1988 are "Appropriate Relief" ............................................ 5

Costs, Including Paralegal Fees, are also Available under 42 U.S.C. § 1988   ................. 6

Defendants have not Met Their Burden to Show They Were Substantially Justified - Plaintiffs are Entitled to their Costs, Including Expert Fees, under the EAJA ................. 6

Plaintiffs are Eligible and Entitled to Fees from the DEA and CBP under FOIA ............. 8

It is Defendants' Burden to Prove that the Hours Expended were Unnecessary .............. 10

Plaintiffs' Suit against the Government was Their Only Basis for Receiving Relief ....... 11

Defendants' Self-Serving Exclusions are not Supported by Law .................................... 12

Pre-Filing Activities Were Reasonable and Necessary to Develop the Case Prior to Filing  ............................................................................................................................. 12

Working with Consulting and Testifying Experts was Reasonable and Necessary ......... 13

There was no Court Order Preventing Plaintiffs from Pretrial Work .............................. 13

Non-forum Rates are Reasonable Given the Lack of Experienced Local Counsel .......... 14

Conclusion ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Disability Ass'n, Inc. v. Chmielarz*,
289 F.3d 1315 (11th Cir. 2002)......................................................................2

*Arizona Yagé Assembly v. Garland*,
Case 2:20-cv-02373-ROS (Dist. of AZ) ........................................................8

*Ashburn v. United States*,
577 F. Supp. 59 (N.D. Ala. 1983) ................................................................ 13

*Barrios v. Cal. Interscholastic Fed'n*,
277 F.3d 1128 (9th Cir. 2002) ............................................................... 1,3,4

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
532 U.S. 598 (2001)                                                               1,2,3,4

*Carbonell v. INS.*,
429 F.3d 894 (9th Cir. 2005)..........................................................................1

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986).......................................................................6

*Chrapliwy v. Uniroyal, Inc.*,
670 F.2d 760 (7th Cir. 1982)....................................................................... 15

*Church of the Holy Light of the Queen v. Holder* (*Santo Daime* case)*,
584 Fed. Appx. 457 (9th Cir. 2014) ..................................................... 6,10,11,15

*Davis v. City and County of San Francisco*,
976 F.2d 1536 (9th Cir. 1992)............................................................... 6,10

*Dowdell v. City of Apopka, Fla.*,
698 F.2d 1181 (11th Cir. 1983) ................................................................... 13

*Edwards v. Rogowski*,
2009 U.S. Dist. LEXIS 22106 (N.D. Ill. March 18, 2009) ........................... 13

*Evans v. Jeff D.*,
475 U.S. 717 (1986)........................................................................................5

ii

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .......................................................................................3

*Fenster v. Brown*,
  671 F.2d 740 (D.C. Cir. 1979) ......................................................................8

*Fischer v. SJB P.D., Inc.*,
  214 F.3d 1115 (9th Cir. 2000)......................................................................1,3

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992)....................................................................10,14

*Gonzales v. O Centro Espirita Beneficente União Do Vegetal*
  546 U.S. 418 (2006) .......................................................................................8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .....................................................................................12

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
   912 F.3d 1147 (9th Cir. 2019).......................................................................7

*International Woodworkers, Local 3-98 v. Donovan*,
  792 F.2d 762 (9th Cir. 1986)..........................................................................7

*Kokkonen v. Guardian Insurance Company of America*,
  511 U.S. 375 (1994) .....................................................................................2,4

*Lopez-Valenzuela v. Maricopa County*,
  2015 U.S. Dist. LEXIS 183177  ...............................................................14,fn8

*Louisville Black Officers Org., Inc. v. Louisville*,
  700 F.2d 268 (6th Cir. 1983).........................................................................15

*Maceira v. Pagan*,
  698 F.2d 38 (1st Cir. 1983) ...........................................................................15

*McDonald v. Armontrout*,
  860 F.2d 1456 (8th Cir. 1988)........................................................................15

*Milner v. Dept. of the Navy*,
  562 U.S. 564 (2011).........................................................................................9

1    *Missouri v. Jenkins*,

2    491 U.S. 274 (1989) ................................................................6

3    *Moreno v. City of Sacramento*,

4    534 F.3d 1106 (9th Cir. 2008).............................................. 13

5    *National Wildlife Federation v. Hanson*,

6    859 F.2d 313 (4th Cir. 1988).............................................. 15

7    *Northern Cheyenne Tribe v. Jackson*,

8    433 F.3d 1083 (8th Cir. 2006)...............................................5

9    *O'Connor v. Colvin*,

10    70 F.3d 530 (9th Cir. 1995)...................................................4

11    *Oklevueha Native Am. Church of Haw., Inc. v. Holder*,

12    676 F.3d 829 (9th Cir. 2012)................................................7

13    *Olivera Native Am. Church of Haw., Inc. v. Holder*,

14    676 F.3d 829 (9th Cir. 2012)................................................8

15    *Ozinga v. Price*,

16    855 F.3d 730 (2017)...........................................................5,6

17    *Polk v. New York State Dept. of Correctional Servs.*,

18    722 F.2d 23 (2nd Cir.1983) ................................................ 15

19    *Pres. Coal. v. Fed. Transit Admin.*,

20    356 F.3d 444 (2nd Cir. 2004) ...............................................1

21    *Renee v. Duncan*,

22    686 F.3d 1002  (9th  Cir. 2012)..............................................6

23    *Richard S. v. Dep't of Developmental Servs.*,

24    317 F.3d 1080 (9th Cir. 2003)...........................................1,3

25    *Richlin v. Chertoff*,

26    553 U.S. 571 (2008) ............................................................6

27    *Smyth v. Rivero*,

28    282 F.3d 268 (4th Cir. 2002)...............................................2

*Sossamon v. Texas*,

   563 U. S. 277 (2011) ......................................................................... 5

*Soul Quest Church of Mother Earth, Inc. v. AG,*

   92 F.4th 953 (11th Cir 2023)........................................................ 11

*Spencer v. N.L.R.B.*,

   712 F.2d 539 (D.C. Cir. 1983) ......................................................... 7

*T.D. v. LaGrange Sch. Dist. No. 102*,

   349 F.3d 469 (7th Cir. 2003) ........................................................... 1

*Tanzin v. Tanvir*,

   592 U.S. 43 (2020) ........................................................................... 5

*Tipton-Whittingham v. City of L.A.*,

   316 F.3d 1058 (9th Cir. 2003) ........................................................ 1

*Tobeler v. Colvin*,

   749 F.3d 830 (9th  Cir. 2014)......................................................... 7

*Truesdell v. Phila. Hous. Auth.*,

   290 F.3d 159 (3rd  Cir. 2002) ......................................................... 1

*United States v. Marolf*,

   277 F.3d 1156 (9th Cir. 2002)........................................................ 8

*Watson v. County of Riverside*,

   300 F. 3d 1092 (9th Cir. 2002) ................................................... 1,4

*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*,

   471 U.S. 234 (1985) ...................................................................... 12

**Statutes**

28 U.S.C. § 2412(b) .............................................................................. 5

42 U.S.C. § 1988 ........................................................................... 5,6,15

42 U.S.C. § 1988(b) .......................................................................... 5,6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Pursuant to Ninth Circuit Law, Plaintiffs Are a Prevailing Party**

In *Carbonell v. INS*, 429 F.3d 894 (9th Cir. 2005),[1] the Ninth Circuit rejected as overly narrow defendants' interpretations of *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) and held, as it had on a number of occasions, that "judgments and consent decrees are examples . . . but they are not the only examples" of judicial action sufficient to convey prevailing party status. *Id.* at 898-901. See *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see also Tipton-Whittingham v. City of L.A.*, 316 F.3d 1058, 1062 (9th Cir. 2003) (characterizing the examples of judgments on the merits and consent decrees as "illustrative, not exhaustive" of the types of relief that give rise to prevailing party status).

The Ninth Circuit has recognized that litigants who achieve relief through an enforceable settlement agreement are prevailing parties. *See Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1086 (9th Cir. 2003) (holding that it was "not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer*,[2] by which we are bound," and recognizing that a litigant prevailed when he entered into a legally enforceable settlement agreement, as the Plaintiffs have in this case); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (stating that a litigant can "prevail" as a result of judicial action in determining fees and costs, as is the case here.)

In fact, the Ninth Circuit is in agreement with the vast majority of other circuits that have considered this issue since *Buckhannon*. *See, e.g., Pres. Coal. v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2nd Cir. 2004) ("*Buckhannon* does not limit fee awards to enforceable judgments on the merits or to consent decrees"); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003) ("*Buckhannon* held that to be a 'prevailing party' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief"); *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165 (3d Cir.

---

[1] Defendants cite *Carbonell* with approval (Doc. 59, at p. 12, ln. 19).

[2] *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000).

1

2002) ("We do not agree with the District Court's conclusion that the parties' settlement was an inappropriate basis for an award of attorney's fees."); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) ("The district court interpreted *Buckhannon* to stand for the proposition that a plaintiff could be a 'prevailing party' only if it achieved one of those two results. That reading of *Buckhannon*, however, is overly narrow."); *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly.").

The question presented to the Supreme Court in *Buckhannon* was whether the term "prevailing party" included a party that achieved its desired result because its lawsuit brought about a voluntary change in the defendant's behavior prior to judicial resolution of plaintiff's claims. *Buckhannon*, at 600. The holding of *Buckhannon* must be read in light of the facts of that case. The plaintiff in *Buckhannon* was a nursing home that failed a fire inspection and subsequently sued the State of West Virginia on the grounds that the law setting forth the standard for fire inspections violated the Fair Housing Act Amendments of 1988 (FHAA), and the Americans With Disabilities Act of 1990 (ADA). *Buckhannon*, at 601. During the litigation, the West Virginia legislature repealed the law at issue, and the District Court dismissed the suit as moot. *Id*.

The plaintiffs in *Buckhannon* filed for attorney's fees under the fees provisions of the FHAA and the ADA, arguing they were a prevailing party under the "catalyst theory." The Supreme Court, over a vigorous dissent, rejected that argument and held that a defendant's "voluntary change in conduct" did not cause the "alteration in the legal relationship of the parties" required for "prevailing party" status. *Buckhannon*, at 605.

The facts of this case are completely different than those in *Buckhannon*. First, entering into a Settlement Agreement *did* alter the legal relationship of the parties in a real and substantial manner. See, e.g., *Kokkonen v. Guardian Insurance Company of America*, 511 U.S. 375 (1994) (recognizing breach of contract claim arising out of failure to comply with private settlement of federal lawsuit.). Thus, Plaintiffs satisfy the Supreme Court's

2

1    standard that, to qualify as a prevailing party, there must be an enforceable change in the

2    legal relationship, which is reflected by the parties' Settlement Agreement. (Doc. 51-2).

3    *See also Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (holding that, for purposes of the

4    prevailing party determination, "a material alteration of the legal relationship occurs

5    [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or *settlement*

6    against the defendant") (emphasis added).

7        Plaintiffs meet the two-part test set forth by the Supreme Court in *Buckhannon*.

8    Plaintiffs satisfy the first prong of the prevailing party test, which requires a material

9    alteration in the legal relationship between the parties, as a result of the parties' Settlement

10   Agreement. (Doc. 51-2). The Settlement Agreement between the parties "materially altered

11   the legal relationship between the parties, because the defendants were required to do

12   something directly benefitting the plaintiff that they otherwise would not have had to do."

13   *Richard S.*, at 1087; *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)

14   ("The legal relationship is altered because the plaintiff can force the defendant to do

15   something he otherwise would not have to do").  The Plaintiffs also meet the second prong

16   as to a prevailing party in that the Settlement Agreement contains a "judicial *imprimatur*,"

17   because this Court retains jurisdiction to enforce the Settlement Agreement and determine

18   fees and costs. (Doc. 51-2, Sections IX. ¶91.c., VII. ¶88).

19       In *Barrios*, the Ninth Circuit held that a plaintiff "prevails," and thus is entitled to

20   attorney's fees and costs, when the plaintiff enters into a legally enforceable settlement

21   agreement with the defendant. *Barrios,* at 1135. The Ninth Circuit concluded in *Barrios*

22   that its decision was unaffected by the Supreme Court's holding in *Buckhannon*. *Barrios*,

23   like the Plaintiffs here, did "not claim to be a 'prevailing party' simply by virtue of his

24   being a catalyst of policy change; rather, his settlement agreement affords him a legally

25   enforceable instrument, which under *Fischer*, makes him a 'prevailing party.'" *Id*.

26       The similarities between *Barrios* and the present case abound. The Ninth Circuit

27   noted in *Barrios* that: "Moreover, the parties, in their settlement, agreed that the district

28   court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient

judicial oversight to justify an award of attorneys' fees and costs." *Barrios,* at 1134, n. 5. Similarly, here the parties stipulated in the Settlement Agreement that this Court would retain jurisdiction to address any issue of attorneys' fees and costs that may be unresolved by the parties. (Doc. 51-2, Section VII. ¶88). This Court's retention of jurisdiction over the attorneys' fees issue, in and of itself, provides "sufficient judicial oversight to justify an award of attorneys' fees and costs." *Id.* Through their legally enforceable settlement agreement *and* this Court's retention of jurisdiction, Plaintiffs here obtained a "'judicial *imprimatur*' that alters the legal relationship of the parties," as required by *Buckhannon*. *See Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002).

The fact that a settlement agreement involves less oversight and approval than a court-ordered consent decree is immaterial as to whether that settlement agreement is legally enforceable by a court. *See Kokkonen*, 511 U.S. 375 (difference between settlement approved pursuant to Federal Rule of Civil Procedure 41(a)(2) and private settlement is whether breach of contract claim arises in federal or state court). Plaintiffs required these two judicial *imprimaturs* to ensure the Defendants would be required, by an order from this Court, to pay fees and costs, and that this Court would retain jurisdiction to enforce the Settlement Agreement.

In *Kokkonen,* at 381, the Supreme Court held: "If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so" (emphasis in original). "Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal), we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree." *Id.* 381-2. The parties here have agreed that: "If the dispute is not resolved by the Parties through mediation, either Party may apply to the U.S. District Court for relief, which shall retain jurisdiction solely for this purpose." (Doc.51-2, Section IX. 91.c.). *See also O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (*citing Kokkonen*). Thus, when Plaintiffs file their dismissal, they will "embody the

settlement contract in their [proposed] dismissal order."

Finally, precluding the awarding of fees to plaintiffs who settle RFRA claims would undermine the purposes of the RFRA. The attorney's fees provision of § 1988 must be read in the context of RFRA. Because fees are available to settling parties under the RFRA *via* 42 U.S.C. § 1988 and following the Supreme Court's logic in *Evans v. Jeff D.*, 475 U.S. 717 (1986), any policy or practice that intentionally or vindictively denies fees to settling plaintiffs conflicts with that fee provision.

**Fees Pursuant to 42 U.S.C. § 1988 Are "Appropriate Relief"[3]**

In *Tanzin v. Tanvir*, 592 U.S. 43, 46-47 (2020) the Supreme Court determined that, under RFRA, "a person whose exercise of religion has been unlawfully burdened may 'obtain *appropriate relief* against a government,' 42 U.S.C. §2000bb-1(c)" (emphasis added). In *Tanzin*, relying on the Supreme Court's precedent and the RFRA's broad protections for religious liberty, the Court concluded that the open-ended phrase "appropriate relief" encompasses money damages against officials. *Tanzin,* at 49.  The Supreme Court held that, "because this language [in RFRA] is 'open-ended' on its face, what relief is "'appropriate'" is "'inherently context dependent.'" *Sossamon v. Texas*, 563 U. S. 277, 286, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011) (interpreting identical language)." *Tanzin* at 49.

In the context of suits against the Government, fees and costs have long been awarded as appropriate relief.  Forty-two U.S.C. § 1988(b) provides that, in an action brought to enforce rights under RFRA, the Court may award reasonable attorneys' fees to the prevailing party. 42 U.S.C. § 1988(b). *See Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006) ("Congress has granted district courts discretion to award attorneys' fees to a 'prevailing party' in an action to enforce RLUIPA [or RFRA] against the United States or its officials. See 42 U.S.C. § 1988(b); 28 U.S.C. § 2412(b)"; *Ozinga*

---

[3] Defendants admit that fees under RFRA would be pursuant to 42 U.S.C. § 1988 (Doc. 59, at p. 8, lns. 18-20).

*v. Price*, 855 F.3d 730, 736 (2017) ("Consequently, nothing prevents the district court from entering an appropriate award of fees to Ozinga pursuant to 42 U.S.C. § 1988(b)"); *Church of the Holy Light of the Queen v. Holder*, 584 Fed. Appx. 457, 459 (9th Cir. 2014) ("Section 1988(b) authorizes an award of attorney's fees to a prevailing party in an action brought to enforce the RFRA"); *Church of the Holy Light of the Queen v. Holder*, 2012 U.S. Dist. LEXIS 169267 *4 (D. Or.) (*quoting* the text of 42 U.S.C. § 1988(b), applicable to award of fees in plaintiffs' RFRA case.)

**Costs, Including Paralegal Fees, Are Also Available under 42 U.S.C. § 1988**

The Court in *Richlin v. Chertoff*, 553 U.S. 571, 580 (2008) held that, in addition to attorney fees, a plaintiff could recover paralegal fees ("Thus reasonable non-taxable expenses, in addition to taxable costs, are proper"). The *Richlin* Court stated that "a court 'may allow the prevailing party . . . a reasonable attorney's fee as part of the costs,' [under] 42 U.S.C. § 1988 finding it 'self-evident' that 'attorney's fee' embraced the fees of paralegals as well as attorneys" (*quoting Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)). This is consistent with *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1541-43 (9th Cir. 1992), that, under 42 U.S.C. § 1988, plaintiffs can also recover, as part of the award of attorney's fees, those out-of-pocket expenses, that, ". . . would normally be charged to a fee paying client. . . .Thus reasonable non-taxable expenses, in addition to taxable costs, are proper" (*quoting Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)).

**Defendants have not Met Their Burden to Show They Were Substantially Justified - Plaintiffs are Entitled to Their Costs, Including Expert Fees, under the EAJA[4]**

Courts have "interpreted the term 'substantial justification' as describing a position that has a reasonable basis both in law and fact." *Renee v. Duncan*, 686 F.3d 1002, 1017 (9th Cir. 2012). Plaintiffs are entitled to non-taxable costs, including expert fees, under the Equal Access to Justice Act ("EAJA"), as Defendants have failed to meet their burden that

---

[4] Plaintiffs seek only reimbursement of experts' fees pursuant to the EAJA, as fees and other non-taxable costs are provided for by 42 U.S.C. § 1988.

that they were substantially justified. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (*en banc*), *cert. denied*, 140 S. Ct. 424 (2019); *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). The actions of the Defendants that interfered with Plaintiffs' right to import and imbibe its sacrament during religious services were not substantially justified, thus forcing Plaintiffs to have to file suit. (See Plaintiffs' Fee Motion, Doc. 51, at p. 12, lns. 14-27.)

Changes of position by the DOJ demonstrate that the government's positions were not substantially justified, and that the DOJ should be held to a high standard to show that its legal arguments were substantially justified. "[W]hen the government acts inconsistently, and subsequently loses a civil suit challenging its behavior, *it should be obliged* to make an especially strong showing that its legal arguments were substantially justified in order to avoid liability for fees under the EAJA." *International Woodworkers, Local 3-98 v. Donovan*, 792 F.2d 762, 765 (9th Cir. 1986) (emphasis original) (*citing Spencer v. N.L.R.B.*, 712 F.2d 539, 561 (D.C. Cir.1983)). The DOJ's insistence that the Church of the Eagle and the Condor submit to the Guidance process is not substantially justified because no applicant has ever received an exemption from the CSA.

Defendants' litigation position in its Motion to Dismiss (Doc. 23) was not substantially justified in fact or law. Defendants argued that Plaintiffs suffered no injury-in-fact when there was a very real injury because the government seized and destroyed their sacrament. (Doc. 23, at p. 7. lns. 6-10). See *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012). Defendants claimed Plaintiffs had not stated a cause of action under RFRA, when it was clear they had. (Doc. 23, at p. 9, lns. 12-24). Defendants claimed Plaintiffs did not have either personal or associational standing, when in fact they did. (Doc. 23, at p. 8. lns. 5-22).

Defendants, in their Motion to Dismiss, tried to reframe Plaintiffs' case as one of failure to engage with DEA directly. (Doc. 23, at p. 10. lns. 25-27; p. 11, lns. 1-6). However, case law is clear that the government may not demand administrative exhaustion before seeking redress from the judiciary. This would include seeking to force claimants

into DEA's religious exemption process. *Gonzales v. O Centro Espiritu Beneficent Uñiao do Vegetal*, 546 U.S. 418, 434 (2006); *Olivera Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012); *Arizona Yagé Assembly v. Garland,* (D. Ariz.*,* Case 2:20-cv-02373-ROS). Doc. 183, at p. 9. Furthermore, even if the Guidance had the force of law, engaging the DEA was futile given the fact, as discussed herein, the DEA's Religious Exemptions Petition Process has yet to approve a single petition. Therefore, the only rational course of action for Plaintiffs was to sue the government to vindicate its religious rights. Even after suit was filed the Defendants made no effort to seek resolution but instead filed their motion to dismiss and propounded discovery.

An award of expert costs is still appropriate even where there is a finding that some aspects of the agency's position were substantially justified but the Court has determined the overall position was not. *United States v. Marolf*, 277 F.3d 1156, 1164 (9th Cir. 2002).

**Plaintiffs Are Eligible and Entitled to Fees from DEA and CBP under FOIA**

Plaintiffs' entitlement to fees and costs for their successful FOIA claim is addressed in Plaintiffs' Fee Motion (Doc. 51, at p. 13, lns. 21-28; p. 14, lns. 1-12). Plaintiffs obtained relief through the forced change in position by the DEA and CBP. In March, 2021, Plaintiffs made identical requests to the DEA and CBP consisting of six items each. Plaintiffs received no communication whatsoever from the DEA after its initial acknowledgment of receipt of the request. *See* **Exhibit B.**

One previously undisclosed document was produced by the DEA pursuant to discovery in this litigation, which is titled *Ayahuasca: Risks to Public Health and Safety* ("Risk Assessment"). This disclosure would not have occurred but for the filing of the lawsuit. There was a public benefit to this disclosure as Plaintiffs publicized this document through nonprofit organizations to educate the interested public as to how the DEA views *ayahuasca* and potential risks. This disclosure substantially added to the "fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 671 F.2d 740, 744 (D.C. Cir. 1979).

Plaintiffs obtained relief through the forced change in position by the CBP. Of Plaintiffs' six requests in its FOIA request, four referred to the CBP's *Seized Asset Manual and Enforcement Procedures Handbook* ("SAMEPH"). The CBP provided a 296-page document from 2002 that was nearly entirely redacted. This SAMEPH was useless to Plaintiffs and the public.  The overly redacted SAMEPH document was inconsistent with the holding in *Milner v. Dept. of the Navy*, 562 U.S. 564 (2011), which narrowed FOIA exemptions to "records relating to employee relations and human relations issues." *Id.* at 579. The improper redactions in the SAMEPH's disclosures were: 1) Missing reference and authority redactions; 2) Missing time periods; and, 3) Missing case types. As a result of Plaintiffs' lawsuit, CBP finally released a SAMEPH document with the items identified by Plaintiffs unredacted.

Plaintiffs are eligible for an award of fees from DEA because the action was necessary to obtain the Risk Assessment document, and the litigation had a direct causal effect on delivery of the information. Plaintiffs are also entitled to an award of fees from DEA because there has been direct and substantial benefit to the public in the disclosure of the single significant release of a document showing a bias against a religious controlled substance; Plaintiffs have no commercial interest in this information; and, Plaintiffs' interest in this information is to provide the interested public with more information and to inform plaintiffs on whether to pursue litigation to vindicate their religious rights.

Plaintiffs are also eligible for an award of fees from CBP because the filing of the action hastened the delivery of the unredacted SAMEPH document, which had been withheld inconsistently with the holding in *Milner v. Dept. of the Navy*, 562 U.S. 564 (2011). Plaintiffs are entitled to an award of fees from the CBP because there has been direct and substantial benefit to the public in the revelation of bias against a religious controlled substance by this agency; the lack of a commercial interest in this information; the nature of Plaintiffs' public benefit and pre-litigation interests in this information; and, the government's unreasonable withholding of all information requested.

Fees under FOIA are awarded under the Open Government Act of 2007, not under the EAJA.  Plaintiffs assert that the entirety of the attorneys' fees requested for all labor relating to these FOIA requests are properly payable under 42 U.S.C. 1988(b) as necessary pre-litigation activities, as well as for an award of fees under FOIA and the Open Government Act of 2007.

**It is Defendants' Burden to Prove that the Hours Expended Were Unnecessary**

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The Ninth Circuit has reiterated, "[t]he touchstone in determining whether hours have been properly claimed is reasonableness. The assessment of reasonableness is made by reference to standards established in dealings between paying clients and the private bar." *Davis*, 976 F.2d at 1543.

No other religious organization since the *Santo Daime* case filed 16 years ago has succeeded in establishing the right to use *ayahuasca*, although many have tried. Under the DEA's Guidance Process, no applicant has ever received an accommodation from the CSA. And, finally, because of the DEA's Risk Assessment, to achieve success it was necessary for Plaintiffs to assemble a legal team capable of doing what no other religious organization since the successful *Santo Daime* case had done.  In the *Santo Daime* case, the Government refused to engage in any settlement process but instead forced the plaintiffs to go to trial. Plaintiffs here needed to anticipate and plan for any contingency.

Defendants cite no cases (because there is none) that define how a unique case like this one should be staffed or how early one should work with experts. It is noteworthy that no expert has provided opinions of this nature in the past 15 years.

Upon the filing of the Complaint in the action, Defendants' first act, as opposed to contacting Plaintiffs and showing any interest in resolution of Plaintiffs' claim, was to file a Motion to Dismiss. Such action was not only lacking in substantial justification, it also

indicated to Plaintiffs that, like in the *Santo Daime* case, Defendants had no interest in settlement and Plaintiffs should begin preparing for trial.  This indication was reinforced due to obstructionist opposition by Defendants' counsel as discussed in Plaintiffs' Fee Motion (Doc. 51, at p. 16, ln 16-25; Doc. 52, Decl. Silver, ¶76).

**Plaintiffs' Suit against the Government was their Only Basis for Receiving Relief**

Defendants disingenuously claim: "Plaintiffs never reached out to DEA, communicated with DEA, or applied through the Guidance process designed to address the exact factual scenario facing them. Had they taken that path, the parties could have reached the same outcome without litigation." (Doc. 59, at p. 14, lns. 3-6). Defendants' assertion is clearly erroneous given their own admission that no applicant under the DEA's Religious Exemption Petition Process has ever received an exemption from the CSA.  (*See* **Exhibit A,** DOJ responses to Interrogatories in *The Church of the Celestial Heart v. Garland*, Case No. 23-cv-545-SAB (E.D. Cal.). In Interrogatories #7 and #8 the DOJ admits that no appellant, going back to 2014, has ever received an exemption from the CSA.)[5] *See also*, *Soul Quest Church of Mother Earth, Inc. v. AG*, 92 F.4th 953, 960 (11th Cir 2023) ("After three years with no response from the DEA, Soul Quest filed a complaint against the DEA in federal district court and an accompanying motion seeking declaratory and injunctive relief"). *See* GAO report criticizing DEA's Religious Exemptions Petition Process https://www.gao.gov/products/gao-24-106630.

The very reason Plaintiffs herein filed suit was because it was apparent that the DEA's Religious Exemptions Petition Process would not have resulted in Plaintiffs' receiving an exemption from the CSA.  Instead, Plaintiffs filed their lawsuit and were able to achieve in two years what other organizations have not accomplished in ten. If the Government is so concerned about "taxpayer dollars" (Doc. 59, at p. 7, ln. 2) or providing "skewed incentives to litigants with barely colorable claims under the Religious Freedom

---

[5] The exemption is not from the CSA as a whole, but only an exemption from the restrictions on the use of a Schedule I substance.  As can be seen from the Settlement Agreement (Doc. 51-2), Plaintiffs are required to comply with several sections of the CSA.

Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(b)" (Doc. 59, at p. 8 lns. 8-9) it should expedite settlement rather than take litigation positions that are not substantially justified.

**Defendants' Self-serving Exclusions Are Not Supported by Law**

Defendants claim that several categories of Plaintiffs' work should be excluded, including pre-litigation work and "early" work with experts (Doc. 59, at p. 18-19), Plaintiffs' pre-trial work during the so called "discovery hold period" (Doc. 59, at p. 19 lns. 9-17), and time expended on Plaintiffs' fee motion (Doc. 59, at p. 19 lns. 18-23).[6] Defendants also exclude categories such as multiple attorneys billing at high rates; cross-litigation coordination with other *ayahuasca* cases; non-litigation tasks; vague entries; and block billing. *Id.*

With regard to "vague" entries or "block billing," as well as all other excluded hours identified by Defendants' (Doc. 59-3) each attorney, in his or her declaration in support of this Reply Brief, addresses Defendants' objections separately and in detail.

**Pre-Filing Activities Were Reasonable and Necessary to Develop the Case Prior to Filing**

Defendants cite *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985) for the proposition that Plaintiffs are not entitled to fees for work completed in advance of litigation. (Doc. 59, at p. 18, lns. 16-18). *Webb* involved a claim for fees for work done for an administrative proceeding prior to a judicial proceeding, a situation completely inapposite to this case. In *Webb*, the Court held that plaintiffs' lawyers were not entitled to fees for an administrative proceeding prior to federal litigation, *but were* for all work "on the litigation," quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

It would be malpractice to file a complaint before conducting due diligence. The assessment of reasonableness "is made by reference to standards established in dealings between paying clients and the private bar." *Davis*, 976 F.2d at 1543.  Plaintiffs here are claiming fees for work in advance of the case to develop the theory of the case, to

---

[6] Plaintiffs' Fee Motion (Doc. 51, at p.22, starting with section H. *Fees for Fee Motion and Preparation of Lodestar Documentation.*)

investigate the facts of the case through the FOIAs, and to assemble a robust team that could prevail, as it did, where others had failed. All of these tasks should be billable to a paying client. *Id.* Defendants make no showing that any work claimed was for anything other than that which was of direct benefit to Plaintiffs and in anticipation of and in preparation for trial. *See also Dowdell v. City of Apopka, Fla*., 698 F.2d 1181, 1188 (11th Cir. 1983) (holding that pre-filing activities are billable). *Ashburn v. United States*, 577 F. Supp. 59, 63 (N.D. Ala., 1983), *rev'd on other grounds*, 740 F.2d 843 (11th Cir. 1984). Courts routinely uphold fees for work done prior to filing an appearance - including, for example, drafting a complaint - and often attorneys assist in a case without ever filing an appearance. *See, e.g.*, *Edwards v. Rogowski*, 2009 U.S. Dist. LEXIS 22106, at 25 (N.D. Ill. March 18, 2009).

**Working with Consulting and Testifying Experts Was Reasonable and Necessary**

Defendants cite *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113-14 (9th Cir. 2008) for the proposition that this Court should reduce Plaintiffs' request for experts' fees because they are unreasonable. (Doc. 59, at p. 18, lns. 24-27). *Moreno* makes no mention of work with experts.  The Ninth Circuit did however determine that, "the district court failed to adequately justify its reduction of the time spent performing interviews and investigation . . ", the only topic that might relate to experts.

The reasonableness of working with experts at the onset of this case is discussed in attorney Silver's declaration supporting Plaintiffs' Reply Motion starting on page 4, Section D – *Expert Work*. As noted, experts were needed early on to help with the toxicological, medical, psychiatric, anthropological and epidemiological issues relevant to this case. The experts were retained not only as testifying experts, but also as consulting experts to help frame the issues in the case and assist in discovery.

**There Was No Court Order Preventing Plaintiffs from Pretrial Work**

Defendants object to Plaintiffs' pretrial work during the so called "discovery hold period." (Doc. 59, at p. 19 lns. 9-17). As stated in the parties' Joint Motion for a second request to extend the discovery schedule, the parties merely agreed to "a second 60-day

1  extension of the discovery schedule, during which neither side will conduct discovery."

2  (Doc 44, at p. 2, ln 1-3.)  From the DOJ National Institute of Justice website, the term

3  "discovery" is defined as, "the pre-trial devices that can be used by one party to obtain facts

4  and information about the case from the other party in order to assist the party's preparation

5  for trial."[7]

6        Plaintiffs understood the "discovery hold" to be just that - no propounding of

7  discovery nor requesting discovery responses to prior discovery from the opposing party.

8  Nothing more.  None of the pretrial activities billed during that period fits into this

9  category.

10  **Non-forum Rates Are Reasonable Given the Lack of Experienced Local Counsel**

11        Defendants claim Plaintiffs should not be awarded non-forum rates but cite no

12  authority for that claim.[8]  In *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992), the

13  Ninth Circuit found that the district court did not abuse its discretion in awarding fees at

14  non-forum rates given the lack of experienced local counsel. The Ninth Circuit noted that

15  plaintiffs offered evidence demonstrating the issues in the civil rights case was extremely

16  complex and thus required experienced and sophisticated counsel. *Id.*  The same holds for

17  this case. There are few attorneys who have ever litigated a RFRA case involving

18  *ayahuasca* as a sacrament.  Of the very few, Plaintiffs' counsel Jack Silver and Gilbert

19  Carrasco are in that class.  This case involved an emerging religion connected to the

20  Shipibo traditions in Peru, requiring consultation with an anthropologist who had

21  experience with Shipibo traditions.[9]  Plaintiffs also retained a theologian who was willing

22
23  [7]   https://nij.ojp.gov/nij-hosted-online-training-courses/law-101-legal-guide-forensic-expert/discovery/definition-and-purpose-discovery

24  [8] Defendants also propose hourly rates for Arizona based on general rates for all attorneys, which are far below those who specialize in civil rights cases. (Doc. 59, at p. 21, lns. 4-5).

25  *See* this Court's unpublished decision in *Lopez-Valenzuela v. Maricopa County,* 2015 U.S. Dist. LEXIS 183177 *; *see also* National Law Journal Fee Survey CO and AZ 2019

26  (Second Declaration of M. Hartley, Exhibit G). Both the fees in the *Lopez-Valenzuela* case and the 2019 Survey would have to be adjusted for inflation.  Cumulative rate of inflation

27  since 2015 is 32.5%, and cumulative rate of inflation since 2019 is 22.8%. https:www.usinflationcalculator.com/

28  [9] Plaintiffs consulted with Dr. Bia Labate, an expert in the field, who graciously gave her

1   to attend one of the Church's ceremonies and interview principals and members of the

2   Church.  Plaintiffs had to anticipate the argument that there is compelling interest of harm

3   because of the promulgation of DEA's Risk Assessment and the 240+ related studies

4   published since the *Santo Daime* case.  This necessitated having an attorney with a

5   sufficient science background, such as Mr. Silver, to review those studies and work with

6   experts in toxicology, epidemiology and psychiatry.

7       A number of circuits have held that rates, other than those of the forum, may be

8   employed if local counsel was unavailable, either because they are unwilling or unable to

9   perform because they lack the degree of experience, expertise, or specialization required

10   to handle properly the case. See, e.g., *McDonald v. Armontrout*, 860 F.2d 1456, 1459-60

11   (8th Cir. 1988); *Polk v. New York State Dept. of Correctional Servs.*, 722 F.2d 23, 25 (2d

12   Cir.1983); *Louisville Black Officers Org., Inc. v. Louisville*, 700 F.2d 268, 278 (6th Cir.

13   1983); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982), *cert. denied*, 461

14   U.S. 956 (1983); *see also National Wildlife Federation v. Hanson*, 859 F.2d 313, 317-18

15   (4th Cir. 1988); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983).

16   **Conclusion**

17       Plaintiffs are entitled to fees and non-taxable costs, other than expert fees, pursuant

18   to 42 U.S.C. § 1988.  Plaintiffs are entitled to expert fees pursuant to the EAJA. Plaintiffs

19   are entitled to fees and costs for their successful FOIA claim. Plaintiffs are entitled to non-

20   forum rates because local counsel was unavailable, either because they are unwilling or

21   unable to perform or because they lack the degree of experience, expertise, or specialization

22   required to handle this case properly.

23   DATED: July 8, 2024         Respectfully submitted,

24

25                           *s/ Jack Silver*

Jack Silver, *pro hac vice*

26                           Cal. Bar No. 160575

Law Office of Jack Silver

27                           708 Gravenstein Hwy No. # 407

28   time for no fee.

Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
Tel: (707) 528-8175
Fax: (707) 829-0934

*s/ Gilbert Paul Carrasco with permission*
Gilbert Paul Carrasco, *pro hac vice*
Cal. Bar No. 90838
D.C. Bar No. 334722
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
(503) 990-4879
carrasco@willamette.edu

*s/ Sean T. McAllister with permission*
Sean T. McAllister, Esq., *pro hac vice*
Colo. Bar No. 31350
Cal. Bar No. 310962
McAllister Law Office, P.C.
4035 E. 3rd Avenue
Denver, CO 80220
sean@mcallisterlawoffice.com
Tel: 720-448-6235

*s/ Martha J. Hartney with permission*
Martha J. Hartney, Esq., *pro hac vice*
Colo. Bar No. 42017
Hartney Law, LLC
4450 Arapahoe Avenue, Suite 100
Boulder, CO 80303
martha@hartneylaw.com
Tel: (303) 747-3909
Fax: (303) 835-7199

*s/ Ismail Lourido Ali with permission*
Ismail Lourido Ali, Esq., *pro hac vice*
Cal. Bar No. 312660
2134 10th Avenue, A
Oakland, CA 94606
Tel. (559) 801-7317
Lourido.ali@gmail.com

*Attorneys for Plaintiffs*

16

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on July 8, 2024, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing a copy to the following

4

CM/ECF registrant:

5

6

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

7

8

BRIGHAM J. BOWEN
Assistant Branch Director

9

10

GISELLE BARCIA
Trial Attorney

11

Civil Division, Federal Programs Branch
U.S. Department of Justice

12

1100 L Street NW
Washington, D.C. 20005

13

Telephone: (202) 305-1865
Fax: (202) 514-8640

14

E-mail: giselle.barcia@usdoj.gov

15

16

*s/ Jack Silver*
Jack Silver, *pro hac vice*

17

Law Office of Jack Silver

18

19

20

21

22

23

24

25

26

27

28

17