Jack Silver, *pro hac vice*
Law Office of Jack Silver
California State Bar No. 60575
708 Gravenstein Hwy North, Suite 407
Sebastopol, CA 95472-2808
JsilverEnvironmental@gmail.com
(707) 528-8175
(707) 829-0934 (fax)

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, *et al.*,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>Merrick Garland, *et al.*,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-01004-PHX-SRB<br><br>**DECLARATION OF JACK SILVER IN SUPPORT OF PLAINTIFFS' REPLY TO OPPOSITION OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |

I, Jack Silver declare as follows:

　　　I have personal knowledge of the facts stated in this Declaration, and if called to testify, I can competently testify to the truth of these facts.

1.　Filed with Plaintiffs' Fee Motion (Doc. 51) are true and correct copies of the following documents and correspondence:

　　　Exhibit A – Doc. 51-2 - Settlement Agreement between the parties.

　　　Exhibit B – Doc. 51-3 - Declarations of Plaintiffs regarding applicable size and net worth criteria.

1

1        Exhibit C – Doc. 51-4 -  Attorney retainer agreements.
2    2.   Filed with the Declaration of Jack Silver (Doc. 52) are true and correct copies of the following documents and correspondence:

   Exhibit A – Doc. 52-1 - Declaration of Ellen Osuna
   Exhibit B – Doc. 52-2 - Dr. Stang's Curriculum vitae.
   Exhibit C – Doc. 52-3 - Dr. Sloshower's Curriculum vitae
   Exhibit D – Doc. 52-4 - Dr. Cozzi's Curriculum vitae
   Exhibit E – Doc. 52-5 - Dr. Bouso's Curriculum vitae
   Exhibit F – Doc. 52-6 - Declaration of David Weinsoff
   Exhibit G – Doc. 52-7 - Attorney Silver's Non-reimbursed Costs
   Exhibit H – Doc. 52-8 - Attorney Silver's Timesheets
   Exhibit I – Doc. 52-9 - Paralegal L. Mador's summary of hours and Invoices.

3.   Filed with Plaintiffs' Reply Brief are true and correct copies of the following documents and correspondence:

   Exhibit A – DOJ Objections and Responses to First Set of Interrogatories in *The Church of the Celestial Heart v Garland, et al.,* Case No. 23-cv-545-SBA (E.D.CA).
   Exhibit B – Plaintiffs' FOIA requests and response.

4.   Upon receiving service of the Complaint in this action, Defendants' first act, as opposed to contacting Plaintiffs and showing any interest in resolution of Plaintiffs' claim, was to file a Motion to Dismiss, indicating to Plaintiffs that, like in the *Santo Daime* case, Defendants had no interest in settlement and Plaintiffs should prepare for trial. This indication was reinforced due to obstructionist opposition by Defendants' counsel in the form of persistent failure to respond to emails, failure to comply with discovery requests, and failure to provide dates for depositions necessitating the issuance and service of deposition subpoenas**.** Attached to this Declaration as **Exhibit A** are true and correct copies of electronic mails to Attorney Barcia concerning discovery disputes.

5. The following is presented in response to Defendants' proposed exclusions of my hours (Doc. 59-3, at p. 3-21).

### a. Pre-litigation Work

Pre-litigation work should be compensated. See Plaintiffs' Reply Brief, section titled: *Pre-Filing Activities Were Reasonable and Necessary to Develop the Case Prior to Filing*.

02/04/21 - Dr. Labate is an anthropologist who has specialized knowledge concerning the Shipibo practices as well as familiarity with how the Church of the Eagle and the Condor ("Church") incorporated those traditions. My conference with her was part of my due diligence in researching this case and should be compensated.

09/16/21 - Meeting with co-counsel, who are not part of the same firm, prior to filing the complaint should be compensated.

09/17/21 - Drafting the fee agreement should be compensated.

09/29/21 - Meeting with other attorneys, including the criminal attorney retained to be available should Plaintiff Joseph Tafur or other members be arrested, should be compensated.

01/27/22 - Preparing a litigation risk letter to the client should be compensated.

03/18/22 - Research into similar cases prior to filing suit should be compensated.

04/12/22 - Drafting letters to the client should be compensated.

04/14/22 - Research on similar cases should be compensated.

04/25/22 - Research into the Church's source of its sacrament and the means by which it acquires that sacrament is valid research prior to filing suit and should be compensated.

05/25/22 - Considering that Defendants in this case were the same as in the prior *UDV* and *Santo Daime* case, reviewing prior deposition testimony in those cases was reasonable research prior to filing suit and should be compensated.

### b. Church Excluded Costs (Doc. 59-4, at p. 4-6)

02/24/21 - Attorney services of Brad Bartlett for the successful FOIA claim should be compensated.

03/30/21 – U.S. Customs and Border Protection FOIA Search and Review Fee for the successful FOIA claim should be compensated.

05/30/21 – Customs and Border Protection FOIA Search and Review Fee for the successful FOIA claim should be compensated.

### c. Paralegal Services

Paralegal services have been fully documented in Plaintiffs' Fee Motion. Invoices for my paralegal L. Mador which were paid by the Church are documented in the Hartney Declaration, Exhibit C (Doc. 53-3) at p. 17, 25, 35, 37. Invoices for L. Mador which were paid by me are documented in my Declaration, Exhibit G (Doc. 52-7) at p. 11-15. Attached to this Declaration as **Exhibit B** is summary of all L. Mador Invoices including an Invoice for 6/17/24-07/07/24 covering work performed following the filing of Plaintiffs' Fee Motion.

Although Ms. Mador agreed to only charge $50/hour for her services, it was agreed by Plaintiffs to compensate her at prevailing market rates through the filing of Plaintiffs' Fee Motion. The Ninth Circuit has held that paralegal fees should awarded at prevailing market rates. See *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008)). Recovery of paralegal fees is not limited to the attorney's costs for those services. *Id.*

The Church paid Invoices for paralegal L. Mador on 6/13/22, 3/3/23 and 9/9/23 and should be compensated.

I paid the following Invoices for paralegal L. Mador and should be compensated: 12/2023, 01/01/24 to 02/29/23, 03/08/24, 03/09/24 to 04/17/24, 04/18/24 to 06/16/24, and 6/17/24 to 07/07/24, and 6/17/24 to 07/07/24.

### d. Expert Work

Given the lack of a readily available pool of experts who have testified in a case such as this, it was necessary to begin that work early. See Plaintiffs' Reply Brief, Section titled: *Working with Consulting and Testifying Experts Was Reasonable and Necessary*. In fact I contacted several experts in this field prior to the selection of the experts that

Plaintiffs' retained. I first started with the experts who testified in the *UDV* and *Santo Daime* cases. Only one from that group was available or willing to act as an expert in this case, toxicologist Dr. Cozzi, who also required a non-refundable retainer. I then contacted several other potential experts before finding any who might have the required qualifications and were willing to act as experts. Even from that list, several were eliminated either because their background was not sufficient, they had hesitations about testifying, they did not live in the United States, issues arose during the background check, and the like. Several potential experts whom I contacted had research contracts with the Government and declined because they were concerned about losing funding. As such, finding qualified experts for this case was not an easy task. I did not bill for the vast majority of my time for this work which took place prior to filing suit consisting of approximately 16 hours.

It was clear from the *UDV* and *Santo Daime* cases that if this case went to trial, it would be decided on the basis of expert testimony. Additionally, experts were needed early on to help with the toxicological, medical, psychiatric, anthropological and epidemiological issues relevant to this case. As discussed previously, more than 240 scientific papers on ayahuasca or DMT have issued since the Santo Daime case. Early on as part of discovery, Defendants provided 120 such scientific studies. Although I have a significant science background, I am not an expert in any of the fields that were needed for this case. The experts were retained not only as testifying experts but as consulting experts as well to help frame the issues and assist in discovery.

My time in the research on, vetting and working with experts should be compensated for the following dates: 10/04/21, 11/10/21, 11/16/21, 11/19/21, 11/21/21, 11/23/21, 12/08/21, 12/14/21, 12/17/21, 12/22/21, 01/10/22, 01/12/22, 01/20/22, 03/03/22, 03/10/22, 03/16/22, 03/28/22, 03/30/22, 06/13/22, 07/05/22, 09/27/22, 03/03/23.

Conferences with consulting experts should be compensated for the following dates:
02/27/23 - Conference with retained toxicologist Dr. Cozzi.
03/06/23 - Conference with consulting expert anthropologist Dr, Labate.

03/13/23 - Reviewing and editing retained expert toxicologist Dr. Cozzi's retainer agreement.

### e. Discovery Work Undertaken During the "Discovery Hold" Period

None of the work on the dates listed below involved the propounding of discovery or the requesting of discovery responses to prior discovery from Defendants, and should be compensated. 11/09/23, 11/15/23, 1/27/23, 01/25/24.

See Plaintiffs' Reply Brief section titled: *There was no Court Order Preventing Plaintiffs from Pretrial Work.*

### f. Fees on Fees

Several of Defendants' proposed exclusions for "fees on fees" were really related to settlement negotiations rather than preparation of the motion for fees itself and should be compensated. I have separated those below.

Fees for work on the motion for fees should be compensated. See discussion in Plaintiffs' Fee Motion (Doc. 51) starting on page 22, Section H. entitled: *Fees for Fee Motion and Preparation of Lodestar Documentation.* Plaintiffs' attorneys are entitled to fees for their work seeking to recover fees and costs (so called "fees on fees"). Therefore the work on the fees motion should be compensated for the dates listed below as well as for my timesheet entries provided with this Declaration related to reviewing Defendants' Opposition Brief, vetting citations, drafting of Plaintiffs' Reply Brief and responding to Defendants' exclusions of my hours and costs.

Attached as **Exhibit C** to this Declaration is a true and correct copy of my Timesheet post the filing of Plaintiffs' Fee Motion.

### g. Time Related to Settlement

12/04/23, 12/15/23, 12/18/23, 01/03/24, 01/12/24, 04/05/24, 04/16/24, 05/28/24, 06/05/24.

### h. Preparing Initial Fees Motion to be filed with the Court

06/06/24 - 06/14/24.

    **i. Others**

12/24/21 - <u>Conference with co-counsel regarding ICEERS Ayahuasca Technical Report</u>. Retained epidemiological expert Dr. Bouso authored this paper, which I reviewed prior to meeting with Dr. Bouso at the MAPS Conference in Denver and should be compensated.

05/24/22 - <u>Conference with co-counsel McAllister regarding press release and communications plan</u>. This discussion related to the public benefit of disclosing the documents received through the FOIA requests and should be compensated.

01/30/23 - <u>Attending *Soul Quest*'s 11th Circuit Oral Argument</u>. Several issues in the *Soul Quest* case related to our case; in particular, whether a religious organization could file suit in Federal Court after being denied an exemption through DEA's Exemption Process or was that the only remedy. This time should be compensated.

03/23/23 - <u>Conference with co-counsel McAllister and AYA attorney Scott Stanley</u>. The AYA is an ayahuasca church case also filed in the Arizona District Court. Coordinating efforts to prevent adverse decisions from the same District Court was highly beneficial to our client. This time should be compensated.

03/05/23 - <u>Review and categorize the Church's ayahuasca research library</u>. The 240 scientific papers that were assembled had to be reviewed and placed into specific categories such as: whether the research was only on DMT and not ayahuasca; whether the research involved persons taking ayahuasca in a clinical setting or during a religious ceremony; whether the research involved toxicology, psychiatry, anthropology, epidemiological studies, molecular binding sites, modes of action, etc. Organizing the research was important for the work with experts and issues relating to the Government's claimed compelling interest of harm. This time should be compensated.

03/29/23 - <u>Conference with co-counsel Carrasco regarding the "harm" issue</u>. Following a review of the existing research on ayahuasca and DMT, I conferred with Gilbert Carrasco, co-counsel with me in the *Santo Daime* case, to discuss the Government's claimed compelling interest of harm. This discussion and time should be compensated.

05/10/23 - <u>Conference with co-counsel Hartney regarding AYA and *Soul Quest* case updates.</u>

Given the fact that all of these plaintiffs are dealing with the same defendants on essentially the same issues, knowing what legal developments are occurring in other like cases was beneficial to our client. This time should be compensated.

05/11/23 - <u>Mock deposition of client</u>.

The parties had already discussed depositions. Ms. Barcia indicated she would depose Dr. Tafur individually and as the FRCP 30(b)(b) representative of the Church. Dr. Tafur was planning a trip to Peru, so I held a mock deposition prior to his scheduled departure. This time should be compensated.

06/20/23 - <u>Fly to Denver for MAPS Conference</u>.

I was not a featured speaker at this conference. I was on one panel with four others that lasted one hour, and I did not bill for this time. I went to the conference to speak with experts. The MAPS Conference is the largest conference on the use of psychotropic substances, including ayahuasca. Going to the conference saved expenses for the Church in that I could speak with the leading experts in the field all assembled in one place. The travel from my home to Denver for the conference actually took over eight hours door to door, but I only billed for two. My travel time to meet with possible experts and retained experts should be compensated.

06/27/23 - <u>Review discovery requests</u>.

I reviewed Plaintiffs' discovery requests to Defendants including interrogatories and request for production. The hours should be 1.4 rather than 0.4. This time should be compensated.

06/29/23 - <u>Review all data on potential ayahuasca harm claims</u>.

Other than the scientific papers, Defendants alleged there existed additional data on the issue of harm from the use of ayahuasca including Poison Control, DEA's own studies and analysis summarized in its Risk Assessment publication, articles on the "recreational" use of ayahuasca and the like. This time should be compensated.

07/27/23 - <u>Review and research of percipient witness testimony in Santo Daime case</u>.

This is not a duplicative entry of time. I previously reviewed expert testimony in the *Santo Daime* case, but not the percipient witness testimony. This was done in preparation of meeting with Dr. Goldman, the head of the Santo Daime Church in Ashland Oregon. This time should be compensated.

07/27-23 - <u>Travel to Ashland for meeting with J. Goldman</u>.

Travel time to meet with a witness should be compensated. The travel time was actually more than six hours but I only billed for half of that time.

07/28/23 - <u>Meeting with Jonathan Goldman and staff to discuss harm mitigation protocols, diversions protocols, the process CHLQ went through to receive permits for manufacturing, importation, possession and use of ayahuasca, DEA inspections and audits. Santo Daime harm mitigations and diversion protocols. Review of data on any CHLQ reported incidences of harm due to partaking in ayahuasca ceremony over the past 30+ years with J. Goldman and staff.</u>

This description of work is exactly as stated. Gilbert Carrasco and I drove to Ashland, Oregon to interview Dr. Goldman and his staff. Ascertaining whether the CHLQ had ever experienced issues with harm or diversion was relevant to our case, as was the procedures through which the DEA conducts audits of the CHLQ. This all occurred in one meeting and is not "block billing." All of the time spent with Dr. Goldman and his staff should be compensated.

10/20/23 and 10/22/23 - <u>Prepare draft settlement proposal for Church/DOJ settlement</u>.

The parties never agreed that Defendants would provide the initial draft settlement proposal. Ms. Barcia offered to do so, but never provided a draft despite numerous requests. The time for drafting the initial settlement proposal should be compensated.

02/28/24 - <u>This revised entry should read</u>:

Review and final editing of: Plaintiffs' First Request for Admissions to Defendants (0.6 hrs.); Plaintiffs' Third Request for Production of Documents to Defendants (0.9); Plaintiffs' Second Set of Interrogatories to Defendants (0.7 hrs.); Third Amended Notice

of Taking Entity Deposition of Defendant U.S. Customs and Border Protection and its Parent Agency, Defendant U.S. Department of Homeland Security and copy of associated Subpoena to Testify (1.1 hrs.); Third Amended Notice of Taking Entity Deposition of Defendant U.S. Drug Enforcement Administration and copy of associated Subpoena to Testify (0.9 hrs.). The total is 4.2 hours rather than 3.3 hours. All of this time should be compensated.

6. The following is presented in response to Defendants' proposed exclusions of my costs (Doc. 59-4, pg. 3):

06/20/23 - I flew to Denver to interview experts, meet with retained experts and meet with several of the plaintiffs. Given the fact that the most important researchers and experts with regard to the religious use of ayahuasca would be at the 2023 MAPS Conference, it was essential I attend and make these contacts. Both the airfare and hotel expenses should be compensated.  Attached as **Exhibit D** to this Declaration is a true and correct copy of  the MAPS Conference Agenda.

7. Defendants' suggested hourly rate for my work based upon on the average rates for all attorneys in the Phoenix area is not supported by fact or law.

At a minimum, I should be paid a rate for attorneys specializing in civil rights litigation.  Additionally, I am one of the very few attorneys who have ever litigated a RFRA case, and even more rare, I am one of very few attorneys who have litigated a RFRA case involving ayahuasca as a sacrament. As discussed in Plaintiffs' Reply Brief, Plaintiffs had to anticipate the Government's alleged compelling interest of harm since the promulgation of its Risk Assessment and the 240+ related studies published after the *Santo Daime* case. This necessitated having someone with a sufficient science background, such as myself, to review those studies and work with experts in anthropology, toxicology, epidemiology and psychiatry.

The issues in this case were extremely complex and required experienced and sophisticated counsel. As such I should receive non-forum rates.  As discussed in my Declaration supporting Plaintiffs' Fee Motion (Doc. 52) my normal rate is $875/hr.  This

rate is below market rates for this type of work.  See Doc, 52, at p. 23, starting at ¶99.g. *Customary Fee Charged in Matters of the Type*, listing hourly rates awarded in numerous civil rights cases in my forum.

       I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 8th day of July, 2024, at Sebastopol, California.

                                *s/ Jack Silver*
                                Jack Silver