Martha J. Hartney, Esq. - *pro hac vice*
Hartney Law, LLC
4450 Arapahoe Avenue, Suite 100
Boulder, CO 80303
Tel.: 303-747-3909
E-mail: martha@hartneylaw.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, *et al.*,<br><br>    Plaintiffs,<br> v.<br><br>Merrick Garland, *et al.*,<br><br>    Defendants. | Case No. 2:22-cv-01004-PHX-SRB<br><br>**SECOND DECLARATION OF MARTHA J. HARTNEY IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS** |

I, Martha J. Hartney, declare as follows:

 I have personal knowledge of the facts stated in this Declaration, and if called to testify, I can competently testify to the truth of these facts.

 I submit this second declaration in support of Plaintiff's Petition for Attorneys' Fees and Costs.

 To the best of my knowledge, filed with attorney Hartney's First Declaration, are true and correct copies of Exhibits A through F previously attached to Document 53.

| Exhibit | Description |
|---|---|
| **Hartney Ex. A**<br>Doc 53-1 | Martha Hartney FOIA and RFRA Timesheets 2020 to 2024 Combined/Stamped |

| Hartney Ex. B  Doc 53-2 | Martha Hartney Resume and CV |
|---|---|
| Hartney Ex. C  Doc 53-3 | CEC Costs Spreadsheet with Receipts |
| Hartney Ex. D  Doc 53-4 | Declaration of Gregory J. Kerwin |
| Hartney Ex. E  Doc 53-5 | Declaration of Matthew McClintock |
| Hartney Ex. F  Doc 53-6 | Declaration of Joshua R. Benn |

To the best of my knowledge, Exhibits G and H to this Declaration are true and correct copies of the following documents:

| Exhibit | Description |
|---|---|
| Hartney Ex. G | 2019 47th Annual National Law Journal Survey of Law Firm Economics |
| Hartney Ex. H | Hartney Fees on Fees Timesheet 2024 |

I.   **Response to Defendants' Objections to Hartney's Fee Request**

   A.   **Summary**

Defendants erred in stating the hourly rate requested to this court in the first instance. Defendants adjusted hourly rate for my work on this case is erroneous and based on incomplete information in the second instance.

Defendants objected to my fee request on several grounds, including: (a) allegations that my billing rate is not reasonable; (b) allegations that I did not exercise billing judgment or restraint; (c) allegations that pre-litigation work under FOIA is not compensable; (d);

allegations that work pertaining to research and retention of experts and actual work with experts was premature; (e) various allegations of block billing or vague entries.

Defendants further assert that no activities whatsoever should have taken place during the extension of discovery period. Defendants finally assert that Plaintiffs' legal team is "bloated." (Doc. #59, page 1, ln 20).

I show below that each of these allegations are factually incorrect or not supported by law.

### B.     Hourly Rate

Defendants inaccurately state the hourly rate I have requested is $675.00. (Doc #59, page 14, ln 1). The hourly rate I requested is $550.00. (Doc. #53, page 17, ln 9).

Defendants request this court reduce my hourly rate to $340.00, failing to recognize this court previously awarded fees in *Lopez-Valenzuela v. Maricopa County* at an inflation adjusted rate for a 14-year attorney of $595.30 per hour. 2015 U.S. Dist. LEXIS 183177.

Additionally, the *2019 47th Annual National Law Journal Survey of Law Firm Economics* shows 14-year attorneys charge $445 in Colorado and $550.00 in Arizona. Adjusted for inflation, that would be $543.00 and $671.53 respectively today. An hourly rate of $550.00 is amply fair for this risk-heavy contingency case. See Hartney Ex. A. Furthermore, my published hourly rate in Colorado is $500.00.

### C.     Reasonableness of Hours

#### a.     Exercise of Billing Judgment

Defendants state that Plaintiffs' attorneys have not exercised billing judgment and have taken a blanket approach to the fee request. This is not true. A quick search of my timesheets alone reveals the term "billing judgment" was used 123 times. As is my responsibility, I combed through my timesheets line-by-line, slashing hours throughout. I have only billed those hours that a paying client would be billed for. (Doc. #53-1. Martha Hartney Combined FOIA/RFRA Timesheets 2020 to 2024).

#### b.     FOIA Claims

Defendants seek to deny Plaintiffs' pre-litigation fees for work on FOIA requests to the Drug Enforcement Administration ("DEA") and Customs and Border Protection

("CBP"). Defendants cite *Webb v. Bd. Of Educ. of Dyer Cnty., Tenn*, 471 U.S. 234, 243 for the proposition that Plaintiffs are not entitled to fees for work completed in advance of litigation. However, *Webb* involved a claim of fees for an administrative proceeding prior to a judicial proceeding, an application completely inapposite to this case. In *Webb*, the court held that plaintiffs' lawyers were not entitled to fees for an administrative proceeding prior to federal litigation, but were for all work "on the litigation," quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433.

In our case, we are not claiming fees on work conducted by either Ms. Hartney or Mr. McAllister prior to the beginning of the shaping of the case. We are only claiming fees for work in service to drafting the complaint, to develop the theory of the case, and to investigate the facts through FOIA requests. Plaintiffs had an ethical obligation to investigate facts and background before filing a lawsuit and used FOIA to accomplish this. The hours claimed for research activities that included these FOIAs were in service to two purposes--first to prepare for a possible lawsuit and second to disseminate the information to the interested public. These hours are compensable as pre-litigation preparation work. (Doc #59-3, pages 113 – 117).

   **c.**  **Work Pertaining to Experts**

Defendants eliminate all time related to the investigation, retention, and preparation of experts. Under RFRA's strict scrutiny analysis, Plaintiff bear the burden of proving the prima facie case—that the government burdened their sincere, religious practices. Plaintiffs' counsel rightly projected Defendants would attack Plaintiffs' religious basis because the government did so in similar cases. Plaintiffs were going to have to withstand this initial attack immediately and sought out appropriate expertise in theology to assist. Furthermore, as soon as the Motion to Dismiss hurdle was surmounted, Plaintiffs sought additional expert opinions of a toxicologist and a psychiatrist. These expenditures were not excessive or premature. They were precisely on time to meet the Plaintiffs' fast-approaching burdens. (Doc #59-3, pages 122 – 137).

   **d.**  **Responses to Defendants' Erroneous Criticisms**

Defendants' adjusted entries for my hours contain the following errors:

Opposing counsel inexplicably eliminates several meetings in preparation for litigation in which Plaintiffs' counsel clearly discussing with our client the merits and drawbacks of litigation. (Doc #59-3, pages 119 – 122).

Defendants point to 16 entries on my timesheets noting block-billing. Eleven of these entries do not contain block billing at all. (Doc #59-3, pages 124, 126, 130, 131, 133, 135, and 141.) The other five involve negligible amounts of time.

Defendants use the term "vague" and "unclear relationship to litigation task" 12 times each, usually in the same entry. However, reading each entry will reveal a meaning or relationship. For example, on page 133, an entry marked "unclear" states, "Call with Colorado person who was charged with possession of ayahuasca, on probation…" during the time the Motion to Dismiss was being drafted. This task related to proof of the element of injury-in-fact and was included in the declaration I filed attached to the Motion to Dismiss. (Doc. #24-8). On page 143, Defendants request to deny fees for developing a litigation project status report. At that time, the number of different litigation projects had grown substantially, and Plaintiffs' attorneys required a method for tracking the progress of each project, while relating each to the litigation strategy. On page 144, Defendants question the relatedness of the research around the term "non-drug use" which is a term utilized in the regulation of peyote. Plaintiffs wanted to understand the origin of this term and how it was introduced into the legislative history. This research, which took more than the 2.25 hours claimed, was a dead end. I am willing to forgo these two entries of need be. (Doc #59-3, pages 133, 143, 144).

Also on page 143, Defendants state an entry on 6/26/23 duplicates an entry on 6/25/23. However, Plaintiffs' experts attended two ceremonies on sequential evenings—this is not duplication. On this same page, opposing counsel also notes that an entry for "Travel home to DEN from PHX" is vague and did not provide litigation-related task for travel. I traveled to Phoenix on 6/24/2023 and returned on 6/27/2023 to support these observation ceremonies with our experts. (Doc #59-3, page 143).

On page 139, opposing counsel penalizes me for organizing the Plaintiffs' documents for discovery, calling it clerical/administrative. However, I've excluded all

clerical work performed. This time, also underbilled, was spent substantively reviewing our clients' documents in advance of production. This is not a clerical task but a lawyer's task. (Doc #59-3, page 139).

One notation in this category deserves special attention. On Page 152, opposing counsel states that "citation verification" is an unclear task and is clerical/administrative. This larger set of tasks follows for several weeks after this entry and entailed my review of the DEA Risk Assessment to uncover a document replete with inaccuracies, bold misstatements, improper conclusions, and improper uses of scientific terms. There was nothing clerical about this review. It revealed DEA's hostility toward the religious use of ayahuasca. (Doc #59-3, page 152).

In April 2023, I developed a proposed budget for the case's out of pocket expenses. For that task, I billed 1.5 hours, similarly underbilled. Defendants inexplicably eliminate this time to develop a budget for plaintiffs. While federal government's attorneys may not have to maintain budgets, private attorneys must keep their clients informed of predictable expenses. Defendants offer no substantive reason this would not be compensable. (Doc #59-3, page 140).

e. **Work During Discovery Extension**

Defendants assert that no discovery should have been undertaken during the period of extended discovery. This is an inaccurate portrayal of the facts on the ground. This court issued an order extending discovery deadlines such that written discovery had to be propounded no later than *December 30, 2023*. (Doc. #42, page 1). There is no circumstance in which written discovery could have been propounded by that date if Plaintiffs did not continue work throughout the negotiations. Plaintiffs agreed not to propound discovery until the deadline but never agreed not to work on the case at all. Nevertheless, many activities did cease.

f. **Appropriate Size of Legal Team**

Defendants mischaracterize legal team's size as bloated. Our team was comprised of five attorneys for several reasons:

No one attorney or small firm could withstand a contingency fee case of this nature over a long period of time. Plaintiff reasonably projected this case could last five to 10 years. The UDV case lasted from 1999 to 2006 (seven years). The Santo Daime case lasted from 1999 to 2009, then lingered for another four years in post post-litigation controversies for a total of 15 years.

The amount of legal research necessary has been enormous. Due to the tight timelines inherent in litigation, Plaintiffs also had to predict which issues may be raised in advance of them being raised. For each issue, argument, or part of an argument raised by opposing counsel or predicted to be raised, someone on our team had to conduct the counter research and brief the argument.

Even in this fee motion practice, Defendants cited 71 cases in their reply brief. (Doc #59). Most of these citations had to be checked for accuracy for the proposition offered. In some cases, Defendants have misstated or misapplied holdings to this case.

Each team member had specific skills applied throughout. Mr. Silver was the litigation lead, directing the strategic progress of the case. Mr. Carrasco was our constitutional and negotiations specialist. Mr. McAllister was the FOIA specialist and litigation second chair to Mr. Silver. Mr. Ali coordinated action between the experts, clients, and was the specialist focusing on developing the named plaintiffs' materials and declarations. I managed the team, coordinated day-to-day activities, carried a great deal of the drafting and research weight, and served as the primary contact with the client, among many other responsibilities.

Any reputable law firm would assign as many lawyers as necessary to accomplish the goal of the litigation. See for example this court's own opinion in *Lopez-Valenzuela v. Maricopa County* compensating 14 attorneys and two paralegals for their work on a civil rights case under the same fee-shifting statute. 2015 U.S. Dist. LEXIS 183177.

## II.    Revised Request for Fees and Costs

Finally, during the period the parties attempted to negotiate fees and costs unsuccessfully, I billed very little of the additional research and writing time spent. I now request to add time for fees-on-fees.

I request an hourly rate of $550.00 and add 22.95 hours. My prior hours were 564.15. I now request 587.10 hours for a subtotal of $322,905.00. Applying a 1.5x lodestar multiplier as requested previously, for an amended fee of $484,357.50. See Exhibit H.

I respectfully request to update my timesheets reflecting additional time spent on additional substantive matters or "fees on fees," from the date of this declaration, if necessary.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on July 5, 2024, at Boulder, Colorado.

/s/ Martha J. Hartney
Martha J. Hartney, Esq.