Gilbert Paul Carrasco, Esq., *pro hac vice*
California State Bar No. 90838 (active)
District of Columbia Bar No. 334722 (active)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Mobile: (503) 990-4879
E-mail: carrasco@willamette.edu

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| The Church of the Eagle and the Condor, *et al.*,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>Merrick Garland, *et al.*,<br><br>　　　　　　　Defendants. | **Case No. 2:22-cv-01004-PHX-SRB**<br><br>**DECLARATION OF GILBERT PAUL CARRASCO IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, Gilbert Paul Carrasco declare as follows:

1.　　The information contained in this Declaration is true and correct to the best of my knowledge, and I am of majority age and competent to testify about the matters set forth herein. I am an attorney in private practice in Huntington Beach, California. I represent Plaintiffs in the above-captioned case. The statements made herein are based on my

1

personal knowledge and on information made available to me in the course of my duties and responsibilities as Plaintiffs' counsel in this case.

2. I submit this declaration in reply to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees.

3. Filed herewith as **Exhibit A**, is a true and correct leg of hours expended subsequent to the filing of Plaintiffs' Fee Motion (Dkt. 51) on the issue of attorneys' fees.

**A. Adjusted Rates**

4. Defendants presuppose that Arizona rates apply but did not refute the evidence Plaintiffs proffered to establish the unavailability of local counsel in Arizona to handle this specialized type of litigation. To compound the error in their proposed reduction, Defendants did not even use appropriate Arizona rates.

5. In her declaration, counsel for Defendants correctly states that I received my J.D. in 1978 and was admitted to the California Bar in 1979 (omitting the fact that I also received an LL.M. from Georgetown in 1979) and concludes that the appropriate hourly rate for a lawyer in Arizona with 45 years' experience is $ 395. The 2019 National Law Journal survey for Arizona, however, lists the average for someone with 31 years or more of experience at $ 571, the upper quartile at $ 650, and the ninth decile at $ 670. *See* **Exhibit B**, which is a true and correct copy of the 2019 National Law Journal survey of rates for attorneys in Arizona.

6. Defendants contradict their own assertion that Arizona counsel was available for this case, pointing to the student clinics in Connecticut, Massachusetts, California, and Texas but to none in Arizona. (Dkt. 59 at 27 n.8). Plaintiffs' investigator consulted a clinic at an Arizona law school, which could not handle such a case. Even if there were extraordinary students who might assist in this complex litigation, none in Arizona was available. As such, rates outside the forum should be used. *Camacho v. Bridgeport Fin., Inc.*, 523 F. 3d 973, 979 (9th Cir. 2008); *see also* Order of Judge Roslyn O. Silver, *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS (D. Ariz. 3/19/2024), at *7 ("Defendants do not meaningfully challenge that no Arizona firms were able to serve as

lead counsel in this case," finding San Francisco rates appropriate and awarding Plaintiff $ 2,370,881.67 in fees and expenses).

7. Defendants' suggested application of Arizona rates and concomitant reduction is inappropriate and unjustified, and my reasonable rate of $ 895 per hour is based on a reasonable rate for a California attorney with my experience. Even if Defendants' counsel were correct in her unfounded reduction of my hours before the filing of Plaintiffs' Fee Motion from 500 to 336, the total would not be $ 132,720 but would instead be $ 300,720 for nearly three years of work, the last two of which were devoted almost exclusively to work on this case.

8. Defendants imply that I could not have been precluded from other employment, stating "it is notable that Mr. Carrasco is currently *emeritus* at Willamette Law, having stepped down from his professorship in 2022." (Dkt. 59, at 26). Although it is true that I ceased teaching full-time in June 2022 and taught my final summer course until August 2022, I have turned away many clients and have more work than I can conscientiously accept. The fact is that this case became virtually my full-time job for at least two full years. *See Arizona v. Penzone*, CV 14-01356 PHX 10-2017, at 7-8 ("does not view that as a basis for… reducing the hours").

9. Defendants use this same point to impugn my experience, reputation, and ability, stating that I and my co-counsel, Ms. Hartney, "do not appear to regularly practice [sic] as litigators. Carrasco Decl. (emeritus Willamette professor)."  (Dkt. 59, at 26). As my CV reflects, Carrasco Decl. & Exhibit D, before I went into teaching, for many years I litigated cases more complex than this one, including as lead counsel on behalf of the United States (Civil Rights Division) and in successful nationwide class actions against the United States, and during my teaching career I also successfully litigated cases.

**B.  Adjusted Hours**

10. Defendants' counsel has suggested that 164 of the hours that I logged "are not appropriate for a fee award." This representation is against the backdrop of the "billing judgment" that I employed throughout the course of this litigation whereby I did not bill

3

for any task that took me less than half an hour. At the risk of burdening this Court with minutiae, I am compelled to respond to each of Defendants' "reasons" (although I would call them excuses) for suggesting that I should not be paid for the following hours.

11.     Defendants seek to exclude 10 hours from 9/27-11/19/2021 on the premise of "vague -- no topic" and purportedly because they are unjustified because it is "pre-litigation work." This work is variously described as "Strategy Meetings with Legal Team and Board," "Strategy Discussions with Jack Silver," and "Research and Strategy Call with Legal Team." These entries speak for themselves as preparatory regarding next steps and theory in pursuing a RFRA claim. To file a complaint without preliminary consultation and preparation would be legal malpractice. This does not resemble *Webb v. Bd. Of Educ. of Dyer Cnty., Tenn*, 471 U.S. 234, 243 (Dkt. 59, at 18), which Defendants cite, because there the pre-litigation work involved work on an administrative proceeding prior to federal litigation.

12.     Defendants claim that half an hour spent on 12/24/2021 reading the report of the International Center for Ethnobotanical Education, Research, and Service (ICEERS), *Executive Summary, Global Consumption of Ayahuasca and Reported Deaths: A Rough Estimate of the Number of People Drinking Ayahuasca Worldwide and an Analysis of Fatalities Reported in the Media* (June 2023), is "vague," with an "unclear connection to the litigation." This objection deserves no response.

13.     Defendants object to the 2 ½ hours listening to the oral argument in *Carson v. Makin* and taking notes on 12/28/2021 is "non-compensable pre-litigation work" and is "other case work." On behalf of the United States counsel stated in that Supreme Court argument that "RFRA can go beyond what the Free Exercise Clause requires; Congress can accommodate more than the Constitution demands." This is clearly compensable.

14.     Defendants object to an hour and a half on 1/2/2022 to the entry, "Review revised Complaint, Comments, Research ICEERS" on the basis that it is "vague" and "blockbilled." All of this, however, is related to the same activity and is amply specific. *Lopez-Valenzuela v. Maricopa County*, 2015 U.S. Dist. LEXIS 183177 (D. Ariz. 2015), at

4

*10 - *11 ("these entries either include multiple related tasks, which is permissible under Local Rule 54.2, or are at least sufficiently detailed for the Court to determine that the entries that are in fact block-billed are nonetheless reasonable").

15. Defendants object to the one-hour entry on 1/3/2022 styled "Preparation for and Meeting with Legal Team" on the basis that it is "vague – no topic." This is obviously in the context and timeframe of drafting the Complaint.

16. Defendants object to the entry of one hour on 1/10/2022, "Meet with Prospective Expert Witness Bill Richards, then legal team" on the basis "unnecessary – expert work undertaken unreasonably early." Plaintiffs anticipated that the prima facie case would rely upon the expert opinion of a respected theologian who could explain to the Court how Plaintiffs' religious beliefs are valid and therefore must be protected under RFRA. The timing of this reflects competent representation given the contemporaneous work on the complaint.

17. The "strategy meetings with legal team and Board" on 1/12/2022 for one hour, on 2/12/2022 for one hour, on 3/21/2022 for one hour, the "strategy meeting by Zoom with legal team" for one hour on 3/10/2022, and the half-hour "meeting with legal team" on 3/29/2022 are not "vague – no topic" but are all obviously for the purpose of consultation with the clients and each other to ensure that the clients approved what counsel had in mind in refining the complaint. The Defendants have apparently read each entry without reference to others in the same timeframe and without considering the temporal context.

18. The "meeting with theologian expert Charles Stang" for half an hour on 3/28/2022, contrary to Defendants' assertion, was not "unnecessary" "expert work undertaken unreasonably early." Based on research on prior cases in which DEA refused religious exemptions, Plaintiffs reasonably projected Defendants would attack Plaintiffs' beliefs because they do not look like Judeo-Christian religions or other of the major religions.

19. The one-hour entry on 5/28/2022, "read opinions in *Fulton v. City of Philadelphia*," is obviously related to the claims of religious freedom that we were considering for the

Complaint. It was relevant and specific Supreme Court legal research, not "vague," and it is simply incorrect to claim that it was "not clearly related to specific litigation task."

20. The two hours of "legal research for the complaint" on 5/30/2022 is not "vague – no topic." It specifically refers to the pleading for which the research was done.

21. The half-hour meeting with Silver, McAllister, Hartney, and Ali on 6/2/2022 actually took place on 6/1/2022 and was for the purpose of finalizing the complaint and, thus, is not "vague – no topic."

22. The one-hour "meeting with legal team" on 6/13/2022 was for the purpose of reviewing an expert agreement and, therefore, not "vague – no topic." As we neared the filing of the complaint, this was necessary to consider.

23. Defendants state that 11 hours for "vague -no topic; and non-compensable medial [sic] work" and "non-compensable public relations efforts and media coordination" should be eliminated (one hour entry on 6/14/2022; one hour on 7/29/2022; half-hour on 7/31/2022 (the memorandum referenced was related to the activity, and thus the "blockbilled" objection is also unavailing); half-hour on 8/22/2022; half-hour on 5/19/2023; half-hour on 7/7/2023; half-hour on 7/17/2023; half-hour on 8/10/2023; another half-hour on 8/10/2023; half-hour on 8/13/2023; half-hour on 8/29/2023; another half-hour on 8/29/2023; half-hour on 8/30/2023; half-hour on 3/8/2024; one hour on 3/16/2024; half-hour on 3/19/2024). Plaintiffs specifically requested that I serve as their spokesperson during the litigation. I served as spokesperson for the Roman Catholic Church from 1986-88. Plaintiffs wanted to get out front on the fact that their Church is a spiritual path. They did not want to attract people who were seeking a recreational experience. Plaintiffs and counsel were aware that sincere religious beliefs were a necessary predicate to their successful claims. *Davis v. City & Cnty. Of San Francisco*, 976 F. 2d 1536, 1545 (9th Cir. 1992), *vacated on other grounds on denial of reh'g*, 984 F. 2d 345 (9th Cir. 1993) ("Where the giving of press conferences and other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work. Prevailing civil rights plaintiffs may do the same").

24. Defendants challenge the hour spent on 6/22/2022 reading *Dobbs v. Jackson Women's Health* and related analyses as "vague; not clearly related to litigation task" and they pose the same objection to the hour devoted to reading *Kennedy v. Bremerton School District* on 6/27/2022.  Plaintiffs had filed the complaint a couple of weeks earlier, and this was necessary research related to it.

25. Defendants object to the half hour on 8/22/2022 relating to "research claims in complaint" as "vague – no topic." This entry is sufficiently specific.

26. Defendants object to the one-hour "strategy meeting with legal team and board" on 9/22/2022 as "vague – no topic." This meeting was for the purpose of discussing the Barcia message with client regarding authorized *ayahuasqueros*.

27. Defendants object to the hour and a half on 11/7/2022 spent on an "ABA webinar on religious accommodation," claiming that it is a "non-compensable non-litigation task – lawyer continuing education." This was time well spent to ensure that I was not missing anything in our analyses of the case.

28. Defendants claim that the two hours in "preparation for & Zoom strategy meeting with Silver" on 11/17/2022 is "vague – no topic." This activity related to the opposition to the Motion to Dismiss.

29. On 1/8/2023 the half-hour entry "revise memorandum to theologian expert Charles Stang re report" is objected to as "unnecessary; expert work taken unreasonably early." I fail to see why this is unreasonably early. Assiduous preparation of a case requires nothing less.

30. The one-hour "strategy meeting with legal team and board" on 3/7/2023 is characterized as "vague – no topic." This discussion related to the new seizure of the sacrament by the Defendants.

31. The half-hour entry on 3/23/2023 "organize documents from *Santo Daime* to send re case management" is characterized as "vague" and "inappropriate to charge partner rates for administrative/clerical task. This involved *analysis* to determine which documents were relevant to the case.

32. The one-hour entry on 4/2/2023 "read *Iowaska v. USA*, email messages from team, book hotel" is objected to as "vague," "blockbilled," and "unconnected to case." The *Iowaska* decision is directly related to the case (45 minutes), and the messages were related to it (15 minutes). The hotel booking was made before Defendants' counsel informed us that she would not attend the case management conference, which resulted in it being held by Zoom. I represented Plaintiffs.

33. The one-hour "strategy meeting with legal team and board" on 4/13/2023 is objected to as "vague – no topic." The purpose of this meeting was to discuss proposed depositions.

34. The one-hour entry on 5/23/2023 "CLE on expert witnesses and the distribution of related materials to the team" is objected to as "unnecessary – expert work undertaken unnecessarily early vague CLE?" This activity took place in the context and at the time of dividing up responsibility among the team and preparing to take and defend expert witness depositions.

35. The half-hour entry on 6/27/2023 "debriefing of clients and CEC team/MAPS conference" is characterized by Defendants as "vague – non-litigation activity – MAPS conference." This was directly relevant to the litigation because of the presentations at the conference that bore on the issues in the case.

36. The one-hour "strategy meeting with legal team and board" is erroneously listed as 7/6/2023 but actually occurred on 7/5/2023 and is objected to as "vague – no topic." The topic of that meeting was the security measures for the sacrament.

37. The half-hour "meeting with Silver to discuss case strategy" on 7/6/2023, objected to as "vague – no topic" related to preparation of 30(b)(6) deposition notices and subpoenae.

38. The 7-hour entry "drive from Huntington Beach (Carrasco's residence) to Sebastopol (Silver's residence)" on 7/26/2023 is objected to as "non-litigation task; vague; no litigation reason for travel provided." The entry on the very next day, however, does provide that litigation reason. I drove to pick up Mr. Silver on the way to Ashland, Oregon, where we interviewed potential witnesses who had been plaintiffs in the *Santo Daime* case.

39. The same objection is lodged for the six-hour return travel from Ashland to Sebastopol on 7/28/2023, and Jonathan Goldman's (Spiritual Leader and named plaintiff in *Santo Daime*) name is specifically referenced in that entry. Incidentally, Mr. Silver and I discussed the case during virtually the entire time on the road.

40. The one-hour "strategy meeting with legal team and Board" on 8/3/2023 is objected to as "vague – no topic." The purpose of this meeting was to discuss our responses to the request for production of documents and interrogatories.

41. The one-hour entry on 8/10/2023 entitled "prepare invoices and organize receipts for travel to Oregon" led to Defendants' response, "fees on fees." This activity related to submission to the clients of costs that have been reimbursed for the trip to Oregon to interview potential witnesses from the *Santo Daime* litigation.

42. The one-hour "strategy meeting with legal team and board" on 8/14/2023 was objected to as "vague – no topic." This Zoom related to responses to interrogatories and requests for production of documents and CEC by-laws.

43. The same description on 9/7/2023 was met by the same objection. The purpose of that meeting was to discuss discovery and our recent meeting with U.S. counsel.

44. The half-hour entry on 9/17/2023, "respond to messages from McAllister, Hartney re interpol," the one-hour entry on 9/19/2023, "research Peruvian law & respond to messages re 1971 Convention on Psychotropic Substances, and the on-hour entry on 9/20/2023, "read and send excerpt on Peruvian law/Elgar relevance to this litigation." This research was in anticipation of divulging personal information about the client's sources of *ayahuasca* in Peru to ascertain whether we would be jeopardizing their security if doing so.

45. The half-hour entry on 9/28/2023, "read reactions of Silver & McAllister to *Church of the Celestial Heart v. Garland* argument," is objected to as "cross litigation coordination – different case which includes overlapping counsel." I am not involved in that case but I should certainly know about developments in it because it is directly relevant to this case.

46.    The half-hour entry on 10/3/2023, "review & approve *ayahuasquero* agreement for Board" is met with "non-litigation task unclear connection to this case as opposed to general work for this client." It was predictable that Defendants would want this information in discovery, and counsel wanted to be aware of the protocols used by the Church to recognize new "ministers."

47.    The one-hour entry on 10/22/2023, "read & suggest changes to draft settlement proposal"; the two-hour entry on 10/27/2023, "revise settlement agreement"; the half-hour entry on 11/4/2023, "explanation of revision of settlement agreement, McAllister/Hartney"; the one-hour entry on 11/5/2023, "review settlement agreement & submit to client approval"; the half-hour entry on 11/6/2023, "get approvals from board & all legal team members (settlement agreement)"; the half-hour entry on 11/6/2023, "write cover message to Barcia submitting settlement agreement revision"; and the half-hour entry on 11/6/2023, "messages to clients thanking them for prompt review of proposed settlement agreement" were all responded to with the following: "unnecessary and duplicative work – The Government specifically told Plaintiffs that the Government would prepare the first draft of any potential agreement following the on-site inspection. Mr. Silver went ahead and prepared this draft regardless of that indication – and circulated it to others on the team for further review – and later sent it to the Government even though it was of no use. The Government nevertheless prepared the operative first draft following the results of the on-site inspection." The Defendants' objection is quite audacious. It seems to assume that simply because they wanted to do the first draft, they were entitled to that scenario. It was perfectly reasonable for Plaintiffs to submit to Defendants what we wanted in a Settlement Agreement, which would require them to consider it before completing anything. It was not at all duplicative.  It was good lawyering. It is always to a litigant's advantage to do the first draft of an important document that has to be agreed upon by both parties, and we submitted our first draft on October 24, 2023. This put Plaintiffs in a better negotiation posture than otherwise would have been the case. Moreover, counsel for Defendants had long since shown herself to be unreliable in doing things in a timely

fashion, and her promised deadlines, more often than not, were not met. Defendants did not submit their first draft settlement proposal until December 11, 2023, a month and a half after we submitted ours. There is absolutely no justification to deny Plaintiffs fees for this work.

48. The two-hour entry on 10/30/2023, "drive from LAX to Palm Desert, California" is objected to as "vague – no topic; did not provide reason for travel." The entry on the next day ("drive from Palm Desert, California to Phoenix for DEA site inspection") makes it clear what the reason for travel was. Similarly, the same objection was lodged for the two and a half hours on 11/1/2023, "drop off Hartney & McAllister at PHX, drive to Ehrenberg, Arizona" (obviously the day of the DEA site inspection), and the four and a half hour entry on 11/2/2023, "drive from Ehrenberg, Arizona to residence in Huntington Beach, California." Defendants seem to be seizing on any excuse to draw into question legitimate hours spent working on this case.

49. The half-hour entry, "organize receipts for expenses/inspection, submit invoice" on 11/7/2023 has as Defendants' response, "fees on fees." These receipts were for costs and were submitted to the client for reimbursement.

50. The half-hour entry on 11/7/2023, "research on FRE 408" has as an objection, "vague unclear connection to litigation." It seems clear enough that we would want to ensure that in the midst of settlement negotiations we would want to ensure that we are familiar with and abide by the letter of that Rule.

51. On 11/27/2023, the one-hour entry, "Zoom with Silver, McAllister, Hartney re restarting discovery and settlement status" is met with the objection, "discovery work undertaken during parties' agreed-upon discovery pause. Blockbilled." The Court had extended the discovery deadline to 12/30/2023, and it was prudent to anticipate the possible contingency of the case not settling. The two issues are related, thus obviating Defendants' concern with blockbilling.

52. The half-hour entry on 12/1/2023, "read analysis of new FRE 702" is objected to as "vague unclear connection to litigation discovery undertaken during parties' agreed-upon discovery pause." I do not think that any of these objections merits a response.

53. The half-hour entry on 12/27/2023, "read proposed requests for admission and for production and interrogatories from Silver, Hartney," the one-hour entries on 12/27/2023 and 1/7/2024, "Zoom calls with Silver, McAllister, Hartney, & Ali to discuss extension & trial preparation" all were met with the same objection: "discovery undertaken during parties' agreed-upon discovery pause." We were at that point getting the impression that Defendants' counsel was hoping that we would run out of time to do discovery, given the impending deadlines. This objection seems to imply that we should have simply pretended that the case no longer existed because we were not actively engaged in discovery.

54. The half-hour entry on 2/2/2024, "read petition for rehearing *en banc* in *Soul Quest of Mother Earth v. A.G.* (11th Cir)" is objected to as "vague task unrelated to this litigation cross litigation coordination discovery undertaken during parties' agreed-upon discovery pause." These are more bogus objections. I am not involved in the *Soul Quest* litigation, but I sure should know what is developing in that very similar case. Defendants' counsel seems to suggest that we should not keep abreast of relevant law during this discovery pause. Moreover, this has nothing to do with discovery.

55. The one-hour entry on 2/13/2024 entitled "read *Az. Yage Ass'y v. Garland*; joint statement/dispute/interrogatories/requests for production" is objected to based on "vague discovery work undertaken during parties agreed-upon pause blockbilled" breaks down to half an hour to read the relevant case and half an hour to work on the joint report on settlement talks required by the Case Management Report.

56. All entries from 12/6/2023 to 6/10/2024 are labeled by Defendants as "fees on fees," which is the same designation I gave all of those entries, and those hours are fully compensable.

57. All 500 of the hours I submitted in my Declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees (Dkt. 55) are compensable, which includes 434 for work on

the merits and 66 hours for work on my attorney's fees. Filed with that declaration are true and correct copies of the following documents: Exhibit A (log of itemized hours for work on the merits); Exhibit B (log of itemized hours for work on attorneys' fees; Exhibit C (log of itemized hours of paralegal Iryna Zaverukha); Exhibit D (*curriculum vitae*); and Exhibit E (Declaration of Charles H. Wheeler in support of Motion of Gilbert Paul Carrasco for Attorney's Fees.

58.  In addition to the hours referenced in my previous Declaration (Dkt. 55), I have worked an additional 27 hours on attorneys' fees, as referenced in **Exhibit A** of this Declaration, which is a true and correct copy of an itemized log of hours expended since the Motion for Award of Attorneys' Fees and Related Expenses was filed (Dkt. 51).

59.  Based on a reasonable hourly rate of $ 895, the 500 hours referenced in my original Declaration (Dkt. 55) yield a total of $ 447,500. Combined with the 27 additional hours itemized in Exhibit A of this Declaration, the total number of hours that I have worked on this case is 527, yielding a total of $ 471,665 based on a reasonable hourly rate of $ 895. With a 50 % enhancement, the total amount is $ 707,497.50. I am not seeking any costs because all of my costs have been reimbursed by Plaintiffs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 5th day of July, 2024 in L'viv, Ukraine.

/s *Gilbert Paul Carrasco*
Gilbert Paul Carrasco