NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Church of the Eagle and the Condor, et al., | No. CV-22-01004-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Merrick Garland, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses ("Motion"). (Doc. 51, ("Mot.").)

This lawsuit arises out of Plaintiffs' use of ayahuasca for religious purposes. (*See generally* Doc. 1, Compl.) On April 17, 2024, the parties notified the Court that they entered into a written settlement agreement, which specified that the parties would have 60 days to negotiate attorneys' fees and costs, and that the issue would be submitted to the Court if the parties were unable to come to an agreement. (Doc. 49, Notice of Settlement at 1.) Plaintiffs now move for an award of fees and costs in the amount of $2,149,496.30 pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 2412(d), and 5 U.S.C. § 552(a)(4)(E). (Mot. at 1, 10, 16.) Defendants filed their Response in Opposition to the Motion on July 2, 2024, to which Plaintiffs replied. (*See* Doc. 59, ("Resp."); Doc. 60, Reply.)

**I.  LEGAL STANDARDS & ANALYSIS**

Rule 54(d) provides that the prevailing party in an action may be entitled to attorneys' fees and should be allowed costs. Fed. R. Civ. P. 54(d). A party requesting an

award of attorneys' fees and non-taxable expenses must show that it is eligible for an award, entitled to an award, and requesting reasonable attorneys' fees. *See* LRCiv 54.2(c).

### A. Attorneys' Fees Under 42 U.S.C. § 1988 and the EAJA

A court may, in its discretion, award reasonable attorneys' fees to the "prevailing party" in a lawsuit brought under the Religious Freedom Restoration Act ("RFRA"). 42 U.S.C. § 1988(b). Under the Equal Access to Justice Act ("EAJA"), a "prevailing party," other than the United States, may be awarded fees and costs in civil actions against the United States. 28 U.S.C. § 2412(d). To qualify as a "prevailing party," the litigant "must achieve a 'material alteration of the legal relationship of the parties'" that is "judicially sanctioned." *Carbonell v. I.N.S.*, 429 F.3d 894, 901 (9th Cir. 2005) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001)); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (holding that *Buckhannon* applies to a fee application under the EAJA). Specifically for settlement agreements, the Ninth Circuit requires that three elements be satisfied: "(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the plaintiff's] claims." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (alteration in original) (quoting *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009)).

Defendants first contend that Plaintiffs are not prevailing parties because Plaintiffs and Defendants "agreed that neither side was admitting or conceding they prevailed when they settled the case." (Resp. at 9–10.) "[A] material alteration of the legal relationship between the parties occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992); *see La Asociacion*, 624 F.3d at 1090 (finding materially altered relationship where a settlement agreement legally *obligated* defendant to abide by its existing policies). Here, Plaintiffs are entitled to enforce the settlement agreement, which materially altered the parties' legal relationship because Defendants may not "apply or enforce" the Controlled

1 Substance Act against Plaintiffs regarding their importation and use of ayahuasca. (*See* Doc. 51-2, Ex. A, Settlement Agreement at 3, 16.)

As for whether the parties' legal relationship is "judicially sanctioned," Defendants argue that the Court has not taken any "action that would transform the out-of-court agreement into an enforceable decree akin to a judgment." (Resp. at 10.) The Court agrees with Defendants.

"[T]he existence of some judicial sanction is a prerequisite in this circuit for a determination that a plaintiff is a 'prevailing party' and entitled to an award of attorneys' fees as part of costs . . . ." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1173 (9th Cir. 2007). When "'the district court [has] placed its stamp of approval on the relief obtained,' that relief has 'the necessary judicial imprimatur to qualify a plaintiff as a prevailing party.'" *Carbonell*, 429 F.3d at 901 (alteration in original) (quoting *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002)). More specifically for settlement agreements, "when a court *incorporates the terms of a voluntary agreement into an order*, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees." *Id.* (emphasis added) (distinguishing between a settlement or stipulation incorporated into a court order and a "purely private settlement," in finding judicial imprimatur where "the district court subsequently incorporated the [parties' voluntary] stipulation into an order that it issued"); *Labotest*, 297 F.3d at 893 ("The court's incorporation of the first stipulation into its final order, and its order *approving* the settlement agreement, are the necessary judicial imprimatur to qualify Labotest as a prevailing party." (emphasis added)); *see also Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1088 (9th Cir. 2003) (finding plaintiffs were prevailing parties where the district court "dismissed [plaintiffs' remaining claims] with prejudice pursuant to a written Settlement Agreement," which had been filed with the court and its terms stated on the record). The Court has not done so here.

Plaintiffs argue that the "Settlement Agreement contains a 'judicial imprimatur,' because this Court retains jurisdiction to enforce the Settlement Agreement and determine

fees and costs." (Reply at 9.) Plaintiffs also assert that "when Plaintiffs file their dismissal, they will 'embody the settlement contract in their [proposed] dismissal order.'" (*Id.* at 10–11 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).)[1] But the Ninth Circuit has "never . . . undermined the [Supreme] Court's basic requirement that 'some relief' be *granted*" by a court for prevailing party status.[2] *Citizens For Better Forestry v. U.S. Dep't of Agr.*, 567 F.3d 1128, 1131–32 (9th Cir. 2009) (emphasis added) (explaining that "a party must have a judgment or something similar formally delivered in its favor to be considered 'prevailing'"). Because the Court never "placed its stamp of approval" on the settlement agreement *before* Plaintiffs filed their Motion, the settlement agreement lacks the requisite judicial imprimatur to confer prevailing party status on Plaintiffs. *Id.*; *Carbonell*, 429 F.3d at 901; (*see* Resp. at 11 (correctly stating that "prevailing party status is an *antecedent* question to eligibility for fees (emphasis added)), 13.)

Plaintiffs are not entitled to an award of fees or costs under § 1988 or the EAJA.

## B. Fees Under 5 U.S.C. § 552

Plaintiffs also seek attorneys' fees for their Freedom of Information Act ("FOIA") claims. (Mot. at 13–14; *see* Compl. ¶¶ 78–83.) The FOIA authorizes the payment of attorneys' fees to a plaintiff who "substantially prevail[s]" on a FOIA claim. 5 U.S.C. § 552(a)(4)(E). A plaintiff is deemed to have "substantially prevailed," and is eligible for fees, if it "obtained relief" via (a) "a judicial order, or an enforceable written agreement or

---

[1] *Kokkonen* explained that a court is *authorized* but not required to "embody" a settlement agreement into a dismissal order pursuant to Fed. R. Civ. P. 41(a)(1). 511 U.S. at 381.
[2] Plaintiffs cite *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002), for the proposition that a plaintiff "prevails" when they "enter[] into a legally enforceable settlement agreement." (Reply at 9–10.) In *Barrios*, the Ninth Circuit characterized the Supreme Court's pronouncement in *Buckhannon* that a plaintiff must receive a favorable judgment or enter a consent decree, as dictum, notwithstanding the Supreme Court's requirement for some form of "judicially sanctioned" relief for prevailing party status. *Compare Barrios*, 277 F.3d at 1134 n.5, *with Buckhannon*, 532 U.S. at 605–06. Despite this, the district court in *Barrios* had in fact "entered a judgment and order *according to the terms of the settlement agreement*," thereby satisfying *Buckhannon's* mandate. *Barrios*, 277 F.3d at 1133 (emphasis added); *P.N.*, 474 F.3d at 1172 (rendering as dictum *Barrios*' characterization of *Buckhannon* and stating that the settlement in *Barrios* "was clearly judicially enforceable"); (*see* Resp. at 12); *but see Christian Legal Soc'y Chapter at Ariz. State Univ. Coll. of Law v. Crow*, No. CV 04-2572-PHX-NVW, 2006 WL 8440339, at *6 (D. Ariz. May 1, 2006).

consent decree"; or (b) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). Plaintiffs assert that they obtained relief through a change in position by both Customs and Border Protection ("CBP") and the Drug Enforcement Administration ("DEA"). (Mot. at 13–14.)

To show a change in position by an agency, a plaintiff must "present 'convincing evidence' that the filing of the action 'had a substantial causative effect on the delivery of the information.'" *First Amend. Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1128 (9th Cir. 2017) (quoting *Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983)) (holding the 2007 amendments to the FOIA "restore[d] the causation standard under the catalyst theory"); *see also Poulsen v. Dep't of Defense*, 994 F.3d 1046, 1052 (9th Cir. 2021). When an agency releases FOIA documents during litigation, courts consider three factors to determine whether the plaintiff substantially prevailed: "(1) when the documents were released, (2) what actually triggered the documents' release, and (3) whether the plaintiff was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1128 (cleaned up) (quoting *Church of Scientology*, 700 F.2d at 491–92).

If a plaintiff is eligible for an award of attorneys' fees, a district court has discretion to determine that the plaintiff is entitled to fees. *Poulsen*, 994 F.3d at 1050.

### 1. FOIA Request to CBP

Plaintiffs submitted a FOIA request to CBP on March 16, 2021. (Doc. 60-2, Ex. B, ("CBP FOIA Request") at 2–8.) The FOIA request asked CBP to provide "[a]ny and all documents" regarding CBP's protocols on ayahuasca, in response to which CBP directed Plaintiffs to the publicly available, albeit redacted, version of the Seized Asset Management and Enforcement Procedure Handbook ("SAMEPH").[3] (*Id.* at 3; Resp. at 23; Doc. 59-5, Ex. D, ("CBP Resp. to FOIA Appeal") at 7–8.) Plaintiffs appealed CBP's response to their FOIA request on July 1, 2021, stating in part:

> CBP disclosed the [SAMEPH] in response to Requesters' second request. The SAMEPH was heavily redacted, with over 50% of the manual being redacted. Many of the redactions were allegedly justified by CBP using

---
[3] Plaintiffs' argument that four of their six inquiries in their FOIA request "referred to" the SAMEPH is belied by the record. (Reply at 15; *see* CBP FOIA Request at 3.)

- 5 -

> FOIA Exemption (b)(2). However, these Exemption (b)(2) redactions appear to not take into account U.S. Supreme Court case law from 2011. See *Milner v. Dept. of the Navy*, 562 U.S. 562 (2011). . . . Requestors ask CBP to comply with the law and release an unredacted version of the SAMEPH document.

(CBP Resp. to FOIA Appeal at 8–9.) On September 29, 2021, CBP issued a letter to Plaintiffs regarding their appeal, explaining:

> In response to your appeal, an attorney on my staff contacted you via email and telephone, both to inform you that the published version of the SAMEPH is under intra-and interagency review (primarily in response to *Milner v. Dept. of the Navy*, 562 U.S. 562 (2011); a painstaking process that will require several months to complete), and in attempt to discern which specific sections of the SAMEPH were of most interest to you and your co-counsel. Your reply identified almost the entire handbook. We reiterate that the intra- and interagency review process is painstaking and time-consuming. Nevertheless, we will endeavor to complete the process and release non-exempt sections of the SAMEPH as soon as possible.

(*Id.* at 10.) Plaintiffs brought their FOIA claim in June 2022, alleging CBP promised but failed to timely release the less-redacted version of the SAMEPH. (Compl. ¶¶ 55–57, 78–80.) On May 3, 2023, CBP notified Plaintiffs' counsel that CBP had publicly released the re-redacted SAMEPH. (Doc. 59-6, Ex. E, at 2.)

CBP's decision to publish a new version of the SAMEPH was not substantially caused by Plaintiffs' filing of this lawsuit. Indeed, Plaintiffs do not dispute that CBP was already in the process of publishing a new version of the SAMEPH in response to *Milner*. Plaintiffs instead contend they are eligible for fees "from CBP because the filing of the action *hastened the delivery* of the unredacted SAMEPH document." (Reply at 15 (emphasis added).) But Plaintiffs offer no evidence, let alone "convincing evidence," to support this assertion. *First Amend. Coal.*, 878 F.3d at 1128. And temporal proximity is not enough to show that Plaintiffs' lawsuit was a "but for" cause of CBP's release of the SAMEPH. "[T]he mere fact that information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'" *Id.* (quoting *Church of Scientology*, 700 F.2d at 491–92); (*see* Resp. at 23–24.)

Plaintiffs are not eligible for an award of fees for their FOIA claim against CBP.

### 2. FOIA Request to the DEA

Plaintiffs also submitted a FOIA request to the DEA on March 16, 2021. (Doc. 60-

2, Ex. B, ("DEA FOIA Request") at 9–15.) On April 16, 2021, the DEA informed Plaintiffs' counsel that the DEA was experiencing "a significant delay in the processing of [FOIA] requests" due to the COVID-19 pandemic but was "working through the backlog as quickly as possible."[4] (Doc. 59-7, Ex. F, ("DEA FOIA Email") at 2; *but see* Doc. 53, Decl. of Martha J. Hartney ("Hartney Decl.") ¶ 26 (stating the "DEA did not respond *at all*" to the FOIA requests (emphasis added)).) Plaintiffs allege that, at the time of their Complaint in June 2022, the DEA "ha[d] not provided even one document responsive to the FOIA request." (Compl. ¶ 58.) According to Defendants, "[a]fter an initial release, the parties in this case agreed that, because discovery efforts had overtaken DEA's, and because the FOIA request topics and the Request for Production topics entirely overlapped, DEA's FOIA office could cease attempting to process the request." (Doc. 59-1, Decl. of Giselle Barcia ("Barcia Decl.") ¶ 34.)

Plaintiffs argue that they are eligible for fees for their FOIA request because "the DEA, through the DOJ, released hundreds of documents responsive to Plaintiffs' FOIA request," after Plaintiffs filed the Complaint. (Mot. at 14.) Specifically, the DEA disclosed the Risk Assessment, which Plaintiffs contend would not have been disclosed "but for" Plaintiffs' filing of the lawsuit." (*Id.*; Reply at 14.)

Aside from this conclusory assertion, Plaintiffs offer no convincing evidence that filing this lawsuit had a substantial causative effect on the DEA's disclosure of the Risk Assessment or other responsive documentation. *First Amend. Coal.*, 878 F.3d at 1128. The DEA "never refused to produce the information or argued that the documents requested were FOIA exempt." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV-10-303-PHX-LOA, 2011 WL 13185801, at *6 (D. Ariz. Feb. 25, 2011) (finding no change in agency position where the FOIA officer was out of the office and because of a misunderstanding about the plaintiff's FOIA request). Instead, the evidence shows that, although the DEA did not provide Plaintiffs the Risk Assessment until after Plaintiffs filed

---

[4] On June 1, 2021, Plaintiffs also submitted a FOIA request to the Department of Justice ("DOJ"), requesting, among other things, the DOJ to provide a document titled "Ayahuasca: Risks to Public Health and Safety" ("Risk Assessment"). (Doc. 60-2, Ex B, ("DOJ FOIA Request") at 17.)

the Complaint, the DEA informed Plaintiffs that it was experiencing administrative delays due to COVID-19 and would endeavor to respond to their request as soon as possible. (DEA FOIA Email at 2); *Hart v. U.S. Dep't of Health and Hum. Servs.*, 676 F. Supp. 2d 846, 850–51 (D. Ariz. 2009) (concluding the plaintiffs failed to show a substantial causative effect where the defendant experienced "an unavoidable administrative delay" and acknowledged receipt of the plaintiffs' FOIA request before the defendant received notice of the lawsuit).

Plaintiffs are not eligible for an award of fees for their FOIA claim against the DEA.

## II. CONCLUSION

The Court denies Plaintiffs' Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses because Plaintiffs were not prevailing parties on their RFRA claim. Though the parties' settlement agreement materially altered their legal relationship, the settlement agreement lacked the judicial imprimatur necessary for Plaintiffs to qualify as prevailing parties. Plaintiffs also did not present convincing evidence that they substantially prevailed on their FOIA claims.

**IT IS ORDERED** denying Plaintiffs' Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses (Doc. 51).

Dated this 30th day of July, 2024.

_____
Susan R. Bolton
United States District Judge