BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Church of the Eagle and the Condor *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> Merrick Garland *et al.*, <br><br> Defendants. | Case No. 22-cv-01004-SRB <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO INCORPORATE SETTLEMENT AGREEMENT IN ORDER AND FOR RETENTION OF JURISDICTION [Doc. 70]** |

# TABLE OF CONTENTS

I.   LEGAL ARGUMENT ................................................................................................................ 2

    A.   The Settlement Agreement Constitutes a Clear, Negotiated Contract Between the Parties, and This Court Should Reject Plaintiffs' Invitation to Alter It. ......................... 2

    B.   Plaintiffs' Discussion of the "Grounds for Judicial Refusal to Approve a Settlement Agreement" Is Inapposite. ............................................................................................... 8

II.   CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Carbonell v. I.N.S.*, 429 F.3d 894 (9th Cir. 2005) ............................................................... 9

*Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011) ........................ 10

*Harps v. Cnty. of Los Angeles*, 8 F. App'x 771 (9th Cir. 2001) ............................................ 3

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64 (1967) ......... 9

*Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375 (1994) ........................................ 9

*Portland Feminist Women's Health Ctr. v. Advocs. for Life, Inc.*, 859 F.2d 681 (9th Cir. 1988) .......... 9

*Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054 (9th Cir. 2009) .... 6, 7

*United States v. City of Miami, Fla.*, 664 F.2d 435 (5th Cir. 1981) (Rubin, C.J., concurring) ......... 9

*United States v. Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d 484 (6th Cir. 2010) ............................. 9

*William Keeton Enterprises, Inc. v. A All Am. Strip-O-Rama, Inc.*, 74 F.3d 178 (9th Cir. 1996) (per curiam) ................................................................................................................................. 9

**Statutes**

Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1(b) ........................... *passim*

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019). ........................................................................... 3

Fed. R. Civ. P. 41(a) .......................................................................................................... 4, 8, 9

Fed. R. Civ. P. 65(d) ............................................................................................................ 10

Following this Court's denial of Plaintiffs' motion for attorneys' fees and costs (Order, Doc. 69), and with no remaining issues in dispute in this case, Plaintiffs have filed an unusual and frivolous motion (Pls.' Br., Doc. 70). Plaintiffs request that the Court incorporate the terms of the parties' settlement agreement into an order, despite that nothing in the text of the agreement itself nor anything in the parties' negotiating history supports this result. Indeed, it is stunning in two respects. First, Plaintiffs ignore the agreement's text, which makes clear that it fully integrates the entirety of the parties' accord and which states that Plaintiffs must dismiss this case without further action from the Court. Second, lacking any support from the agreement itself, Plaintiffs stunningly assert in a court filing that "Defendants have implicitly agreed to the objectives of this motion," when Plaintiffs failed even to confer on the motion before filing it; when, in any event, the relief requested appears nowhere in the parties' agreement; and where Defendants, in numerous conversations and in writing, made clear to Plaintiffs that they would never agree to the sort of request they make here. The Court should not accept Plaintiffs' baseless invitation to rewrite the final agreement now.

Plaintiffs' gambit here is highly suspect. Their stated purpose is that "the Court incorporate the Settlement Agreement into an Order" and "[b]y doing so, [a] breach of the Settlement Agreement [would] violate[] the Court's Order, thereby creating ancillary enforcement jurisdiction to enforce the Agreement." Pls.' Br. 7. But, as explained more fully below, the Court's limited jurisdiction to hear disputes arising from performance under the agreement is already incorporated within and circumscribed by the agreement itself. A far more likely explanation is that Plaintiffs seek, after the fact, to undermine this Court's denial of Plaintiffs' motion for fees. This Court already ruled that the settlement did not contain "judicial imprimatur"—that is a court-ordered change in the legal relationship of the parties (Order 3)—and so Plaintiffs now seek to manufacture that imprimatur, nearly five months after entering into the settlement, and after losing before the Court on their entitlement to fees. Plaintiffs' attempt to subvert the parties' agreement and an adverse judicial ruling is clearly improper.

For the reasons stated below, the Court should deny Plaintiffs' motion.

## I.  LEGAL ARGUMENT

### A. The Settlement Agreement Constitutes a Clear, Negotiated Contract Between the Parties, and This Court Should Reject Plaintiffs' Invitation to Alter It.

On April 12, 2024, the parties entered into a mutual out-of-court settlement agreement to resolve this matter entirely, but for a lingering dispute over fees. Ex. A ("Agr."). During this negotiation period, Plaintiffs made the strategy call to withhold their demand for attorneys' fees until after the substantive agreement was signed. To that end, the parties agreed to negotiate fees separately and to submit briefs to the Court on that issue—and that issue alone—if necessary. *Id.* ¶ 88. And Plaintiffs specifically agreed without condition, that upon resolution of the fee question (via settlement or court order), that they would dismiss the case with prejudice. *Id.* ¶ 94. The agreement does not contemplate that, after the resolution of the fees question, the parties would seek further relief from the Court, or that the court would issue any form of order. The relief they now instead request is squarely contrary to, and in violation of, the parties' binding agreement.

This executed settlement agreement "is a contract, and its enforceability is governed by familiar principles of contract law." *Knudsen v. Comm'r*, 793 F.3d 1030, 1035 (9th Cir. 2015). Nevertheless, Plaintiffs state with feigned bewilderment that "Defendants attempt to relegate Plaintiffs[] . . . to a mere contractual party and the Settlement Agreement to a purely private settlement." Pls.' Br. 2. Yes—that is the nature of an agreement to settle a case. Yet Plaintiffs also seem to acknowledge this status by the very nature of their request: they concede, as they must, that this Court is "not required" to incorporate the settlement agreement into a court order. *Id.* at 3. Even though nothing in the agreement contemplates that the Court incorporate the existing agreement into a separate a court order that is enforceable as matter of judicial oversight, Plaintiffs insist that the Court *should* do so, for specious reasons.

The agreement itself makes clear that there was never a mutual intent to convert the text of the settlement agreement into a separately enforceable judicial order. For that reason alone, the Court should reject Plaintiffs' hail-Mary request. (Instead, under the agreement's express terms, the only action remaining is that Plaintiffs must dismiss this action with

prejudice.) If more were needed, the parties' negotiating history confirms that Defendants squarely rejected Plaintiffs' requested structure throughout settlement negotiations.

\* \* \*

The text of the agreement makes clear that the parties did not agree to incorporating the terms of the agreement into an order. And the provisions that Plaintiffs point to do not in fact support their interpretation. The Ninth Circuit "relies on basic principles of state contract law in interpreting a settlement agreement." *Harps v. Cnty. of Los Angeles*, 8 F. App'x 771, 772 (9th Cir. 2001). To start, and most significantly, Plaintiffs' notion that the Court should incorporate the settlement into an order is glaringly absent from the agreement text itself. Nowhere does the text indicate that the parties should petition the Court to incorporate the settlement terms into an order, or otherwise independently act to enforce the agreement. The inquiry should end there.

This lack of textual support is a problem for Plaintiffs, who resort to making false assertions about what Defendants have "implicitly" agreed to do. Pls.' Br. 1. Plaintiffs' notion that Defendants impliedly" agreed to the relief they now seek is belied by the agreement itself. The parties included an "entire agreement" provision in their settlement to avoid post-hoc surprises and requests such as this one. Therein, the parties specified:

> This Agreement contains the *entire agreement* between the parties hereto, and Plaintiffs acknowledge that no promise or representation not contained in this Agreement has been made to them, and further acknowledge that this Agreement contains the entire understanding between the parties, and it contains all terms and conditions pertaining to the compromise and settlement of the disputes referenced herein.

Agr. ¶ 93 (emphasis added). An "entire agreement" clause, also known as an integration or merger clause, is a "contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." Integration (Merger) Clause, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, Plaintiffs do not even claim there was an informal or oral agreement regarding their request to convert the agreement into a court order—they argue

instead that Defendants "implicitly" agreed. Not so. It is not reflected in the text anywhere and it was never agreed to at all. Plaintiffs' motion flies in the face of the clear integration clause in the agreement

In point of fact, the agreement does speak to the mechanics for ending the lawsuit, which work squarely *against* Plaintiffs' whimsical interpretation of the parties' obligations and understanding. The parties agreed to a provision that specifically outlined: "Within fifteen (15) days of the receipt of the payment described in paragraph 88 [provision describing timing of attorney's fees negotiation and briefing], Plaintiffs shall dismiss this case with prejudice pursuant to Fed. R. Civ. P. 41(a) by filing a Stipulation of Dismissal with Prejudice." Agr. ¶ 94. There is no mention of additional orders from the Court, by way of "incorporation" or otherwise. Instead, the agreement is unequivocal that, upon resolution of the question of fees, there is but one ministerial action that will occur: *Plaintiffs* must voluntarily dismiss the case. With no payment being owed here per the Court's ruling, Plaintiffs should have already dismissed this by August 14, 2024, at the latest, and they have failed to do so. This provision did not contemplate an additional procedure requiring the Court to craft an order that incorporates the settlement contract. Rather, by the parties' express agreement, the case should have been closed weeks ago.

Plaintiffs claim that "incorporation into an order and intention of jurisdiction are essential terms of the settlement agreement," Pls.' Br. 5, pointing to three provisions as evidence—but none supports Plaintiffs' position. As Defendants already discussed in the previous fee briefing (Doc 59, at 5), Plaintiffs' contention that these are "essential provisions in the Settlement Agreement that contemplate this Court's oversight and jurisdiction" and "[e]nforcement by this Court," Pls.' Br. 5, are inaccurate, strained readings of the contract.

Having been turned aside by the Court on the question of fees, Plaintiffs point yet again to the same provisions, under which the parties agreed to the jurisdiction of this district court for resolution of disputes arising from performance under the agreement itself. In Paragraph 91 (itself "subject to paragraph 25"), under the heading "resolution of disputes arising out of this agreement," the Parties agreed to "the following dispute resolution

4

procedures" to resolve "concerning any alleged breach of this [a]greement." Specifically, the parties agreed on a process for each of three levels of resolving "alleged breaches": they would (1) make a good faith effort to informally resolve any dispute or alleged breach; (2) submit the dispute to mediation otherwise; and (3) if there was still a dispute, the parties agreed on the jurisdiction of this district court for purposes of these arising-under disputes. These provisions, in addition to providing clarity regarding future contract performance disputes in general, resolved potential future disputes regarding venue or jurisdiction. Thus, if CEC ever expanded outside of Arizona, for example, the provision memorializes the parties' agreement that contract performance disputes could still be heard here. Similarly, the parties agreed that claims for breach of contract could be heard here, as opposed to the Court of Federal Claims (which as a default can hear certain breach-of-contract claims against the Government). *See* Agr. ¶¶ 86 ("Additional Terms and Conditions": "Venue & Jurisdiction"), 91.c ("Resolution of Disputes Arising out of This Agreement)).

Agreeing to a forum for purposes of setting up a dispute-resolution process arising from future performance under the agreement does not mean the parties have agreed to the highly irregular outcome of requiring this Court to incorporate the underlying agreement into a judicial order. Any future dispute "regarding any alleged breach of this Agreement," *id.* ¶ 91, would constitute a new potential breach-of-contract issue to be resolved, according to the outlined dispute resolution process. The parties' agreement that any future issues of breach, could properly be presented in the District of Arizona, provides no basis for Plaintiffs to ignore the clear language of the contract about disposition of the underlying case. As to that, there is no "incorporation" to be requested or entered. To the contrary, Plaintiffs are obligated to dismiss this action, full stop.

Curiously, and without elaboration or support, Plaintiffs somehow read into this provision "a recognition that questions that arise under [RFRA] must ultimately be *judicially* decided if the rights under the statute are not respected." Pls.' Br. 5. But the purpose of the agreement was to *resolve* Plaintiffs' underlying RFRA claims, not hold them out in perpetuity and/or appoint the Court as some kind of general ombudsperson for all RFRA-adjacent

matters, in the form of a supervised consent decree.[1]  And to be crystal clear:  Defendants have found no authority for Plaintiffs' suggestion that parties to a RFRA dispute are somehow unable to resolve their disputes by private agreement.

Even weaker is Plaintiffs' second contention that the parties' submission of briefs to the Court to resolve the fee dispute Pls.' Br. 5-6 (citing Agr. ¶ 88), somehow bears on their instant request for relief.  It does not.  Plaintiffs argue "[i]t has always been clear to Plaintiffs that Defendants intended to pay attorneys' fees and costs. . . . For the first time, in their Opposition . . . Defendants revealed their position that 'Plaintiffs are not entitled to *any* fees." Pls.' Br. 6.  (Plaintiffs then go out of their way to quote an inapplicable dissent by former Judge Kozinski.)  This is a puzzling contention, as Defendants never expressed an intention to pay any specific amount of fees and costs, and such a promise is not reflected anywhere in the agreement (which expressly reserved all fee disputes).[2]  In any event, Plaintiffs' purported surprise over the issues of fees is irrelevant to the question whether this Court should entertain their baseless request to ignore the agreement itself and enter an order of incorporation.

In connection with their discussion of these textual provisions, Plaintiffs extensively quote *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009), and "request this Court to consider" the case, but offer no analysis of how this case supports their position.  Pls.' Br. 7.  To the contrary, *Saint John's Organic Farm* directly undermines Plaintiffs' request.  Plaintiffs selectively quote an ultimate finding that the

---

[1] Defendants do not dispute, of course, the unremarkable proposition that an unresolved, separate RFRA claim—to be distinguished from the now-settled RFRA claims here—would be subject to judicial review.  That proposition simply does not apply here, where the parties have settled Plaintiffs' claims in this case out of court.

[2] But to be clear on the facts, Plaintiffs wrongly feign surprise at Defendants' position on entitlement to fees.  Plaintiffs withheld transmitting their exorbitant fee demand until after the parties had executed the settlement agreement.  Consistent with prior representations, Defendants informed them in writing why there was no legal entitlement to any fees, why the sum they requested was unreasonable, and why Defendants' counteroffer was appropriate.  That Defendants were open to negotiating on this issue to avoid the burden of fee litigation on both the government and the Court is par for the course in settlement discussions.  And, surprise or no, the Court agreed with Defendants. Nevertheless, none of this has anything to do with Plaintiffs' current baseless request to convert the terms of the settlement agreement into a judicial decree.

agreement in that case was judicially enforceable. Yet they fail to recognize the opinion's premise and determination that the parties' "[a]greement *specifically provided* that its terms would be enforceable by the district court." *Id.* (emphasis added). The settlement agreement here absolutely has no such provision. On the terms of the very case Plaintiffs cite, the Court should reject Plaintiffs' request.

The language of the parties' agreement is abundantly clear, such that the Court should stop there. Here, the parties' negotiating history also confirms that Defendants consistently refused—and certainly never "implicitly agreed"—to the relief Plaintiffs now seek after the fact. Pls.' Br. 1-2. For example, the form of the settlement agreement was the subject of early discussion and cuts directly against Plaintiffs' urging that a Court order incorporating the parties' agreement was remotely within the parties' agreed-upon terms and understanding. Indeed, even before the parties began exchanging drafts, Plaintiffs repeatedly requested that the settlement agreement take the form of a consent decree, and Defendants consistently responded that they would not enter into an agreement with that structure. As another example, after execution, Plaintiffs sought to excerpt provisions of the settlement agreement in proposed orders attached to the parties' notice of tentative settlement. Among other objections, Defendants rejected those edits precisely because they had not agreed to have the parties' agreement incorporated into a court order in any respect.

*   *   *

In sum, the settlement agreement offers no support for Plaintiffs' request here. There is no suggestion anywhere in the text that the parties incorporate the settlement agreement into a judicial order because Defendants never agreed to do so. Indeed, this Court already rejected Plaintiffs' strained reading of the settlement agreement in the context of the attorneys' fees briefing. And, as a close reading of the agreement confirms, the Court was right to do so. Plaintiffs now simply seek to undermine this Court's existing interpretation of the agreement and create judicial enforcement after the fact. This Court should squarely reject Plaintiffs' desire to subvert the parties' agreement and this Court's decision on fees.

### B. Plaintiffs' Discussion of the "Grounds for Judicial Refusal to Approve a Settlement Agreement" Is Inapposite.

Plaintiffs ask, seemingly as alternative relief, that the Court "approve" the settlement agreement. This request is likewise inconsistent with the settlement agreement and untethered from relevant law. Plaintiffs begin by conceding, as they must, that the Court is "not required to 'embody' a settlement agreement into a dismissal order pursuant to Fed. R. Civ. Proc.41(a)(1)." Pls.' Br. 3. Nonetheless, Plaintiffs insist that "the Settlement Agreement is one that this Court would approve." *Id.* But whether this Court might, in some hypothetical circumstance, be called upon to assess the merits of an out-of-court agreement, and whether the Court might then "approve" such a document as a matter of substance, has no bearing on whether this agreement calls upon the Court to do so. And the parties' agreement, emphatically, does not do so.

First, the parties already executed their private settlement agreement—all without any court involvement and without any reference to potential court "approval." There is a distinction between an instrument, enforceable as a matter of contract law and one enforceable as a matter of judicial oversight. *See Carbonell v. I.N.S.*, 429 F.3d 894, 901 (9th Cir. 2005); *Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 381 (1994). This agreement represents the former, and as discussed above, the agreement is fully integrated. Agr. ¶ 93. Nowhere does the agreement require judicial approval. To the contrary, the parties settled the underlying claims, agreed to table the unresolved dispute over fees, and agreed that, when the fee issue was resolved, Plaintiffs would dismiss this action. *Id.* ¶ 94. Plaintiffs, instead of doing so, run to the Court with buyers' remorse—after losing on fees—to insist that the Court should grant an "approval" the parties did not agree to seek.[3]

Moreover, Plaintiffs offer no relevant or applicable case law for the proposition that a pre-existing and executed settlement agreement can be unilaterally converted into one that

---

[3] If more were needed, in the parties' filed notice of tentative settlement and notice of settlement, nowhere did the parties note that the agreement required or even contemplated subsequent review and approval. (Docs. 47, 49). This post-execution course of dealing, of course, comports with Defendants' reading of the contract.

8

requires judicial approval. Rather, the cases Plaintiffs rely on involve court of appeals' analyses of whether district courts erred in approving or declining to approve *existing consent decrees*. Pls.' Br. 3; *see United States v. Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d 484, 491 (6th Cir. 2010) (district court erred in declining to approve proposed consent decree due to civil penalty); *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) (Rubin, C.J., concurring) (explaining factors for court approval "[*w*]*hen presented with* a proposed consent decree" (emphasis added)). None of these cases are relevant here, in the context of an existing out-of-court settlement agreement, rather than a proposed consent decree.

Finally, Plaintiffs briefly argue that the settlement agreement "meets the requirements" of "[a]n equitable decree compelling obedience [that] is an injunction within Rule 65(d)." Pls.' Br. 4. They argue that it "meets these requirements because [the agreement] describes in reasonable detail the specific conduct to be enjoined and the reasons for issuing the injunction." *Id.* This argument makes no sense, because the agreement was entered into between the parties and is not an equitable decree. It does describe in reasonable detail the "specific conduct" to which the parties have mutually agreed (without court involvement), but in no way is that specific conduct "to be enjoined," nor does it incorporate or demonstrate any reasons why an injunction might issue. Indeed, even though Plaintiffs pleaded injunctive relief in their original Complaint, they never moved for an injunction and never came close to obtaining that result. This stands in contrast to Plaintiffs' cited cases, all of which stem from an underlying court order regarding injunctive relief. *See Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74-75 (1967) (considering whether "the district court's order" constituted "an order granting injunction" under Rule 65(d)); *William Keeton Enterprises, Inc. v. A All Am. Strip-O-Rama, Inc.*, 74 F.3d 178, 180 (9th Cir. 1996) (per curiam) (considering a district court's order regarding an agreement that explicitly stated that "[t]he court is to enter a permanent injunction" and finding, in any event, that the "district court lacked jurisdiction to enter [the agreed-upon injunction]"); *Portland Feminist Women's Health Ctr. v. Advocs. for Life, Inc.*, 859 F.2d 681, 683 (9th Cir. 1988) (evaluating the constitutionality of a

district court's injunction where a party had "moved for a preliminary injunction" and a magistrate judge had held "an evidentiary hearing"). The argument is entirely inapt.

\*   \*   \*

In conclusion, Plaintiffs' motion has no basis in the text of the parties' agreement or in the law it cites. To the contrary, the agreement contemplates only one further event in this action: dismissal, by Plaintiffs, with prejudice. The motion should be denied, and Plaintiffs must belatedly comply with their obligations under the contract and dismiss this action. Plaintiffs' motion is littered with inapplicable cases; but one of those cases does contain a helpful observation: "[a]t some point, litigation must come to an end. That point has now been reached." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011).

## II.   CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion.

Respectfully submitted this 9th day of September, 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Giselle Barcia*
GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 305-1865
Fax: (202) 514-8640
E-mail: giselle.barcia@usdoj.gov

*Counsel for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jack Silver
Law Office of Jack Silver
708 Gravenstein Hwy N, Ste. 407
Sebastopol, CA 95472-2808
Tel.: 707-528-8175
Fax: 707-829-0934
E-mail: lhm28843@sbcglobal.net
E-mail: jsilverenvironmental@gmail.com

Gilbert Paul Carrasco
Willamette University College of Law
19431 Sunray Lane, Ste. 102
Huntington Beach, CA 92648-6401
Tel.: 714-698-8142
E-mail: carrasco@willamette.edu

Ismail L Ali
1530 Campus Dr.
Berkeley, CA 94708
Tel.: 559-801-7317
E-mail: lourido.ali@gmail.com

Martha J Hartney
Hartney Law LLC
4450 Arapahoe Ave.
Boulder, CO 80303
Tel.: 303-747-3909
Fax: 303-835-7199
E-mail: martha@hartneylaw.com

Sean T McAllister
McAllister Law Office PC
4035 E 3rd Ave.
Denver, CO 80220
Tel.: 720-448-6235
E-mail: sean@mcallisterlawoffice.com

*s/ Giselle Barcia*
GISELLE BARCIA
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice